# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| RANDY LANGER and JAMES LANGER, | : | |
| Plaintiffs, | : | Civil Action No. |
| | : | |
| v. | : | |
| | : | |
| CAPITAL ONE AUTO FINANCE, a division of CAPITAL ONE, N.A., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DECLARATION OF JAMES BURROWS IN SUPPORT OF NOTICE OF REMOVAL

I, James (Jim) Burrows, Senior Business Analysis Manager, being duly sworn, state that I am an authorized representative of Defendant, Capital One Auto Finance, a division of Capital One, N.A. ("COAF"), and that I make this Declaration, being authorized to do so on behalf of COAF.  Being duly sworn according to law, I declare and state:

1.      I am over the age of 21 years, and I am fully competent to make this Declaration. The facts contained in this Declaration are true and correct and are based on my review of the business records of COAF.

2.      This Declaration is taken in support of Defendant's Notice of Removal in the above-captioned action.

3.       I am employed by COAF as Senior Business Analysis Manager.  My responsibilities include reviewing and analyzing customer account data for the auto lending business including the data concerning the repossession, preparation and sale of recovered and returned automobiles, financed by COAF.  I regularly access Capital One's electronic data systems to compile and analyze data about Capital One's auto loan portfolio and rely on the

accuracy of Capital One's electronic data systems to perform my data review and analysis in the ordinary course of my business.

4.     To determine the size of the putative class in this matter, I, together with employees of COAF acting under my direction, was asked to conduct and have conducted a review of COAF's business records to identify all persons who:  (a) financed the purchase of a motor vehicle through COAF or whose consumer loan contract was assigned to COAF; (b) from whom COAF repossessed the vehicle or ordered it to be repossessed; (c) who had a Pennsylvania address as of the date of the repossession; and (d) who, within the six years prior to the filing of this Complaint, were sent a notice of intention of disposition of collateral which allegedly failed to provide 15-days' notice of the intended sale or disposition.  Our review identified approximately 480 accounts responsive to this request.

5.     For those 480 accounts, the aggregate principal amount of the loans is approximately $8,537,961.26 and the aggregate credit service charge for these loans is approximately $4,992,902.28.

6.     COAF's records also reflect that, of these 480 accounts identified above, COAF sold approximately 330 vehicles.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 21, 2016.

[James Burrows]

Sworn to and Subscribed before me
this 21ˢᵗ day of November 2016.

NOTARY PUBLIC
# 522293

LYNDA L. MATHEWS
Notary Public, State of Texas
My Commission Expires
June 02, 2019

# 3018991

# EXHIBIT 2

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| RANDY LANGER and JAMES LANGER, | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | No. |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| CAPITAL ONE AUTO FINANCE, a division of | ) | |
| CAPITAL ONE, N.A., | ) | |
| | ) | |
| Defendants | ) | Counsel of Record for Plaintiffs: |
| | ) | Richard Shenkan, Esquire |
| | ) | Shenkan Injury Lawyers, LLC. |
| | ) | Attorney ID 79800 |
| | ) | 6550 Lakeshore St. |
| | ) | West Bloomfield, MI 48323 |
| | ) | T: (248) 562-1320 |
| | ) | F: (888) 769-1774 |

Filed and Attested by the
Office of Judicial Records
05 OCT 2016 01:38 pm
E. FORTE

**NOTICE TO PLEAD**
To Defendant:  You are hereby notified to file a
written response to the within pleading within
twenty (20) days of service hereof or a judgment
may be entered against you.

SHENKAN INJURY LAWYERS, LLC.
Richard Shenkan

**JURY TRIAL DEMANDED ON
ALL COUNTS.  DAMAGES
EXCEED JURISDICTIONAL
LIMIT FOR ARBITRATION.**

1

Case ID: 161000560

NOTICE TO DEFEND

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once.  If you do not have a lawyer or if you cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

Philadelphia Bar Association Lawyer
Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notifiicacion . Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende , la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion . Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisioner de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. Lleve esta demands a un abogado immediatamente.. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o flame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

SHENKAN INJURY LAWYERS, LLC.

BY: _____
Richard Shenkan
*Attorney for Plaintiff*

2

Case ID: 161000560

## CLASS ACTION COMPLAINT

1.      Representative Plaintiffs Randy Langer and James Langer, on behalf of themselves individually and all others similarly situated, hereby file this Class Action Complaint against Capital One Auto Finance, a division of Capital One, N.A., and allege as follows:

### I.      INTRODUCTION

2.      When a secured lender exercises its self-help remedy to repossess its motor vehicle collateral from its consumer debtor, the creditor must adhere to stringent mandatory statutory disclosures to comply with the Pennsylvania Commercial Code ("UCC"), independently, and in *pari materia* with the Motor Vehicle Sales Finance Act ("MVSFA"). This consumer protection class action seeks monetary relief to redress Defendant's pattern and practice of failing to provide statutorily compliant, commercially reasonable, notices when repossessing and reselling a financed vehicle.

### II.      PARTIES

3.      Representative Plaintiff Randy Langer is an adult individual with an address of 2550 Belaire Dr., Cumming, Georgia 30041.

4.      Representative Plaintiff James Langer is an adult individual with an address of 606 Summit St., McKeesport, Pennsylvania 15132.

5.      Defendant Capital One Auto Finance is a division of Capital One, N.A. ("COAF") with its principal place of business at 7933 Preston Road, Plano, Texas 75024.

6.      It regularly and systemically conducts business throughout Pennsylvania.

7.      Capital One Auto Finance is also a fictitious name registered in Pennsylvania by Capital One, N.A.

3

Case ID: 161000560

8.      At all relevant times, COAF was (or is) the assignee, holder, and/or servicing agent of loans secured by Plaintiffs and putative class members' vehicles when each of the subject statutory notices were sent (or caused to be sent) and/or is (or was) otherwise responsible for and/or participated in the wrongdoing(s) set forth below.

## IV.   FACTS

9.      In April of 2015, COAF, as secured creditor, or its agents, repossessed Plaintiff James Langer's vehicle.

10.     On or about April 17, 2015, COAF or its agents sent or caused to be sent a computer generated form letter addressed to Plaintiffs Randy Langer and James Langer to attempt to alert them, *inter alia*, that the aforesaid vehicle had been repossessed.  Plaintiff Randy Langer was designated on the letter as a "co-borrower or co-obligor." A copy of the document (hereafter "Notice of Repossession") is attached as **Exhibit A.**

11.     When COAF utilized self-help repossession of vehicles, it sent the same form Notice of Repossession to all class members, or in the alternative, failed to send a statutorily compliant notice of repossession.

12.     COAF failed to send an Explanation of Deficiency or Surplus (hereinafter "Post-Sale Notice") to Plaintiffs and class members, in violation of the UCC, or in the alternative, failed to send a statutorily compliant Post-Sale Notice to Plaintiffs and class members. [1]

13.     In connection with the preparation of the sale of the vehicle, COAF executed a PennDOT MV-217A form certifying that COAF "complied with all applicable laws and regulations of Pennsylvania." **Exhibit B**.

---

[1] If a Post-Sale Notice was sent, Plaintiffs will obtain a copy of it in discovery as Plaintiffs do not have any such notice in their possession.

4

Case ID: 161000560

14.     A copy of an MV-217A exemplar is attached as **Exhibit C**.

## V.     GOVERNING LAW

### Every Aspect of a Disposition of Collateral Must Be Commercially Reasonable

15.     13 Pa. C.S.A. §9610(b) requires that all aspects of the sale of repossessed vehicles must be commercially reasonable, and prohibits the sale of the collateral if the sale is not commercially reasonable. The statute states, in relevant part, as follows:

> (b)   Commercially reasonable disposition – **Every** aspect of a disposition of collateral, including the method, manner, time, place and other terms, **must be** commercially reasonable.   [Only] **If** commercially reasonable, a secured party may dispose of collateral by **public** or **private** proceedings. … (Emphasis added).

16.     When a creditor fails to act in a commercially reasonable manner on all aspects of the sale of a repossessed vehicle, including the sending of compliant post-repossession and deficiency notices (thus violating the UCC [and/or the UCC and MVSFA in *pari materia*]), the value of collateral is presumed by law to equal the indebtedness secured, thereby extinguishing the indebtedness, unless the secured party rebuts the presumption. *Savoy v. Beneficial Consumer Discount Co.*, 503 Pa. 74, 78 (1983). Accordingly, because of the commercial unreasonableness of Defendants' conduct as set forth below, the deficiency balances of the Plaintiffs and class members are disputed and should be extinguished.

COAF has a duty to submit a corrective tradeline (i.e., an "XB" credit code) on all credit reports of these Plaintiffs and class members that any deficiency balance is disputed as a result of this pending claim so as to minimize the impact of this improper submission on Plaintiff's and class members' credit score. Doing so will help mitigate COAF's damages.

Case ID: 161000560

**The UCC and MVSFA must be read *in pari materia***

17.     Repossessors of vehicles, such as COAF, are required to comply with both the MVSFA and the UCC, which must be applied in *pari materia*. *Indus. Valley Bank & Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 (1985).

18.     "Statutes or parts of statutes are in *pari materia* when they relate to the same persons or things or to the same class of persons or things." 1 Pa. C.S. §1932(a).

19.     The MVSFA sets forth notice requirements for secured parties who repossess other than by legal process. Likewise, the UCC sets forth the notice requirements for secured parties who repossess other than by legal process.

20.     These statutes relate to the same persons or things and/or to the same class of persons or things, debtors whose vehicles were repossessed outside the judicial process.

21.      "Statutes in *pari materia* shall be construed together, if possible, as one statute." 1 Pa. C.S. §1932(b).

22.     COAF made certifications in every PennDOT MV-217A form (which COAF executed to facilitate the transfer of title to the repossessed vehicle from the Plaintiffs and class members to COAF) affirming that it "complied with **all** applicable statutes and regulations" (i.e., the UCC, the MVSFA, and the UCC and MVSFA in *pari materia* pursuant to *Indus. Valley Bank & Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 (1985). *See* **Exhibit B**.

23.     These certifications were false. COAF submitted these false certifications to PennDOT hundreds or thousands of times regarding Plaintiffs and Class Members alike due to the violations raised herein.

6

Case ID: 161000560

24.     PennDOT would not have transferred the title of the repossessed vehicle from the class members to COAF if PennDOT knew that COAF had not "complied with **all** applicable statutes and regulations."

**Defects in and/or Commercial Unreasonableness of Statutory Notices**

**A. Notice of Repossession Requirements**

25.     In the course of the repossession and disposition process, COAF had a statutory obligation to provide a "reasonable authenticated notification of disposition" (hereinafter "Notice of Repossession") of the collateral containing important mandatory information about the repossession and intended disposition of the vehicle. 13 Pa.C.S.A. §9611, 12 Pa.C.S.A. §6254.[2]

26.     In the Notice of Repossession sent to Plaintiffs, attached as **Exhibit A**, COAF stated that the repossessed vehicle would be sold after April 27, 2015, *only 10 days* after the date of the Notice of Repossession.

27.     COAF's notice is commercially unreasonable because it violates the UCC, independently, and in *pari materia* with the MVSFA by failing to provide notice to the buyer of the holder's intent to resell the motor vehicle at the expiration of *15 days* from the date of mailing the notice, as expressly required by 12 Pa.C.S.A. §6254(c)(3) and/or 69 P.S. §623(D), as applicable, and 13 Pa. C.S. §9610.[3]

---

[2] Plaintiffs are not asserting a MVSFA claim, independently, but only in *pari materia* to the UCC and the UCC, as commercial unreasonable conduct. *See, Indus. Valley Bank & Trust Co. v. Nash*, *supra*. and 13 Pa. C.S. §9610.

[3] The MVSFA provision requiring the 15-day redemption period was previously found at 69 P.S. §623(D). In the recodified MVSFA, the 15-day requirement appears at 12 Pa .C.S.A. §6254. It is clear, however, that at all relevant times the MVSFA required a 15-day period for redemption. For purposes of this Complaint, "MVSFA" and references to its provisions will signify both the old and new versions of this statute.

7

Case ID: 161000560

28.     COAF did not provide a statutorily compliant notice of its plan to sell the repossessed vehicles, and therefore did not act in a commercially reasonable manner, in violation of the UCC, 13 Pa. C.S.A. §9610.

29.     In addition to the content violations as stated above, the method of sending the Notices of Repossession to Plaintiffs and co-borrowers (also synonymously referred to as "co-obligor" / "co-signor") who share a mailing address was also not commercially reasonable because COAF had a policy not to send a separate Notice of Repossession to co-buyers whose last known mailing address is the same, in violation to 13 Pa.C.S.A. §9611(b) and (c).

30.     Each borrower is entitled to a separate notice, even though their respective last known address is the same residence. The UCC and/or the MVSFA do not permit a "shared" or singular notice to be sent to both co-borrowers who happen to use the same mailing address.

31.     MVSFA states, in pertinent part, that "the notice of repossession shall be delivered in person or sent by registered or certified mail to the last known address of the buyer." 12 Pa. C.S.A. 6254(b). This statutory provision coupled with reference to "buyer" and "buyer's" in 12 Pa. C.S.A. 6254(c) evidence the legislative intent to ensure that each buyer and any co-buyer or co-obligor needs to be sent their own Notice of Repossession.

32.     It is commercially unreasonable in violation of 13 Pa.C.S.A. §9610 for COAF not to send a separate notice of repossession to each buyer who share the same mailing address because they each have a like interest in the collateral and share a joint responsibility for any potential deficiency which may arise after sale of the repossessed vehicle. Sending each obligor a statutorily compliant notice best provides them of the statutorily-mandated disclosures.

33.     In the alternative and/or in addition, the UCC is ambiguous because it does not clearly delineate: (a) the *minimum* time period that a borrower has to redeem his/her repossessed

8

Case ID: 161000560

vehicle but rather relies upon a standard of commercial reasonableness; and/or, (b) whether co-buyers (who happens to share the same mailing address) should each be sent a separate Notice of Repossession by the secured creditor.

### B.      Post-Sale Notice Requirements

34.      At all relevant times, COAF was required to send an Explanation of Calculation of Surplus or Deficiency (hereinafter referred to as a "Post-Sale Notice") to Plaintiffs and Class members under the UCC and/or pursuant to industry standards.

35.      A Post-Sale notice "must," in accordance with 13 Pa. C.S.A. §9616(a):

A.      State the amount of the surplus or deficiency

B.      Provide an explanation in accordance with 9616(c) of how the secured party calculated the surplus or deficiency:

    1.   Under 9616(c), the Post-Sale Notice "must provide the following information, in the following order" (emphasis added):

        a.      The aggregate amount of the obligation secured by the security interest, and, if the amount reflects a rebate of unearned interest or credit service charge, a timely indication of that fact;

        b.      The amount of proceeds of the disposition;

        c.      The aggregate amount of the obligations after deducting the amount of proceeds;

        d.      The amount, in aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral and attorney fees secured by the collateral which are known to the secured party and relate to the current disposition;

        e.      The amount, in the aggregate or by type and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in paragraph a. above; and,

        f.      The amount of the surplus or deficiency.

C.      State, if applicable, that future debits, credits, charges, rebates and expenses may affect the amount of the surplus or deficiency; and,

Case ID: 161000560

D.      Provide a telephone number or mailing address from which additional information concerning the transaction is available.

36.      Official Comment No. 2 states, in pertinent part:

> [I[n every consumer-goods transaction, the debtor or obligor is entitled to know the amount of a surplus or deficiency and the basis upon which the surplus or deficiency was calculated. … [A] secured party is obligated to provide this information no later than the time that it accounts for and pays a surplus or the time of its first written attempt to collect the deficiency.

13 Pa. C.S. §9616, Official Comment 2. (Emphasis added)

37.      COAF failed to send a Post-Sale Notice to Plaintiffs and Post-Sale Notice Class Members.

38.      In the alternative, if COAF sent a Post-Sale Notice to Plaintiffs and the Post Sale Notice Class Members, then COAF has done so in an untimely manner and/or the content required to be in the Post-Sale Notice is insufficient and/or not in the order as required by 13 Pa.C.S.A. §9616 as stated above.

39.      The failure to send Post-Sale Notices, or in the alternative to send an untimely or deficient Post-Sale Notice, was commercially unreasonable, in violation of 13 Pa.C.S.A. §9610, 9616.

### D. Damages for UCC Violations

40.      Plaintiffs and the putative class are entitled to minimum statutory damages as a result of COAF's failure to comply with the UCC, independently, and in *pari materia* with the MVSFA.

41.      Pennsylvania's UCC, at 13 Pa. C.S.A. §9625(c)(2), provides for damages for a secured party's failure to follow the proper procedures upon repossession, such as a defective Notice of Repossession or the failure to send a Notice of Repossession.

10

Case ID: 161000560

42.     The statute allows consumer debtors such as Plaintiffs (and the putative class) to recover minimum damages of not less than the credit service charge plus 10% of the principal amount of the obligation.

43.     The minimum statutory damages are derived from a simple, straightforward and uniform arithmetic calculation.

44.     The two figures needed for the statutory damage calculation are easily determinable from the face of the consumer's loan contract.

45.     The Official Comments to the UCC are entitled to great weight under Pennsylvania law.

46.     Official Comment number 4 to Section 9625 makes clear that Section 9625(c)(2) is a strict liability provision providing for uniform damages, regardless of whether "actual damages" are greater, lesser, or even absent.  That Comment states in pertinent part:

> **4. Minimum Damages in Consumer-Goods Transactions.**
> Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9-507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted.

Official Comment to §9625(c)(2).

47.     13 Pa. C.S. §9624(b) states: "subject to subsections (c), (d), and (f), a person is liable for [actual] damages in the amount of any loss caused by a failure to comply with this division."

48.     Actual damages are readily determinable simply by reviewing records in the possession, custody, or control of Defendant(s), Pennsylvania Department of Revenue, auctions who sold the repossessed vehicles, and/or PennDOT.

11

Case ID: 161000560

49.     Plaintiff is making a claim for the greater of minimum statutory or actual damages for each class member, not seeking any double recovery.

50.     Plaintiffs also seek to restrain Defendant(s) from the collection or enforcement of the alleged deficiency balances of Plaintiffs and Class Members, to enjoin the adverse credit notations on the Plaintiffs' and Class Members' credit report, and to vacate any deficiency judgments pursuant to 13 Pa.C.S.A. §9625(a).

51.     A secured party who fails to send a statutorily compliant Post-Sale Notice is liable for $500 statutory damages per borrower/co-borrower if its failure to comply was part of a pattern, or consistent with a practice, of noncompliance (which is alleged herein). 13 Pa. C.S. §9625(e)(5). Plaintiff seeks these damages for members of the Post-Sale Notice Class.

## VI. CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action on their own behalf and on behalf of a class designated pursuant to Pa.R.Civ.P. 1701 *et. seq.*

53.     Plaintiffs propose to define Class I ("Repossession Notice Class") as All Persons:

(a)     who financed the purchase of a motor vehicle, primarily for personal, family or household use, through COAF or whose consumer loan contract was assigned to COAF; and,

(b)     from whom COAF, as secured party, repossessed the vehicle or ordered it to be repossessed; and,

(c)     who had a Pennsylvania address as of the date of repossession; and,

(d)     who, within the six years prior to the filing of this complaint, through the date of class certification:

i.     were sent a Notice of Repossession by COAF or its agent which failed to provide a minimum period of 15-days notice of sale or disposition; or,

ii.     were sent no Notice of Repossession by COAF.

12

Case ID: 161000560

54.     Plaintiffs propose to define Class II ("Co-Borrower Class") as All Persons:

(a)     who, along with a co-borrower, financed the purchase of a motor vehicle, primarily for personal, family or household use, through COAF or whose consumer loan contract was assigned to COAF; and,

(b)     from whom COAF, as secured party, repossessed the vehicle or ordered it to be repossessed; and,

(c)     who had a Pennsylvania address as of the date of repossession; and,

(d)     who, within the six years prior to the filing of this complaint through the date of class certification, were sent the same, singular Notice of Repossession by COAF or its agent.

55.     Plaintiffs propose to define Class III (hereafter "Post-Sale Notice Class") as All

Persons:

(a)     who financed a motor vehicle primarily for personal, family or household use through COAF or who obtained a consumer loan using a motor vehicle as security interest, or whose consumer loan contract was assigned to COAF; and,

(b)     from whom COAF, as secured party, repossessed the vehicle or ordered it to be repossessed; and

(c)     who had a Pennsylvania address as of the date of repossession; and

(d)     who, within the six years prior to the filing of this complaint, through the date of class certification:

    i.   were sent no Post-Sale Notice; or,

    ii.  were sent a Post-Sale Notice by COAF or its agent which failed to contain all of the following information, in the following order:

        1.  first, the aggregate amount of the obligation secured by the security interest, and, if the amount reflects a rebate of unearned interest or credit service charge, a timely indication of that fact;

        2.  second, the amount of proceeds of the disposition;

        3.  third, the aggregate amount of the obligations after deducting the amount of proceeds;

13

Case ID: 161000560

4. fourth, the amount, in aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral and attorney fees secured by the collateral which are known to the secured party and relate to the current disposition;

5. fifth, the amount, in the aggregate or by type and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in sub-paragraph 1 above; and,

6. lastly, the amount of the surplus or deficiency.

56.     Plaintiffs believe that Notices of Repossession with the same or substantially similar deficiencies were sent to consumers in other states whose vehicles were repossessed by COAF or were not sent any Post-Sale Notice, and if discovery reveals so, Plaintiffs will move to amend this complaint to expand the classes to aggrieved consumers in other states which have the identical or substantially similar UCC law. Discovery is necessary to uncover these facts.

57.     The classes number at least in the hundreds, and are so numerous that joinder of all members is impractical. This matter presently involves form notices sent out to consumers throughout Pennsylvania.

58.     The exact number of Class Members are unknown to the Representative Plaintiffs and their counsel but can be easily determined from the records maintained by COAF.

59.     The size of the classes and any trial would be readily manageable.

60.     There are questions of law and fact common to the class, which predominate. These include but are not limited to the following questions:

(a)     Whether Plaintiffs and the Class obtained motor vehicle financing through COAF and pledged their vehicle as collateral;

(b)     Whether COAF or its agents repossessed the financed vehicle or ordered it to be repossessed;

14

Case ID: 161000560

(c)     Whether COAF's subject Notice of Repossession was commercially reasonable or violated 13 Pa. C.S. 9610;

(d)     Whether COAF engaged in a systemic practice not to send a separate Notice of Repossession each co-borrower of joint account;

(e)     Whether COAF or its agents failed to send a Post-Sale Notice, or sent a Post-Sale Notice that failed to comply with the UCC;

(f)     Whether COAF or its agents made false certifications on PennDOT MV-217A forms;

(g)     The minimum statutory damages and/or actual damages for each Class Member; and,

(h)     Whether the failures to comply with the 13 Pa. C.S. §9614 and/or §9616 was part of a pattern consistent with a practice of non-compliance.

61.     The Representative Plaintiffs' claims are typical of those of the class. All are based on the same factual and legal theories. All class members financed or guaranteed the purchase of vehicles through COAF and pledged their vehicle as collateral or had a consumer vehicle installment sales contract that was assigned to COAF.

62.     COAF declared a default on all loans. All class members were either sent a statutorily non-compliant Notice of Repossession, Post-Sale Notice, or no such notices.

63.     The Notice of Repossession sent to the Representative Plaintiffs is based on the same or substantially similar form that COAF has sent to the class.

64.     The Representative Plaintiffs' claims are typical of those of the Repossession Notice Class, the Post-Sale Notice Class and the Co-Borrower Class. All are entitled to statutory damages.

65.     Plaintiffs will fairly and adequately represent and protect the interests of the classes.

66.     The Plaintiffs are represented by counsel competent and experienced in both consumer protection and class action litigation.

15

Case ID: 161000560

67.     Plaintiffs have no conflict with class members in the maintenance of this action, and their claims are identical to or at least typical of claims of the Class Members.

68.     A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impracticable. This class action represents the fairest and efficient method of adjudicating this controversy.

69.     Plaintiffs and the Class Members have substantive claims that are similar, if not identical, in all material respects and will require proof of the same kind and application of the same law.

70.     Defendants have acted or refused to act on grounds generally applicable to the (putative) classes, thereby making appropriate final relief with respect to the Class.

71.     There are no unusual legal or factual issues which would cause management problems not normally and routinely handled in class actions. Damages may be calculated with mathematical precision. No double recovery for multiple violations of §9610 is sought in regard to 9625 damages. Each co-borrower is entitled to $500 COAF's violation of §9616.

72.     Because most class members either do not know that their rights have been violated or could not economically justify the effort and expense required to litigate their individual claims or have little interest in or ability to prosecute an individual action, due to the complexity of the issues involved in this litigation, a class action is the most practical proceeding in which they can recover.

73.     The questions of law and fact common to the class predominate over any questions affecting only individual members.

16

Case ID: 161000560

74.     The prosecution of several separate actions by the members of the class would create a risk of inconsistent or varying adjudications. A class action will serve the goals of judicial economy and ensure uniformity of decision.

75.     In many instances, Class Members are unaware that claims exist on their behalf.  In other cases, Class Members may have knowledge of their potential claims, but have sustained damages in amounts relatively too modest to justify the expense and effort to hire a lawyer or is required to bring suit separately.

76.     This Court is an appropriate forum since the Defendants do business within this forum.

## VII. <u>CLAIMS</u>

### <u>COUNT 1</u>
### PENNSYLVANIA COMMERCIAL CODE
### <u>(REPOSSESSION NOTICE CLASS and CO-BORROWER CLASS)</u>

77.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

A.      <u>Misconduct as to Repossession Notice Class Members</u>

78.     As a matter of policy and practice, COAF violated 13 Pa. C.S. §9610 by acting in a commercially unreasonable manner in:

(a)  Failing to provide notice to any Member of the Repossession Notice Class of the holder's intent to resell the motor vehicle at the expiration of *15 days* from the date of the Notice of Repossession, as expressly required by 12 Pa. C.S.A. §6254(c)(3) and/or 69 P.S. §623(D), as applicable, instead, stating that the repossessed vehicle would be sold after *only 10 days*; and/or,

(b)  Failing to send any Notice of Repossession to a member of the Repossession Notice Class; and/or,

(c)  Making false certifications on PennDOT MV-217A forms when retitling the subject repossessed vehicles as described above.

17

Case ID: 161000560

### B.    Misconduct as to Co-Borrower Class Members

79.    As a matter of policy and practice, COAF further violated 13 Pa. C.S. §9610 by acting in a commercially unreasonable manner in:

> (a)  Failing to send a separate Notice of Repossession to each Member of the Co-Borrower Class in violation of  §9611(b) and/or (c); and/or,

> (b)  Failing to send a separate Notice of Repossession to each Member of the Co-Borrower Class in violation of  12 Pa. C.S.A. §6254 or 69 P.S. §623(D), as applicable.

80.    COAF's failures to comply with the Motor Vehicle Sales Finance Act as set forth above are commercially unreasonable acts and, therefore, violate the UCC. 13 Pa.C.S.A. §9610.

### COUNT 2
### PA.U.C.C. AND MVSFA, READ IN *PARI MATERIA*
### (REPOSSESSION NOTICE CLASS AND CO-BORROWER CLASS)

81.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

### A.    Misconduct as to Repossession Notice Class Members

82.    As a matter of policy and practice, COAF violated 12 Pa. C.S.A.  §6254 by:

> (a)  Failing to provide notice to any Member of the Repossession Notice Class of the holder's intent to resell the motor vehicle at the expiration of *15 days* from the date of the Notice of Repossession, as expressly required by 12 Pa.C.S.A. §6254(c)(3) and/or 69 P.S. §623(D), as applicable, instead, stating that the repossessed vehicle would be sold after *only 10 days*; or,

> (b)  Failing to Notice of Repossession; or,

> (c)  Failing to send a separate Notice of Repossession to each Co-Borrower Class Member;

83.    As a consequence of one or more violation of Section 6254 of the MVSFA, COAF is liable for statutory damages to Members of the Repossession Notice Class and/or Members of the Co-Borrower Class pursuant to 13 Pa.C.S.A. §9625(c)(2). *Indus. Valley Bank & Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 (1985).

18

Case ID: 161000560

**B.**     **Misconduct as to Co-Borrower Class Members**

84.     As a matter of policy and practice, COAF also violated 12 Pa. C.S. §6254 by failing to send a separate Notice of Repossession to each Member of the Co-Borrower Class.

85.     As a consequence of COAF's violation of Section 6254 of the MVSFA, COAF is liable for statutory damages to Members of the Co-Borrowers Class, pursuant to 13 Pa.C.S.A. §9625(c)(2). *Id.*

## COUNT 3
## PENNSYLVANIA COMMERCIAL CODE
## (POST-SALE NOTICE CLASS)

86.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

87.     COAF violated the UCC by failing to provide a proper Post-Sale Notice as set forth above.

88.     COAF failed to send a Post-Sale Notice to Plaintiffs and Class Members.

89.     Alternatively, COAF's Post-Sale Notice did not contain the requisite information and/or did not state such in the proper order in violation of 13 Pa. C.S. §9616.

90.     COAF's Post-Sale Notice conduct as described above is part of a pattern or consistent with a practice of noncompliance.

WHEREFORE, Plaintiffs, individually and on behalf of the Class, request that this Honorable Court:

A.     Certify the requested classes;

B.     Award the greater of actual damages or the minimum statutory damages to Plaintiffs and to the class as provided by 13 Pa. C.S.A. §9625(b) and (c) (2);

C.     Award $500 to Plaintiffs and each Post-Sale Notice Class Member pursuant to 13 Pa.C.S.A. §9625(e)(5);

D.     Declare that the Notice of Repossession and Post-Sale Notice used by Defendant in respect to Plaintiffs and the classes fail to comport with the provisions of the UCC, individually, and UCC and MVSFA in *pari materia;*

19

E.   Declare that the disputed deficiency balances of Plaintiffs and class members are invalid and not owed as a matter of law in accordance with *Savoy, supra.*;

F.   Enjoin the collection of any invalid and disputed deficiency balances of, and vacate all judgments against, Plaintiffs and class members as permitted by 13 Pa. C.S. §9625(a) and/or *Savoy, supra.*;

G.   Temporarily and/or permanently enjoin the use of statutorily deficient notices, and the use of inaccurate submission(s) of the invalid and disputed deficiencies on Plaintiffs' and Class Members' credit reports, and remove the credit tradeline on the credit reports of Plaintiffs and Class Members related to the subject loans and invalid deficiency balances as permitted by 13 Pa. C.S. §9625(a);

H.   Vacate all judgments against class members relating to the invalid deficiency balances as permitted by 13 Pa. C.S. §9625(a);

I.   Award pre-judgment interest to the extent permitted by law; and,

J.   Grant such other and further relief as may be deemed just and proper.


Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.


Richard Shenkan
*Attorney for Plaintiffs*

20

Case ID: 161000560

**CapitalOne®**
Auto Finance

Capital One Auto Finance
7933 Preston Road
Plano, TX 75024
1-800-735-8719

JAMES M LANGER
RANDY T LANGER
606 SUMMITT ST
MCKEESPORT PA 15132

This communication is from a debt collector and is an attempt to collect a debt; any information obtained will be used for that purpose.

If you are entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the subject matter of this letter, the following applies to you:
**THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT, ASSESS, OR RECOVER A CLAIM IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY.**

If you are an Obligor on the Account you will be liable for any remaining deficiency provided by your contract unless you receive a discharge on the Account as provided under the United States Bankruptcy Code.

We are required by state law to inform you of these rights.

Capital One Auto Finance is a division of Capital One, National Association, and services the following Capital One affiliated company: Onyx Acceptance Corporation.

NOI_PA_739

Page 1 of 4

**EXHIBIT**
**A**

Case ID: 161000560



Capital One Auto Finance
7933 Preston Road
Plano, TX 75024
1-800-735-8719

CERTIFIED MAIL                                                                04/17/15

JAMES M LANGER
RANDY T LANGER
606 SUMMITT ST
MCKEESPORT PA 15132

| NOTICE OF REPOSSESSION AND NOTICE OF OUR PLAN TO SELL PROPERTY |
| --- |

RE:
    07 TOYOTA SCION
    VIN#  JTKDE177870196199

Dear JAMES M LANGER,

We have your 07, TOYOTA, SCION, VIN# JTKDE177870196199 because you broke promises in our agreement. We will sell the Vehicle at a private sale sometime after 04/27/15. A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You may be able to get your property back at any time before we sell it by paying either the reinstatement or redemption amount. To learn the exact amount you must pay, call us at 1-800-735-8719 or see the attached Reinstatement and Redemption Notice.

If you want us to explain to you in writing how we figured the amount that you owe us, you may call us at 1-800-735-8719 or write us at ATTN: COAF Vehicle Remarketing, Capital One Auto Finance, 7933 Preston Road, Plano, TX 75024, and request a written explanation.

If you need more information about the sale, call us at 1-800-735-8719, Monday through Friday, from 8:00 a.m. to 9:00 p.m. Eastern Time, or write us at ATTN: COAF Vehicle Remarketing, Capital One Auto Finance, 7933 Preston Road, Plano, TX 75024.

We are sending this notice to any co-borrower or obligor who have an interest in the Vehicle or who owe money under your agreement.
        RANDY T LANGER

Case ID: 161000560



Capital One Auto Finance
7933 Preston Road
Plano, TX 75024
1-800-735-8719

You may make arrangements to pick up any personal property left in the Vehicle by contacting the following company
      ARS - WPA
      4926 Pleasant Unity Rd
      LATROBE, PA  15650
      (724) 423-8833

We will hold the personal property for 30 days from the date of this notice and you may reclaim the property during that time. If you do not reclaim your personal property during that time, we may dispose of it in the same manner as we dispose the Vehicle.

See the enclosed Reinstatement and Redemption Notice for an itemization of the amount required to redeem and further exclamation of your additional rights.

Sincerely,

Subbu Rajasimhan
Capital One Auto Finance

NOI_PA_739

Page 3 of 4

Case ID: 161000560

**Capital One**
Auto Finance

## NOTICE OF INTENT TO DISPOSE OF MOTOR VEHICLE

As described above, we intend to dispose of your Vehicle at a private sale sometime after 04/27/15, subject to your rights described below.

### REINSTATEMENT AND REDEMPTION

You can get your Vehicle back by paying us the Total Amount Due to Reinstate (below) at the address shown at the top of this notice anytime before we sell it. Payment must be made via certified funds (Money Gram or Western Union).

Past Due Payment : $1,407.08

Unpaid Delinquency Charges : $0.00

Repossession Cost : $390.00

Total Amount to Reinstate Contract : $1,797.08

You will also have to pay any payments that become due between the date of this notice and the date that you reinstate the contract or redeem.

The vehicle will be available for your inspection during normal business hours at:
ARS – WPA
4926 Pleasant Unity
LATROBE PA 15650
(724) 423-8833

You may call us at 1-800-739-8799 to obtain information concerning the amount due to redeem the vehicle and from whom the vehicle may be redeemed.

If you wish to redeem your Vehicle, you must pay the Total Amount to Redeem as shown below:

Contract Balance : $9,528.76

Unpaid Delinquency Charge : $0.00

Repossession Cost : $390.00

Total Amount Due to Redeem Vehicle : $9,918.76

Make your redemption payment to or send any notice to us at:

ATTN: COAF Vehicle Remarketing
Capital One Auto Finance
7933 Preston Road
Plano, TX 75024

NOI_PA_739

Page 4 of 4

Case ID: 161000560

MV-217A (10-09)



**pennsylvania**
DEPARTMENT OF TRANSPORTATION

Bureau of Motor Vehicles
P.O. Box 68672
Harrisburg, PA 17106-8672

**APPLICATION FOR
CERTIFICATE OF TITLE BY
A FINANCIAL INSTITUTION
OR DEALER AFTER
DEFAULT BY OWNER**

Title Must Be Attached



■ 15133  0025  000670/11 ■

For Department Use Only

**NOTE:** This application may only be used by Financial Institutions and Vehicle Dealers who are licensed by the Department of Banking.
Your ABA/FIN or DIN number (if applicable) must be listed below.

**A | VEHICLE AND OWNER INFORMATION**

Title Number: 64BT77402

Name of vehicle owner as shown on attached title: RANDY T LANGER

**B | VEHICLE IDENTIFICATION NUMBER VERIFICATION - (NON PA TITLE ONLY)**

**NOTE:** IF AN OUT-OF-STATE TITLE IS ATTACHED TO THIS APPLICATION, A TRACING OF THE VEHICLE'S IDENTIFICATION NUMBER MUST BE AFFIXED IN THE SPACE PROVIDED. IF A TRACING CANNOT BE OBTAINED, THE VEHICLE'S IDENTIFICATION NUMBER MUST BE VERIFIED BY A CERTIFIED INSPECTION MECHANIC OR AUTHORIZED NOTARY PUBLIC IN THE APPROPRIATE SPACES BELOW.

TAPE VIN TRACING HERE

DEALER/MECHANIC #

Authorized notary public or certified inspection mechanic (print name)

I CERTIFY THAT A LEGIBLE TRACING CANNOT BE SECURED AND THAT THE ABOVE VIN IS CORRECT

Authorized notary public or certified inspection mechanic sign here

**H. TAX, TITLE AND REGISTRATION FEES**

(if applicable). Use back of Forms MV-1 or MV-4ST to determine proper sales tax exemption information.

NOTE: Only the purchaser listed in Section E must complete the following appropriate blocks.

| | |
|---|---|
| PURCHASE PRICE (See note on reverse) | |
| TAXABLE AMOUNT | |
| 1. 6% (.06) SALES TAX x7% (.07) Allegheny Co. residents x8% (.08) City of Philadelphia residents. | |
| 1A. EXEMPTION REASON CODE (Must be a number from 1 to 26 or 0) | |
| 1B. EXEMPTION NUMBER | |
| 2. Title Fee | 22.50 |
| 3. Lien Fee | |
| 4. Registration or Processing Fee | |
| Fee Exempt Number as assigned by the Department | |
| 5. Duplicate Registration Fee No. of Cards _____ | |
| 6. Transfer Fee | |
| 7. Increase Fee | |
| 8. Replacement Fee | |
| TOTAL PAID (Add 1 thru 8) Send One Check in This Amount | |

**C | REPOSSESSOR'S INFORMATION**

Repossessing Lienholder's Name (as listed on face of title): Capital One Auto Finance

ABA/FIN or DIN (if applicable) - must be listed

Street Address: 7933 Preston Road

City: Plano   State: TX   Zip Code: 75024

**D | REPOSSESSOR'S INFORMATION**

Repossessing Lienholder's Name (as listed on face of title): _____ ABA/FIN or DIN (if applicable) - must be listed
Check the appropriate box below indicating which option you are proceeding under.

☒ 1. Repossession (Repossessor Must Take Title)   ☐ 3. Mobile Home

☐ 2. Non-Judicial sale of repossession and retention (M.V.S.F.A.)

**E | PURCHASER INFORMATION (Exactly as shown in Section A on reverse side of title)**

I/We certify, to the best of my/our knowledge, that the odometer reading is 74569 miles and reflects the actual mileage of the vehicle, unless one of the following boxes is checked:
☐ Reflects the amount of mileage in excess of its mechanical limits
☐ Is NOT the actual mileage (Warning: Odometer discrepancy)

WARNING: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

Last Name for Sole business named: Capital One Auto Finance   First Name   Middle Name   PA DL/Photo ID# or Bus. ID #   Date of Birth

Co-Purchaser: Capital One Auto Finance   First Name   Middle Name   PA DL/Photo ID# or Bus. ID #   Date of Birth

Street Address: 1933 Preston Rd   City:

City: Collin   State: TX   Zip Code: 75024   Date Acquired/Purchased

Dealer ID Number (if applicable)   Financial Institution Number (if applicable)

NOTE: If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (On death of one owner, title goes to surviving owner.) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (On death of one owner, interest of deceased owner goes to his/her heirs or estate.).

**F | SIGNATURES**

I/We acknowledge that I/we may be subject to a fee not exceeding $3,000.00 and imprisonment of not more than two years for any false statement that I/we make on this application, and I/we certify that I/we examined and signed this application after its completion and, that if an exemption from payment of sales tax is claimed, I am/we are authorized to claim this exemption, I/We further certify that all statements herein are true and correct and make application for certificate of title unless described in Block A.

REPOSSESSOR'S SIGNATURE: Signature of Repossessor or Authorized Signer   Capital One Auto Finance   Title Clerk   Date 5-11-15

PURCHASER SIGNATURE: Signature of Purchaser or Authorized Signer   Capital One Auto Finance   Title of Co-Purchaser or Title of Authorized Signer   Date

**G | Repossessor's Certification Information**

I certify that the owner/lienholder named in this document has repossessed the above described motor vehicle or mobile home upon default according to the terms of the security agreement and has complied with all applicable laws and regulations of Pennsylvania.

REPOSSESSOR'S SIGNATURE: Signature of Repossessor or Authorized Signer   Capital One Auto Finance   05/11/2015

Printed Name of Repossessor or Authorized Signer: Capital One Auto Finance   Title of Authorized Signer: Title Clerk



EXHIBIT B

Case ID: 161000560

MV-217A (1-15)



# pennsylvania
DEPARTMENT OF TRANSPORTATION
www.dmv.state.pa.us

**APPLICATION FOR CERTIFICATE OF TITLE BY A FINANCIAL INSTITUTION OR DEALER AFTER DEFAULT BY OWNER**
(Title Must Be Attached)

For Department Use Only

**NOTE:** This application may only be used by Financial Institutions and Vehicle Dealers who are licensed by the Department of Banking. Your ABA/FIN or DIN number (if applicable) must be listed below.

| A | VEHICLE AND OWNER INFORMATION |
|---|---|

| Title Number | Name of Vehicle Owner as Shown on Attached Title |
|---|---|
| | |

| B | VEHICLE IDENTIFICATION NUMBER VERIFICATION (NON-PA TITLE ONLY) | H. TAX, TITLE AND REGISTRATION FEES |
|---|---|---|

**NOTE:** If an out-of-state title is attached to this application, a tracing of the vehicle's identification number must be affixed in the space provided. If a tracing cannot be obtained, the vehicle's identification number must be verified by a certified inspection mechanic or authorized notary public in the appropriate spaces below.

**If applicable, use back of Forms MV-1 or MV-4ST to determine proper sales tax exemption information.**

**NOTE: Only the purchaser listed in Section E must complete the following appropriate blocks.**

| TAPE VIN TRACING HERE | | PURCHASE PRICE (See Note on Reverse.) | |
|---|---|---|---|
| DIN/Mechanic # | Authorized Notary Public or Certified Inspection Mechanic (Print Name) | TAXABLE AMOUNT | |
| I certify that a legible tracing cannot be secured and that the above VIN is correct. | Authorized Notary Public or Certified Inspection Mechanic sign here. | 1. x6% (.06) SALES TAX x7% (.07) Allegheny Co. residents x8% (.08) City of Philadelphia residents. | |

| C | REPOSSESSOR'S INFORMATION | |
|---|---|---|
| Repossessing Lienholder's Name (as listed on face of title) | ABA/FIN or DIN (if applicable) must be listed. | 1A. EXEMPTION REASON CODE (Must be a number from 1 to 26 or 0) |
| Street Address | | 1B. EXEMPTION NUMBER |
| City | State | Zip Code | 2. Title Fee |

| D | REPOSSESSOR'S INFORMATION |
|---|---|
| Repossessing Lienholder's Name (as listed on face of title) and ABA/FIN or DIN (if applicable) must be listed. Check the appropriate box below indicating which option you are proceeding under: ☐ 1. Renunciation (Repossessor Must Take Title)  ☐ 3. Mobile Home  ☐ 2. Non-Judicial Sale or Repossession and Retention (M.V.S.F.A.) |

3. Lien Fee

4. Registration or Processing Fee

Fee Exempt Number as assigned by the Department

| E | PURCHASER INFORMATION (Exactly as shown in Section A on reverse side of title) |
|---|---|

I/We certify, to the best of my/our knowledge, that the odometer reading is __ __ __, __ __ __ miles and reflects the actual mileage of the vehicle, unless one of the following boxes is checked:
☐ Reflects the amount of mileage in excess of its mechanical limits
☐ Is NOT the actual mileage (**WARNING:** Odometer discrepancy)
**WARNING:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

5. County Fee (See Note on Reverse.)

| Last Name (or full business name) | First Name | Middle Name | PA DL/Photo ID# or Bus. ID# | Date of Birth |
|---|---|---|---|---|

6. Duplicate Registration Fee No. of Cards _____

| Co-Purchaser | First Name | Middle Name | PA DL/Photo ID# or Bus. ID# | Date of Birth |
|---|---|---|---|---|

7. Transfer Fee

| Street Address | City |
|---|---|

8. Increase Fee

| County | State | Zip Code | Date Acquired/Purchased |
|---|---|---|---|

9. Replacement Fee

| Dealer Identification Number (if applicable) | Financial Institution Number (if applicable) |
|---|---|

**10. TOTAL PAID**
(Add 1 - 9)
Send One Check in This Amount ⟶

**NOTE:** If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (On death of one owner, title goes to surviving owner.) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (On death of one owner, interest of deceased owner goes to his/her heirs or estate.).

| F | SIGNATURES |
|---|---|

I/We acknowledge that I/we may be subject to a fine not exceeding $5,000 and imprisonment of not more than two years for any false statement that I/we make on this application, and I/we certify that I/we have examined and signed this application after its completion; and, that if an exemption from payment of sales tax is claimed, I am/we are authorized to certify that all statements herein are true and correct and make application for certificate of title for the vehicle described in Block A.

| Signature of Repossessor or Authorized Signer | Title of Authorized Signer |
|---|---|
| Signature of Purchaser or Authorized Signer | Signature of Co-Purchaser or Title of Authorized Signer |

**EXHIBIT**

**C**

| G | Repossessor's Certification Information |
|---|---|

I certify that the owner/lienholder named in this document has repossessed the above described motor vehicle or mobile home upon default according to the terms of the security agreement and has complied with all applicable laws and regulations of Pennsylvania.

| Signature of Repossessor or Authorized Signer | Date |
|---|---|
| Printed Name of Repossessor or Authorized Signer | Title of Authorized Signer |

Case ID: 161000550

## **VERIFICATION**

I verify that the averments of fact made in the foregoing pleading is true and correct and based upon my personal knowledge, information and belief. I understand that averments of fact are made subject to the penalties of 18 PA C.S. Section 4904 relating to unsworn falsification to authorities.

James Langer

**<u>VERIFICATION</u>**

I verify that the averments of fact made in the foregoing pleading is true and correct and based upon my personal knowledge, information and belief. I understand that averments of fact are made subject to the penalties of 18 PA C.S. Section 4904 relating to unsworn falsification to authorities.

_____
Randy Langer

PHILADELPHIA COURT OF COMMON PLEAS
# PETITION/MOTION COVER SHEET

| CONTROL NUMBER: |
|---|
| 16102729 |
| *(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)* |

| FOR COURT USE ONLY | |
|---|---|
| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE: |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response. Status may be obtained online at http://courts.phila.gov*

October Term, 2016
*Month*        *Year*
No. _____ 00560

LANGER ETAL VS CAPITAL ONE AUTO FINANCE, A DIVISIO

Name of Filing Party:
JAMES LANGER-PLF
RANDY LANGER-PLF

**INDICATE NATURE OF DOCUMENT FILED:**

☐ Petition *(Attach Rule to Show Cause)*    ☒ Motion
☐ Answer to Petition    ☐ Response to Motion

Has another petition/motion been decided in this case?  ☐ Yes  ☒ No
Is another petition/motion pending?  ☐ Yes  ☒ No
*If the answer to either question is yes, you must identify the judge(s):*

| TYPE OF PETITION/MOTION *(see list on reverse side)* | PETITION/MOTION CODE *(see list on reverse side)* |
|---|---|
| MOTION FOR CLASS CERTIFICATION | MTCLC |

ANSWER / RESPONSE FILED TO (Please insert the title of the corresponding petition/motion to which you are responding):

**I.  CASE PROGRAM**

OTHER PROGRAM

Court Type: CLASS ACTION
Case Type: CLASS ACTION

**II.  PARTIES** *(required for proof of service)*
(Name, address and **telephone number** of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

RICHARD SHENKAN
6550 LAKESHORE ST . , WEST BLOOMFIELD
MI 48323
CAPITAL ONE AUTO FINANCE, A DIVISION OF
7933 PRESTON ROAD , PLANO TX 75024

**III.  OTHER**

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

October 21, 2016        RICHARD SHENKAN

*(Attorney Signature/Unrepresented Party)*        *(Date)*        *(Print Name)*        *(Attorney I.D. No.)*

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date.**
**No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

30-1061B E-File# 1610048352
24-OCT-16 09:47:53

**FILED**
21 OCT 2016 04:15 pm
Civil Administration
E. MASCUILLI

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| RANDY LANGER and JAMES LANGER, | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | No. 161000560 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAPITAL ONE AUTO FINANCE, a division of | ) | |
| CAPITAL ONE, N.A., | ) | |
| | ) | |
| Defendants | ) | |

### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OR, IN THE ALTERNATIVE, A STAY OF BRIEFING ON CLASS CERTIFICATION [1]

AND NOW COMES Plaintiffs, by and through their undersigned counsel, who respectfully request, if this matter is removed to federal court and not remanded, pursuant to FRCP 23(c), that this Court enter an order determining that this action may proceed as a class action against Capital One Auto Finance, a division of Capital One, N.A. ("COAF"), or alternatively enter a stay of briefing on Class Certification. In support thereof, Plaintiffs state as follows:

1. Plaintiffs are filing this Motion for Class Certification and accompanying Brief at this early juncture and serving such concurrently with the Complaint, so that if removed to federal court, the Defendant will be precluded from picking off representative plaintiffs via an Offer of Judgment under FRCP 68.

---

[1] Plaintiffs incorporate their Brief in Support of Plaintiffs' Motion for Class Certification and request leave to amend this motion after discovery is obtained or, in the alternative, for the matter to be stayed, pending discovery, or dismissed without prejudice, as premature). Again, this motion is filed prophylactically to protect the class should the Defendants attempt to removed this case to federal court concurrently with the filing of an Offer of Judgment.

1

2.      Although previously not required, Plaintiffs are filing this motion concurrently with service of the complaint in order to protect the class because, despite the recent ruling by the Supreme Court in *Gomez v. Campbell-Ewald Company*, No. 14-857, 2016 WL 228345 (Jan. 20, 2016) holding that an unaccepted offer of judgment does not moot a class action, a question remains as to "whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* at *8. Defense Counsel are encouraging the making of such tenders. Exhibit 1-3. Consequently, plaintiff submits that the interests of the class are best protected by filing a class motion.

3.      If this case is not removed and remanded, then Plaintiffs will promptly withdraw this motion and the accompanying brief without prejudice, and refile a motion for certification and brief in compliance with this Court's briefing schedule (citing Pennsylvania, rather than federal, statutes and caselaw).

4.      Plaintiffs state that the requirements for certification pursuant to FRCP 23(a) and (b)(1)(a) and 23(b)(3) have been met.

5.      Plaintiffs seek to define the Classes as follows:

6.      For purposes of Counts I and 2, alleging violations of the UCC, and the UCC and MVSFA in *pari materia*, in regards to Defendant's Notice of Repossession (as defined in the Complaint)(attached as Exhibit 4), Plaintiffs seek to represent a class ("Repossession Notice Class") consisting of all persons: (a) who financed a motor vehicle primarily for personal, family or household use through COAF, or whose consumer loan contract was assigned to COAF; and, (b) from whom COAF, as secured party,

2

repossessed the vehicle or ordered it to be repossessed; and, (c) who had a Pennsylvania address as of the date of repossession; and (d) who, within the six years prior to the filing of this complaint, through the date of class certification: (i)   were sent a Notice of Repossession by COAF or its agent which failed to provide a minimum period of 15-days' notice of sale or disposition; or (ii) were sent no Notice of Repossession by COAF.

7.   For purposes of Counts I and 2, alleging violations of the UCC, and the UCC and MVSFA in *pari materia*, in regards to Defendants' Notices of Repossession (as defined in the Complaint), Plaintiffs seek to represent a class ("Co-Borrower Class") consisting of all persons: (a) who, along with a co-borrower, financed the purchase of a motor vehicle, primarily for personal, family or household use, through COAF or whose consumer loan contract was assigned to COAF; and, (b) from whom COAF, as secured party, repossessed the vehicle or ordered it to be repossessed; and, (c) who had a Pennsylvania address as of the date of repossession; and, (d) who, within the six years prior to the filing of this complaint through the date of class certification, were sent the same, singular Notice of Repossession by COAF or its agent.

8.   For purposes of Count 3, alleging violations of the UCC in regards to Defendants' Post-Sale Notices (as defined in the Complaint), Plaintiffs seek to represent a class ("Post-Sale Notice Class") consisting of all persons (a) who financed a motor vehicle primarily for personal, family or household use through COAF or who obtained a consumer loan using a motor vehicle as security interest, or whose consumer loan contract was assigned to COAF; and, (b) from whom COAF, as secured party, repossessed the vehicle or ordered it to be repossessed; and (c) who had a Pennsylvania address as of the date of repossession; and (d) who within the six years prior to the filing

3

of this Complaint, through the date of class certification: (i) were sent no Post-Sale Notice, or (ii) were sent a Post-Sale Notice by COAF or its agent which failed to contain all of the following information, in the following order: (1) First, the aggregate amount of the obligation secured by the security interest, and, if the amount reflects a rebate of unearned interest or credit service charge, a timely indication of that fact; (2) second, the amount of proceeds of the disposition; (3) third, the aggregate amount of the obligations after deducting the amount of proceeds; (4) fourth, the amount, in aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral and attorney fees secured by the collateral which are known to the secured party and relate to the current disposition; (5) fifth, the amount, in the aggregate or by type and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in paragraph 1. above; and (6) The amount of the surplus or deficiency.

9.      The proposed classes set out above are defined by specific, objective, and verifiable criteria.

10.      The proposed main (Repossession Notice) class includes has hundreds, and possibly thousands, of borrowers, which includes all those with loans through the Defendant(s) who had their motor vehicle repossessed in Pennsylvania within the last six years.

11.      The claims asserted are based on standard form notices used by the Defendants throughout Pennsylvania and on statutory (UCC individually and UCC and MVSFA in *pari materia*) requirements that apply uniformly.

4

12.    Class members received virtually identical form notices which contained one or more of the same defects.

13.    Plaintiffs' claims are typical of those of class members.

14.    Plaintiffs are adequate class representatives and have retained experienced and qualified class counsel.

15.    All of the primary issues of law and fact in the action are common to the class, and predominate over any individual issues.

16.    Proceeding as a class action is in the best interest of the class, and is the fairest and most efficient way to litigate these claims. The estimated value of individual putative class members' claims would not justify the expense of separate actions.

WHEREFORE, Plaintiffs respectfully request that the Court certify the classes as proposed, that they be appointed class representatives, and that Shenkan Injury Lawyers, LLC. be appointed counsel for the class. In the alternative, Plaintiffs requests that the class certification be held in abeyance, requesting leave to amend this motion after discovery is obtained or, in the alternative, for the motion to be dismissed, without prejudice, as premature.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.


Richard Shenkan
*Attorney for Plaintiffs*

5

Case ID: 161000560
Control No.: 16102729

**FILED**

21 OCT 2016 04:15 pm

**Civil Administration**

E. MASCUILLI

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| RANDY LANGER and JAMES LANGER, | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | No. 161000560 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAPITAL ONE AUTO FINANCE, a division of | ) | |
| CAPITAL ONE, N.A., | ) | |
| | ) | |
| Defendants | ) | |

## ORDER

AND NOW this _____ day of _____, after consideration of Plaintiff's Motion

for Class Certification or, in the Alternative, A Stay of Briefing on Class Certification, it is

hereby ORDERED that the disposition of the motion is held in abeyance for 90 days after

which time, if the case is not removed, is denied without prejudice.

BY THE COURT:

_____

Case ID: 161000560
Control No.: 16102729

FILED
21 OCT 2016 04:15 pm
Civil Administration
E. MASCUILLI

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PENNSYLVANIA

RANDY LANGER and JAMES LANGER,    )    CIVIL ACTION
                                  )
              Plaintiffs,          )    No. 161000560
                                  )
                                  )
         v.                       )
                                  )
                                  )
CAPITAL ONE AUTO FINANCE, a division of  )
CAPITAL ONE, N.A.,                )
                                  )
              Defendants          )

**PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION OR, IN THE
ALTERNATIVE, A STAY OF BRIEFING ON CLASS CERTIFICATION [1]**

AND NOW COMES Plaintiffs, by and through their undersigned counsel, who

respectfully request, if this matter is removed to federal court and not remanded, pursuant

to FRCP 23(c), that this Court enter an order determining that this action may proceed as

a class action against Capital One Auto Finance, a division of Capital One, N.A. ("COAF"),

---

[1] Plaintiffs incorporate their Brief in Support of Plaintiffs' Motion for Class Certification and request leave to amend this motion and brief after discovery is obtained (or, for the matter to be stayed, pending discovery). Again, this motion is filed prophylactically to protect the class should the Defendants attempt to remove this case to federal court and concurrently serve an Offer of Judgment. Although previously not required, Plaintiffs are filing this motion before and simultaneous with service of the complaint in order to protect the class because, despite the recent ruling by the Supreme Court in *Gomez v. Campbell-Ewald Company*, No. 14-857, 2016 WL 228345 (Jan. 20, 2016) holding that an unaccepted offer of judgment does not moot a class action, a question (arguably) remains as to "whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* at *8. While, here, there are defenses to such a tender, defense counsel are encouraging the making of such tenders. See, **Exhibits 1-3**. If this case is not removed nor remanded, then Plaintiffs will promptly withdraw this motion and the accompanying brief without prejudice, and refile a motion for certification and brief in compliance with this Court's briefing schedule (citing Pennsylvania, rather than federal, statutes and case law).

1

Case ID: 161000560
Control No.: 16102729

or alternatively enter a stay of briefing on Class Certification. In support thereof, Plaintiffs submit the following brief in support of their Motion for Class Certification or, in the Alternative, a Stay of Briefing on Class Certification and state as follows:

## I. INTRODUCTION

Under the Uniform Commercial Code ("UCC") individually, as adopted in Pennsylvania, and UCC and Motor Vehicle Sales Finance Act ("MVSFA") in *pari materia*, a secured lender is permitted to exercise its right to self-help repossession of its collateral, but must do so in a commercially reasonable manner and in strict adherence to the exacting requirements of the UCC to provide written notices of such repossessions to debtors.

This consumer protection class action against Defendants Capital One Auto Finance ("COAF") seeks monetary relief to redress, *inter alia*, Defendants' negligent and commercially unreasonable pattern and practice of: (a) failing to send statutorily-compliant notifications to Pennsylvania debtors whose vehicles it repossessed and sold; and (b) otherwise conducting themselves in a commercially unreasonable manner. As Plaintiffs will show, *infra*, this matter is ideally suited to be handled as a class action and all the requirements for class certification are satisfied.

## II. FACTS

### A. Repossession of Plaintiffs' Vehicle

In April of 2015, COAF, as secured creditor, or its agents, repossessed Plaintiffs' vehicle. On or about April 17, 2015, COAF or its agents sent or caused to be sent a computer generated form letter addressed to Plaintiffs Randy Langer and James Langer to attempt to alert them, *inter alia*, that the aforesaid vehicle had been repossessed.

2

Plaintiff Randy Langer was designated as a "co-borrower or obligor." A copy of the document (hereafter "Notice of Repossession") is attached as **Exhibit 4**.

The Notice of Repossession sent to Plaintiff is not commercially reasonable because it violates the MVSFA and the UCC in *pari materia* by failing to provide notice to the buyer of the holder's intent to resell the motor vehicle at the expiration of *15 days* from the date of mailing the notice, as expressly required by 12 Pa.C.S.A. §6254(c)(3) (previously 69 P.S. §623(D)), as applicable.  Instead, COAF stated that the repossessed vehicle would be sold after April 27, 2015, *only 10 days* after the April 17, 2015 date on the Notice of Repossession

COAF also failed to send an Explanation of Deficiency or Surplus (hereinafter "Post-Sale Notice") to Plaintiffs and class members, in violation of the UCC, specifically 13 Pa.C.S. §9616.

In connection with the preparation of the sale of the vehicle, COAF executed a PennDOT MV-217A form (**Exhibits 5a. and 5b.**) certifying that the Bank "complied with all applicable laws and regulations of Pennsylvania." Relating to the repossession of Plaintiffs' vehicle.  However, it had not, as set forth above and in the Complaint. Thus, COAF made a false and commercially unreasonable certification on the PennDOT MV-217A form that it used to retitle Plaintiffs' vehicle following its repossession.

### III. DEFENDANTS VIOLATED THE UCC INDIVIDUALLY AND THE UCC AND MVSFA IN *PARI MATERIA*, AND UNLAWFULLY CONVERTED THE PROPERTY OF PLAINTIFFS AND CLASS MEMBERS.

#### A. UCC and MVSFA

The UCC and MVSFA set forth very specific requirements for the notices that a creditor must provide to its borrower in connection with the repossession and resale of its

Case ID: 161000560
Control No.: 16102729

collateral. There are generally two separate statutory notices which must be sent: a Notice of Repossession (which must comply with both the UCC and MVSFA requirements), which is to be sent immediately following repossession, and a UCC Post-Sale Notice, which is sent after the repossessed vehicle is sold. The UCC and MVSFA create a strict liability framework in which neither the creditor's intent, nor the borrower's reliance or knowledge are at issue. Creditors are held to accountable with strict compliance with these post-repossession notice requirements of these statutes.

### B. The UCC and MVSFA are to be Read in *Pari Materia*

Repossessors of vehicles, such as COAF, are required to comply with both the MVSFA and the UCC, which must be applied in *pari materia*. *Indus. Valley Bank & Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 (1985). "Statutes or parts of statutes are in *pari materia* when they relate to the same persons or things or to the same class of persons or things. 1 Pa. C.S. §1932(a).

The MVSFA and the UCC similarly sets forth notice requirements for secured parties who conduct self-help repossessions (other than by legal process with writ of replevin). These statutes relate to the same persons or things and/or to the same class of persons or things, debtors whose vehicles were repossessed outside the judicial process.

### C. Every Aspect of a Disposition of Collateral must be Commercially Reasonable

13 Pa. C.S.A. §9610 (b) prohibits the sale of the collateral if the sale is not commercially reasonable. The statute states, in relevant part, as follows:

> (b) Commercially reasonable disposition -- **Every** aspect of a disposition of collateral, including the method, manner, time, place and other terms, **must be** commercially reasonable.

4

> [Only] **If** commercially reasonable, a secured party may
> dispose of collateral by **public** or **private** proceedings. ...
> (Emphasis added).

The Official Comments to the UCC are entitled to be given weight under Pennsylvania law when construing the statute.

### D. Notice of Repossession Requirements

13 Pa. C.S.A. §9611 requires COAF to provide to the consumer a "reasonable authenticated notification of disposition," of the collateral containing important mandatory information about the repossession and approaching sale of collateral (i.e. a "Notice of Repossession"). The required contents of such a Notice of Repossession are set forth in the UCC (13 Pa.C.S. §9614), and in the MVSFA (12 Pa.C.S. §6254).[2]

In the course of the repossession and disposition process, COAF violated the UCC and MVSFA in *pari materia*, and did not act in a commercially reasonable manner toward Plaintiffs and the class, because it failed to provide notice to the debtor of COAF's intent to resell the motor vehicle at the expiration of (after) 15 days from the date of mailing the notice, as expressly required by 12 Pa.C.S.A. §6254(c)(3) and/or 69 P.S. §623(D), as applicable. Rather, it informed Plaintiffs that it would sell their vehicle after only 10 days from the date of the mailing of the notice. The 15 days is a statutory <u>minimum</u> time period for the creditor to provide to the borrower. This defect is believed to be systemically included in the Notices of Repossession sent to the putative class members. Indeed, the Notice of Repossession is likely a form, as evidenced by "NOI_ PA_739" reference in the bottom left corner of the document.

---

[2] Formerly 69 P.S. 623(D).  The MVSFA was recodified at 12 Pa.C.S.A. 6201 et seq., taking effect December 1, 2014.  Sections 623(D) and 6254 require the same minimum contents for Notices of Repossession (with one additional requirement in Section 6254).

Case ID: 161000560
Control No.: 16102729

The Notices of Repossession sent to class members with loans that had co-borrowers were in violation of the UCC because this creditor failed to send a separate copy of the notice to each co-borrower as required by 13 Pa.C.S. §9611(b) and (c) and the MVSFA, as in the case of Plaintiffs. Each borrower is entitled to his or her own separate notice. Neither the MVSFA nor the UCC permits a "shared" notice for co-borrowers, regardless whether the co-borrowers happen to share the same mailing address.

It is commercially unreasonable in violation of 13 Pa.C.S. §9610 for COAF not to send a Notice of Repossession to each co-borrower because, *inter alia*, each has a joint ownership in the collateral and, as such, may be jointly responsible for any deficiency after sale of the repossessed vehicle. Each should be made aware of their right of redemption, for example. Sending each borrower with a notice ensures that each is afforded with actual notice of his/her opportunity to redeem the repossessed vehicle, to challenge the repossession or disposition, to remove their personal affects which may have been left in the vehicle, or otherwise protect his/her financial interests.

### E.  False Certification on PennDOT Forms

At all relevant times, as a matter of policy and practice, for all class members who did not redeem their vehicle, COAF and/or its agents caused to be executed PennDOT's MV-217A form certifying that COAF "complied with all applicable laws and regulations of Pennsylvania" relating to the repossession of the vehicle. COAF and/or its agents executed the MV-217A forms for all class members alike in connection with the retitling of the repossessed vehicles. At all relevant times, COAF had not "complied with all applicable laws and regulations of Pennsylvania," as more fully set forth herein.

6

PennDOT would not have approved each of these title transfers if it was aware that COAF did not comply with "all applicable laws and regulations of Pennsylvania" or if the form was not fully completed (i.e, not signed or notarized). Making such a false certification is certainly commercially unreasonable in violation of 13 Pa. C.S.A. §9610.

### F.   Post-Sale Notice Requirements

After the sale of a borrowers' repossessed vehicle, a debtor is typically entitled to a surplus or may be liable for a deficiency. In this connection, the UCC requires that the creditor send an Explanation of the Calculation of Surplus or Deficiency ("Post-Sale Notice") to inform the debtor of how the liability or deficiency was calculated. 13 Pa. C.S.A. §9616(c). COAF violated the UCC and did not act in a commercially reasonable manner toward Plaintiffs and the class because it failed to send them the required Post-Sale Notice. Or, in the alternative, COAF sent Post-Sale Notices that did not contain the content in the order required by Section 9616.

### III. DAMAGES

Plaintiffs and the class are entitled to recover the damages for Capital One's failure to comply with the UCC Notice of Repossession requirements of 13 Pa. C.S. §9610 or §9614. See, 13 Pa.C.S.A. §9625(b), (c)(1), and (c)(2). Section 9625(c)(2) allows consumer debtors such as Plaintiffs and Class Members to recover minimum damages of not less than the credit service charge plus 10% of the principal amount of the obligation or the time-price differential plus 10 percent of the cash price. These statutory damages are derived from a simple, uniform arithmetic calculation. The two figures needed to compute these statutory damages appear on the face of each borrower's retail installment sale contract. 13 Pa.C.S.A. §9625(b) and (c)(1) allow consumer debtors such as Plaintiffs and class members to recover actual damages.

Case ID: 161000560
Control No.: 16102729

Official Comment to Section 9625 makes clear that the minimum statutory damages do not require any actual loss, but instead create strict and uniform liability.

> "4. **Minimum Damages in Consumer-Goods Transactions.**
> Subsection (c)(2) provides a minimum, statutory, damage
> recover for a debtor and secondary obligor in a consumer-
> goods transaction. It is patterned on former Section 9-507(1)
> and is designed to ensure that every noncompliance with the
> requirements of Part 6 in a consumer-goods transaction
> results in liability, regardless of any injury that may have
> resulted. Subsection (c)(2) leaves the treatment of statutory
> damages as it was under former Article 9."

13 Pa. C.S.A. §9625(c)(2)(n. 2).

Plaintiffs seek the greater of actual damages or statutory damages for each class member. The actual damages are readily determined by the amount the vehicle re-sold for, after auction, minus any pre-auction repairs or reconditioning made by the Defendants. These figures are maintained by the creditor and are easily obtained via discovery.

If the Capital One's failed to send the Post-Sale Notice (or a compliant notice containing all of the requisite information and in the mandatory order, and that its noncompliance was part of a pattern or consistent with a practice of noncompliance, all of which is alleged in the complaint, the Capital One is also liable for $500 per borrower as statutory damages pursuant to 13 Pa. C.S.A. §9625(e)(5).

The Plaintiffs are also seeking an extinguishment of their alleged deficiency balances related to the repossessed vehicles, and a return of any monies they paid towards any such deficiency balances. When a creditor violates the UCC, independently, and/or violates the UCC and MVSFA in *pari materia* and fails to act in a commercially reasonable manner on all aspects of the sale of a repossessed vehicle], including the sending of sufficient Notices of Repossession and Post-Sale Notices, the value of

8

collateral is presumed by law to equal the indebtedness secured thereby extinguishing the indebtedness, unless the secured party rebuts the presumption. *Savoy v. Beneficial Consumer Discount Co.*, 503 Pa. 74, 78 (1983). The deficiency balances of the Plaintiffs and class members are disputed and Defendant, if it hasn't already, should immediately restrain from the collection or enforcement of the alleged deficiency balances of Plaintiffs and class members, and remove the trade-line of the deficiency balance on each class member's credit report. At a minimum, Capital One should place an "xb" notation on Plaintiffs and each class members' credit reports to show that any purported deficiency amount is, indeed, disputed. An "xb" notation will help class members not suffer the adverse effect on their credit report of a potentially un-owed debt, helping to ensure that the Plaintiffs' and class members' credit scores will not be unfairly affected during the course of this litigation. A creditor's collection can be restrained pursuant to 13 Pa.C.S.A. §9625(a).

## IV. <u>CLASS DEFINITIONS</u>

For purposes of Counts 1 and 2, alleging violations of the UCC, and the UCC and MVSFA in *pari materia*, in regards to Defendants' Notices of Repossession (as defined in the Complaint), Plaintiffs seek to represent a class ("Repossession Notice Class") consisting of all persons: (a) who financed a motor vehicle primarily for personal, family or household use through COAF, or whose consumer loan contract was assigned to COAF; and, (b) from whom COAF, as secured party, repossessed the vehicle or ordered it to be repossessed; and, (c) who had a Pennsylvania address as of the date of repossession; and (d) who, within the six years prior to the filing of this complaint, through the date of class certification: (i) were sent a Notice of Repossession by COAF or its agent

9

which failed to provide a minimum period of 15-days' notice of sale or disposition; or (ii) were sent no Notice of Repossession by COAF.

For purposes of Counts I and 2, alleging violations of the UCC, and the UCC and MVSFA in *pari materia*, in regards to Defendants' Notices of Repossession (as defined in the Complaint), Plaintiffs seek to represent a class ("Co-Borrower Class") consisting of all persons: (a) who, along with a co-borrower, financed the purchase of a motor vehicle, primarily for personal, family or household use, through COAF or whose consumer loan contract was assigned to COAF; and, (b) from whom COAF, as secured party, repossessed the vehicle or ordered it to be repossessed; and, (c) who had a Pennsylvania address as of the date of repossession; and, (d) who, within the six years prior to the filing of this complaint through the date of class certification, were sent the same, singular Notice of Repossession by COAF or its agent.

For purposes of Count 3, alleging violations of the UCC in regards to Defendants' Post-Sale Notices (as defined in the Complaint), Plaintiffs seek to represent a class ("Post-Sale Notice Class") consisting of all persons (a) who financed a motor vehicle primarily for personal, family or household use through COAF or who obtained a consumer loan using a motor vehicle as security interest, or whose consumer loan contract was assigned to COAF; and, (b) from whom COAF, as secured party, repossessed the vehicle or ordered it to be repossessed; and (c) who had a Pennsylvania address as of the date of repossession; and (d) who within the six years prior to the filing of this Complaint, through the date of class certification: (i) were sent no Post-Sale Notice, or (ii) were sent a Post-Sale Notice by COAF or its agent which failed to contain all of the following information, in the following order: (1) first, the aggregate amount of the

obligation secured by the security interest, and, if the amount reflects a rebate of unearned interest or credit service charge, a timely indication of that fact; (2) second, the amount of proceeds of the disposition; (3) third, the aggregate amount of the obligations after deducting the amount of proceeds; (4) fourth, the amount, in aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral and attorney fees secured by the collateral which are known to the secured party and relate to the current disposition; (5) fifth, the amount, in the aggregate or by type and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in paragraph 1. above; and (6) lastly, the amount of the surplus or deficiency.

## V.  THE CLASSES SHOULD BE CERTIFIED

The requirements for certification pursuant to FRCP 23(a), (b)(1)(a) and (b)(3) have been met.

### A.  Burden for Certification

The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence. *Marcus v. BMW of North America, LLC*, citing to *Hydrogen Peroxide,* 552 F.3d 305 (E.D. PA 2008).  District courts have discretion under Rule 23 to certify a class. *Beck v. Maximus, Inc.*, 457 F.3d 291 (2006); citing to *Califano v. Yamasaki*, 442 U.S. 682, 703, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

Case ID: 161000560
Control No.: 16102729

## B. <u>Purpose of Class Actions</u>

Class actions are essential to enforce laws protecting consumers.   The US

Supreme Court has stated:

> While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Kaplan, Prefatory Note 497. As concisely recalled in a recent Seventh Circuit opinion:
>
> > "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace* v. *Van Ru Credit Corp.,* 109 F. 3d 338, 344 (1997).

*Amchem Products, Inc. v. Windsor*, 521 US 591 (1997).

Given their confluence of form documents and uniform or easily determined

statutory damages, cases involving defective repossession notices, like this one, are

routinely certified. *e.g., Cosgrove v. Citizens Auto. Finance, Inc.,* 2011 WL 3740809 (E.D.

Pa. 2011); *Brennan v. Community Bank*, 13-CV-02939 (M.D. Pa. 2016); *Haggerty v.

Citadel Fed. Credit Union*, No. 11003725 (Phila. C.C.P. 2011); *Hartt v. Flagship Credit

Corp.*, 10-CV-0822-NS (E.D. Pa. 2010); *Simonson v. American Heritage Fed. Credit

Union*, No. 11003762 (Phila. C.C.P. 2011); *Spry v. Police & Fire Fed. Credit Union*, No.

110900007 (Phila. C.C.P. 2011); *Zawislak v. Beneficial Savings Bank*, No. 110303622

(Phila. Court Common Pleas 2011); *Cubler v. TruMark Financial Credit Union*, No.

001800 (Phila. C.C.P. 2012). *See also, Walczak v. Onyx Acceptance Corp.,* 850 N.E.2d

357, 366-372 (Ill. App. 2d Dist. 2006)(class of buyers who received defective repossession notice certified); *Middleton v. Sunstar Acceptance Corp.*, 2000 WL 33385388, \*3-\*8 (S.C. Com. Pl. Jan. 13, 2000)(certifying class in action alleging that finance company's repossession form violated the UCC); *Chisolm v. Transouth Financial Corp.*, 194 F.R.D. 538, 557-569 (E.D. Va. 2000)(certifying class against financing company for violations of UCC notice requirements); *Car Now Acceptance Co. v. Block*, 2002 WL 32001272 (Ohio Com. Pl.  Nov. 25, 2002)  (class certified in defective repossession notice case), *affirmed, North Shore Auto Financing, Inc., v. Block,* 2003 WL 21714583, (8th Dist. July 24, 2003), *appeal not allowed,* 800 N.E.2d 47 (Ohio 2003); *Moye v. CAC*, 2001 Conn. Super LEXIS 1342 (May 15, 2001); *Mortera v. Ford Motor Credit*, 2003 Calif. Super LEXIS 4433117 (June 23, 2003). Cases involving the use of form documents are particularly appropriate for class treatment. *Orloff v. Syndicated Office Systems, Inc.*, 2004 WL 870691 at \*3-4 (E.D. Pa. Apr. 22, 2004).

As discussed above, this trial, dealing with the legality of Defendant's form notices as distributed in identical form throughout Pennsylvania, will be a very straightforward one, ideally suited to class treatment. Upon certification, the merits and damages of this action will likely be inclined towards class-wide resolution by summary judgment. These class claims readily meet the requirements for class certification.

## C. <u>Requirements of FRCP 23</u>

Fed. R. Civ. P. 23(a) requires that in order for a class action to be certified, it must be shown that:

    (1)    The class is so numerous that joinder of all members is impracticable;
    (2)    There are questions of law or fact common to the class;
    (3)    The claims or defenses of the representative parties are typical of the claims or defenses of the class; and,

Case ID: 161000560
Control No.: 16102729

(4)     The representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(b)(1)(a) states that a class action may be maintained if Rule 23(a) is satisfied and the court finds that prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

Fed. R. Civ. P. 23(b)(3) states that a class action may be maintained if Rule 23(a) is satisfied and the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(1)     The class members' interests in individually controlling the prosecution or defense of separate actions;
(2)     The extent and nature of any litigation concerning the controversy already begun by or against class members;
(3)     The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and,
(4)     The likely difficulties in managing a class action.

Each of the requisites for class certification is easily met here.

1.     **The Class Is Sufficiently Numerous That Joinder Is Impracticable**

"No magic number exists satisfying 'numerosity' requirement for class certification, nor much plaintiff allege the exact number or identity of class members; instead, it is proper for the court to accept common sense assumptions in order to support a finding of numerosity." *Jackson v. Southeastern Pa. Trans. Authority*, 260 F.R.D. 168, 185 (E.D. Pa. 2009). The numerosity test "is one of practicability of joinder. Impracticability is a 'subjective determination based on number, expediency, and inconvenience of trying

Case ID: 161000560
Control No.: 16102729

individual suits.'" *Id.* at 186. "[G]enerally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3rd Cir. 2001). This is a form notice and Plaintiffs believe that this form was sent to more than 40 putative class members. Indicative that this is a form notice is the "NOI_ PA_739" reference in the bottom left corner of the document.

### 2.   There are Questions of Law and Fact Common to the Class

Commonality does not require that every question of law or fact be common to every member of the class; rather, the commonality requirement "will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class... Because the requirement may be satisfied by a single common issue, it is easily met... Furthermore, class members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3rd Cir. 1994) (emphasis in original). To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention...of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Case ID: 161000560
Control No.: 16102729

Here, the issues are common across the class, including (1) Whether    Plaintiffs and the Class obtained motor vehicle financing through COAF and pledged their vehicle as collateral; (2) Whether COAF or its agents repossessed the financed vehicle or ordered it to be repossessed; (3) Whether COAF's subject Notice of Repossession was commercially reasonable or violated 13 Pa. C.S. 9610; (4) Whether COAF engaged in a systemic practice not to send a separate Notice of Repossession each co-borrower of joint account; (5) Whether COAF or its agents failed to send a Post-Sale Notice, or sent a Post-Sale Notice that failed to comply with the UCC; (6) Whether COAF or its agents made false certifications on PennDOT MV-217A forms; (7) The minimum statutory damages and/or actual damages for each Class Member; and, (8) Whether the failures to comply with the 13 Pa. C.S. §9614 and/or §9616 was part of a pattern consistent with a practice of non-compliance. Further, the claims are drawn from the same course of conduct – Defendants' failure to follow the UCC and act commercially reasonable when repossessing and selling vehicles for defaulted consumer loans.

The form letters Defendant sent to the Plaintiffs and the proposed classes are the same or substantially similar and contained one or more of the same violations of the UCC. *Piper v. Portnoff Law Associates*, 215 F.R.D. 495, 502 (E.D. Pa. 2003) (commonality met where form letters sent to the class were similar to letters sent to named plaintiff); *Orloff v. Syndicated Office Systems, Inc.*, 2004 WL 870691 at *3-4 (E.D. Pa. Apr. 22, 2004)(same).

### 3. The Class Representatives' Claims are Typical of the Class Claims

As with the test for commonality, the test for typicality is not demanding. Its purpose is to "assess whether the action can be efficiently maintained as a class and

16

Case ID: 161000560
Control No.: 16102729

whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees" interests will be fairly represented" and "to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of absentees." *Baby Neal, supra*. at 57.

The requirement is generally satisfied when the challenged unlawful conduct affects both the named plaintiff(s) and the putative class, irrespective of the varying fact patterns underlying the individual claims. *Id.* at 58. *See also, Jerry Enterprises of Gloucester County, Inc. v. Allied Beverage Group, L.L.C.*, 178 F.R.D. 437, 442 (D.N.J. 1998) ("Certainly, as in this case, when the claims arise from the same vent or practice or course of conduct that gives rise to the claims of the class members… and if it is based on the same legal theory… the typicality requirement is easily satisfied.")(internal citations omitted).

Here, all of the core claims arise from Defendants' (1) statutorily deficient Notices of Repossession and Post-Sale Notices, and (2) false certifications on MV-217A forms. The statutory requirements are uniform across the class. Each class member, and each Plaintiff, is in the same situation. The Complaint states no claims that are particular to Plaintiff such that they would be atypical or antagonistic to any other class member.

The statutory damage formula for the insufficient UCC notices is also the same for all class members and Plaintiff. The formula for statutory damages is a question of simple math and actual damages can also be readily determined via discovery of class members' loan files.

Case ID: 161000560
Control No.: 16102729

Variations in damages do not impair typicality or certification.   Two courts in this

Circuit have recently confirmed this:

> Circuit courts have largely rejected the interpretation urged here by Defendants—that variations in damages calculations between and among class members defeat predominance. *See Neale v. Volvo Cars of N. Am., LLC*, 2015 WL 4466919, at \*17 (3d Cir. July 22, 2015) ("it is a misreading of Comcast to interpret it as preclud[ing] certification under Rule 23(b)(3) in any case where the class members' damages are not susceptible to a formula for classwide measurement") (citation and quotation marks omitted); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive a stake through the heart of the class action device, in cases in which damages were sought . . . to require that every member of the class have identical damages"); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 18-19 (1st Cir. 2015) (limiting its interpretation of Comcast to the principle that the plaintiff's theory of impact must match his damages model); *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014) (same); *In re Whirlpool Corp. Front Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013) (same); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (same). Indeed, "[i]f the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." Butler, 727 F.3d at 801. Accordingly, Comcast [*Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013)*] has largely been limited to its unique set of facts, and interpreted as precluding class treatment where the class-wide measure of damages does not match the theory of antitrust impact.
>
> In light of this precedent, I disagree with Defendants' interpretation of Comcast, and find that variations in damages among individual class members should not defeat predominance, particularly where Plaintiffs have provided a reliable aggregate damages model. *King Drug Company of Florence, Inc. v. Cephalon, Inc.* 2:06-CV-1797 (July 27, 2015 E.D. Pa.) See also *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2:06-CV-1833 (June 10, 2015 (E.D. Pa.).

With both typicality and commonality, the critical inquiry is whether the class

Case ID: 161000560

Control No.: 16102729

representative's claims have the same essential characteristics as those of the putative class. The question of the sufficiency of Defendants' form notices will not vary among Class Members. The notices either satisfy the UCC, individually, and/or MVSFA and UCC in *pari materia* or they do not. Whether their certification on each MV-217A form will not vary, as they either acted in conformity with the law as to Plaintiffs and class members or they did not.  Here, the class representatives' respective situations exactly mirror those of other members of the proposed class and subclasses, and thus, the requirement of typicality is satisfied.

### 4. Named Plaintiffs are Adequate Class Representatives

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class."  Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the class, and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3rd Cir. 1995). This element is generally characterized as an inquiry into whether the attorneys together with the named plaintiff will act diligently on behalf of the class and whether any potential conflicts of interest exist or are likely to arise between the named plaintiffs and class members. *Amchem,* 117 S. Ct. at 2251, & n.20. Plaintiffs meet these requirements and will fairly and adequately represent the class.

Plaintiffs' counsel regularly engages in consumer class litigation and other complex litigation similar to the present action, and have dedicated substantial resources thereto. Further, each of the Plaintiffs occupies virtually the same position as each class members.  There is nothing to suggest that Plaintiffs may have any interest antagonistic

Case ID: 161000560
Control No.: 16102729

to the vigorous pursuit of the class claims against Defendants. Finally, the named Plaintiffs have adequate financial resources as Class counsel is advancing their time and litigation costs.

### 5. Predominance, Superiority, Fairness, Efficiency, & Manageability

A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 117 S. Ct. at 2246. One reason that a class action is the superior method of proceeding in a case of this type is that it allows the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "requires that common issues predominate over issues affecting only individual class members. *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 258 (3rd Cir. 2009). Specifically, F.R.C.P. 23(b) requires that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Case ID: 161000560
Control No.: 16102729

Here, the central and predominant question of this lawsuit is whether Defendant failed to provide the adequate, commercially reasonable notice the law requires; this common question predominates over questions affecting only individual members.

Proceeding as a class in this matter is the most fair and efficient way to litigate these claims. Most members of the putative class are probably unaware that Defendant has violated their legal rights, and therefore, would not seek relief on an individual basis. Members of the class may be unable to locate or hire lawyers experienced in this area of the law. Further, the cost of proceeding on an individual basis would not be practical or economical given the potential size of individual awards. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure* (2d ed. 1986), at 518, § 177 (a class action enables those who have small claims that might not be worth litigating individually to combine their resources and vindicate their rights collectively). The "fact that the plaintiffs may be unwilling to or unable individually to pursue the possibly small amount of damages to which they may be entitled, weighs in favor of a class action to vindicate their rights." *Cliett v. City of Phila.*, 1985 WL 3181 (E.D. Pa. 1985). Overall, members of the putative classes will benefit by proceeding on a class basis.

In addition, this forum is particularly appropriate for addressing the claims of Plaintiff and the putative class, as potentially thousands of individual actions for relief sought here could naturally result in inconsistent interpretations of the UCC's notice requirements and statutory damage provisions, subjecting the individuals to unequal treatment and providing no guidance to businesses who violate the UCC, independently, and/or the MVSFA and UCC in *pari materia*, like Defendant. Here, a class action ensures

Case ID: 161000560
Control No.: 16102729

one decision on the applicable law. Individual actions would create inconsistent or varying adjudications.

This case presents no difficulties that would affect the management of this matter on a class action basis. The claims raised are simple and are based entirely on the operative documents, which are standardized across the class. Defendant's business records contain the identities of class members and much (if not all) of the information necessary to calculate their damages.

## VII.   CONCLUSION

In short, this is a model case for the application of the class action mechanism. It should be permitted to proceed in the only reasonable, feasible form in which it can proceed: as a class action. This is, quite simply, the sort of controversy for which the mechanism of class adjudication was designed.   Accordingly, Plaintiffs respectfully requests that this Court enter an order determining that this action proceed as a class action or, in the alternative, stay class certification until the matter can proceed with discovery or dismiss this motion as prematurely filed, without prejudice.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.


Richard Shenkan
Shenkan Injury Lawyers, LLC.
Attorney Id. No. 79800
6550 Lakeshore St.
West Bloomfield, MI  48323
T: (248) 562-1320
F:(888) 769-1774

22

# LEXOLOGY®

## Supreme Court holds that an unaccepted offer of judgment doesn't moot a class action
[Blog] Class Defense Blog

**USA** | January 20 2016

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." As the Supreme Court recently explained in *Genesis HealthCare Corp. v. Symczyk*, a lawsuit does not present an Article III case or controversy and "must be dismissed as moot" when "an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during the litigation." Today, in *Campbell-Ewald Co. v. Gomez* (pdf), the Supreme Court held that a defendant's unaccepted offer to satisfy the claims of a named plaintiff in a putative class-action lawsuit is not sufficient to render the suit moot.

The decision—closely watched by plaintiffs who bring class action lawsuits and defendants who face them—holds that simply making an offer of full relief to a named plaintiff in accordance with the process outlined in Federal Rule of Civil Procedure 68 is not enough to moot the plaintiff's individual claim. At the same time, the Supreme Court did not address whether a defendant that actually tenders a payment for full individual relief can moot a named plaintiff's claim.

Today's decision originated in a putative class action filed by respondent Jose Gomez against petitioner Campbell-Ewald Co. for alleged violations of the Telephone Consumer Protection Act. Gomez's complaint alleged that Campbell-Ewald violated the TCPA when it sent him an unsolicited text message as part of a recruiting campaign for the U.S. Navy. Gomez's complaint sought relief in the form of treble statutory damages, costs, attorney's fees, and an injunction.

Before Gomez moved to certify the class, Campbell-Ewald made a settlement proposal and also filed an offer of judgment under Federal Rule of Civil Procedure 68, which permits a defendant to make a pre-trial offer to allow judgment. Campbell-Ewald offered to pay Gomez $1,503 for each unsolicited text message he received—which would more than satisfy his claim for treble statutory damages—as well as costs. Campbell-Ewald also proposed an injunction that would bar it from sending the allegedly offending text messages. Campbell-Ewald's offer was made without an admission of liability; to the contrary, like most defendants, the company disclaimed liability. Gomez did not accept Campbell-Ewald's offer, instead allowing it to expire.

Campbell-Ewald then moved to dismiss Gomez's complaint for lack of subject-matter jurisdiction, arguing that its offer of judgment mooted Gomez's individual claim by providing him complete relief. Campbell-Ewald also argued that the putative class claims were moot because Gomez had not yet moved for class certification by the time his claim became moot.

The district court denied this motion, but later granted summary judgment for Campbell-Ewald on the ground that Campbell-Ewald, as a naval contractor, enjoyed sovereign immunity. Gomez appealed, and the Ninth Circuit held that both Gomez's claim and the putative class claims remained live. The court of appeals also vacated the district court's sovereign immunity ruling.

The Supreme Court affirmed in an opinion authored by Justice Ginsburg and joined by Justices Kennedy, Breyer, Sotomayor, and Kagan. The Court addressed mootness first. According to the Court, "basic principles of contract law" established that "Campbell-Ewald's settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy." In the face of Gomez's rejection of the offer and Campbell-Ewald's continued denial of liability, Gomez had no entitlement to the relief Campbell-Ewald had offered. According to the Court, "We hold today, in accord with Rule 68 of the Federal Rules of Civil

EXHIBIT

Case ID: 16 0000660

Control No.: 1 102729

Procedure, that an unaccepted settlement offer has no force. Like other unaccepted contract offers, it creates no lasting right or obligation." With no such entitlement, in turn, the parties were still adverse, and so their dispute remained a live one that a federal court could decide. The majority expressly adopted the mootness analysis that Justice Kagan had outlined in her dissenting opinion in *Genesis Healthcare*.

Crucially, the Court reserved judgment on the question whether "the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." As we have previously detailed, the question of whether tendering a payment (as opposed to simply making an offer) would moot a claim had featured heavily at oral argument, but the Court determined that the "question is appropriately reserved for a case in which it is not hypothetical."

On the issue of sovereign immunity, the Court held that federal contractors do not "share the Government's unqualified immunity from liability and litigation." As the Court explained, "[w]hen a contractor violates both federal law the Government's explicit instructions"—which, the record demonstrated, authorized Campbell-Ewald to send recruiting text messages only to consenting recipients—"no 'derivative immunity' shields the contractor from suit by persons adversely effected by the violation."

Justice Thomas concurred in the judgment of the Court, but asserted that the Court should have based its reasoning on the "common-law history of tenders," which required that defendants actually produce a payment for full relief. As with the dissenters in this case, Justice Thomas did not address the majority's sovereign immunity holding.

Chief Justice Roberts filed a dissent, joined by Justices Scalia and Alito, explaining that "[i]f the defendant is willing to give the plaintiff everything he asks for, there is no case or controversy to adjudicate, and the lawsuit is moot." As the Chief Justice put it, "the federal courts exist to resolve real disputes, not to rule on a plaintiff's entitlement to relief already there for the taking." And although vigorously disputing the majority's holding, the Chief Justice went on to note that "this case is limited to its facts," and that while the majority holds that "an offer of complete relief is insufficient to moot a case," it "does not say that payment of complete relief leads to the same result."

Justice Alito also filed a separate dissent to "emphasize what" he saw "as the linchpin" for the dissenters' mootness finding: that "[t]here is no real dispute that Campbell-Ewald would 'make good on [its] promise' to pay Gomez the money it offered him if the case were dismissed." And Justice Alito also stated that a defendant could "make 'absolutely clear' that it will pay the relief it has offered" by, among other things, "deposit[ing] the money with the district court (or another trusted intermediary) on the condition that the money be released to the plaintiff when the court dismisses the case as moot."

*Campbell-Ewald* should be of significant interest to any class-action defendant. Today's opinion makes simple offers of settlement insufficient to moot a case. But it leaves open the possibility that settlement offers combined with additional commitments to pay claims might suffice to end both individual and class claims.

Mayer Brown LLP - Archis A. Parasharami, Brian D. Netter and Thomas P. Wolf

Powered by
LEXOLOGY.

Control No.: 16102729

# LEXOLOGY®

## Supreme Court Rules Settlement Offer Does Not Moot Class Action

USA | January 21 2016

On January 20th, 2016, in *Campbell-Ewald Co. v. Gomez*, a case closely watched by both sides of the class action bar, the U.S. Supreme Court ruled in an opinion authored by Justice Ruth Bader Ginsberg that an unaccepted Rule 68 offer of judgment did not moot the Telephone Consumer Protection Act (TCPA) putative class action brought by plaintiff Jose Gomez.

Defendant Campbell-Ewald, a contractor and advertising partner for the U.S Navy, allegedly sent the plaintiff unsolicited marketing text messages urging him to join the U.S. Navy. Plaintiff Gomez sued on behalf of himself and a nationwide class under the TCPA. He sought treble statutory damages, costs and attorney's fees, as well as an injunction against Campbell-Ewald's unsolicited messaging.

Campbell-Ewald extended to the plaintiff a Rule 68 settlement offer of $1,503 per text message, satisfying his treble damages claim. The plaintiff let the offer lapse without accepting it. Campbell-Ewald then filed a motion to dismiss Gomez's claims, based on the offer of settlement, arguing that there was no longer a case or controversy as required for federal jurisdiction.

In the majority opinion, the Court found that an unaccepted settlement offer cannot moot a complaint. Under basic contract law, the Court held that in this circumstance, there is no offer and no acceptance, and therefore the offer can have no effect on the plaintiff's claim, aside from Rule 68's penalty of stopping the clock on costs. The Court stated: "We hold today ... that an unaccepted settlement offer has no force. Like other unaccepted contract offers, it creates no lasting right or obligation. With the offer off the table, and the defendant's continuing denial of liability, adversity between the parties persists."

The Court further stated that Article III requires only a case or controversy, and the case does not become moot so long as the parties have a concrete interest, however small, in the litigation. According to the Court, a case becomes moot only "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Because the plaintiff rejected the defendant's settlement offer, and the offer itself did not admit liability, "Gomez gained no entitlement to the relief Campbell previously offered."

Although the Court's majority opinion seemingly holds that defendants cannot strategically moot class action claims by offering the named plaintiff all of his or her requested relief, the Court expressly left open the question of whether the result would be different if the defendant were to deposit the full amount of the plaintiff's individual claim in an account payable to the plaintiff and the court entered judgment for the plaintiff in that amount. Moreover, the concurring and dissenting opinions indicated other possible ways that the case could have come out differently if the facts were different – such as if the defendant had deposited the funds with the court or if the defendant had admitted its liability in the settlement offer. These questions leave the door open to other possible outcomes, and therefore, we will likely continue to see variations of this case in the future.

Justice Ginsberg's majority opinion was joined by Justices Anthony Kennedy, Stephen Breyer, Elena Kagan and Sonia Sotomayor. Justice Clarence Thomas concurred in the judgment, and filed his own concurrence. Chief Justice Robert G. Roberts authored a dissenting opinion, which was joined by Justices Antonin Scalia and Samuel Alito. Justice Alito also filed a separate dissenting opinion.

EXHIBIT

Case ID: 161000550

# LEXOLOGY®

## U.S. Supreme Court Limits Ability of Class Action Defendants to "Pick Off" Named Plaintiffs

**USA | January 21 2016**

In recent years many defendants facing putative class action lawsuits in federal court have sought to neutralize these lawsuits by offering total relief to all named plaintiffs before the district court issues a ruling on class certification. As the argument goes, this offer of total relief—whether accepted by the plaintiffs or not—moots any justiciable "case or controversy" between the parties and thereby destroys the plaintiffs' standing to continue to litigate. On January 20, 2016, however, the U.S. Supreme Court ruled 6-3 that defendants do *not* moot the claims of named plaintiffs when those plaintiffs reject a formal offer of judgment consisting of full monetary damages. In this respect, the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez* restricts the ability of defendants facing class action lawsuits to ward off the high costs of discovery and avoid an adverse decision on class certification by unilaterally offering to make the named plaintiffs monetarily whole. Nevertheless, the Court left open several possibilities for defendants who attempt to moot claims in the future.

### Overview of the Case

In *Campbell-Ewald*, the named plaintiff allegedly received unsolicited text messages from the defendant company as part of a marketing campaign for the U.S. Navy. The plaintiff filed a putative class action under the Telephone Consumer Protection Act, which provides statutory liquidated damages of $500 to individuals who receive certain unsolicited text messages, phone calls, and "junk faxes." The statute also allows plaintiffs to recover treble damages of $1,500 in the event of a willful violation. The complaint in *Campbell-Ewald* requested $1,500 in damages for the plaintiff, an injunction prohibiting the company from transmitting further unsolicited text messages, and attorneys' fees and costs. The plaintiff also asked to be named as the class representative for a putative nationwide class of similarly situated individuals.

Upon receipt of the complaint, the defendant company did two things. First, the company offered the plaintiff $1,503 per text message (i.e., $3 in excess of the statutory cap) plus reasonable costs and a stipulation to the requested injunction. Second, the company served the plaintiff with an offer of judgment under Federal Rule of Civil Procedure 68 offering the same relief. The company did not offer to admit liability and disclaimed the legal grounds for the injunction.

The plaintiff did not accept either offer and let them lapse. The company nevertheless filed its offer of judgment with the court and moved to dismiss the complaint, arguing that the case was moot because the company had already offered to make the plaintiff whole. The district court disagreed and denied the motion to dismiss on that ground. The district court did, however, grant summary judgment to the defendant on a separate ground: that it was protected by "derivative sovereign immunity" because it was acting at the direction of the U.S. Navy. On appeal to the Ninth Circuit, the court agreed that the settlement offer did not moot the case, but reversed the limited sovereign immunity holding, reasoning that it did not extend to conduct that violated the Navy's instructions, and the law. In light of a circuit split on the mootness issue, and to follow up on a question previously reserved by the Court in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 n.4 (2013), the High Court granted cert.

### The Supreme Court's Decision

EXHIBIT

tabbies®

3

Control No.: 16102729

The U.S. Supreme Court affirmed the Ninth Circuit. Justice Ginsburg wrote for a five-justice majority that also included Justices Sotomayor, Kagan, Breyer, and Kennedy. The Court determined that the "adversity" necessary to confer Article III standing still exists when the plaintiff rejects a contractual offer of complete relief and the defendant continues to deny liability. The court embraced Justice Kagan's prior dissent in *Genesis Healthcare*, where she argued in dissent that an unaccepted settlement offer "is a legal nullity, with no operative effect." After the plaintiff's rejection of the settlement offer, the district court remained positioned to award the relief requested in the plaintiff's complaint.

The Court was also unpersuaded that an unaccepted offer of judgment under Rule 68 alters the standing analysis. The Court explained that the Rule explicitly provides that such an offer "is considered withdrawn" after 14 days, and the punishment for rejecting an offer of judgment is to render the plaintiff responsible for post-offer costs if the plaintiff receives a judgment less favorable than the offer. The structure of the Rule itself, the Court reasoned, indicates that it should not affect Article III standing.

The decision nevertheless leaves several open questions. First, the Court appeared to draw a distinction between cases seeking monetary damages and cases seeking declaratory or injunctive relief. The Court distinguished the result from its recent decision in *Alvarez v. Smith*, 558 U.S. 87 (2009), where the plaintiffs had sought the return of physical property but not monetary damages, and the Court held that these claims became moot upon the return of that property. The Court also distinguished *Already, LLC v. Nike, Inc.*, 568 U.S. ___ (2013), where the Court found a unilateral covenant not to sue for trademark infringement to be sufficient to moot a declaratory judgment action.

Second, and similarly, the Court reserved for another day to "decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." This proposal had been raised by Justice Kennedy at oral argument, and this caveat suggests that Justice Kennedy may have joined the four liberal justices subject to limiting the holding in this regard.

Justice Thomas concurred in the judgment. He argued that the majority erred by resting its decision on "modern" contract law principles and Rule 68. Harking to his originalist philosophy, he argued that the Article III question required the Court to examine the common law of tenders at the time of the Framers. He concluded that an Article III controversy would still exist under these principles. Like the majority, Justice Thomas observed that "with neither of these offers did the company make payment; it only declared its intent to pay."

Chief Justice Roberts wrote the primary dissent. Repeating a quip that he had raised at oral argument, he wrote that the plaintiff would not "take 'yes' for an answer." That is, the dissent argued that "if the defendant is willing to remedy the plaintiff's injury without forcing him to litigate, the plaintiff cannot demonstrate an injury in need of redress by the court, and the defendant's interests are not adverse to the plaintiff." To the dissenters, whether an enforceable contract was formed does not mirror the Article III analysis about the existence of a "case or controversy." Although the dissenters disagreed with the majority holding, they announced as "good news ... that this case is limited to its facts." The Court emphasized that "[t]he majority holds that an *offer* of complete relief is insufficient to moot a case. The majority does not say that *payment* of complete relief leads to the same result."

Finally, Justice Alito drafted a brief dissent where he explained that he joined the primary dissent because there was no legitimate concern that the defendant could not follow through with payment on its offer of full relief because of the company's strong financial resources.

## Future Defense Strategies

The decision in *Campbell-Ewald* certainly makes it more difficult for defendants facing class action lawsuits to neutralize those lawsuits at the outset by simply extending an offer. The possibility remains, however, that defendants might be able to "pick off" named plaintiffs by affirmatively affording the relief that plaintiffs seek.

Control No.: 16102729



Capital One
Auto Finance

Capital One Auto Finance
7933 Preston Road
Plano, TX 75024
1-800-735-8719

JAMES M LANGER
RANDY T LANGER
606 SUMMIT ST
MCKEESPORT PA 15132

This communication is from a debt collector and is an attempt to collect a debt, any information obtained will be used for that purpose.

If you are entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the subject matter of this letter, the following applies to you: THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT, ASSESS, OR RECOVER A CLAIM IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY.

If you are an Obligor on the Account you will be liable for any remaining deficiency provided by your contract unless you receive a discharge on the Account as provided under the United States Bankruptcy Code.

We are required by state law to inform you of these rights.

Capital One Auto Finance is a division of Capital One, National Association, and services the following Capital One affiliated company: Onyx Acceptance Corporation.

NOI_PA_739                                                     Page 1 of

**EXHIBIT**
tabbie
**4**

Case ID: 161000560

Case ID: 161000560
Control No.: 16102729



Capital One Auto Finance
7933 Preston Road
Plano, TX 75024
1-802-735-5719

CERTIFIED MAIL                                                      04/17/15

JAMES M LANGER
RANDY T LANGER
605 SUMMIT ST
MCKEESPORT PA 15132

**NOTICE OF REPOSSESSION AND NOTICE OF OUR PLAN TO SELL PROPERTY**

RE:

07 TOYOTA SCION
VIN# JTKDE177870198199

Dear JAMES M LANGER,

We have your 07, TOYOTA, SCION, VIN# JTKDE177870198199 because you broke promises in our agreement.  We will sell the Vehicle at a private sale sometime after 04/27/15.  A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe.  If we get less money than you owe, you will still owe us the difference.  If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You may be able to get your property back at any time before we sell it by paying either the reinstatement or redemption amount.  To learn the exact amount you must pay, call us at 1-800-735-5719 or see the attached Reinstatement and Redemption Notice.

If you want us to explain to you in writing how we figured the amount that you owe us, you may call us at 1-800-735-5719 or write us at ATTN: COAF Vehicle Remarketing, Capital One Auto Finance, 7933 Preston Road, Plano, TX 75024, and request a written explanation.

If you need more information about the sale, call us at 1-800-735-5719, Monday through Friday, from 8:00 a.m. to 9:00 p.m. Eastern Time, or write us at ATTN: COAF Vehicle Remarketing, Capital One Auto Finance, 7933 Preston Road, Plano, TX 75024.

We are sending this notice to any co-borrower or obligor who have an interest in the Vehicle or who owe money under your agreement.

RANDY T LANGER

NOI_PA_739                                              Page 2 of 4

Case ID: 161000560



Capital One Auto Finance
7933 Preston Road
Plano, TX 75024
1-800-735-5718

You may make arrangements to pick up any personal property left in the Vehicle by contacting the following company
    ARS - WPA
    4926 Pleasant Unity Rd
    LATROBE, PA  15650
    (724) 423-8933

We will hold the personal property for 30 days from the date of this notice and you may reclaim the property during that time. If you do not reclaim your personal property during that time, we may dispose of it in the same manner as we dispose the Vehicle.

See the enclosed Reinstatement and Redemption Notice for an itemization of the amount required to redeem and further explanation of your additional rights.

Sincerely,

Subba Rajasinhan
Capital One Auto Finance

NOI_PA_739                             Page 3 of 4

Case ID: 161000560

Case ID: 161000560
Control No.: 16102729

**Capital One**
Auto Finance

## NOTICE OF INTENT TO DISPOSE OF MOTOR VEHICLE

As described above, we intend to dispose of your Vehicle at a private sale sometime after 04/27/15, subject to your rights described below.

### REINSTATEMENT AND REDEMPTION

You can get your Vehicle back by paying us the Total Amount Due to Reinstate (below) at the address shown at the top of this notice anytime before we sell it. Payment must be made via certified funds (Money Gram or Western Union).

Past Due Payment : $1,407.08
Unpaid Delinquency Charges : $0.00
Repossession Cost : $390.00
Total Amount to Reinstate Contract : $1,797.08

You will also have to pay any payments that become due between the date of this notice and the date that you reinstate the contract or redeem.

The vehicle will be available for your inspection during normal business hours at:
ARS - WPA
4926 Pleasant Unity
LATROBE PA 15650
(724) 423-8833

You may call us at 1-800-739-8799 to obtain information concerning the amount due to redeem the vehicle and from whom the vehicle may be redeemed.

If you wish to redeem your Vehicle, you must pay the Total Amount to Redeem as shown below:

Contract Balance : $9,528.76
Unpaid Delinquency Charge : $0.00
Repossession Cost : $390.00
Total Amount Due to Redeem Vehicle : $9,918.76

Make your redemption payment to or send any notice to us at:

ATTN: COAF Vehicle Remarketing
Capital One Auto Finance
7933 Preston Road
Plano, TX 75024

NOI_PA_739                                    Page 4 of 4

Case ID: 161000560

Case ID: 161000560
Control No.: 16102729

Case ID: 161000560
Control No.: 161002729

MV-217A (10-09)

**pennsylvania**
DEPARTMENT OF TRANSPORTATION

Bureau of Motor Vehicles
P.O. Box 68672
Harrisburg, PA 17106-8672

**APPLICATION FOR
CERTIFICATE OF TITLE BY
A FINANCIAL INSTITUTION
OR DEALER AFTER
DEFAULT BY OWNER**

**Title Must Be Attached**

*15133  0025  000670/11*

For Department Use Only

NOTE: This application may only be used by Financial Institutions and Vehicle Dealers who are licensed by the Department of Banking. Your ABA/FIN or DIN number (if applicable) must be listed below.

**A | VEHICLE AND OWNER INFORMATION**

| Title Number | Name of vehicle owner as shown on attached title |
|---|---|
| 69731TT7402 | RANDY T LANGER |

**B | VEHICLE IDENTIFICATION NUMBER VERIFICATION - (NON PA TITLE ONLY)**

NOTE: IF AN OUT-OF-STATE TITLE IS ATTACHED TO THIS APPLICATION, A TRACING OF THIS VEHICLE'S IDENTIFICATION NUMBER MUST BE AFFIXED IN THE SPACE PROVIDED. IF A TRACING CANNOT BE OBTAINED, THE VEHICLE'S IDENTIFICATION NUMBER MUST BE VERIFIED BY A CERTIFIED INSPECTION MECHANIC OR AUTHORIZED NOTARY PUBLIC IN THE APPROPRIATE SPACES BELOW.

**H. TAX, TITLE AND REGISTRATION FEES**

(If applicable). Use the back of Forms MV-4 or MV-4ST to determine proper sales tax exemption information.
NOTE! Only the purchaser listed in Section E must complete the following appropriate blocks.

| | |
|---|---|
| PURCHASE PRICE (See note on reverse) | |
| TAXABLE AMOUNT | |
| 1. 6% (.06) SALES TAX 7% (.07) Allegheny Co. residents NEW (.08) City of Philadelphia residents | |

**C | REPOSSESSOR'S INFORMATION**

| Repossessing Institution's Name (as listed on face of title) | ABA/FIN or DIN (if applicable) - must be listed | 1A. EXEMPTION REASON CODE (Must be a number from 1 to 29 or 8) |
|---|---|---|
| Capital One Auto Finance | | |
| Street Address | | 1B. EXEMPTION NUMBER |
| 7933 Preston Road | | |

| City | State | Zip Code | 2. Title Fee |
|---|---|---|---|
| Plano | TX | 75024 | 22.50 |

**D | REPOSSESSOR'S INFORMATION**

| Repossessing Institution's Name (as listed on face of title) | ABA/FIN or DIN (if applicable) - must be listed | 3. Use Fee |
|---|---|---|
| | | |
| 1. □ Renunciation (Repossessor Must Take Title)  □ 3. Mobile Home | | 4. Registration or Processing Fee |
| □ 2. Non-Judicial sale or repossession and retention (UCC§ 9-A) | | |

**E | PURCHASER INFORMATION (Exactly as shown in Section A on reverse side of title)**

| | Fee Exempt Number as assigned by the Department |
|---|---|
| | 5. Duplicate Registration Fee No. of Cards _____ |
| | 6. Transfer Fee |

| Last Name or Company | First Name | Middle Name | PA DL# or ID# or Sec. ID # | Date of Birth | 7. Increase Fee |
|---|---|---|---|---|---|
| Capital One Auto Finance | | | | | |

| Co-Purchaser | First Name | Middle Name | PA DL#/ID ID# or Sec. ID # | Date of Birth | 8. Replacement Fee |
|---|---|---|---|---|---|
| | | | | | |

| Street Address | | | | City |
|---|---|---|---|---|
| 7933 Preston Rd | | | | Plano TX 75024 |

| | TOTAL PAID |
|---|---|
| | (Add 1 thru 8) Send One Check to This Amount |

**F | SIGNATURES**

| REPOSSESSOR SIGNATURE | Signature of Repossessor or Authorized Signer | Title of Authorized Signer | Date |
|---|---|---|---|
| | Capital One Auto Finance | Title Clerk | 5-1-15 |
| PURCHASER SIGNATURE | Signature of Purchaser or Authorized Signer Capital One Auto Finance | Title of Authorized Signer | Date |

**G | Repossessor's Certification Information**

| REPOSSESSOR'S SIGNATURE | Signature of Repossessor or Authorized Signer | | Date |
|---|---|---|---|
| | Capital One Auto Finance | 05/11/2015 | |
| | Printed Name of Repossessor or Authorized Signer Capital One Auto Finance | Title of Authorized Signer Title Clerk | |

EXHIBIT
5a.

MV-217A (1-15)



**pennsylvania**
DEPARTMENT OF TRANSPORTATION
www.dmv.state.pa.us

**APPLICATION FOR CERTIFICATE OF TITLE BY A FINANCIAL
INSTITUTION OR DEALER AFTER DEFAULT BY OWNER**
(Title Must Be Attached)

For Department Use Only

NOTE:   This application may only be used by Financial Institutions and Vehicle Dealers who are licensed by the Department of Banking.
Your ABA/FIN or DIN number (if applicable) must be listed below.

**A   VEHICLE AND OWNER INFORMATION**

| Title Number | Name of Vehicle Owner as Shown on Attached Title |
|---|---|
| | |

**B   VEHICLE IDENTIFICATION NUMBER VERIFICATION (NON-PA TITLE ONLY)**

NOTE:   If an out-of-state title is attached to this application, a tracing of the vehicle's identification number must be affixed in the space provided. If a tracing cannot be obtained, the vehicle's identification number must be verified by a certified inspection mechanic or authorized notary public in the appropriate spaces below.

TAPE VIN
TRACING
HERE

DIN/Mechanic # _____   Authorized Notary Public or Certified Inspection Mechanic (Print Name)

I certify that a legible tracing cannot be secured, and   Authorized Notary Public or Certified Inspection Mechanic sign here.
that the above VIN is correct.

**C   REPOSSESSOR'S INFORMATION**

| Repossessing Lienholder's Name (as listed on face of title) | ABA/FIN or DIN (if applicable) must be listed. |
|---|---|
| Street Address | |
| City | State | Zip Code |

**D   REPOSSESSOR'S INFORMATION**

Repossessing Lienholder's Name (as listed on face of title) and ABA/FIN or DIN (if applicable) must be listed.
Check the appropriate box below indicating which option you are proceeding under:
☐ 1. Renunciation (Repossessor Must Take Title)          ☐ 3. Mobile Home
☐ 2. Non-Judicial Sale or Repossession and Retention (M.V.S.F.A.)

**E   PURCHASER INFORMATION (Exactly as shown in Section A on reverse side of title)**

I/We certify, to the best of my/our knowledge, that the odometer reading is __ __ __ __ __ __ miles and reflects the
actual mileage of the vehicle, unless one of the following boxes is checked:
☐ Reflects the amount of mileage in excess of its mechanical limits
☐ Is NOT the actual mileage (WARNING: Odometer discrepancy)
WARNING: Federal and State laws require that you state the mileage in connection with the transfer of ownership.
Failure to complete or providing a false statement may result in fines and/or imprisonment.

| Last Name (or full business name) | First Name | Middle Name | PA DL/Photo ID# or Bus. ID# | Date of Birth |
|---|---|---|---|---|
| Co-Purchaser | First Name | Middle Name | PA DL/Photo ID# or Bus. ID# | Date of Birth |
| Street Address | | | City | |
| County | State | Zip Code | Date Acquired/Purchased | |
| Dealer Identification Number (if applicable) | | | Financial Institution Number (if applicable) | |

NOTE: If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (On death of one owner, title goes to surviving owner)
CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (On death of one owner, interest of deceased owner goes to his/her heirs or estate.)

**F   SIGNATURES**

I/We acknowledge that I/we may be subject to a fine not exceeding $5,000 and imprisonment of not more than two years for any false statement that I/we make
that I/we have examined and signed this application after its completion; and, that if an exemption from payment of sales tax is claimed, I am/we are authorized
certify that all statements herein are true and correct and make application for certificate of title for the vehicle described in Block A.

Signature of Repossessor or Authorized Signer          Title of Authorized Signer

Signature of Purchaser or Authorized Signer          Signature of Co-Purchaser or Title of Authorized Signer

**G   Repossessor's Certification Information**

I certify that the owner/lienholder named in this document has repossessed the above described motor vehicle or mobile home upon default according to the terms of the security agreement and has
complied with all applicable laws and regulations of Pennsylvania.

Signature of Repossessor or Authorized Signer          Date

Printed Name of Repossessor or Authorized Signer          Title of Authorized Signer

**H. TAX, TITLE AND REGISTRATION FEES**

If applicable, use back of Forms MV-1 or MV-4ST to determine proper sales tax exemption information.
NOTE: Only the purchaser listed in Section E must complete the following appropriate blocks.

| | | |
|---|---|---|
| PURCHASE PRICE (See Note on Reverse) | | |
| TAXABLE AMOUNT | | |
| 1. x6% (.06) SALES TAX x7% (.07) Allegheny Co. residents x8% (.08) City of Philadelphia residents. | | |
| 1A. EXEMPTION REASON CODE (Must be a number from 1 to 26 or 0) | | |
| 1B. EXEMPTION NUMBER | | |
| 2. Title Fee | | |
| 3. Lien Fee | | |
| 4. Registration or Processing Fee | | |
| Fee Exempt Number as assigned by the Department | | |
| 5. County Fee (See Note on Reverse.) | | |
| 6. Duplicate Registration Fee No. of Cards _____ | | |
| 7. Transfer Fee | | |
| 8. Increase Fee | | |
| 9. Replacement Fee | | |
| **10. TOTAL PAID** (Add 1 - 9) Send One Check in This Amount | | |

EXHIBIT
**5b.**

Case ID: 161000560

EXHIBIT 3





Civil Docket Report

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 161000560 |
| **Case Caption:** | LANGER ETAL VS CAPITAL ONE AUTO FINANCE, A DIVISIO |
| **Filing Date:** | Wednesday, October 05th, 2016 |
| **Court:** | CLASS ACTION |
| **Location:** | City Hall |
| **Jury:** | JURY |
| **Case Type:** | CLASS ACTION |
| **Status:** | ACTIVE CASE |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case motions

| Motion | Assign/Date | Control No | Date/Received | Judge |
|---|---|---|---|---|
| MOTION FOR CLASS CERTIFICATION | 24-OCT-2016 | 16102729 | 24-OCT-2016 | WRIGHT PADILLA, NINA |

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | SHENKAN, RICHARD |
| **Address:** 6550 LAKESHORE ST. WEST BLOOMFIELD MI 48323 (248)562-1320 | | **Aliases:** | *none* | |

| 2 | | | TEAM LEADER | WRIGHT PADILLA, NINA |
|---|---|---|---|---|
| **Address:** | 505 CITY HALL PHILADELPHIA PA 19107 (215)686-2892 | **Aliases:** | *none* | |

| 3 | 1 | | PLAINTIFF | LANGER, RANDY |
|---|---|---|---|---|
| **Address:** | 2550 BELAIRE DRIVE CUMMING GA 15132 | **Aliases:** | *none* | |

| 4 | 1 | | PLAINTIFF | LANGER, JAMES |
|---|---|---|---|---|
| **Address:** | 606 SUMMIT STREET MCKEESPORT PA 15132 | **Aliases:** | *none* | |

| 5 | | | DEFENDANT | CAPITAL ONE AUTO FINANCE, A DIVISION OF CAPITAL ONE, N.A. |
|---|---|---|---|---|
| **Address:** | 7933 PRESTON ROAD PLANO TX 75024 | **Aliases:** | *none* | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount | Approval/ Entry Date |
|---|---|---|---|---|
| 05-OCT-2016 01:38 PM | ACTIVE CASE | | | 05-OCT-2016 02:26 PM |
| **Docket Entry:** | E-Filing Number: 1610008815 | | | |
| 05-OCT-2016 01:38 PM | COMMENCEMENT CIVIL ACTION JURY | SHENKAN, RICHARD | | 05-OCT-2016 02:26 PM |
| **Documents:** | | | | |

|  |  |  |  |  |
|---|---|---|---|---|
|  | ⚲ Click link(s) to preview/purchase the documents <br> Final Cover | 🛒 Click HERE to purchase all documents related to this one docket entry |  |  |
| **Docket Entry:** | *none.* |  |  |  |
|  |  |  |  |  |
| 05-OCT-2016 01:38 PM | COMPLAINT FILED NOTICE GIVEN | SHENKAN, RICHARD |  | 05-OCT-2016 02:26 PM |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents <br> 2016_10_05_13_25_22.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |  |  |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. |  |  |  |
|  |  |  |  |  |
| 05-OCT-2016 01:38 PM | SHERIFF'S SURCHARGE 1 DEFT | SHENKAN, RICHARD |  | 05-OCT-2016 02:26 PM |
| **Docket Entry:** | *none.* |  |  |  |
|  |  |  |  |  |
| 05-OCT-2016 01:38 PM | JURY TRIAL PERFECTED | SHENKAN, RICHARD |  | 05-OCT-2016 02:26 PM |
| **Docket Entry:** | 8 JURORS REQUESTED. |  |  |  |
|  |  |  |  |  |
| 21-OCT-2016 04:15 PM | MOTION FOR CLASS CERTIFICATION | SHENKAN, RICHARD |  | 24-OCT-2016 09:47 AM |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents <br> 2016_10_21_10_50_45.pdf <br> 2016_10_19_12_12_00.pdf <br> 20161021160251.pdf <br> Motion CoverSheet Form | 🛒 Click HERE to purchase all documents related to this one docket entry |  |  |
| **Docket Entry:** | 29-16102729 MOTION FOR CLASS CERTIFICATION (FILED ON BEHALF OF JAMES LANGER AND RANDY LANGER) |  |  |  |
|  |  |  |  |  |
| 24-OCT-2016 01:18 PM | MOTION ASSIGNED |  |  | 24-OCT-2016 01:18 PM |
| **Docket Entry:** | 29-16102729 MOTION FOR CLASS CERTIFICATION ASSIGNED TO JUDGE: WRIGHT PADILLA, NINA . ON DATE: OCTOBER 24, 2016 |  |  |  |

▶ Case Description   ▶ Related Cases   ▶ Event Schedule   ▶ Case Parties   ▶ Docket Entries

Search Home

EXHIBIT 4

STRADLEY RONON STEVENS & YOUNG, LLP
By:    Christine M. Debevec (Pa. Id. No. 88107)
       Samantha B. Kats      (Pa. Id. No. 316178)
2005 Market Street, Suite 2600
Philadelphia, PA  19103-7098
Phone: (215) 564-8000
Fax: (215) 564-8120

*Attorneys for Defendant,*
*Capital One Auto Finance*

| | |
|---|---|
| RANDY LANGER and JAMES LANGER,        : | COURT OF COMMON PLEAS |
|                                                       : | PHILADELPHIA COUNTY |
|             Plaintiffs,                        : | |
|                                                       : | |
|             v.                                    : | |
|                                                       : | |
|                                                       : | No. 161000560 |
| CAPITAL ONE AUTO FINANCE, a division of   : | |
| CAPITAL ONE, N.A.,                          : | |
|                                                       : | |
|             Defendant.                       : | |
|                                                       : | |

## NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on November 21, 2016, Defendant, Capital One Auto Finance, a division of Capital One, N.A., filed a Notice of Removal of this action to the United States District Court for the Eastern District of Pennsylvania.  A true and correct copy of the Notice of Removal is attached hereto as Exhibit "A."

PLEASE TAKE FURTHER NOTICE that the filing of the Notice of Removal in the United States District Court for the Eastern District of Pennsylvania and the filing of this Notice effect the removal of this action, and pursuant to 28 U.S.C. § 1446(d), the above-captioned action may proceed no further unless and until the case is remanded.

*/s/ Samantha B. Kats*
Samantha B. Kats
*Attorneys for Defendant,*
*Capital One Auto Finance*

Dated:  November     , 2016

## CERTIFICATE OF SERVICE

I, Samantha B. Kats, hereby certify that on November      , 2016, the foregoing

Notice of Filing of Notice of Removal was served via First Class U.S. Mail, postage pre-paid,

upon the following counsel of record:

Richard Shenkan, Esq.
SHENKAN INJURY LAWYERS, LLC
6550 Lakeshore Street
West Bloomfield, MI  48323
rshenkan@shenkanlaw.com

*Attorney for Plaintiffs,*
*Randy Langer and James Langer*

*/s/ Samantha B. Kats*
Samantha B. Kats

# 3015772