UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDY LANGER and JAMES LANGER, | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 2:16-cv-06130 |
| CAPITAL ONE AUTO FINANCE, a division of CAPITAL ONE, N.A., | : |
| Defendant. | : |

## MOTION TO COMPEL PRODUCTION OF AUTO LOAN FILES

AND NOW COMES, Plaintiffs, by and through their counsel, who respectfully request that this Honorable Court compel Defendants to produce all responsive documents to Request for Production of Document No. 6. In support thereof, Plaintiffs state as follows:

1. Plaintiffs allege in this action that Defendants failed to comply with the very particular notice requirements of the Pennsylvania Commercial Code and Motor Vehicle Sale Finance act in connection with the repossession of class members' vehicles, and that Defendants are, therefore, liable to the members of the class for greater of statutory or compensatory damages.

2. While the Motor Vehicle Sales Finance Act requires the creditor to afford the debtor with a minimum 15 day right to redeem the motor vehicle; however, Capital One misinformed the debtor that their respective redemption right was only 10-days in violation of 13 Pa. C.S. 9610, 12 Pa. CSA 6254(c)(3) and *Industrial Valley Bank & Trust, Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 (1985)(the UCC and MVSFA must be read in *pari materia*).

3. The UCC's "notice requirement is easy to understand and apply; it is inspired by the forlorn hope that the debtor if he is notified, will either acquire enough money to redeem the collateral or send his friends to bid for it." *Industrial Valley Bank & Trust v. Nash, supra*.

1

4. Plaintiffs initiated this action in the Court of Common Pleas of Philadelphia County, and served his first set of discovery, consisting of interrogatories, document requests and requests for admissions, on October 25, 2016.

5. Thereafter, Defendants removed the action to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

6. On or about December 20, 2016, Plaintiffs served their First Set of Class Discovery, in the newly transferred case.

7. Among those discovery requests was Request for Production No. 6, which stated:

**Please produce/provide:**

**YOUR auto loan file for each named Plaintiffs and each (putative) Class member.**

**Note: This request includes but is not limited to the retail installment sale contract ("RISC") or loan contract, REPOSSESSION NOTICE, POST-SALE NOTICE, and all DOCUMENTS CONCERNING the repossession, transportation, reconditioning, repair, storage, and/or sale / auction of the repossessed vehicle; all correspondence or collection letters YOU sent to or received from the CLASS MEMBER, call logs, any bankruptcy or DEFICIENCY lawsuit YOU or YOUR agents(s) filed against any CLASS MEMBER, and the CLASS MEMBERS' complete account history.**

8. On January 23, Defendants served their Responses to Plaintiffs' discovery requests. **Exhibit 1**.

9. The Responses commenced with <u>four</u> pages of boilerplate "General Objections" which is clearly improper. *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 187 F.R.D. 528, 530 (E.D. Pa. 1999) ("boilerplate" objections to discovery improper); *Monah v. Albert Einstein Medical Center*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (after personnel record request, "mere recitation of familiar litany that interrogatory or document production request is overly broad, burdensome, oppressive and irrelevant" will not satisfy producing party's burden to "state grounds for objection with specificity"). Conspicuously evasive, Capital One stated that all "General Objections" "are

incorporated into each response set forth below as though set fort there in full." (General Objection #18)

10. Defendants discovery Responses included the following response to Document Request No. 6:

> COAF objects to this request in that the term "auto loan" file is vague and ambiguous. COAF further objects to this request as being overly broad, unduly burdensome, and premature, because it seeks the production of documents relating to approximately 1,329 accounts of absent class members prior to class certification and without any demonstration of need for the information to satisfy the requirements of Fed.R.Civ.Proc. 23. COAF further objects that the request seeks the production of confidential and non-public personal information about COAF's customers. COAF is withholding documents based on the foregoing objections. Subject to and without waiving these objections, with respect to the named Plaintiffs, COAF is producing herewith its loan file (Which includes the application, the loan contract and other documents pertaining to the sale and financing of Plaintiffs' vehicle); correspondence; and activity notes. Further responding, upon the execution of an agreed-upon confidentiality agreement, COAF will agree to produce a spreadsheet (with redactions for identifying information about absent class members) that provides information regarding putative Class Members in the Repossession Notice Class, including date of repossession; city and state of the borrower; outcome (e.g., whether the vehicle was sold or redeemed); date of any sale; original principle balance; original finance charge; and amount of any deficiency balance remaining after the sale of the vehicle. Furthermore, COAF is willing to produce a reasonable sample of the relevant files of putative class members, with identifying information redacted; such files would consist of the following: loan file (which generally includes the application, the loan contract, and other documents pertaining to the sale and financing of the vehicle); correspondence; and activity notes.

For the following reasons, this Response is unsatisfactory and Plaintiffs request that the Court Order Defendants to produce the loan file for every class member.

11. Defendants' claim of not understanding the meaning of "loan file" is simply disingenuous. Later in the very same response they state: "with respect to the named Plaintiffs, COAF is producing herewith its *loan file* (which includes the application, the loan contract, and other documents pertaining to the sale and financing of Plaintiffs' vehicle." (emphasis added). Thus, it is apparent that Defendants know exactly what some of the information is which comprises

a "loan file" so the alleged vagueness of the term provides no basis whatsoever for not producing the loan files.

12. The Response then makes the curious assertion that the Request is not only "overly broad" and "unduly burdensome," but also "premature" because it seeks documents from all 1329 accounts "prior to class certification." It appears that Defendants want to deny to Plaintiffs until after class certification the discovery that Plaintiffs will need to achieve class certification, thereby assuring that there will never be class certification. Defendants' argument that class cert discovery should proceed *after* class certification simply makes no sense.

13. Defendants take the related position that production of the loan files should be denied absent "any demonstration of the need for the information to satisfy the requirements of Fed.R.Civ.Proc. 23." Fed.R.Civ.P. 26 neither requires nor provides a mechanism for a party to, in the first instance, demonstrate the need for certain discovery. Instead, Rule 26 provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." By arguing that production of the loan files should follow class certification, as mentioned above, Defendants have effectively acknowledged the significance of that discovery to class certification, i.e. "to satisfy the requirements of Fed.R.Civ.Proc. 23." As Defendants have conceded that Plaintiffs need the loan files to satisfy the requirements of Rule 23, there is no need for Plaintiffs to further demonstrate that need.

14. Defendants further rationalize their refusal to produce the loan files, claiming "COAF further objects that the request seeks the production of confidential and non-public personal information about COAF's customers." This contention, too, is nonsensical. The parties have entered into a Confidentiality Agreement and Stipulated Protective Order that the Court has approved. **Exhibit 2**. This Agreement enumerates the types of information that are deemed

"Confidential Information" for purposes of the Agreement. That enumeration includes "class member finances and personal identifying information." *Id.* at ¶1. The Agreement generally provides that any "Confidential Information"–which would include "class member finances and personal identifying information."—that is produced by either party to the other, must be kept confidential by the receiving party. Accordingly, the very purpose of the Agreement, "to expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality…" (*Id.* at 1) is designed to avoid the very objections that Defendants are now making!

15. While having already negotiated the terms of the Court's entered Confidentiality Agreement, in a January 31, 2017 e-mail to Plaintiff's counsel (attached hereto as **Exhibit 3**), Defendants' counsel incorrectly asserted:

> "[w]hile I appreciate that there is a confidentiality agreement and stipulated protective order to be entered, which should protect confidential customer information from being disclosed to third parties, I do not believe that you are entitled to the names and identifying information of these absent class members who are not yet parties to the case and who you do not represent."

16. If Defendant wanted to have different terms in the Confidentiality Agreement, it should have negotiated them or made the Court and Plaintiff's Counsel aware of a "carve-out" that Capital One did not mention PRIOR to having submitting the Confidentiality Agreement to Court for its execution. It failed to do so. This wasn't an error because there is no legitimate basis for such a "carve-out" pursuant to the controlling authority of *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir. 1994).

17. The Confidentiality Agreement, which has the imprimatur of the Court, refutes this statement by specifically authorizing Defendants to produce this information: "Pursuant to this Order, Defendant is authorized to produce to Plaintiffs non-public personal information concerning absent class members…" *Id.* at ¶5. In fact, the Agreement specifically states that "[t]he

loan files and account records of the plaintiffs and all absent class members are to be treated as confidential Information." *Id.*

18. In recent communications with Plaintiff's counsel, Defendants' counsel has cited the time, effort and cost of redacting all personal information from 1,329 loan files as rendering such a production overly burdensome. Because, as explained above, no such redaction is necessary, this alleged undue burden simply vanishes. It is clear that this is not a situation where the burden of producing documents is driving a part's reluctance to produce. Rather, in this case, Defendants' reluctance to produce is driving its fabrication of alleged burden.

19. It seems that the Defendant advancing another excuse not to produce such information - the "General Objection" which remarkably is an conspicuous attempt to preclude it from electronic discovery. The Court should not countenance this sort of conduct. In "General Objection 12" the Defendant states:

> To the extent that a Discovery Request seeks documents that are electronically stored, Defendant objects to any Discovery Request for all electronically stored documents or information to the extent that it would impose an undue burden in terms of the manner and method of the production of electronic documents and data, and exceeds that which is required by the Federal Rules of Civil Procedure.

20. Electronic discovery is expressly permitted by the rules. The ease of obtaining such information such as a loan file is, by definition, quite easy – likely just a few clicks per file. No burden whatsoever if the Defendant were simply willing to fulfill the discovery obligation.

21. While Defendants did go on to state that they would provide a spreadsheet with certain information, and would produce a "reasonable sample of the relevant files of putative class members," neither of these is an adequate substitute for production of all of the loan files. More important, however, is that there is no need to consider *any* substitute for production of the loan files, because there is no basis for not producing them in the first place.

22. In fact, their proposal to merely produce a sample of the loan files is very telling. If producing a sampling of the files is not burdensome, it is unclear why producing all of the loan files would be burdensome. Large, sophisticated entities such as Defendants will not be overly burdened by producing files for approximately 1,329 class members which is all electronically stored and will be easily copied onto a disc or flash drive. It is well-settled that a discovery request is not objectionable simply because it seeks information which requires research and compilation of data. *Hall v Harleysville Ins. Co.*, 164 F.R.D. 406 (E.D. Pa. 1996).

23. At a minimum, the Court should order Defendants to substantiate their claim that such a production is overly burdensome by offering a representative for deposition who can testify as to the process Capital One would have to go through to produce these files, and the approximate time and cost required to do so.

24. Moreover, the information provided to Plaintiffs by a mere sample of loan files is inadequate. Defendants are contesting class certification (see Defendants' Answer and Affirmative Defenses, ¶¶ 52-75, and Fourteenth Affirmative Defense). Thus, in order to meet the burden of showing that this action meets the requirements of a class action under FRCP 23, it is necessary that Plaintiffs have access to the *entire* loan file of *each* class member, in order to show that there exists commonality of the named plaintiffs and class members - that there are questions of fact common to the class, and that the claims or defenses of the named plaintiffs are typical of those of the class.

25. Undoubtably, the defendant will attempt to argue that class certification should be denied because each class member's claim is, somehow, "unique." Having both parties have the very information that they will need to adequately argue their case is essential.

26. For at least two reasons, Defendants' offer of producing a spreadsheet in lieu of all the loan files is equally inadequate. First, Plaintiffs should not have to rely upon a summary of information prepared by an adversary where the information is not subject to be verified by Plaintiff's counsel. A "summary" as the defendant wishes to provide could significant errors and inaccuracies that could be avoided if Plaintiffs could review the same documents themselves. Certainly, it makes most sense to then compare such information via a spreadsheet, if applicable.

27. The existence of such errors and inaccuracies is not merely theoretical. In its Notice of Removal, Defendants claimed that there were approximately 480 class members. In subsequent email correspondence with Plaintiffs' counsel, Defendants stated that they "now estimate the class size may be approximately 1,329." When queried about the unexplained growth in the class size, Defendants explained that they had previously only identified accounts that had a co-borrower, rather than all accounts both with and without co-borrowers. Given the magnitude of this error as to some *very* basic information, it is clear that Plaintiffs do not want these Defendants summarizing *any* information on which they will be forced to rely in this litigation.

28. The second reason the spreadsheet offered by Defendants is an insufficient substitute for the loan files, is that it would provide only a fraction of the information requested by Plaintiffs as to each class member. Defendants propose that the spreadsheet contain information limited to the date of repossession, city and state of borrower, whether vehicle was sold or redeemed date of the sale, original principle balance, original finance charge and deficiency balance. However, Plaintiffs requested and are entitled to receive all the documents set forth in their document request:

> [T]he retail installment sale contract ("RISC") or loan contract, REPOSSESSION NOTICE, POST-SALE NOTICE, and all DOCUMENTS CONCERNING the repossession, transportation, reconditioning, repair, storage, and/or sale / auction of the repossessed vehicle; all correspondence or collection letters YOU sent to or

received from the CLASS MEMBER, call logs, any bankruptcy or DEFICIENCY lawsuit YOU or YOUR agents(s) filed against any CLASS MEMBER, and the CLASS MEMBERS' complete account history.

29. Further, even a spreadsheet with all of this information would still be inadequate, as Plaintiffs would have no way to verify the accuracy of Defendants' summary of the loan files— a huge problem, given the reliability of information provided to date by Defendants in this case. Notably, the information Plaintiffs need to determine damages entails, for example, the costs incurred in the repossession, transportation, storage, and sale of the repossessed vehicle, as well as the sale price of the vehicle, and amounts paid to Capital One after the repossession. Conveniently, the spreadsheet Capital One wants Plaintiffs to accept to satisfy their inquiry is far from complete on the means and methods Plaintiffs need to evaluate the damages in this case.

30. Significantly, Defendants have yet to explain why producing 1,329 loan files, which they have conceded are electronically stored, is overly burdensome, but extracting and tabulating limited information from the same 1,329 loan files is not.

31. Courts in other cases very similar to this have ordered discovery of the case files of all putative class members, thus finding them relevant and the request not overly burdensome. For example, see paragraph 2(c) of the January 23, 2015 Order in *Sparks et al v. Fidelity Deposit and Discount Bank et al*, and paragraph 4 of the October 23, 2014 Order in *Antonik et al v. First National Community Bancorp Inc. et al*) (attached as **Exhibits 4 and 5**).

32. Notably, Capital One's counsel is the same counsel who represents Fidelity Deposit and Discount Bank in the Lackawanna County case which Judge Gibbons ordered the entire loan files of all putative class members to be provided to Plaintiff's counsel. There is substantial precedent for the production of such highly relevant information. Unlike Capital One who has all of this information stored electronically, because many of the documents in the FNCB and Fidelity

cases were not electronically stored, the Court permitted these banks to produce files on a rolling basis (i.e., 50 files per week).

33.  Plaintiffs will keep the personally identifiable information in each file confidential as they are required to do by the Confidentiality Agreement and Stipulated Protective Order.

34.  Thus, Defendants should be compelled to produce the complete loan file for every putative class member.

35.  The Third Circuit has stated:

It is well recognized that the federal rules allow broad and liberal discovery. See In re Madden, 151 F.3d 125, 128 (3d Cir.1998) ("Pretrial discovery is ... `accorded a broad and liberal treatment.'") (citing Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)); see also Wright, Miller & Marcus, Federal Practice & Procedure, Civil 2d § 2007 ("The rule does allow broad scope to discovery and this has been well recognized by the courts."). *Pacitti v. Macy's*, 193 F.3d 766 (3rd Cir. 1999).

Also see: 8 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2007 (3d ed. 2011) (noting that courts have repeatedly recognized the broad scope of permissible discovery and that "Rule 26(b) allows great freedom in discovery.")

WHEREFORE, Plaintiffs request that this Court compel Defendants to produce the full and complete loan files, as defined in the Note to Request No. 6 for Plaintiffs and for all putative class members within ten (10) days subject to the Confidentiality Order (Doc. 10). A proposed order is attached.[1]

Respectfully submitted,
Shenkan Injury Lawyers, LLC.

_____
Richard Shenkan
*Attorney for Plaintiffs*

---

[1] The undersigned will be in Philadelphia on 2/7-8 and, if convenient with opposing counsel and this Court, would respectfully request a conference to discuss this matter.

## CERTIFICATION OF CONTEST

I certify that my efforts to resolve this discovery dispute have been unsuccessful.

Shenkan Injury Lawyers, LLC.

*[signature]*

Richard Shenkan
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been sent to all counsel of record on February 3, 2017 to all counsel of record by E-Mail and first-class mail.

Respectfully submitted,
Shenkan Injury Lawyers, LLC.

*[signature]*

Richard Shenkan
*Attorney for Plaintiffs*