**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RANDY LANGER and JAMES LANGER, | : |
| | : |
| Plaintiffs, | :  **Civil Action No. 2:16-cv-06130-HB** |
| | : |
| v. | : |
| | : |
| CAPITAL ONE AUTO FINANCE, a division | : |
| of CAPITAL ONE, N.A., | : |
| | : |
| Defendant. | : |
| | : |

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**
**AUTO LOAN FILES UNDER FED. R. CIV. P. 37(A)**

I.    **INTRODUCTION**

        In this putative class action brought pursuant to Pennsylvania's Uniform

Commercial Code ("UCC"), 13 Pa. C.S. § 9601, *et seq.*, Plaintiffs allege that Defendant, Capital

One Auto Finance, a division of Capital One, N.A. ("COAF"), failed to provide "reasonable"

notice of its intent to dispose of Plaintiffs' repossessed vehicle.  Plaintiffs, however, cannot point

to a single provision in the UCC that COAF's notice supposedly violated.  Indeed, COAF's

notice almost identically parrots the "safe harbor" form set forth in the UCC for such notices.

        Plaintiffs nonetheless seek windfall statutory damages under the UCC for a

purported violation of the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA").

Specifically, the subject notice stated that COAF would sell the vehicle sometime after ten days

from the date of the notice, whereas Plaintiffs contend that the MVSFA requires a notice of

repossession to provide notice of the holder's intent to re-sell the motor vehicle at the expiration

of fifteen days from the date of mailing.  Although Pennsylvania courts consistently have found

there to be no private right of action and no statutory damages available under the MVSFA,

Plaintiffs nonetheless argue that COAF's notice constitutes a *per se* violation of the "reasonable" notice requirement set forth in the UCC, and thus entitles them to recover statutory damages under the UCC.  In doing so, Plaintiffs improperly seek to read into the UCC a fifteen-day notice requirement and to create a new private right of action for alleged violations of the MVSFA.

Moreover, as a factual matter, COAF contends that it fully complied with the relevant UCC requirement to send a notice of disposition in a "reasonable" manner and in a "reasonable time before the disposition is to take place."  See Pa. C.S. § 9611(b) and cmt. 2. Here, on April 17, 2015, following the repossession of the subject motor vehicle due to Plaintiffs' default on their loan, COAF sent each Plaintiff a Notice of Repossession and Notice of Our Plan to Sell Property (the "NOI Letter"), in which COAF stated that it would "sell the Vehicle at a private sale sometime after 04/27/15."  See Compl., Ex. A.  The NOI Letter also explained that Plaintiffs may "get [their] property back at any time before [COAF] sell[s] it by paying either the reinstatement or redemption amount."  Id.  The letter provided a telephone number and mailing address if the consumer needed "more information about the sale."  Id.

Thereafter, COAF had several communications with Plaintiffs, both in writing and in telephone conversations, in which COAF offered to talk about how Plaintiffs could "get their vehicle back"  and that COAF wanted to work with Plaintiffs to get their vehicle back. Plaintiffs, however, failed to make the required payment to reinstate their loan and get their vehicle back.  Notably, they do not contend that they were somehow prevented from doing so by COAF.  Indeed, COAF did not sell Plaintiffs' vehicle until approximately July 1, 2015—almost two and one-half months after the date of the NOI letter, and after such time that Plaintiffs apparently were represented by counsel.

II.      **CLASS DISCOVERY SOUGHT BY PLAINTIFFS**

Based on the class definitions set forth in the Complaint, COAF estimates there to be approximately 1,329 accounts that fall within the "Repossession Notice Class."[1]  Through this motion, Plaintiffs demand the production within 10 days of the "loan files"[2] of each and every absent class member, with no redactions for identifying information of these individuals.  As explained to Plaintiffs' counsel, COAF estimates that such a production—limited to loan documents, relevant correspondence, and activity/transaction notes—could yield well over 155,000 pages and take several months to collect, review, and produce, including to review for possible attorney-client privilege issues and to redact names and other identifying information about the putative class members (all of whom are or were customers of COAF).

Accordingly, although there is no singular "loan file" with respect to its customers, COAF offered to produce relevant loan, correspondence, and account documents pertaining to a random, reasonable sample of the putative class members.  In addition, COAF agreed to provide a spreadsheet comprised of information from COAF's business records, which would include the following relevant information for each putative class member:

(i)      unique identifier for each borrower and co-borrower;

(ii)     original note amount;

(iii)    date of repossession;

(iv)    date the NOI letter was sent to the borrower and co-borrower (as applicable);

---

[1]   Based on Plaintiffs' proposed class definitions, at this time COAF does not believe there are any putative class members within the other "classes" identified in the Complaint.

[2]   As part of this request, Plaintiffs demanded the production of every loan contract, repossession notice, post-sale notice, and all documents concerning the repossession, transportation, reconditioning, repair, storage, and/or sale/auction of the repossessed vehicle; all correspondence or collection letters COAF sent to or received from the class member, call logs, any bankruptcy or deficiency lawsuit COAF or COAF's agents filed against any class members, and the class members' complete account history.  See Plaintiffs' RFP No. 6.

(v)     outcome of the repossession (e.g., sale or redemption);

(vi)    date of any sale of the vehicle;

(vii)   original balance amount/amount financed;

(viii)  total finance charge;

(ix)    date of the post-sale/deficiency balance letter to the borrower and co-borrower (as applicable); and

(x)     amount of current deficiency balance, if any.

COAF stated that it intended to redact identifying information about the absent class members from these documents.  Aside from this proposal with respect to class discovery, COAF already has produced to Plaintiffs relevant documents pertaining to the two named Plaintiffs, as well as sample notices and letters COAF used during the relevant time period.

Although Plaintiffs' counsel initially represented that he would agree to a reasonable sampling of class discovery, counsel apparently has reneged on that suggestion. Given that counsel is demanding production within *ten days* of the Court's ruling on this Motion, COAF would not be permitted any reasonable opportunity to review the documents prior to production.  Essentially, Plaintiffs are demanding that an incredibly broad range of documents be turned over without any review whatsoever, even for possible privilege issues.  Furthermore, counsel wants COAF to turn over the names and other identifying information of absent class members, who counsel does not even represent at this pre-certification stage.  Such an approach clearly is inconsistent with federal case law governing class action discovery.

Ignoring COAF's concerns regarding the scope and burden associated with such a large production, and also ignoring the case law identified by COAF approving of the use of sampling, Plaintiffs proceeded to file the instant 11-page Motion.  For the reasons outlined below, Plaintiffs' Motion should be denied.

## III.    ARGUMENT

### A.    Legal Standard

The Third Circuit has not established a "bright line" regarding the extent to which pre-certification discovery of the identity of potential class members is appropriate, but pre-certification discovery of unnamed class members generally is permitted only upon the "demonstration of need."  See Manual for Complex Litigation (Fourth) § 21.14 (2004).[3]  At the pre-certification phase, the Court "has the authority to limit pre-certification discovery to evidence that, in its sound judgment, would be 'necessary or helpful' to the certification decision, given the requirements of Federal Rule of Civil Procedure 23."  Burkhart-Deal v. Citifinancial, Inc., No. 8-1289, 2009 WL 1750915, at *1 (W.D. Pa. June 19, 2009) (citation omitted)).  "The discovery permitted must be sufficiently broad in order that the plaintiffs have a realistic opportunity to meet [certification] requirements; at the same time, the defendant must be protected from discovery which is overly burdensome, irrelevant, or which invades privileged or confidential areas.  Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification."  Id.

### B.    Plaintiffs Have Failed to Demonstrate a Need for "Loan Files" For All Absent Class Members; A Reasonable Sample of Such Files is Appropriate.

Understanding that Plaintiffs may be entitled to certain pre-certification discovery of absent class members, COAF offered to produce relevant loan documents for a reasonable sample of the absent class members, a process which has been approved by numerous other federal courts considering similar pre-certification discovery issues.  See, e.g., Hinterberger v.

---

[3]    Although the Manual for Complex Litigation is not binding law, it is edited by a panel of federal judges, and courts generally follow and cite to its procedures for class action litigation.  See In re Nat. Football League Players Concussion Injury Litig., 775 F.3d 570, 583 (3d Cir. 2014) ("[M]any district court judges rely, and rightfully so, on the Manual for Complex Litigation in managing class actions."); In re Plastics Additives Antitrust Litig., No. CIV.A. 03-2038, 2004 WL 2743591, at *4 (E.D. Pa. Nov. 29, 2004) (relying on Manual for analysis of whether bifurcation of merits and class discovery was warranted)

Catholic Health Sys., 284 F.R.D. 94, 103 (W.D.N.Y. 2012) (use of sampling methodology for discovery in class action may be appropriate)); McPherson v. Canon Bus. Solutions, Inc., 2014 WL 654573, at *9 (D.N.J. Feb. 20, 2014) (approving 10% random sample to balance plaintiff's need against burden of production of defendant's records in class action based on alleged violations of Fair Credit Reporting Act); Seabron v. American Family Mut. Ins. Co., 862 F. Supp. 2d 1149 (D. Co. 2012) (approving 10% sample of approximately 1,600 members); Gelfand v. Special Care Hosp. Management Corp., 2010 WL 2399693, at *4 (E.D.N.Y. June 10, 2010) (approving discovery of patient records by random sampling "to reduce the otherwise heavy burden of redaction and production which rests primarily with the defendant institutions and facilities"); Smith v. Lowe's Home Centers, Inc., 236 F.R.D. 354, 357–58 (S.D. Ohio 2006) (limiting discovery in class action litigation against employer to "statistically significant representative sampling"); Miller v. Air Line Pilots Ass'n, 108 F.3d 1415, 1425 (D.C. Cir. 1997) ("[S]ome sort of sampling technique might well provide the appropriate balance between [plaintiff's] interest in data that is accessible and informative and [defendant's] concerns that the request be manageable.").

       In Hart v. Nationwide Mut. Fire Ins. Co., 270 F.R.D. 166, 168-69 (D. Del. 2010), the district court refused to compel defendant to produce all of its personal injury protection (PIP) files from 2002-2008 to the plaintiff.  The court determined that "[s]uch a voluminous and far-reaching request of documents [was], in the Court's view, significantly broader than is necessary for Plaintiff to research the numerosity, typicality and commonality of the proposed class, and to prepare its class certification motion."  Id.  The court mentioned it would entertain a more narrowly tailored request for defendant's PIP files, such as a "sample of Defendant's PIP

files which would provide Plaintiff with enough information to make its certification arguments without being unduly burdensome on Defendant."  Id.

Although COAF's counsel identified the foregoing case law to Plaintiffs' counsel in their email discussions preceding the filing of this Motion, Plaintiffs failed to address any of those cases in their Motion.  Plaintiffs' only apparent retort is to cite to two state court matters, in which state court judges approved of the production of loan files for absent class members in much smaller putative classes.  Of course, such state court decisions are not controlling on this court.  Plaintiffs' counsel also fails to acknowledge that the district court in the very similar case of Brennan v. Community Bank, N.A., U.S. Dist. Ct., M.D. Pa., No. 13-cv-02939 (MEM), in which Plaintiffs' counsel represented one of the named plaintiffs, approved the use of sampling for the production of loan documents.  In that case, which also involved claims under the UCC concerning the content of notice of repossession letters, the district court ordered the defendant to produce a sample of 35 files out of approximately 400 files in their counsel's possession, a sample size of approximately 8 - 9%.  Id. at Doc. 40 (March 4, 2014 Order).

Here, Plaintiffs have failed to demonstrate the relevance of the requested documents, much less any need for the production of over 1,300 "loan files" of absent class members in order to satisfy the elements for class certification in this case.  In their Motion, Plaintiffs claim that a review of every file is required in light of COAF's intent to challenge class certification based on the presence of "unique" and individualized issues and due to Plaintiffs' apparent desire to test and challenge the class spreadsheet and COAF's calculations of the class size.  Neither of these arguments, however, demonstrates a need for the production of over 1,000 files of absent class members here.  The proposed sampling, along with the other documents being produced, will provide Plaintiffs with all the relevant information that they may need to

meet their certification requirements.  Plaintiffs further likely will depose a COAF representative

regarding the preparation of the spreadsheet based on COAF's business records and COAF's

calculation of the class size.  There simply is no need for the production of all of the underlying

records requested by Plaintiffs for approximately 1,329 accounts, particularly given the narrow

issues in this case concerning the content and mailing of the subject notices.  Indeed, Plaintiffs'

outright rejection of the sampling proposal and their demand to review each and every putative

class members' file to support their claims suggests that this action simply is <u>not</u> suitable for

adjudication on a class-wide basis.

    In sum, in light of the volume and burden of collecting, reviewing, and producing

such files, and the concerns outlined below regarding Plaintiffs' counsel's attempt to obtain the

identities of absent class members, COAF respectfully requests that the Court enter an Order

limiting pre-certification discovery to a reasonable sample.  Consistent with the above case law,

COAF suggests a sample size of 10% of the putative class in this case.

   **C.**  **Plaintiffs Are Not Entitled to Discovery of Personal Identifying Information**
     <u>**of Absent Class Members at The Pre-Certification Stage.**</u>

    Courts strive to ensure that pre-certification discovery is not used as a tool for

lawyers to search for an adequate class representative or as a means to identify prospective class

members.  See <u>In re Mortgagors of Temple-Inland Mortg. Corp.</u>, CIV. A. 99-CV-4633, 2001 WL

177181, at *3 (E.D. Pa. Jan. 24, 2001) (refusing Plaintiffs' counsel to use the Federal Rules of

Civil Procedure "as a device to force defendant to assist them in finding a [lead] plaintiff and

establishing subject matter jurisdiction so that they can sue defendant") (collecting cases for

proposition that plaintiffs' attorneys cannot use the discovery process as a means to identify

prospective class members).  "The most common flaw in some precertification discovery

decisions is the unstated assumption that the plaintiffs' lawyers are entitled to information about

absent class members because they represent the class. While this may at least be theoretically true during postcertification discovery, it surely is not the case in the precertification stage. ***The plaintiffs and their attorneys are acting alone, seeking to eventually represent the class. But until the court certifies the class, they have no special relationship with the absent class members***.”  Jeff Kosseff, *The Elusive Value: Protecting Privacy During Class Action Discovery*, 97 Geo. L.J. 289, 306 (2008) (emphasis added).[4]

Several federal courts agree that identifying personal information of absent class members is not “within the scope of legitimate discovery.”  See, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 353-56 (1978).  Consequently, courts routinely do not permit putative class counsel to obtain discovery of class members’ identities at the precertification stage.  Such courts often express “concern that plaintiffs’ attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of [class] certification” and for that reason refuse to allow discovery of absent class members’ identities at the pre-certification stage.  See, e.g., Dziennik v. Sealift, Inc., No. 05-CV-4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006); Hatch v. Reliance Ins. Co., 758 F.2d 409, 416 (9th Cir. 1985) (affirming denial of motion to produce names of similarly situated investors); In re Mortgagors of Temple-Inland Mortgage Corp., No. Civ. A. 99-CV4633, 2001 WL 177181, at *2 (E.D. Pa. Jan. 24, 2001) (finding without merit plaintiffs’ counsel’s argument that defendant can be ordered to produce names and addresses of putative class members in preliminary discovery in

---

[4]    By way of contrast, in Pennsylvania state-wide class actions, unnamed class members are generally considered parties to the litigation at the time the putative class action Complaint is filed and thus are “clients” of class counsel. See In re Bridgeport Fire Litig., 8 A.3d. 1270 (Pa. Super. 2010) (citing Bell v. Beneficial Consumer Discount Co., 348 A.2d 734 (Pa. 1975)). This distinction in the treatment of absent class members in state and federal courts is illustrated in the differing procedural rules governing settlement of class actions.  The Pennsylvania rules governing class actions require court approval of a settlement of a class action as well as a discontinuance *pre-certification* of the class.  See Pa. R. Civ. P. 1714.  There is no such requirement in Fed. R. Civ. P. 23 for the approval *pre-certification* of the representative party’s dismissal of a putative class action. See Fed. R. Civ. P. 23(e).

order to allow the class to proceed); <u>Flanigan v. Am. Fin. Sys. of Ga.</u>, 72 F.R.D. 563, 563 (M.D. Ga. 1976) ("Rule 23 should not be used as a device to enable client solicitation").  In other instances where it was determined that redactions of certain identifying information inhibits the Plaintiff's ability to understand the produced documents, this Court has ordered the defendants to replace the redactions of identifying information with a unique numerical identifier for that class member instead of revealing the identifying information.  <u>See, e.g.</u>, <u>Enslin v. Coca-Cola Co.</u>, No. 2:14-CV-06476, 2016 WL 7013508, at *2 (E.D. Pa. May 13, 2016), *reconsideration denied*, No. 2:14-CV-06476, 2016 WL 7042206 (E.D. Pa. June 8, 2016).

Once again, Plaintiffs in this case have not offered any explanation and/or demonstrated any legitimate need for the names and other personal identifying information of absent class members., who Plaintiffs' counsel does not yet represent.  Particularly if all the "loan files" are produced, COAF is concerned—a concern shared by the courts in several of the foregoing decisions—that Plaintiffs' counsel simply wants these names as a tactic (1) to potentially identify a new class representative(s) should Mssrs. Langer prove not to be adequate representatives themselves and/or (2) to fish for new claims and new clients.  Plaintiffs should not be entitled to the discovery of personally identifying information of absent class members at this stage of the litigation.

IV.     <u>CONCLUSION</u>

For the foregoing reasons, COAF respectfully requests the Court deny Plaintiffs' Motion to Compel and enter an Order limiting pre-certification discovery to a reasonable sample of 10% of the putative class size.  In addition, COAF respectfully requests that the Court deny Plaintiffs' request for identifying information of absent class members prior to class certification,

and permit Defendant a reasonable opportunity (at least 30 days) to collect, review, and produce the agreed-upon sample size.

Respectfully submitted,

*/s/ Christine M. Debevec*
Christine M. Debevec (Pa. Id. No. 88107)
Samantha B. Kats (Pa. Id. No. 316178)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
T:  (215) 564-8000  F:  (215) 564-8120
Email:  CDebevec@stradley.com

*Attorneys for Defendant,*
*Capital One Auto Finance, a division of*
*Capital One, N.A.*

Dated:  February 7, 2017

<u>**CERTIFICATE OF SERVICE**</u>

I, Christine M. Debevec, hereby certify that on February 7, 2017, a copy of the foregoing Response in Opposition to Plaintiffs' Motion to Compel was filed electronically via the Court's ECF system and is available for viewing and downloading from the Court's ECF system, and that all counsel of record were served with a copy of the foregoing motion via the Court's ECF System

*/s/ Christine M. Debevec*
Christine M. Debevec

# 3134172