IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY LANGER and JAMES LANGER, | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | No.: 2:16-CV-06130-HB |
| | ) | |
| | ) | |
| CAPITAL ONE AUTO FINANCE, a | ) | |
| division of CAPITAL ONE, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF SECOND MOTION TO COMPEL DISCOVERY

AND NOW COME Plaintiffs, by and through their undersigned counsel, and respectfully files this Brief in Support of their Second Motion to Compel Discovery, stating as follows:

On December 20, 2017, Plaintiffs served their First Set of Class Discovery on Defendant ("COAF").  On January 23, 2017, COAF served its Responses to those discovery requests.  While the Court has ruled on one discovery dispute (the loan files of putative class members)(Doc. 14), Plaintiffs discovered that the resolution of that issue was based on misinformation and, therefore, has resulted in prejudice to Plaintiffs.[1]  Furthermore, several other responses were inadequate for the reasons

---

[1] Attorney Christine Debevec previously represented Defendant and has withdrawn her appearance.

described below. Plaintiffs request that the Court enter an Order in the form attached to their Motion, compelling COAF to provide complete responses to those discovery requests. A copy of the relevant challenged discovery requests and responses are attached as **Exhibit 1**, respectively.

### Preservation of Right to Discovery

Replacement counsel, Joseph Kelleher, has agreed to provide several of the discovery items that Plaintiffs are moving to compel including the *entire* file of the Plaintiffs (Document Request; 2) the identification of the software system used by COAF (Interrogatory 3); and 3) the Pennsylvania "Matrix." Plaintiff's counsel expects that this information will be provided well before scheduled depositions in this matter scheduled for early June. However, as a matter of efficiency, these discovery requests are referenced herein so that, if they are not provided, Plaintiffs are not prejudiced by the delayed production.

### Interrogatory No. 2

Interrogatory No. 2 reads as follows:

IDENTIFY the total number of people who comprise the (putative):

(A)     REPOSSESSION NOTICE CLASS, and state how YOU computed it;
(B)     POST SALE NOTICE CLASS, and state how you computed it;
(C)     COBORROWER CLASS, and state how YOU computed it; and,

2

attach DOCUMENTS which support the BASIS for YOUR CALCULATIONS or figures (including any REPORTS, including spreadsheets).

In response to 2(A), COAF stated that it *estimated* that there *may* be *approximately* 1,329 *accounts*. COAF must remove all the waffle-words and provide a real answer to this Interrogatory stating the number of class members, including co-borrowers for the Repossession Notice Class and the Coborrower Class.[2] Further, the interrogatory sought the number of people in each class, not the number of *accounts*.

COAF, by letter dated May 11, 2017 (**Exhibit 2**), did not agree to such a stipulation, but stated that it would produce a revised version of the spreadsheet it has already provided identifying which accounts have co-borrowers. While COAF has an obligation to provide an accurate spreadsheet, it should answer this straightforward discovery request.

A portion of COAF'S response to subsections (b) and (c) reads as follows:

> (B) & (C) Based on the purported class definitions in the Complaint, COAF has not identified any putative class members in the "Post Sale Notice Class" and the "Coborrower Class." Instead, COAF **believes** that it sent **separate** NOI Letters [Post-Sale Notice] to coborrowers during the relevant period of time and that it

---

[2] Plaintiffs are not pursuing their Post-Sale Notice Class. Based on the discovery presented, Plaintiffs are willing, for discovery purposes at this time, to reduce its Co-Borrower class to all borrowers who COAF did not send a *separate* Post-Sale Notice as discovery to date has shown that COAF sent only one Post Sale Notice for two borrowers; that the singular notice was sent via certified mail to the primary borrower. Plaintiffs will most likely narrow the class definition for purposes of class certification; however, the discovery compelled herein will establish whether COAF's Post-Sale Notice is otherwise commercially unreasonable.

> properly sent "Post Sale Notices" to borrowers and coborrowers that contained all the required information set forth in the Pennsylvania.

> COAF's investigation is ongoing, and COAF will supplement this response to the extent necessary.

COAF has not, however, supplemented its response to date, which is requested.

Notably, Defendant's response that it **believes** that it sent separate notices in all cases is not satisfactory. A belief is not a legitimate basis to deny a discovery request especially when, as here, there is an allegation and evidence setting forth a prima facie case. Notably, Defendant certified its discovery responses, and stated that its certification was pursuant to 18 USC §1746, which does not permit certification based upon a "**belief**," but requires a verification that the information is "true and correct."  Defendants cannot simply say they "believe" something in an answer to discovery, when all of the information required to fully answer the question beyond a belief is within their control and they utterly refuse to definitively answer the request, without any legitimate basis.

At the in-person conference, Ms. Debevec assured the Court that **separate** notices were sent; however, the spreadsheet as well as the documents in Plaintiffs' file tends to establish otherwise. Accordingly, Plaintiffs seek a responsive answer to 2(B) as well, limited *only* to co-borrowers who were not sent a **separate** Post-Sale Notice.

4

## COAF should Produce Files of a 10% Sample of Post-Sale Notice Class

Based on Ms. Debevec's mis-statement, Plaintiffs' counsel did not request that the Court order a similar sample for the Post-Sale Notice Class. Plaintiffs now request that the Court compel COAF to produce a 10% sample of the Post-Sale Notice Class (though limited to accounts of co-borrowers).

Importantly, Plaintiffs do <u>not</u> want to unduly delay the class certification particularly as the production of these co-borrowers' files is not expected to affect the certification of the Notice of Repossession Class. COAF can produce these files in unredacted form subject to the confidentiality order. If, despite the existence of the confidentiality order, however, COAF elects to redact personally identifiable information, Plaintiff should not be prejudiced by such delay. COAF certainly has the resources to produce this discovery in short order.

### Interrogatory 3

IDENTIFY the name(s) of all software system(s) and the name of the developer/manufacturer that YOU use (or used) at any time during the RELEVANT PERIOD to maintain any information CONCERNING any of the putative class members and the use of the NOTICE OF REPOSSESSION and POST-SALE NOTICE, including the beginning and ending date(s) of such use.

COAF responded: "COAF objects to this interrogatory, because it seeks information that is neither relevant to any party's claim or defense nor likely to lead to the discovery of admissible evidence in this litigation."

COAF, in its May 11, 2017 letter, agreed to identify the systems. (Letter

attached as **Exhibit 2**).  Plaintiffs ask this Court to formalize Plaintiffs' right to this information via court order.

### Interrogatory No. 6

In Interrogatory No. 6, Plaintiffs asked COAF to: "IDENTIFY (by caption, docket number and court) any deficiency actions that it had filed against any member of the class. COAF's response was that "COAF has not identified any responsive information, COAF's investigation is ongoing, and COAF will supplement this response to the extent necessary." To date, COAF has not supplemented this response, which is requested.

Prior litigation against class members is certainly relevant for two reasons: First, such information will further underscore the need for Rule 23(b) equitable relief – to enjoin collection activities, which Plaintiff is also seeking. See, Request for Relief "D" "E" "F" and "G." Ad damnum Clause attached as **Exhibit 3**. If Defendant has not filed any such suits, it should so state.

Second, filing deficiency lawsuits against class members has the effect to reduce the class size --- a clear answer to Interrogatory 5 (below) that COAF also dodged. The size of the two putative classes to be pursued is certainly relevant to class certification and, if it is being reduced by having some borrowers either strapped with judgments, then such would explain why COAF has not stated the number of class members.

## Interrogatory 5

Plaintiffs have requested in Interrogatory 5 to:

> IDENTIFY what efforts, if any, YOU have taken (or are taking) which has had (or will have) the affect or consequence of reducing the number of class members in any of the putative CLASSES thereby reducing potential damages, irrespective of whether YOU intend (or intended) for such consequence(s).

COAF's response:

> COAF objects to this request on the grounds that it is vague and ambiguous in terms of its reference to "efforts" to "reduc[e] the number of class members' and to "reduc[e] potential damages." COAF further objects to this request on the grounds that it appears to seek information that is neither relevant to any party's claim or defense nor likely to lead to the discovery of admissible evidence in this litigation.

As stated above, the size of the putative class is certainly relevant. To the extent that COAF is engaging in active efforts to engage in collection efforts also warrants the immediate imposition of an injunction against such collection efforts via Rule 23(b)(2) relief, which Plaintiffs have also requested. See **Exhibit 3**.

## Interrogatory No. 9

Interrogatory 9 states:

> With respect to IRS Form 1099C, please state whether YOU have issued or sent a Form 1099C to any CUSTOMER CONCERNING their DEFICIENCY. If "yes," please state the number of CUSTOMERS to whom YOU issued or sent a Form 1099C and the BASIS for issuing the 1099C. (See Box 6 on the back of IRS Form 1099C).

Capital One's Answer is as follows:

7

> COAF objects to this interrogatory, because it seeks information that is neither relevant to any party's claim or defense nor likely to lead to the discovery of admissible evidence in this litigation.

COAF is incorrect that the requested information is irrelevant. To the contrary, this interrogatory is <u>highly</u> relevant because Capital One has asserted the affirmative defenses of set-off and recoupment (Affirmative Defense No. 9). **Exhibit 4**. In order for a set-off to exist, there <u>must</u> be a debt owed by the class member to COAF – the debt cannot have been <u>forgiven</u>. COAF appears to reason that the deficiency claim on a class member's account is such a debt. However, if that deficiency has previously been forgiven, it can no longer serve as a set-off against amounts owed by COAF to the Class Member.[3]

IRS regulations require a lender to issue a Form 1099-C to a borrower when the lender forgives a debt. Thus, the issuance of a 1099-C to a particular class member is strong evidence that the lender has, in fact, forgiven or written off the debt. In *In re: Welsh*, No. 06-10831ELF, 2006 WL 3859233, at 1 (Bankr. E.D. Pa. Oct. 27, 2006), a creditor filed a proof of claim and the debtors objected.

> The Debtors argue that the evidence demonstrates that [the creditor] has discharged or canceled their indebtedness by issuing the Form 1099–C which, in turn, caused them to incur a tax liability for the discharge of indebtedness.

---

[3] Attached as **Exhibits 5** are COAF's IRS 1099-C forms which COAF has actually issued to owners of repossessed vehicles. They show that the forgiveness of debt was under "Identifiable Event G," which is a "Decision or **policy to discontinue collection**." The policy regarding the issuance of these 1099-C forms is relevant as such impacts directly on the claims, defenses, and certification issue of this case.

See, 26 U.S.C. § 61(a)(12). The Debtors' theory is that having discharged the indebtedness, [the creditor] may not seek to collect the debt by filing a proof of claim in this bankruptcy proceeding.

*Id.* at 1. The *Welsh* court accepted the debtors' argument, stating that there was legal authority supporting the Debtors' position. *Id.* Analogously, Plaintiff's position here is that having discharged the indebtedness, COAF may not seek to set-off or recoupment for the forgiven debt against any liability it has to a class member for violating the UCC.

In dictum in *In re Crosby,* 261 B.R. 470, 474 (Bankr. D. Kan.2001), the court stated:

> The actual (or at least potential) tax consequences of the form make it inequitable to allow the [creditor] to enforce its claims against the debtors. Until the [creditor] corrects or withdraws the 1099–C it mistakenly filed about each debtor, it cannot enforce its claim against that debtor, just as it would have no right to do so if it had assigned the debt and not undone the assignment.

*Id.* at *2.

The *Welsh* court also cited *Franklin Management Corp. v. Nicholas,* 2001 WL 893894 (Conn. Super. July 12, 2001), stating "the court dismissed an action in mortgage foreclosure in which the defendant proved that he had received a Form 1099–C in connection with the mortgage indebtedness. The court reasoned that:

> [i]t would be inequitable ... to require that [the debtor-defendant] report the discharge of debt as income on his federal tax return or face the potential tax consequences and hold that the plaintiff may continue to hold him liable

on the debt."

*Id.* at *4.  The *Welsh* court stated that the 1099-C's were "evidence which suggests

that … Citifinancial canceled the Debtors' liability on the subject indebtedness."

COAF, in its May 11, 2017 letter, argues that case law states that the issuance

of a 1099-C "is not an admission of a debt's cancellation" and "as a matter of law,

do not themselves operate to legally discharge debtors from liability."  **Exhibit 2**.

It's reasoning is misplaced.  Even if the cases Defendants cited were binding, they

only say that a 1099-C is not an *admission* of debt cancellation or an automatic debt

cancellation.  However, *Welsh,* the only Eastern District case cited on this issue,

states that 1099-C's **are evidence** of debt cancellation.

It is, therefore, clear that the information requested by Plaintiffs in

Interrogatory No. 9 concerning COAF's issuance of Forms 1099-C is highly relevant

to this matter and that COAF should be compelled to provide that information. See,

Correspondence to Defense Counsel dated April 26, 2017. **Exhibit 6**.

### **Document Request No. 2**

Document Request No. 2 from Plaintiff's First Set of Class Discovery sought:

2. All DOCUMENTS which CONCERN, describe, or relate to
YOUR practices, policies, and/or procedures for:

(a) SENDING FORMS, notices, or writings of any type
whatsoever in connection with the repossession of a vehicle, the fees
charges or costs incurred relating to the repossession and/or storage of
repossessed vehicles, the resale of a vehicle post-repossession during
the RELEVANT PERIOD;

(b) the collection of any DEFICIENCY during the RELEVANT PERIOD;

(c) the credit reporting of CUSTOMERS accounts and any DEFICIENCY or other amount reported, and, (d) the issuance or use of IRS 1099-C Forms during the RELEVANT PERIOD.

This request includes but is not limited to any and all collection manuals, handbooks, or other directives which were drafted during or otherwise CONCERN the RELEVANT PERIOD.

COAF interposed a lengthy objection including that the request was overly broad, unduly burdensome, irrelevant, and improperly sought proprietary information, trade secrets, etc. Nevertheless, COAF produced a 3-page heavily redacted document,[4] which, for the following reasons, is a grossly deficient response.

1. **Request 2(a): No Policies Regarding Forms were Produced**: The document that was produced fails to address *any* policies and procedures associated with the form notices sent to Plaintiffs or putative class members (i.e., particularly forms: "NOI_PA_739" "NOI_PA_839" and "Deficiency_Balance_Gen 600" (See, **Exhibit 6**) Among the issues in question is the Post-Sale Notice form, which COAF references as the "Deficiency_Balance_Gen 600" form; however, absolutely nothing regarding same has been provided.

---

[4] A copy of the 3/10/17 letter to the Court with the attached Exhibits (COAF 148-150) is attached as **Exhibit 7**.

2. **Request 2(b)**: No policies regarding the collection of deficiencies were produced. COAF's objections based on burden and overbreadth are obviously without merit. Among the elements of relief sought by Plaintiffs in their Complaint is to "[e]njoin the collection of any invalid and disputed deficiency balances of…Plaintiffs and class members…" (*Id.* at 20). COAF's relevancy objection is, therefore, equally meritless.

3. **Request 2(c): No Policies Regarding Credit Reporting were Produced**: COAF's policies regarding reporting to credit bureaus concerning Class members' payments towards deficiencies, that may not even be valid due to COAF's noncompliance with the UCC, is clearly relevant. Whether or not COAF's notices complied with the UCC depends, *inter alia*, on what COAF's real charges for repo services, transportation, storage repair and titling ***actually were***. COAF's policies on these issues are critically relevant to Plaintiffs' claims because COAF is mandated by law to only charge the borrower for reasonable actual costs. Furthermore, to the extent that COAF is inserting inaccurate or inflated amounts of debts on borrower's credit reports would underscore the need for Rule 23(b)(3) relief.

4. **Policy Unduly Limited in Time Period**: The first page of COAF's purported "policy document" shows that the document is effective as of Sunday,

2/1/2015. Plaintiffs' class period goes back **6 years**[5] from the filing of the complaint and Plaintiffs require policies and procedures in effect at any time during that entire period, from October 2010 to present.

5.   **Redactions Improper**: As a confidentiality order has been entered in this case (Doc. 10), there should be no redactions to this document. Indeed, COAF has clearly redacted the very substance of this document without leave to deviate from the Stipulated Order mandating that any confidential discovery simply be marked as "confidential." COAF, in its May 11, 2017 letter, states that the information it redacted "is wholly irrelevant to the claims and defenses in this action," and that it only redacted references to other states.  Plaintiffs have no way to know whether what was redacted is irrelevant, and should be able to review the entire unredacted policy documents that were referenced by COAF when preparing and mailing the subject notices to Plaintiffs and class members, especially given that a confidentiality order is in place.

6.   **Matrix Improperly Withheld**: Each of the three half-pages that make up this document refers to an "SLQ State Law matrix," which Defendant has failed to produce.

---

[5] The statute of limitations for UCC Article 9 is 6 years. *See, Cubler v. Trumark,* 83 A3d 235 (2013).

The Matrix is highly relevant. What COAF's <u>prior</u> and <u>subsequent</u> practices were (are) in Pennsylvania as whether to afford borrowers with "10 day" minimum redemption period (the practice challenged in the case *sub judice* as not commercially reasonable) or "15 day" is highly relevant. Any modification from the "10 day" practice will create an inference that such was not commercially reasonable. The admissibility of this information is not a reason to withhold discovery. While COAF's counsel indicated that it will provide a Pennsylvania Matrix, it has yet to provide any information.

7.    **<u>Policy Pertaining to the Issuance or Use of IRS 1099-C Forms</u>**:

COAF's refusal to produce documents responsive to Request 2(d) is especially problematic. In Document Request 2(d), Plaintiffs are seeking the very documents pertaining to the "decision or policy to discontinue collection" which is relevant as to whether COAF is entitled to a set-off or recoupment affirmative defense. This information is also relevant to an attack as to adequacy of the class representatives (i.e., some class members' debts are forgiven while others, including the Plaintiffs', are not).

COAF repeated numerous times in its objections that the requested information was not relevant to the issues in the case. As set forth above, each of COAF's individual relevance arguments is unfounded. However, even assuming, *arguendo*, that any of COAF's individual relevance objections had any merit, they

would still not justify COAF's refusal to provide requested information, because those objections are based on a myopic view of the issues in this case, and the concept of "commercial reasonableness."

Section 9610(b) of the UCC provides that "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable. Thus, an argument that specific information is irrelevant to a particular, narrow claim, would not absolve COAF of its duty to respond because the requested information would bear on the broader commercial reasonableness question.

By way of example, COAF's refusal to produce its policies on redemption because COAF feels it cured its improper statement of a 10-day redemption period is untenable because its issuance of a "curative notice" after reinstatement of the contract, might itself, be commercially unreasonable.

For the reasons set forth above, discovering information about COAF's potential inapplicable setoff claim vis-à-vis its policy to forgive such debts according to penalty of perjury pursuant to tax documents filed with the IRS is relevant to this claim.  The potential discharge of claims, in turn, is obviously affected by COAF's policies concerning the issuance of Forms 1099-C to borrowers.

## Document Request No. 3

This request asks for:

3. All DOCUMENTS that relate to, discuss, or concern YOUR policies or practices CONCERNING the repossession, transportation, storage, repair, titling or retitling, reconditioning, and/or sale or resale of repossessed vehicles in Pennsylvania or the COLLECTION of any DEFICIENCY balance, including electronically stored information, at any time during the RELEVANT PERIOD.

Defendant responded:

**RESPONSE:** COAF objects to this request on the grounds that it is overly broad and unduly burdensome, and that it seeks documents that are neither relevant to any party's claim or defense nor likely to lead to the discovery of admissible evidence in this litigation. Based on the allegations in the Complaint, COAF's policies and procedures are entirely irrelevant to a determination of the claims and defenses in this action, which involve whether Plaintiffs received reasonable notice of COAF's intent to dispose collateral and whether COAF's notices complied with the UCC. COAF further objects to this Interrogatory on the grounds that it seeks proprietary or confidential information, trade secrets, or other sensitive information.

This is not an unduly burdensome or overly broad request. It asks for Defendant's policies for a small number of topics over a certain period. Further, the requested documents are relevant. The Post-Sale Notice sent to Plaintiffs charges $5,279.19 for "Expenses for the retaking, holding, preparing for disposition, processing, and disposing of the collateral, including attorney fees and interest." The UCC requires that the Post-Sale Notice list expenses "which are known to the secured party and relate to the current disposition." 13 Pa.C.S. §9616(c)(4). The Post-Sale Notice does not break down these expenses, or state whether they were

internal expenses or charged by third parties.   The requested policies will help Plaintiff to determine if these expenses are related to the disposition, how they are calculated, and if they are actual and reasonable and not inflated. All of this information pertains to COAF's purported compliance with the Post-Sale Notice claim.

These policies are also relevant because they will allow the Plaintiffs to defend against any arguments the Defendant makes against commonality of Plaintiffs and class members regarding certification, as these policies will show whether and in what ways Plaintiffs and class members were treated and harmed by Defendant in the same manner.

### Document Request No. 6

This request asks for:

> 6.   Your auto loan file for **each named Plaintiffs** [sic] and each (putative) Class Member.

COAF's response:

> COAF objects to this request in that the term "auto loan file" is vague and ambiguous. COAF further objects to this request as being overly broad, unduly burdensome, and premature, because it seeks the production of documents relating to approximately 1,329 accounts of absent class members prior to class certification and without any demonstration of need for the information to satisfy the requirements of Fed. R. Civ. Proc. 23. COAF further objects that the request seeks the production of confidential and non-public personal information about COAF's customers. COAF is withholding documents based on the foregoing objections. Subject to and without waiving these objections, with respect to the named Plaintiffs, COAF is producing

17

herewith its loan file (which includes the application, the loan contract, and other documents pertaining to the sale and financing of Plaintiffs' vehicle); correspondence; and activity notes. Further responding, upon the execution of an agreed-upon confidentiality agreement, COAF will agree to produce a spreadsheet (with redactions for identifying information about absent class members) that provides information regarding putative Class Members in the Repossession Notice Class, including date of repossession; city and state of the borrower; outcome (e.g., whether the vehicle was sold or redeemed); date of any sale; original principal balance; original finance charge; and amount of any deficiency balance remaining after the sale of the vehicle. Furthermore, COAF is willing to produce a reasonable sample of the relevant files of putative class members, with identifying information redacted; such files would consist of the following: loan file (which generally includes the application, the loan contract, and other documents pertaining to the sale and financing of the vehicle); correspondence; and activity notes.

Defendant states that "COAF is producing herewith its loan file (which includes the application, the loan contract, and other documents pertaining to the sale and financing of Plaintiffs' vehicle); correspondence; and activity notes." Defendant did not do so.

### COAF did not Produce All Documents Relating to the Named Plaintiffs

While COAF tactically did not want to provide ALL the documents regarding the absent class members, it has no excuse to refuse to provide all of the documents pertaining to the named Plaintiffs. This information is necessary to prepare for their depositions and class certification and is needed immediately. COAF, in its May 11, 2017 letter, stated that it is happy to discuss with Plaintiff "any documents that you believe are missing."

It is not Plaintiffs' responsibility to guess what Defendant did not produce. COAF stated it produced the application, loan contract, correspondence, activity notes, and other documents related to the sale and financing of Plaintiff's vehicle – these are specific categories, and COAF does not state if it is withholding other categories of documents. Plaintiffs requested the Plaintiffs' ENTIRE "loan file," which includes **all** non-privileged documents which relate or discuss the named Plaintiffs. This request includes but not limited to copies of all computer screens relating to this account and documents related to the repossession and disposition of the repossessed vehicle.  These documents should be compelled.

Subsequent to the May 11 letter, COAF's counsel stated that it will produce the "loan file." In light of the difficulty in attempting to obtain these additional documents, Plaintiffs simply request an order to make sure that Defendant produces all documents that refer, relate, or discuss the named Plaintiffs (which are not protected by the attorney-client privilege). To date, no additional documents have been provided.

### COAF's Mis-Statement of Critical Facts at Recent Conference

Your Honor may recall that COAF explained that it was providing **_all_** documents in its possession that could be accessed **_without having to seek documents from third parties_**.

Understandably, the Court did not want to have the parties engage in cumbersome third party discovery for each absent class member even with the limited class sample of 139 files (10% of the Notice of Repossession Class).

As such, the Court compelled COAF to provide only that information purportedly thought to be within COAF's possession which COAF represented to be three discreet items of information: (1) loan documents; (2) activity/transaction notes; and (3) "relevant" correspondence. See, Brief in Opposition to Plaintiffs' Motion to Compel Auto Loan Files under Fed. R. Civ. P. 37(A), (Doc. No. 12). The Court then adopted COAF's suggestion and ordered COAF to produce 10% of the Notice of Repossession Class. (Doc. No. 13)

After a review of the discovery, Plaintiffs' counsel has learned that COAF's prior counsel's representation to the Court that the information in these discreet areas (original loan file, activity file, and correspondence file) actually does not comprise the entire sum of the information in COAF's possession for Plaintiffs and each putative class member. Indeed, COAF possesses significantly more information that it simply tactically elected not to disclose.

To illustrate this matter, Plaintiffs submit a copy of the Post-Sale Notice, **Exhibit 8** which includes information that COAF would, *by necessity*, have known when it prepared this document. The very figures in the document include, *inter alia*, invoices / bills from the auction which sold the repossessed vehicle, the

20

transportation company and storage facility which handled the repossessed vehicle, etc.

The Post-Sale Notice sent to Randy Langer states, in part, as follows:

The Deficiency/Surplus was calculated as follows:
      Aggregate Amount Owed ...........................$9,471.58
      Proceeds from Sale of Collateral ..................$4,700.00

Subtotal
      Expenses for the **retaking, holding, preparing**
      **for disposition, processing and disposing of**
      **the collateral**, including attorney fees
      and interest ...........................................$  729.19

The amount of the deficiency as of 7/5/15 ...............$4,400.77

The information relied upon to make these figures will enable Plaintiffs to better evaluate whether *all* aspects of the disposition, including the calculation of the figures in the notice are "commercially reasonable" pursuant to 13 Pa. C.S. §9610.

**Every** aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms. 13 Pa. C.S. §9-610.

See also, Pars. 15-16 of Complaint which, in notice pleading, broadly pleads the aspect of commercial reasonableness.

Plaintiffs expect that Defendants will assert information conveniently produced in discovery (i.e., information that a defendant redeemed, reinstated, or was sent a curative notice) to attempt to defeat class certification. The additional

information that COAF tactically did not disclose to the Court will likely help Plaintiffs to defend against class certification and limit its exposure.

For example, the information COAF is withholding will likely show, *inter alia*, whether COAF charged a fee as a precondition for a borrower to redeem (purchase) or reinstate their repossessed vehicle; or whether COAF required payment of an excessive or inflated storage or repossession fee. Evidence of this sort of conduct would establish other means of systemic, uniform commercially unreasonable policies and practices.

Therefore, Defendant should be compelled to provide the **entire** electronic file (including all screen shots) for (1) the named Plaintiffs and (2) the sample (139 accounts), including but not limited to documents relating to the purchase, repossession, storage, retitling, and resale of Plaintiff's vehicle and documentation on which COAF relied in the preparation of the Notice of Repossession and Post-Sale Notice are based.

Alternatively, Defendants should not be permitted to contest commonality or typicality elements of class certification.

## Conclusion

COAF is the 8th largest bank in the United States. All of the information requested is readily ascertainable simply by a click of a mouse. The fact that COAF first insisted on a confidentiality order before it produced any discovery is

22

reasonable. However, its requirement that it ALSO be permitted to perform redactions runs counter to the stipulated confidentiality order and has caused (and will cause) unneeded delay in these proceedings. COAF's imposition of improper objections and its withholding of documents coupled with its mis-statement to the Court of information it  has in its possession should not be condoned by this Honorable Court. COAF's approach to discovery, to date, is akin to attempting to convince the Court that the "fox should guard the chicken coop." Plaintiffs respectfully request that the Court compel all requested discovery and provide any additional relief as it deems reasonable in light of COAF's discovery transgressions.

Respectfully submitted,
Shenkan Injury Lawyers, LLC.

Richard Shenkan
Richard Shenkan
*Attorney for Plaintiffs*