

Stradley Ronon Stevens & Young, LLP
Suite 2600
2005 Market Street
Philadelphia, PA 19103-7018
Telephone 215.564.8000
Fax 215.564.8120
www.stradley.com

Joseph T. Kelleher
jkelleher@stradley.com
215.564.8034

May 11, 2017

**Via Email**

Richard Shenkan, Esquire
Shenkan Injury Lawyers, LLC
6550 Lakeshore Street
West Bloomfield, MI 48323
rshenkan@shenkanlaw.com

Re: *Randy Langer and James Langer v. Capital One Auto Finance*,
U.S.D.C. E.D. Pa., No. 2:16-cv-06130-HB

Dear Richard:

I write in response to your May 4, 2017 letter enclosing (i) deposition notices for James Burrows and the corporate designee(s) of my client, Capital One Auto Finance ("COAF"), with proposed deposition dates of June 6 and June 7, 2017, and (ii) a draft motion to compel discovery relating to Plaintiffs' class discovery.

With regard to depositions, as I noted in my earlier email to you, I have forwarded the deposition notices to COAF, and I will be back to you with available dates in June to conduct the depositions. I request that you provide available dates in June for the depositions of Plaintiffs, Randy Langer and James Langer. To that end, I enclose deposition notices with placeholder deposition dates of June 13 and 14, 2017.

With respect to your draft motion to compel, as I previously stated, the motion is premature, as we have not met and conferred to resolve any dispute concerning class discovery. Pursuant to Local Rule 26.1(f), discovery motions must contain a certification by counsel that the parties have made reasonable efforts to resolve the discovery dispute and are unable to do so. Likewise, Judge Bartle's individual procedures require the parties to make a good faith effort to resolve discovery disputes before filing discovery motions. In his individual procedures, Judge Bartle states, "When a discovery dispute arises, counsel are strongly urged to settle it among themselves." Consistent with Judge Bartle's prescribed practice related to discovery disputes, we should endeavor to resolve any issues relating to class discovery before troubling the Court with a discovery motion. To that end, I will respond to the matters set forth in your draft motion to compel, as a means of facilitating the "meet and confer" process.

**EXHIBIT 2**

Richard Shenkan, Esquire
May 11, 2017
Page 2

**Interrogatory No. 2.** This interrogatory asks COAF to identify the number of class members in (A) the "Repossession Notice Class," (B) the "Post Sale Notice Class," and (C) the "Coborrower Class."

With regard to the putative "Repossession Notice Class" (which we also refer to as the "NOI Class"), COAF identified 1,329 accounts where COAF repossessed the collateral vehicles and then sent to the borrowers a Notice of Intent to Dispose of Motor Vehicle ("NOI") that stated that the vehicle would be sold sometime after ten days after the date of the notice (the "10-day NOI") as opposed to sometime after 15 days after the date of the notice. COAF also produced a spreadsheet providing the pertinent data for these 1,329 accounts. As I understand your position, you request that COAF supplement its response to identify the number of unique borrowers and co-borrowers associated with these accounts; you contend that there are 1,865 individuals associated with the identified accounts. The appropriate manner in which to define the class is on an account-by-account basis. Regardless of whether there are one or two borrowers, COAF cannot be liable for duplicative statutory damages. *See* 13 Pa.C.S. § 9528(e). Nonetheless, COAF will produce a revised version of the NOI spreadsheet identifying which accounts have co-borrowers.

In the draft motion, you also request that COAF supplement its interrogatory response with regard to the putative "Post-Sale Notice Class." As I understand it, this class consists of the co-borrowers to whom COAF did not separately mail a post-sale notice explaining the calculation of the deficiency balance on the account in addition to the post-sale notice mailed to the primary borrower. COAF previously produced a spreadsheet identifying 3,540 co-borrowers that fall into this category; however, upon review of the spreadsheet, it appears that there are duplicates and the number of unique co-borrowers is 3,401. COAF will review the available data for the "Post-Sale Notice Class" and produce a revised spreadsheet if necessary.

I understand that Plaintiffs no longer are pursuing claims on behalf of a putative "Coborrower Class" separate and apart from the "Post-Sale Notice Class."

**Interrogatory No. 3.** This interrogatory requests that COAF identify the software systems that it uses to maintain "any information concerning any of the putative class members and the use of the notice of repossession and post-sale notice." (Emphasis omitted.) I struggle to see how the information requested is relevant to class certification in this case, particularly given how broadly the interrogatory is drafted. Nonetheless, COAF will identify the systems from which it gathered the data set forth in the spreadsheets for the NOI Class and the Post-Sale Notice Class as well as the systems from which COAF collected the auto loan files it produced for the agreed 10% sample of the NOI Class.

**Interrogatory No. 5.** This interrogatory asks COAF to identify the efforts it has taken to reduce the number of class members in the putative classes in this case. Honestly, I do not understand what this interrogatory is seeking. In the draft motion to compel, you state that "filing deficiency lawsuits against class members has the effect to reduce the class size," but I do not see how this is so. As explained above, COAF identified the putative class members of the NOI Class based on whether they were sent the 10-day NOI and identified the putative members of the Post-Sale Notice class based on whether they were co-borrowers to whom COAF did not mail a separate

post-sale notice. COAF's filing of lawsuits to collect deficiency balances from putative class members has no impact on the size of the two classes at issue.

**Interrogatory No. 6.** This interrogatory asks COAF to identify the lawsuits, if any, that COAF has filed against putative class members seeking to collect deficiency balances. This information is not relevant to class certification. As noted above, COAF's filing of such lawsuits does not reduce the number of class members. Of course, COAF's collection of amounts owed by individuals on their deficiency balances (through litigation or otherwise) would have the effect of reducing the amount COAF can set off against such individuals' statutory damages, if any. But this individualized merits issue has nothing to do with class certification. Discovery related to COAF's deficiency balance collection efforts should be addressed after the Court rules on class certification.

**Interrogatory No. 9.** This interrogatory seeks information concerning whether COAF issued Forms 1099-C to any putative class members. Such information is not relevant to class certification or to any of the claims or defenses in this action. In the draft motion to dismiss, citing to an Eastern District of Pennsylvania bankruptcy court decision relying two out-of-state decisions, you argue that the issuance of a Form 1099-C somehow precludes a creditor from collecting the underlying debt.[1] The Pennsylvania Superior Court, however, has rejected this proposition. *See Verdini v. First Nat'l Bank of Pa.*, 135 A.3d 616 (Pa. Super. Ct. 2016). The Court in *Verdini* stated that "consistent with the [IRS] regulation's plain meaning, the interpretation by the IRS itself, and the majority of courts in the United States . . . the issuance of a Form 1099-C is not an admission of a debt's cancellation."[2] 135 A.3d at 621. The *Verdini* Court cited favorably to *In re Zilka*, 407 B.R. 684 (Bankr. W.D. Pa. 2009), in which the bankruptcy court held that "Forms 1099-C, as a matter of law, do not themselves operate to legally discharge debtors from liability on those claims that are described in such Forms 1099-C." 407 B.R. at 689. Accordingly, COAF's issuance of Forms 1099-C to putative class members does not affect COAF's ability to collect on the putative class members' deficiency balances (whether through setoff or otherwise). Regardless, issues pertaining to the issuance of Forms 1099-C to putative class members are irrelevant to class certification, and discovery related to such issues should be addressed, if at all, after the Court rules on class certification.

**Document Requests Nos. 2 and 3.** These requests seek COAF's policies and procedures relating to a variety of matters. The claims in this case are based exclusively on (i) COAF having sent the 10-day NOI to the putative NOI Class members (instead of a 15-day notice) and (ii) COAF having not separately mailed post-sale notices to co-borrowers in addition to the post-sale notice mailed to the primary borrowers. COAF's policies and procedures are irrelevant to these claims or COAF's corresponding defenses. Nonetheless, COAF produced the policy documents regarding

---

[1] *In re Crosby*, 261 B.R. 470 (Bankr. D. Kan. 2001); *Franklin Credit Mgmt. Corp. v. Nicholas*, No. CV980546721S, 2001 WL 893894 (Super. Ct. Conn. July 12, 2001); and *In re Welsh*, No. 06-10831ELF, 206 WL 3859233 (Bankr. E.D. Pa. Oct. 27, 2006).

[2] The Court in *Verdini* specifically acknowledged and rejected the "minority position," espoused by the court in the *Nicholas* case, that the issuance of a Form 1099-C is *prima facie* evidence of the creditor's intent to cancel a debt. 135 A.3d at 622 n.9.

Richard Shenkan, Esquire
May 11, 2017
Page 4

the reinstatement period included in post-repossession notices. COAF does not have policy documents specifically addressing the mailing of post-sale notices to co-borrowers.

With regard to the policy documents that COAF already produced, you take issue with the fact that COAF redacted the documents prior to producing them. The redacted information, however, is wholly irrelevant to the claims and defenses in this action. COAF redacted references to states other than Pennsylvania in the policy documents. In this action, Plaintiffs assert claims under Pennsylvania statutes related to post-repossession notices sent to Pennsylvania borrowers and co-borrowers; COAF's practices outside of Pennsylvania are plainly irrelevant. The fact that the Court entered a confidentiality order in this case does not mean that Plaintiffs are entitled to delve into COAF's policies and practices outside of Pennsylvania, which have no bearing on this action.

You also take issue with the fact that COAF did not produce the SLQ State Law Matrix referenced in COAF's policy documents. COAF's internal documents concerning state law requirements in various jurisdictions are not relevant to whether COAF, in fact, complied with the requirements of the Pennsylvania Uniform Commercial Code. Nonetheless, COAF will produce the portions of the SLQ State Law Matrix that relate to Pennsylvania's requirements related to post-repossession notices.

In the draft motion to compel, you specifically note that COAF has not produced policies and procedures relating to: (i) the collection of deficiency balances; (ii) credit reporting; (iii) the issuance of Forms 1099-C; and (iv) "repossession, transportation, storage, repair, titling or retitling, reconditioning, and/or sale or resale of repossessed vehicles in Pennsylvania." None of these matters, however, are at issue in this case. Accordingly, COAF's policies and procedures relating to these matters are wholly irrelevant.

**Document Request No. 6.** This request seeks the auto loan files for Plaintiffs and all putative class members. COAF has produced the key documents in the Langers' auto loan file (*e.g.*, loan documents and activity notes), together with the documents concerning the repossession and sale of the Langers' vehicle and the related notices. I am happy to discuss with you any documents that you believe are missing and ensure that all relevant, responsive documents have been produced.

With respect to the putative class members, COAF has already produced the agreed files for a 10% sample of the NOI Class. COAF never agreed to produce, nor did Plaintiffs demand, files for a 10% sample of the Post-Sale Notice Class. Instead, in your March 10, 2017 letter to the Court, you stated that, with respect to the Post-Sale Notice Class, you only needed either (i) the number of class members or (ii) a stipulation that the putative class meets the numerosity requirement of Rule 23. As noted above, COAF has already produced a spreadsheet with the pertinent data concerning the Post-Sale Notice Class. Given the discrete issue underlying the putative Post-Sale Notice class, namely whether a separate post-sale notice was mailed to the co-borrowers, the production of a sample of the putative class members' auto loan files would serve no purpose other than allowing Plaintiffs to engage in an improper fishing expedition.

Richard Shenkan, Esquire
May 11, 2017
Page 5

    As I noted above, the parties are required to confer in good faith to resolve their discovery disputes, and I am happy to discuss these issues with you further.

Sincerely,

Joseph T. Kelleher

Enclosures

# 3224408