**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RANDY LANGER and JAMES LANGER,       )
                                      )
            Plaintiffs,               )
                                      )        CIVIL CLASS ACTION
                                      )
      v.                              )
                                      )        No. 2:16-CV-06130-HB
                                      )
CAPITAL ONE AUTO FINANCE, a division of )
CAPITAL ONE, N.A.,                    )
                                      )
            Defendants.               )

**BRIEF IN SUPPORT OF PLAINTIFFS' FIRST AMENDED**
**MOTION IN SUPPORT OF CLASS CERTIFICATION**

AND NOW COME Plaintiffs, by and through their undersigned counsel, and request that this Court enter an order determining that this action may proceed as a class action against Capital One Auto Finance, a division of Capital One, N.A. ("COAF") with respect to the Repossession Notice Class (Class I), preserving their right to amend this motion to include Class II and/or III after additional discovery, as discussed at the Court's last case management conference.

## I. PROCEDURAL HISTORY

Plaintiffs originally filed a Motion for Class Certification (or in the Alternative, a Stay of Briefing on Class Certification) and supporting Brief, in the Philadelphia County Common Pleas Court on October 21, 2016, prior to removal. This Court set deadlines for Defendant to respond to Plaintiffs' Motion for Class Certification, and Plaintiff to file any supplemental memorandum in its Scheduling Orders dated December 16, 2016 (Dkt. 8), February 8, 2017 (Dkt. 13), March 6, 2017 (Dkt. 17), and March 23, 2017 (Dkt. 19). However, these scheduling orders were all vacated prior to those deadlines by subsequent orders to enable the parties to attempt to resolve this matter.

After engaging in some discovery, Plaintiffs respectfully submit that they have established

1

sufficient facts to warrant class certification for the Repossession Notice Class (Class I), and file this First Amended Motion and Brief in Support of Class Certification as to Class 1, assuming the Court wishes to entertain such a motion at this time.

As the Court is aware, Plaintiffs have sought a corporate designee deposition and other discovery which the Defendant has objected to. (dkt. 23, 24, 75) These filings have been withdrawn after the conference with the Court on February 13, 2019 in light of the modification of the tiered certification briefing protocol whereby this motion and brief can be amended/supplemented after a short time allowed for additional class discovery. This will enable Plaintiffs also to move for certification with regard to the other two classes and to supplement this brief with additional evidence to better establish the certification of Class I.

Some aspects of those discovery motions dealt liability issues, not class discovery, and the Court has directed the parties to attempt to resolve their differences again, filing a succinct motion as may be necessary thereafter.

Defendant has yet to take the depositions of the named Plaintiffs. In the forthcoming amendment/supplement, Plaintiffs' counsel plans to submit portions of the deposition transcript to establish that the Representative Plaintiffs' adequacy as may be necessary along with other documents.

## II. <u>BACKGROUND FACTS</u>

In April of 2015, COAF, as secured creditor, or its agents, repossessed Plaintiffs' vehicle. On or about April 17, 2015, COAF or its agents sent or caused to be sent a computer-generated form letter addressed to Plaintiffs Randy Langer and James Langer to attempt to alert them, *inter alia,* that the aforesaid vehicle had been repossessed. Plaintiff Randy Langer was designated as a "co-borrower or obligor." A copy of the document (hereafter "Notice of Repossession") is attached as **<u>Exhibit 1</u>**. *See also* Complaint, Ex. A.

Plaintiffs filed their Complaint on October 5, 2016 alleging that the Notice of Repossession sent to Plaintiff and putative class is not commercially reasonable because it violates the MVSFA and the UCC in *pari materia* by failing to provide notice to the buyer of the holder's intent to resell the motor vehicle at the expiration of *15 days* from the date of mailing the notice, as expressly required by 12 Pa.C.S.A. §6254(c)(3) (previously 69 P.S. §623(D)), as applicable. Instead, COAF stated that the repossessed vehicle would be sold after April 27, 2015, *only 10 days* after the April 17, 2015 date on the Notice of Repossession.

## III.   <u>ARGUMENT</u>

### a.   Introduction

Under the Uniform Commercial Code ("UCC") individually, as adopted in Pennsylvania, and UCC and Motor Vehicle Sales Finance Act ("MVSFA") in *pari materia*, a secured lender is permitted to exercise its right to self-help repossession of its collateral, but must do so in a commercially reasonable manner and in strict adherence to the exacting requirements of the UCC to provide written notices of such repossessions to debtors.

This consumer protection class action against Defendants Capital One Auto Finance ("COAF") seeks monetary relief to redress, *inter alia*, Defendants' negligent and commercially unreasonable pattern and practice of: (a) failing to send statutorily-compliant notifications to Pennsylvania debtors whose vehicles it repossessed and sold; and (b) otherwise conducting themselves in a commercially unreasonable manner. As Plaintiffs will show, *infra*, this matter is ideally suited to be handled as a class action and all the requirements for class certification are satisfied.

3

**b. Defendants violated the UCC individually and the UCC and MVSFA in *pari materia*, and unlawfully converted the property of Plaintiffs and class members.**

### 1. Notice Statutes

The UCC and MVSFA set forth very specific requirements for the notices that a creditor must provide to its borrower in connection with the repossession and resale of its collateral. There are generally two separate statutory notices which must be sent: a Notice of Repossession, to be sent immediately following repossession, and a Post-Sale Notice, to be sent after the repossessed vehicle is sold. The UCC and MVSFA create a strict liability framework in which neither the creditor's intent, nor the borrower's reliance or knowledge are at issue. Creditors are accountable for strict compliance with these post-repossession consumer disclosure notice requirements of these statutes.

### 2. The UCC and MVSFA are to be Read in Pari Materia

Repossessors of vehicles, such as COAF, are required to comply with both the MVSFA and the UCC, which must be applied in *pari materia*. *Indus. Valley Bank & Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 (1985)."Statutes or parts of statutes are in *pari materia* when they relate to the same persons or things or to the same class of persons or things.  1 Pa. C.S. §1932(a).As stated in Comment 9 to 13 Pa.C.S. §9620:

> **Applicability of Other Law.** This section does not purport to regulate all aspects of the transaction by which a secured party may become the owner of collateral previously owned by the debtor. For example, a secured party's acceptance of a motor vehicle in satisfaction of secured obligations may require compliance with the applicable motor vehicle certificate-of-title law. State legislatures should conform those laws so that they mesh well with this section and Section 9-610, and courts should construe those laws and this section harmoniously. A secured party's acceptance of collateral in the possession of the debtor also may implicate statutes dealing with a seller's retention of possession of goods sold.

Comment 9 specifically directs courts to construe UCC provisions "harmoniously," i.e. in *pari materia*, with other laws that regulate secured transactions. The MVSFA is such a law.

The MVSFA and the UCC similarly sets forth notice requirements for secured parties who conduct self-help repossessions (other than by legal process with writ of replevin). These statutes relate to the same persons or things and/or to the same class of persons or things, debtors whose vehicles were repossessed outside the judicial process.

### 3. Every Aspect of a Disposition of Collateral must be Commercially Reasonable

13 Pa. C.S.A. §9610 (b) prohibits the sale of the collateral if the sale is not commercially reasonable. The statute states, in relevant part, as follows:

> (b)   Commercially reasonable disposition – **Every** aspect of a disposition of collateral, including the method, manner, time, place and other terms, **must be** commercially reasonable.   [Only] **If** commercially reasonable, a secured party may dispose of collateral by **public** or **private** proceedings. … (Emphasis added).

In a commercial goods transaction, "[a] notification that lacks any of the information [required] is insufficient as a matter of law." 13 Pa.C.S. 9614 cmt. 2.

### 4. *Notice of Repossession Requirements*

13 Pa. C.S.A. §9611 requires COAF to provide to the consumer with a "reasonable authenticated notification of disposition," of the collateral containing important mandatory information about the repossession and approaching sale of collateral (i.e. a "Notice of Repossession"). The required contents of such a Notice of Repossession are set forth in the UCC (13 Pa.C.S. §9614), and in the MVSFA (12 Pa.C.S. §6254).[1]

---

[1] Formerly 69 P.S. 623(D).  The MVSFA was recodified at 12 Pa.C.S.A. 6201 et seq., taking effect December 1, 2014.  Sections 623(D) and 6254 require the same minimum contents for Notices of Repossession (with one additional requirement in Section 6254).

In the course of the repossession and disposition process, COAF violated the UCC and MVSFA in *pari materia*, and did not act in a commercially reasonable manner toward Plaintiffs and the class, because it failed to provide notice to the debtor of COAF's intent to resell the motor vehicle at the expiration of (after) 15 days from the date of mailing the notice, as expressly required by 12 Pa.C.S.A. §6254(c)(3) and/or 69 P.S. §623(D), as applicable. Rather, it informed Plaintiffs that it would sell their vehicle after only 10 days from the date of the mailing of the notice. The 15 days is a statutory <u>minimum</u> time period for the creditor to provide to the borrower.

The Honorable Judge Berle M. Schiller of the Eastern District of Pennsylvania has certified a similar UCC Notice of Repossession class action involving the similar statutory issues, holding that a secured creditor's obligation to send consumer debtors a Notice of Repossession which complied with <u>both</u> the UCC and the MVSFA is actionable under the UCC. *Cosgrove, et al., v. Citizens Automobile Finance, Inc.*, 2011 WL 3740809, 09-CV-1095 (2011).

> Under Pennsylvania law, "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable." 13 Pa. Cons.Stat. § 9610(b). Furthermore, "a secured party that disposes of collateral under § 9610 (relating to disposition after default) shall send ... a reasonable authenticated notification of disposition." 13 Pa. Cons.Stat. § 9611(b). The Pennsylvania Uniform Commercial Code ("UCC") does not define "reasonable" notice, but Pennsylvania courts define the term by looking to statutes governing vehicle finance and repossession. *See Indus. Valley Bank and Trust Co. v. Nash,* 349 Pa.Super. 27, 502 A.2d 1254, 1263 (Pa.Super.Ct.1985). The relevant section of Pennsylvania's Motor Vehicle Sales Finance Act ("MVSFA") states:

> > [w]hen repossession of a motor vehicle, which is the subject of an installment sale contract, is effected otherwise than by legal process, the holder shall immediately furnish the buyer with a written 'notice of repossession' .... [that] shall set forth the buyer's right as to reinstatement of the contract, if the holder extends the privilege of reinstatement and redemption of the motor vehicle [and] shall contain an itemized statement of the total amount required to redeem the motor vehicle.

6

69 Pa. Cons.Stat. § 623D; *see Nash*, 502 A.2d at 1263 (nothing that Article 9 and the MVSFA should be construed together).

*Cosgrove v. Citizens Auto. Fin., Inc.*, No. CIV.A. 09-1095, 2011 WL 3740809, at *1 (E.D. Pa. Aug. 25, 2011). **Exhibit 2**.

As stated above, the UCC and MVSFA, in *pari materia*, require a secured party, such as Capital One, to provide debtors with a "reasonable authenticated notification of disposition" promptly after repossession ("herein referred to as "Notice of Repossession"). 13 Pa. C.S. §9611. *See also*, 12 Pa.C.S. §6254, and 13 Pa. C.S. §9614.

> The UCC does not itself define what is "reasonable" but looks to other sources for definition. The MVSFA is the Pennsylvania statute designed to cover repossessions and protect consumers from abuses by allowing a minimum period to cure any default or redeem before sale... [T]he MVSFA requires that a notice of repossession be sent to the consumer advising the consumer of several items, including 15 days notice of intent to sell the repossessed vehicle... Since provisions of the UCC and MVSFA are read in *pari materia*, plaintiff and the potential class were entitled, inter alla (sic), to at least 15 days notice of the intent to sell the repossessed vehicle, which did not occur.
>
> *McCall v. Drive*, No. 0005 of 2006 (C.C.P. Phila. Cnty. 2006) (internal citations omitted). **Exhibit 3**.

The UCC's "notice requirement is easy to understand and apply; it is inspired by the forlorn hope that the debtor if he is notified, will either acquire enough money to redeem the collateral or send his friends to bid for it." *Industrial Valley Bank & Trust v. Nash*, 502 A.2d 1254, 1263 (Pa. Super. Ct. 1985). A proper post-repossession notice is critical because it "ensures that the secured party proceeds in a commercially reasonable manner. Even if the debtor does not utilize the opportunity to challenge the disposition prior to its occurrence, notice equips the debtor with the ability to challenge more effectively the disposition after its completion." *G.E. Cap. Corp. v. Flynn*, 1993 WL 232292, *3 (E.D. Pa. 1993). The "notice requirement protects the debtor, and should therefore be construed strictly." *White & Summers, Uniform Commercial Code, § 34-12(b)*

7

(5th Ed.).

*McCall, supra.* is an example of, Pennsylvania courts have *repeatedly* and *explicitly* combined the MVSFA and UCC when determining the commercial reasonableness of statutory notice. *See e.g., Coy v. Ford Motor Credit Co.,* 618 A.2d 1024, 1026 (Pa. Super. Ct. 1993)("notice provisions of both the MVSFA and the UCC apply in cases of repossession."). *Nash,* 349 Pa. Super. at 44 ("[on] the question of the kind of notice to be given to the debtor by the secured creditor, the MVSFA and the U.C.C. are clearly in *pari materia* since they relate to the identical thing—the sale of a repossessed motor vehicle). *See also, Cosgrove v. Citizens Automobile Finance, Inc., supra.* ("Article 9 and the MVSFA should be construed together." 2011 WL 3740809 at *1). The notice of repossession at issue which Capital One sent to Representative Plaintiffs James and Randy Langer and over approximately 1,329 other class members by their own admission provided only a 10-day period between the date of the notice and the beginning of the period when the vehicle could be resold.  This is a clear violation of §6254(c)(3).  This defect was systemically included in the Notices of Repossession sent to the putative class members.[2]

### c.  Class Definition of the Repossession Notice Class (Class I)

For purposes of Counts IA and 2A, alleging violations of the UCC, and the UCC and MVSFA in *pari materia*, in regards to Defendants' Notices of Repossession (as defined in the Complaint), Plaintiffs seek to represent a class ("Repossession Notice Class") consisting of all persons: (a) who financed a motor vehicle primarily for personal, family or household use through COAF, or whose consumer loan contract was assigned to COAF; and, (b) from whom COAF, as secured party, repossessed the vehicle or ordered it to be repossessed; and, (c) who had a Pennsylvania address

---

[2] Rather than require the production of the files of all class members, the Court ordered the production of certain records in 10% of the putative class members' files. (dkt. 17). COAF only provided a sample relating to 10% of the putative class of Class 1, not the other two classes.

as of the date of repossession; and (d) who, within the six years prior to the filing of this complaint, through the date of class certification: (i) were sent a Notice of Repossession by COAF or its agent which failed to provide a minimum period of 15-days' notice of sale or disposition; or (ii) were sent no Notice of Repossession by COAF.

**d. The Repossession Notice Class should be certified, as Plaintiffs have satisfied their burden of establishing each element of Rule 23 by a preponderance of the evidence**

Class actions are essential to enforce laws protecting consumers. The United States Supreme Court has stated:

> While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Kaplan, Prefatory Note 497. As concisely recalled in a recent Seventh Circuit opinion:
>
> > "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace* v. *Van Ru Credit Corp.,* 109 F. 3d 338, 344 (1997).

*Amchem Products, Inc. v. Windsor*, 521 US 591 (1997).

Given the confluence of form documents and uniform, or easily determined, statutory damages, cases involving defective repossession notices, like this one, are routinely certified. *See e.g., Maszgay, et al., v. First Commonwealth Bank, et al.,* 686-2015 (Jefferson County, 2018); *Cooley, et al., v. FNB Corporation, et al.,* 10010 (Lawrence County, 2003); *Cosgrove v. Citizens Auto. Finance, Inc.,* 2011 WL 3740809 (E.D. Pa. 2011); *Brennan v. Community Bank,* 13-CV-02939 (M.D. Pa. 2016); *Antonik v. FNCB,* 2013-CV-4438 (Lackawanna County, 2013); *Haggerty*

*v. Citadel Fed. Credit Union*, No. 11003725 (Phila. C.C.P. 2011); *Hartt v. Flagship Credit Corp.*, 10-CV-0822-NS (E.D. Pa. 2010); *Simonson v. American Heritage Fed. Credit Union*, No. 11003762 (Phila. C.C.P. 2011); *Spry v. Police & Fire Fed. Credit Union*, No. 110900007 (Phila. C.C.P. 2011); *Zawislak v. Beneficial Savings Bank*, No. 110303622 (Phila. Court Common Pleas 2011); *Cubler v. TruMark Financial Credit Union*, No. 001800 (Phila. C.C.P. 2012). *See also, Walczak v. Onyx Acceptance Corp.*, 850 N.E.2d 357, 366-372 (Ill. App. 2d Dist. 2006)(class of buyers who received defective repossession notice certified); *Middleton v. Sunstar Acceptance Corp.*, 2000 WL 33385388, *3-*8 (S.C. Com. Pl. Jan. 13, 2000)(certifying class in action alleging that finance company's repossession form violated the UCC); *Chisolm v. Transouth Financial Corp.*, 194 F.R.D. 538, 557-569 (E.D. Va. 2000)(certifying class against financing company for violations of UCC notice requirements); *Car Now Acceptance Co. v. Block*, 2002 WL 32001272 (Ohio Com. Pl.  Nov. 25, 2002)(class certified in defective repossession notice case), *affirmed, North Shore Auto Financing, Inc., v. Block*, 2003 WL 21714583, (8th Dist. July 24, 2003), *appeal not allowed*, 800 N.E.2d 47 (Ohio 2003); *Moye v. CAC*, 2001 Conn. Super LEXIS 1342 (May 15, 2001); *Mortera v. Ford Motor Credit*, 2003 Calif. Super LEXIS 4433117 (June 23, 2003). Cases involving the use of form documents are particularly appropriate for class treatment. *Orloff v. Syndicated Office Systems, Inc.*, 2004 WL 870691 at *3-4 (E.D. Pa. Apr. 22, 2004).

Fed. R. Civ. P. 23(a) requires that in order for a class action to be certified, it must be shown that:

    (1)    The class is so numerous that joinder of all members is impracticable;
    (2)    There are questions of law or fact common to the class;
    (3)    The claims or defenses of the representative parties are typical of the claims or defenses of the class; and,
    (4)    The representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(b)(1)(a) states that a class action may be maintained if Rule 23(a) is satisfied and the court finds that prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

Fed. R. Civ. P. 23(b)(3) states that a class action may be maintained if Rule 23(a) is satisfied and the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(1)    The class members' interests in individually controlling the prosecution or defense of separate actions;
(2)    The extent and nature of any litigation concerning the controversy already begun by or against class members;
(3)    The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and,
(4)    The likely difficulties in managing a class action.

The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence. *Marcus v. BMW of North America, LLC*, citing to *Hydrogen Peroxide*, 552 F.3d 305 (E.D. PA 2008). District courts have discretion under Rule 23 to certify a class. *Beck v. Maximus, Inc.*, 457 F.3d 291 (2006); citing to *Califano v. Yamasaki*, 442 U.S. 682, 703, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Each of the requisites for class certification is easily met here, and Plaintiff satisfies its burden to establish each element of Rule 23.

## IV.  FACTS OBTAINED DURING DISCOVERY TO DATE
## THAT SUPPORT CERTIFICATION

### A.  The class is sufficiently numerous.

The Repossession Notice Class meets the numerosity requirement of Fed.R.Civ.P. 23, in that it is sufficiently numerous that joinder is impracticable. COAF stated that there are approximately 1,329 accounts that fall within the Repossession Notice Class definition. (Defendant's Response to Interrogatory #2 in Plaintiffs' First Set of Discovery – **Exhibit 4**). Joinder of 1,320 parties would be inefficient and impractical.  This is well over the 40 class members that is generally enough to meet the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220 (3rd Cir. 2001).

### B.  The Class shares common questions of fact and law.

As stated in Plaintiffs' original Motion for Class Certification, in order to meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  In other words, commonality requires that the claims of the class "depend upon a common contention…of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.  Commonality requires that the putative class members "share at least one question of fact or law in common with each other" *Reinig v RBS Citizens, N.A.* 2018 WL 6837077 at *6 (3d. Cir. Dec. 31, 2018).

For the Repossession Notice Class, the common questions of fact are set out in the class definition (Complaint, ¶53): 1) Did the class member finance the purchase of a consumer vehicle through COAF or have their consumer loan assigned to COAF; 2) Did COAF repossess the class

member's vehicle or order it to be repossessed; 3) Did the class member have a Pennsylvania address as of the date of repossession, and 4) within the statutes of limitations period, was the class member a) sent a Notice of Repossession by COAF or its agent which failed to provide a minimum period of 15 days notice of sale or disposition or b) sent no Notice of Repossession at all.  By admitting that the Repossession Notice Class has 1,329 members that fit within that definition, COAF is admitting that they all share those common questions of fact in common.

Cases like the present matter that involve standardized form documents typically satisfy the commonality requirement.

> As plaintiffs note, the CDV form is a standard document. Plaintiffs allege that defendant utilizes the CDVs to respond to notifications of consumer credit disputes. The factual issue in this matter is whether the CDVs indicated whether the debts were disputed as plaintiffs assert is required. The legal issue is whether the debts were required to be reported as disputed. I conclude that common questions of both law and fact exist.

*Strausser v. ACB Receivables Management, Inc.*, No. 16-5109, 2008 WL 859224, at *2 (E.D. Pa. Mar. 28, 2008). In another case involving standard form documents, the court similarly reasoned:

> [P]laintiff's claims relate to [defendant's] standard form agreement and [its] uniform debt calculation practices, which would apply to anyone renting from [defendant]. In addition, the fact that the contractual provisions plaintiff cites in these agreements would be at the heart of any contract dispute a renter would have over damage calculations, it would appear that the issues raised by the plaintiff would apply to both her and the other class members.

*Humphreys v. Budget Rent a Car Sys.*, 2014 U.S. Dist. LEXIS 55438, at *54 (E.D. Pa. Apr. 22, 2014).

### C. **The Class Representatives' claims are typical of the class claim.**

The commonality requirement is to assess whether the action can be efficiently maintained as a class – that the named plaintiffs and class members have incentives that align and where "the

common claims are comparably central to the claims of the named plaintiffs as to the claims of absentees." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3rd Cir. 1994). "The concepts of typicality and commonality are closely related and often tend to merge." *Dieter v. Aldi, Inc.*, No. 2:18-00846, 2018 U.S. Dist. LEXIS 201119, at *19 (W.D. Pa. Nov. 28, 2018) *citing Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012). They tend to merge because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 7 *citing Marcus*, 687 F.3d at 597-98. Our Court of Appeals has explained that "[w]e also have set a 'low threshold' for typicality. . . . 'Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct.'" *National Football League, supra, 821 F.3d at 428* (*citing, In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 311 (3d Cir. 1998).

In this case, the named plaintiffs and the Repossession Notice Class members not only have common claims, but discovery has shown that those common claims are valid. COAF provided a sampling of loan files for 138 of the accounts of Repossession Notice Class members. Attached as **Exhibit 5** is counsel's affidavit attesting to the fact that the Notices of Repossession sent to the named plaintiffs and to the class members whose loan files were provided in the sampling all have a 10 day redemption period. Only the portion of the letter of each of the sampled class members is attached (as the entire letter of the 139 sampled class members is 4 pages each, over 556 pages as **Exhibit 6**.

Further, they all have the same deficiency – they only give ten days notice of a sale or other

disposition of the repossessed vehicle, rather than 15 days, in violation of the UCC and MVSFA in *pari materia*. Again, COAF admitted to typicality when it stated that all 1,329 Repossession Notice Class members met the class definition, which includes the element that the notice only gave 10 days notice of sale or disposition (or else was no sent at all).

Discovery revealed that this deficiency was not a unique error to only a few borrowers, but was a systemic issue. Nor was the error unknown to COAF. COAF's records show that it was aware that it had to give 15-days in which to reinstate or redeem to Pennsylvania borrowers as in at least December of 2014. (See "Reinstatement State Chart" that was "Last Updated: 12/2/2014" – COAF_017540 - **Exhibit 7**).[3] However, Capital One did not revise the Notices of Repossession it was sending to consumers to reflect the 15-day period instead of the 10-day period until July 30, 2015. (COAF-017558 - **Exhibit 8**). Thus, every Notice of Repossession sent by COAF to Pennsylvania borrowers during a period ending approximately July 30, 2015 contained the 10-day notice of sale or disposition in violation of the UCC and MVSFA in *pari materia*. These recipients, which include the named Plaintiffs, make up the Repossession Notice Class.

**D. The named plaintiffs have been and continue to be adequate class representatives.**

The named plaintiffs have been kept apprised of the substance of and progress to this case by Plaintiffs' counsel, and have a good understanding of the issues. Further, each of the Plaintiffs occupies virtually the same position as each class members. There is nothing to suggest that Plaintiffs may have any interest antagonistic to the vigorous pursuit of the class claims against Defendants. The named Plaintiffs have adequate financial resources as Class counsel is advancing their time and litigation costs. (Declaration of counsel) **Exhibit 5**.

---

[3] Exhibits 6, 7, and 8 have been designated as "confidential" and are filed under seal.

Finally, Plaintiffs' counsel regularly engages in this very field of UCC post-repossession disclosure notices class litigation and other complex litigation (including TCPA class action litigation), and has dedicated substantial resources thereto. Judge Foradora, President Judge of Court of Common Pleas of Jefferson County, has recently appointed Richard Shenkan and the Shenkan Injury Lawyers, LLC. as class counsel in a similar UCC class action. In its order certifying the case, the Court explained:

> Plaintiffs' counsel, Richard Shenkan, is a well-qualified litigator with over 20 years' experience and has served class counsel in other consumer cases throughout Pennsylvania. ... This case presented novel, complex issues and Class Counsel effectuated an excellent recovery for the Class through his perseverance and skill."

Order, p. 7. **Exhibit 9**.

### E. **Predominance, Superiority, Fairness, Efficiency, & Manageability**

A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 117 S. Ct. at 2246. One reason that a class action is the superior method of proceeding in a case of this type is that it allows the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "requires that common issues predominate over issues affecting only individual class members." *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 258 (3rd Cir. 2009). Specifically, F.R.C.P. 23(b) requires that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in

individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Here, the central and predominant question of this lawsuit regarding the Repossession Notice Class is whether Defendant failed to provide the commercially reasonable notice the law requires -- this common question predominates over questions affecting only individual members.

Proceeding as a class in this matter is the most fair and efficient way to litigate these claims. Most members of the putative class are probably unaware that Defendant has violated their legal rights, and therefore, would not seek relief on an individual basis. Members of the class may be unable to locate or hire lawyers experienced in this area of the law. Moreover, the cost of proceeding on an individual basis would not be practical or economical given the potential size of individual awards. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure* (2d ed. 1986), at 518, § 177 (a class action enables those who have small claims that might not be worth litigating individually to combine their resources and vindicate their rights collectively). The "fact that the plaintiffs may be unwilling to or unable individually to pursue the possibly small amount of damages to which they may be entitled, weighs in favor of a class action to vindicate their rights." *Cliett v. City of Phila.*, 1985 WL 3181 (E.D. Pa. 1985). Overall, members of the putative classes will benefit by proceeding on a class basis.

In addition, this forum is appropriate for addressing the claims of Plaintiff and the putative class, as potentially thousands of individual actions for relief sought here could naturally result in inconsistent interpretations of the UCC's notice requirements and statutory damage provisions, subjecting the individuals to unequal treatment and providing no guidance to businesses who

violate the UCC, independently, and/or the MVSFA and UCC in *pari materia*, like Defendant. Here, a class action ensures one decision on the applicable law. Individual actions would create inconsistent or varying adjudications.

This case presents no difficulties that would affect the management of this matter on a class action basis. The claims raised are simple and are based entirely on the operative documents, which are standardized across the class. Defendant's business records contain the identities of class members and much (if not all) of the information necessary to calculate their damages.

### V. COAF is not entitled to setoff or recoupment as claimed in its affirmative defenses

COAF has asserted affirmative defenses for setoff and recoupment. The courts in Pennsylvania initially held that when a creditor fails to act in a commercially reasonable manner on all aspects of the sale of a repossessed vehicle, thus violating the UCC and/or the UCC and MVSFA in *pari materia*, the value of collateral is presumed by law to equal the indebtedness secured, thereby extinguishing the indebtedness, unless the secured party rebuts the presumption. *Savoy v. Beneficial Consumer Discount Co.*, 503 Pa. 74, 78 (1983). However, more recently, they have applied an absolute bar standard when it comes to notice violations, holding that failure to provide the required notice barred recovery of a deficiency. *Scott v. Fred Beans Chevrolet of Limerick, Inc.*, 183 F.Supp.3d 691 (E.D. PA 2016). Accordingly, because of COAF's commercial unreasonableness and failure to provide the required notice, the deficiency balances of the Plaintiffs and class members not recoverable by COAF by setoff or recoupment.

Further, if Defendant claims setoff or recoupment, they cannot do so on a class-wide basis, and would need to proceed on an individual basis. Defendant would have to prove how much of a setoff or recoupment they are allegedly owed for each individual class member. It is also critical to note that a myriad of individualized defenses and counterclaims could be brought by the class

members in response to Defendant's setoff and recoupment claims, pursuant to the FTC Holder Rule. The FTC Holder Rule "allows a debtor to bring 'any claim or defense' against any assignee," including the seller, bank, or any other assignee. *Beemus v. Interstate Nat'l Dealer Servs. et al.*, docket no. GD 98-9583 (Pa. Super. 2002). This would create numerous individualized factual and legal issues that would have to be resolved for each of the hundreds of class members, making class-wide setoff or recoupment claims unwieldy.

Even though COAF's affirmative defenses have not been pled as counterclaims, there is no practical difference. They are claims by COAF subject to defenses by each class member. This is very similar to the situation in *Cosgrove v. Citizens Automobile Finance, Inc.*, 2010 U.S. Dist. LEXIS 88202, (E.D. Pa. Aug. 26, 2010), *supra.* As mentioned above, *Cosgrove, supra.*, was a class action like the case at bar, arising from deficient notices provided by a lender to its borrowers in connection with the repossession of their financed vehicles. In that case, also involving a similar statutory violation, the defendant sought to assert counterclaims for the deficiency allegedly owed by each class member. The court refused to allow the assertion of such counterclaims, reasoning:

> In this case, the issues of law and fact underlying the claims are quite different. Plaintiff's claim arises under state consumer protection statutes, whereas Citizens' counterclaims are a matter of pure contract law. The evidence required to prove Plaintiff's claim is largely limited to the contract between the parties and the notice of repossession. In contrast, for [the lender] to prove that it is owed a deficiency balance, relevant facts include each plaintiff's payment history and the lender's] accounting thereof; the steps Citizens took to repossess the car; and the manner in which [the lender] repossessed, stored, and sold the car.

*Id.* at *16-17.

In language that captures the gravamen of why COAF may not assert set-off or recoupment in the present action, the *Cosgrove* court explained that:

> Although both Plaintiff's claim and the proposed counterclaims stem from various debtors' decisions to take out auto loans from [the lender], **the relationship between the claim and the counterclaim is too tenuous to convert what would**

19

**be a fairly streamlined determination about whether the notice provided was reasonable under 13 PA. CONS. STAT. § 9611 into a mass forum for the adjudication of small claims**. *See Orloff*, 2003 U.S. Dist. LEXIS 15466, 2003 WL 22100868, at\*3. Furthermore, allowing the assertion of such a counterclaim would take what is an arguably homogenous class and insert idiosyncratic issues, thereby defeating any possibility of meeting the "commonality" requirement of certifying a class under Federal Rule of Civil Procedure 23(b)(3). This would discourage potential class members from joining the class and run counter to Rule 23's objectives of promoting judicial economy, access to judicial relief, and deterrence of unlawful conduct. 2 WILLIAM B. RUBENSTEIN, ALBA CONTE AND HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 4:34 (4th ed. 2002).

*Id.* at \*17 (emphasis added).

Similarly, the defendant in *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322 (E.D.Pa. 1976) asserted a variety of counterclaims against both named and unnamed members of the class. The defendant argued that these counterclaims involved critical issues of individual liability, which far outweighed any common questions. The court rejected this argument and dismissed the counterclaims, reasoning that unnamed class members were not "opposing parties" for purposes of the counterclaim provisions of Fed.R.Civ.P.13. "[A]ll counterclaims that purport to state a cause of action against unnamed class members must be dismissed....*counterclaims may be brought against unnamed class members only if and when these class members intervene or file claims in these actions*." *Id.* at 349 (emphasis added). Any claim COAF would assert against individual unnamed class members are, therefore, not permissible in this class action.

Similarly, in *Axelrod v. Saks & Company*, 77 F.R.D. 441 (E.D. Pa. 1978), customers of three department stores commenced an antitrust class action against the stores, alleging price fixing. The defendants contended that "thousands of the class members will be customers whose accounts are delinquent, and who will therefore be subject to counterclaims by one or more of the defendants." *Id.* at 447. They went on to argue that "the presentation of counterclaims and defenses thereto will require 'mini-trials,' and will render the damages phase of this case utterly

unmanageable." *Id.* The court held that even assuming (contrary to *In re Sugar Industry, supra.*) that an absent class member *is* an "opposing party," such counterclaims were permissive rather than compulsory, and dismissed them on this basis.

## VI.   RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully requests that this Court order the following:

1. Preliminarily certify this matter as a class action as to the Repossession Notice (Class I);

2. Appoint Richard Shenkan and Shenkan Injury Lawyers, LLC. as class counsel; and,

3. Delay any certification decision on Class II and III until further discovery on all counts and an amended motion and/or supplemental brief are filed.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan
Shenkan Injury Lawyers, LLC.
Attorney Id. No. 79800
6550 Lakeshore St.
West Bloomfield, MI 48323
T: (248) 562-1320
F:(888) 769-1774

## CERTIFICATE OF SERVICE

I certify all counsel subscribe to the ECF and, therefore, received a copy of this pleading when filed.

SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan
*Attorney for Plaintiffs*



**CapitalOne**
Auto Finance

Capital One Auto Finance
7933 Preston Road
Plano, TX 75024
1-800-735-8719

JAMES M LANGER
RANDY T LANGER
606 SUMMITT ST
MCKEESPORT PA 15132

This communication is from a debt collector and is an attempt to collect a debt; any information obtained will be used for that purpose.

If you are entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the subject matter of this letter, the following applies to you:
**THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT, ASSESS, OR RECOVER A CLAIM IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY.**

If you are an Obligor on the Account you will be liable for any remaining deficiency provided by your contract unless you receive a discharge on the Account as provided under the United States Bankruptcy Code.

We are required by state law to inform you of these rights.

Capital One Auto Finance is a division of Capital One, National Association, and services the following Capital One affiliated company: Onyx Acceptance Corporation.

NOI_PA_739                                                      Page 1 of 4

EXHIBIT
tabbies
1

Case ID: 161000560



Capital One Auto Finance
7933 Preston Road
Plano, TX 75024
1-800-735-8719

CERTIFIED MAIL                                                      04/17/15

JAMES M LANGER
RANDY T LANGER
606 SUMMITT ST
MCKEESPORT PA 15132

**NOTICE OF REPOSSESSION AND NOTICE OF OUR PLAN TO SELL PROPERTY**

RE:
    07 TOYOTA SCION
    VIN#  JTKDE177870196199

Dear JAMES M LANGER,

We have your 07, TOYOTA, SCION, VIN# JTKDE177870196199 because you broke promises in our agreement. We will sell the Vehicle at a private sale sometime after 04/27/15. A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You may be able to get your property back at any time before we sell it by paying either the reinstatement or redemption amount. To learn the exact amount you must pay, call us at 1-800-735-8719 or see the attached Reinstatement and Redemption Notice.

If you want us to explain to you in writing how we figured the amount that you owe us, you may call us at 1-800-735-8719 or write us at ATTN: COAF Vehicle Remarketing, Capital One Auto Finance, 7933 Preston Road, Plano, TX 75024, and request a written explanation.

If you need more information about the sale, call us at 1-800-735-8719, Monday through Friday, from 8:00 a.m. to 9:00 p.m. Eastern Time, or write us at ATTN: COAF Vehicle Remarketing, Capital One Auto Finance, 7933 Preston Road, Plano, TX 75024.

We are sending this notice to any co-borrower or obligor who have an interest in the Vehicle or who owe money under your agreement.
        RANDY T LANGER

NOI_PA_739                                            Page 2 of 4

Case ID: 161000560



Capital One Auto Finance
7933 Preston Road
Plano, TX 75024
1-800-735-5719

You may make arrangements to pick up any personal property left in the Vehicle by contacting the following company
    ARS - WPA
    4926 Pleasant Unity Rd
    LATROBE, PA  15650
    (724) 423-9833

We will hold the personal property for 30 days from the date of this notice and you may reclaim the property during that time. If you do not reclaim your personal property during that time, we may dispose of it in the same manner as we dispose the Vehicle.

See the enclosed Reinstatement and Redemption Notice for an itemization of the amount required to redeem and further explanation of your additional rights.

Sincerely,

Subbu Rajasimhan
Capital One Auto Finance

NOI_PA_739                                             Page 3 of 4

Case ID: 161000560

Case 2:16-cv-06130-HB   Document 81-1   Filed 02/22/19   Page 25 of 73

Cosgrove v. Citizens Auto. Finance, Inc., Not Reported in F.Supp.2d (2011)

2011 WL 3740809
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Brian K. COSGROVE, on behalf of himself
and all others similarly situated, Plaintiffs,
v.
CITIZENS AUTOMOBILE
FINANCE, INC., Defendant.

Civil Action No. 09–1095.   |   Aug. 25, 2011.

**Attorneys and Law Firms**

Cary L. Flitter, Theodore E. Lorenz and Andrew M. Milz, Lundy, Flitter, Beldecos & Berger, P.C., Narberth, PA, for Plaintiff.

Christopher J. Day, Thorp Reed & Armstrong LLP, Philadelphia, PA, Robert J. Hannen, Thorp, Reed & Armstrong, Pittsburgh, PA, for Defendant.

**Opinion**

### *MEMORANDUM*

SCHILLER, District Judge.

**\*1** Plaintiff moves for final approval of a class action settlement involving allegedly defective repossession notices Defendant Citizens Automobile Finance, Inc. ("CAF") sent to Pennsylvania automobile purchasers. Class counsel has also moved for attorneys' fees, reimbursement of costs and expenses, and for an incentive award for Brian Cosgrove. After a fairness hearing conducted on August 18, 2011 pursuant to Federal Rule of Civil Procedure 23(e), the Court will grant these motions.

## I. BACKGROUND

### A. Class Claims
Plaintiff filed this action on behalf of himself and similarly situated consumers, alleging that CAF violated Pennsylvania law when it sent class members defective automobile repossession notices after they fell behind on payments and had their cars repossessed. The class members all entered into automobile finance contracts which stated, "[i]f the vehicle has been repossessed, you may reinstate this Contract and the vehicle will be returned to you provided you pay all past due payments or agree with us on mutually satisfactory arrangements, plus accrued late charges ..." (Am. Compl. Exs. A, B [Cosgrove Finance Contracts].) Despite this language, CAF sent class members notices that either demanded the entire amount due on the contract (not just past due payments) or were sent no notice at all.

Under Pennsylvania law, "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable." 13 Pa. Cons.Stat. § 9610(b). Furthermore, "a secured party that disposes of collateral under § 9610 (relating to disposition after default) shall send ... a reasonable authenticated notification of disposition." 13 Pa. Cons.Stat. § 9611(b). The Pennsylvania Uniform Commercial Code ("UCC") does not define "reasonable" notice, but Pennsylvania courts define the term by looking at statutes governing vehicle finance and repossession. *See Indus. Valley Bank and Trust Co. v. Nash,* 349 Pa.Super. 27, 502 A.2d 1254, 1263 (Pa.Super.Ct.1985). The relevant section of Pennsylvania's Motor Vehicle Sales Finance Act ("MVSFA") states:

> [w]hen repossession of a motor vehicle, which is the subject of an installment sale contract, is effected otherwise than by legal process, the holder shall immediately furnish the buyer with a written 'notice of repossession' .... [that] shall set forth the buyer's right as to reinstatement of the contract, if the holder extends the privilege of reinstatement and redemption of the motor vehicle [and] shall contain an itemized statement of the total amount required to redeem the motor vehicle.

69 Pa. Cons.Stat. § 623D; *see Nash,* 502 A.2d at 1263 (nothing that Article 9 and the MVSFA should be construed together). The class alleges that the repossession notices— or lack thereof—ran afoul of the UCC because they did not properly set forth consumers' reinstatement rights, and in many cases overstated consumers' obligations.

**\*2** Pennsylvania law provides for recovery of statutory damages for failure to comply with Article 9. 13 Pa. Cons.Stat. § 9625(c)(2) states:



EXHIBIT
2

> If the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this chapter may recover for that failure in any event an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price.

Accordingly, the class submits that damages are easily calculated by applying a uniform formula.

## B. Class Composition

Upon considering Plaintiff's unopposed class certification motion, the Court preliminarily certified the following settlement class on June 20, 2011, which includes approximately 1,800 Pennsylvanians:

(a) All persons who entered into a Pennsylvania Retail Installment Sales Contract ("RISC") for the purchase and financing of a motor vehicle;

(b) Who purchased the vehicle primarily for consumer use;

(c) Where the RISC was assigned to or the auto was otherwise financed by Citizens Automobile Finance, Inc., or any similar name under which Defendant did business (collectively, "Citizens");

(d) In which the RISC stated in part, "if the vehicle has been repossessed, you may reinstate this Contract and the vehicle will be returned to you provided you pay all past due installments ...";

(e) Who had their vehicle(s) repossessed by or at the behest of Citizens; and

(f) Between March 25, 2005, and the date of the signing of this Order:

(i) were sent a notice of repossession or comparable post-repossession notice of plan to sell property from CAF ("Class Notice") which stated substantially as follows:

(1) "You may redeem the vehicle by paying the entire amount you owe on the Contract (not just past due payments) plus, to the extent permitted by law, the cost

of taking and storing the vehicle, and other expenses that we incurred"; or

(2) "State law may permit you to get it back (redeem) [or "reinstate"] by curing any payment or other default(s) within the time allowed in the cure notice. If state law does not permit you to cure your default(s) in this manner, you may redeem the vehicle by paying the entire amount you owe on the contract (not just past due payments) ..."; or

(ii) were sent no Class Notice at all.

## C. Class Settlement

The significant terms of the class settlement are as follows:

1. CAF has paid $2.9 million into a settlement fund, which will be used to pay class members, class counsel fees and costs, and administration expenses.

2. Class members will receive a pro rata share of the settlement fund after the deduction of court-approved attorneys' fees, costs, and administration.

3. CAF will release all class members with a post-repossession deficiency balance claimed by CAF. The aggregate deficiency balances approximate $7.75 million.

**\*3** 4. CAF will satisfy any outstanding monetary judgments it presently holds against class members related to claimed deficiency balances due. CAF will use its best efforts ensure that any judgments previously entered against class members have been satisfied or released.

5. CAF will cease all collection activity on any deficiency balance allegedly owed by class members.

6. Subject to court approval, CAF will pay Cosgrove an incentive award of $7,500.

7. 130 days after the distribution of settlement funds to the class, the residue of the principal, if any, of any uncashed checks distributed shall be donated as a cy pres distribution in equal parts to Community Legal Services of Philadelphia and Mid–Penn Legal Services.

On June 27, 2011, in accordance with the Court's preliminary approval order, notice of the proposed settlement was mailed to 1,853 class members whose named appeared in CAF's

records. (Pl.'s Mot. for Approval of Class Settlement Ex. 2 [Mulholland Aff.].) The notice informed the class members of the terms of the settlement and informed class members of their right to opt out of the settlement or object by July 30, 2011. To date, one class member has requested exclusion and no member has objected. (*Id.*) On August 18, 2011, the Court held a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e).

## II. STANDARD OF REVIEW

### A. Settlement Approval

In evaluating a motion for final approval of a class action settlement, the court must determine that certification is appropriate under Federal Rules of Civil Procedure 23(a) and (b), and that the settlement is fair to the class under Rule 23(e). *In re Ins. Brokerage Antitr. Litig.,* 579 F.3d 241, 257 (3d Cir.2009). As the Supreme Court has explained:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial. But other specifications of [Rule 23]-those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context.

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). However, the court must apply the class certification requirements of Rule 23(a) and (b) independently of its fairness determination under Rule 23(e). *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 308 (3d Cir.1998).

To obtain certification under Rule 23, Plaintiff must satisfy all four requirements of subpart (a) and one of the requirements of subpart (b). The requirements of subpart (a) are: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class"). *Amchem Prods.,* 521 U.S. at 613.

**\*4** Plaintiffs seeks certification pursuant to Rule 23(b)(3). Under Rule 23(b)(3), the court may certify a class upon a finding "that the questions of law or fact common to members of the class predominate over any questions affecting only individual members ("predominance"), and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority").

Rule 23(e) provides that "[t]he claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The rule is meant "to protect the unnamed members of the class from unjust or unfair settlements." *Ehrheart v. Verizon Wireless,* 609 F.3d 590, 592–93 (3d Cir.2010). The court "acts as a fiduciary, guarding the claims and rights of the absent class members." *Id.* at 593.

### B. Attorneys' Fees

Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." In this case, the settlement agreement contemplates an award of up to $1.25 million.

## III. DISCUSSION

### A. Class Certification

As set forth below, the Court holds that the class meets the requirements of Rule 23 and will certify the settlement class.

### 1. Rule 23(a)

The first requirement for a class action is that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1) While no magic number demonstrates that the numerosity requirement is satisfied, a class of more than forty is generally considered sufficient. *Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir.2001). Here, numerosity is satisfied because the class has over 1,800 members.

The commonality requirement of Rule 23(a)(2) is met "if the named plaintiff shares at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994). Here, Plaintiff has advanced multiple common factual and legal questions, including whether CAF's notice was unreasonable

**Cosgrove v. Citizens Auto. Finance, Inc., Not Reported in F.Supp.2d (2011)**

under the UCC, whether class members were sent a notice that accurately represented the reinstatement terms of their contracts, and how damages are to be awarded. Accordingly, the commonality requirement is satisfied.

The typicality inquiry of Rule 23(a)(3) assesses whether the named plaintiffs have incentives that align with those of absent class members so that the absentees' interests will be fairly represented. *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 631 (3d Cir.1996). This requirement "is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal,* 43 F.3d at 57. In this case, Cosgrove's claims and the class members' claims are predicated on the same or similar contract language regarding reinstatement rights. Accordingly, Cosgrove has suffered harm "as a result of this same classwide conduct that injured the absentee class members," and typicality is satisfied. *See In re Prudential,* 148 F.3d 283 at 312.

**\*5** Lastly, the adequacy of representation requirement of Rule 23(a) (4) "considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *In re Community Bank of N. Va.,* 418 F.3d 277, 303 (3d Cir.2005). Here, the class is represented by counsel experienced in litigating class actions, and there is nothing to suggest that Cosgrove has any interests antagonistic to the class. Thus, the adequacy of representation requirement is also satisfied.

*2. Rule 23(b)(3)*

Both requirements of Rule 23(b)(3) are satisfied. The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. To satisfy this requirement, a plaintiff must establish that "common proof will predominate with respect to each of [the elements of his claim]." *Behrend v. Comcast Corp.,* 264 F.R.D. 150, 156 (E.D.Pa.2010). Here, the "common proof" is that all class members had a contractual reinstatement right and received deficient repossession notices or no notices at all, all of which can be established with available documentary evidence. Moreover, the calculation of damages under 13 Pa. Cons.Stat. § 9625(c) is uniform and may be calculated on a classwide basis. (*See* Pl.'s Mot. for Class Cert. Ex. F [Expert Report of David Glusman, CPA].)

A class action is superior to other available methods where a class resolution of the common issues among class members "outweighs the difficulties in management of separate and individual claims, and allows access to the courts for those who likely would not gain such access standing alone—particularly in light of the relatively modest amount of statutory damages." *Serrano v. Sterling Testing Sys., Inc.,* 711 F.Supp.2d 402, 413 (E.D.Pa.2010). Here, statutory damages are relatively modest, and the burden of managing over 1,000 separate actions would be substantial. Accordingly, the predominance requirement is satisfied.

**B. Fairness of the Settlement**

Under Rule 23(e), a district court must make findings as to each of nine factors articulated in *Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975), in order to approve a settlement as fair, reasonable, and adequate. *In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333 (3d Cir.2010). The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

**\*6** *Girsh,* 521 F.2d at 157. If appropriate, a court must also make findings as to factors articulated in *In re Prudential,* which are:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess

the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved— or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Pet Food Prods.,* 629 F.3d at 350–51.

### 1. The complexity, expense and likely duration of the litigation

This factor "captures the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitr. Litig.,* 391 F.3d 516, 535–36 (3d Cir.2004). This case was filed over two years ago and encompasses a class period stretching back to 2005. CAF continues to deny liability, and absent this settlement, this case could result in significant expenditures for both sides, and recovery for the class may lie only in the distant future, if at all. Accordingly, this factor favors approval of the settlement.

### 2. The reaction of the class to the settlement

Given that only one class member has requested exclusion and that no member has objected, this factor weighs in favor of approval. *See Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 118–19 (3d Cir.1990) (noting that this factor strongly favored settlement where "only twenty nine" of 281 class members objected).

### 3. The stage of the proceedings and the amount of discovery completed

Consideration of the third factor ensures that the parties have an "adequate appreciation of the merits of the case" before settlement. *See In re Prudential,* 148 F.3d at 319. Here, the settlement comes two years after the case was filed, only after substantial discovery was completed, and the parties contested the issue of class certification and

the case's underlying merits. CAF ultimately produced the files of over 3,000 consumers, and Plaintiff deposed seven CAF representatives. (Pl.'s Mot. Ex. 6 [Certification of Cary Flitter, Esq.] ¶ 24.) The Court determines that the parties reached settlement with a full appreciation of the strengths and weaknesses of their respective cases. This factor weighs in favor of approval.

### 4. The risks of establishing liability and establishing damages

The fourth and fifth *Girsh* factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential,* 148 F.3d at 319. Plaintiff maintains that the case for liability is very strong, but CAF has asserted various defenses, including lack of jurisdiction under the Class Action Fairness Act. The Court agrees that Plaintiff's case for liability is compelling, and that damages calculations would be relatively straightforward. However, CAF has argued it is entitled to set off the deficiency balances certain class members owed after the sale of their vehicles. Approving this settlement now, which includes relief from deficiency balances, will enable those class members to obtain relief that would be otherwise uncertain. The Court concludes that these factors weigh in favor of approval.

### 5. The risks of maintaining the class action through the trial

*7  Here, the Court notes that CAF initially opposed certification, and if this case proceeded to trial, may seek to decertify at that stage. *Id.* at 321. (noting that "[u]nder Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable.") However, the Court concludes that the class would likely withstand such certification challenges. The Court finds that this factor is neutral.

### 6. The ability of the defendants to withstand a greater judgment

There is no indication that CAF will not be able to withstand a greater judgment. However, this factor does not necessarily weigh against approval. *See Reibstein v. Rite Aid Corp.,* 761 F.Supp.2d 24, 254–55 (E.D.Pa.2011); *Bonett v. Educ. Debt Servs., Inc.,* Civ. A. No. 01–6528, 2003 WL 21658267, at *7 (E.D.Pa. May 9, 2003). The Court finds that this factor is neutral.

*7. Reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation*

The last two *Girsh* factors assess "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing ... compared with the amount of the proposed settlement." *In re Prudential,* 148 F.3d at 322. Here, the settlement provides for $2.9 million in cash to be distributed to the class, less attorneys' fees and other expenses, along with up to $7.75 million in debt forgiveness. Plaintiff submits that the best possible recovery to the class would be $11,442,275, the aggregate statutory damages of the 1,853 class members, and notes that the value of the settlement comes close to this amount. Other courts have included debt forgiveness as part of a settlement fund, *see, e.g., Holman v. Student Loan Xpress, Inc.,* Civ. A. No. 08–305, 2009 WL 4015573, at *5 (M.D.Fla.2009), but the Court does not consider this a non-monetary award, such as a coupon, that "deserve[s] careful scrutiny to ensure that it ha[s] actual value to the class." *See* Fed.R.Civ.P. 23, Advisory Committee's Note; *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653–55 (7th Cir.2006). The Court finds that debt forgiveness provides a valuable award to class members. Although it is not easily quantifiable, CAF's additional obligation to correct negative entries on class members' credit reports in tangible and adds value to the settlement. Accordingly, the last two factors weigh in favor of approval.

*8. Additional Prudential factors*

The Court concludes that none of the other factors articulated in *Prudential* weigh against approval, and that one of the factors—whether the procedure for processing individual claims under the settlement is fair and reasonable—weighs in favor. Class members are not required to submit claim forms, and will simply receive checks for their pro rata share of the $2.9 million in cash (around $870 each), less attorneys' fees and other expenses. (*See* Pl.'s Mot for Approval 22).

*9. Cy pres*

**\*8** Finally, the settlement provides that the residue of unclaimed checks shall be distributed on a cy pres basis to Community Legal Services of Philadelphia and Mid–Penn Legal Services in equal shares. Both organizations provide consumer credit education and similar services. (Pl.'s Mot. for Approval 23.) The Court finds these are worthy cy pres recipients, as they will help to redress the types of wrongs alleged in this litigation. *See Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105, 117 (E.D.Pa.2005) (discussing the appropriateness of cy pres distribution in consumer credit class actions involving relatively small individual recoveries).

**C. Attorneys' Fees**

Class Counsel seeks $1.25 million in attorneys' fees, which represents approximately 11.7% of the settlement fund, including debt relief, but before considering the value of credit repair. For the reasons stated below, the Court finds that counsel's requested fee award is reasonable.

There are two methods for calculating attorneys' fees in a class action: the percentage-of-recovery method and the lodestar method. *In re Prudential,* 138 F.3d at 333. In common fund cases such as this one, the percentage-of-recovery method is preferred, which is "is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *Id.* When assessing a motion for a fee award under the common fund paradigm, the Third Circuit has identified factors to consider to assess the reasonableness of an attorneys' fee award. These include:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, and (8) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained.

*In re Diet Drugs Prod. Liab. Litig.,* 582 F.3d 524, 541 (3d Cir.2009) (citing *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 (3d Cir.2000)). The *Gunter* factors "are not to be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the facts and circumstances of each case." *Moore v. Comcast Corp.,* Civ. A. No. 08–773, 2011 WL 238821, at * 4 (E.D.Pa. Jan.24, 2011). The

Cosgrove v. Citizens Auto. Finance, Inc., Not Reported in F.Supp.2d (2011)

Third Circuit has also encouraged district courts to "cross-check" a percentage fee award using the lodestar method in order to ensure counsel are not overcompensated. *See In re Prudential*, 148 F.3d at 333.

### 1. The size of the fund and the number of beneficiaries

As noted above, the common fund consists of $2.9 million in cash and approximately $7.75 million in debt forgiveness. If the Court approves fees as requested, each of over 1,800 class members will receive a check for approximately $870. Additionally, relief from deficiency balances averages around $4,180 per class member. This favor weights in factor of the requested award.

### 2. The presence or absence of substantial objections by class members

**\*9** "The absence of large numbers of objections mitigates against reducing fee awards." *In re Cendant Corp.*, 232 F.Supp.2d 327, 337 (D.N.J.2002). As noted above, there have been no objections to the settlement. This factor weighs in favor of the award.

### 3. The skill and efficiency of the attorneys involved and the complexity and duration of the litigation

"The skill and efficiency of class counsel is measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the ... experience and expertise of the counsel, the skill ... with which counsel prosecuted the case and the performance ... of opposing counsel." *Bredbenner v. Liberty Travel, Inc.*, Civ. A. No. 09–905, 2011 WL 1344745, at \*15 (D.N.J. Apr. 8, 2011). Here, class counsel obtained substantial benefits for a large number of Pennsylvania consumers after two years of active litigation. Additionally, class counsel is highly experienced, having successfully litigated numerous consumer class actions. (*See* Pl.'s Mot. Ex. 7 [Certification of Theodore Lorenz, Esq.] ¶ 11.) Class counsel submitted high-quality work to the Court throughout this litigation, and they pursued the case vigorously against able opposing counsel. These factors weigh in favor of the award.

### 4. The risk of nonpayment

In assessing this factor, courts consider the defendant's ability to withstand an adverse judgment and the risks of establishing liability at trial. *Bredbenner*, 2011 WL 1344745, at \*20. Although there is nothing to suggest that CAF would not be able to withstand a judgment, establishing liability—at trial or ultimately on appeal—is never guaranteed. Additionally, the Court notes that counsel undertook representation on a contingent fee basis and bore all the costs of litigation, investing substantial resources without any assurance of payment. This factor weighs in favor of the award. *See id.* (noting that a contingent fee arrangement adds to the risk of nonpayment).

### 5. The amount of time devoted to the case by plaintiffs' counsel

Over the course of two years, counsel have spent approximately 1,640 hours on this case. This amount of time is significant, but not excessive; counsel engaged in extensive research, discovery, motion practice, and settlement negotiations. This factor weights in favor of the award.

### 6. Awards in similar cases

In the Third Circuit, fee awards in common fund cases generally range from 19% to 45% of the fund. *Id.* at \*21. Here, the settlement fund comprises $10.65 million before considering the benefit of credit repair. Counsel seek approximately 11.7% of the fund. The amount sought is below the range often approved. Additionally, counsel was recently awarded $925,000 in a very similar class action litigation involving automobile repossession notices. *See* Order for Final Judgment and Dismissal, *Hartt v. Flagship Credit Corp*, Civ. A. No. 10–822, (E.D.Pa. Apr. 5, 2011), ECF No. 46. The Court finds an award of $1.25 million reasonable in this case.

### 8. The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement

**\*10** Contingency fees representing 25% to 30% of recovery are typical in contingency matters. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D.Pa.2000) (collecting cases). Given that counsel is requesting an award of only 11.7% of the settlement fund, this factor weighs in favor of approval.

### 9. Lodestar cross-check

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given

Cosgrove v. Citizens Auto. Finance, Inc., Not Reported in F.Supp.2d (2011)

geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir.2005). Counsel worked over 1,600 hours at rates between $555 per hour and $160 per hour, yielding a lodestar of approximately $584,000. (*See* Pl.'s Mot. Ex. 6 [Flitter Certification] ¶ 23.)

In assessing whether rates are reasonable, courts assess the experience and skill of the attorneys and look at the market rates in the relevant community. *Chakejian v. Equifax Info. Servs., LLC*, Civ. A. Nos. 07–2211, 10–3574, 10–3575, 2011 WL 2411109, at * 13 (E.D.Pa. June 15, 2011). Class counsel is highly experienced in consumer class actions and, as already noted, has consistently submitted excellent work to the Court. The Court finds class counsel's rates reasonable. *See Hartt*, ECF No. 46 (approving the same rates for class counsel).

When examining whether the number of hours expended is reasonable, the court must ensure that counsel neither spend excessive time on the case nor use highly-priced attorneys for matters properly delegated to less experienced attorneys or staff. *Id.* Given this case's duration and complexity, the Court finds that the hours expended were not excessive. Additionally, significant hours were delegated to less expensive attorneys. (*See* Flitter Certification ¶ 23.)

Here, the lodestar multiplier—the ratio of the requested award and counsel's lodestar—is 2.14, which is well within the range approved in similar cases. *See In re Prudential*, 148 F.3d at 341 (noting that multipliers from one to four are frequently awarded in common fund cases in the Third Circuit); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F.Supp.2d 322, 341 (E.D.Pa.2007) (approving a 2.5 lodestar multiplier).

### D. Incentive Award
Awards to class representatives lie within the discretion of the Court and may be awarded for the benefit conferred on the class. Factors courts examine when assessing such awards include the risks to the representative, his involvement in the litigation, and the degree to which he benefitted as a class member. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 173 (E.D.Pa.2011). Here, counsel maintains that Cosgrove was extensively involved at every step of this case, including reviewing and critiquing the settlement agreement. The Court also finds that Cosgove's pro rata share of the settlement is insufficient to compensate him for his efforts. An incentive award of $7,500 is reasonable.

### E. Costs
**\*11** "Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp.*, 232 F.Supp.2d 327, 343 (3d Cir.2002). Here, counsel have documented $14,073 in appropriate costs, to be reimbursed from the $2.9 million cash fund. (Flitter Certification ¶ 26.) This request is in accordance with the settlement agreement and is reasonable.

### IV. CONCLUSION
For the reasons stated above, the Court grants final certification of the class, and finds that the settlement and the proposed fee award are fair, reasonable, and adequate pursuant to Rule 23(e). An appropriate Order will be docketed separately.

---

**End of Document**        © 2013 Thomson Reuters. No claim to original U.S. Government Works.

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

COLEMAN McCALL, JR.,                    :        January Term, 2006
Individually and on behalf of all others :
Similarly situated                       :
          v.                             :        No. 00005
                                         :
DRIVE FINANCIAL SERVICES, L.P.           :
and                                      :
DRIVE GP, LLC                            :

## OPINION

Plaintiff brings this class action pursuant to Pennsylvania's Uniform

Commercial Code ("UCC"), 13 Pa C.S. § 9601, et seq., and Pennsylvania's Motor

Vehicle Sales Financing Act ("MVSFA"), 69 P.S. § 601, et seq. The legislature , through

the UCC and the MVSFA, requires secured parties to provide consumers with specific,

detailed notices of repossession and sale. Consumers are entitled by statute to deficiency

notices post sale. Only by receiving a prompt deficiency notice can the consumer know

whether a creditor will claim that the vehicle proceeds do not satisfy the remaining

obligation and that the creditor intends to hold the consumer liable for a deficiency

balance.

Plaintiff Coleman McCall alleges among other things, that Defendants Drive

Financial Services, L.P. and Drive, GP, LLC, have violated state law notice requirements

in connection with motor vehicle repossessions. There is no dispute that Defendants have

utilized uniform procedures, forms and manner of notice with respect to their vehicle

repossessions in the Commonwealth of Pennsylvania.


Mccall Jr Vs Drive Financial Services Lp Eta-ORDOP

06010000500096


EXHIBIT
3

Defendant Drive Financial Services, L.P. ("Drive") is a Texas based automobile-finance company. When a consumer has defaulted on a loan, Drive repossesses and re-sells the consumer's vehicle that collateralizes the loan. In the course of repossessing vehicles belonging to plaintiff and the potential class, Drive failed both substantively and procedurally to provide plaintiff and the potential class with, among other information, the 15 day notice period required under (1) the UCC, (2) the parties' retail installment contract, and (3) the statute specifically governing repossession practice – the MVSFA.

The UCC requires a creditor to provide "reasonable authenticated notification of disposition" after repossessing a vehicle, 13 Pa. C.S. § 9611. The UCC does not itself define what is "reasonable" but looks to other sources for definition. The MVSFA is the Pennsylvania statute designed to cover repossessions and protect consumers from abuses by allowing a minimum period to cure any default or redeem before sale. *See*, 69 P.S. § 623D. Under the MVSFA, a creditor must provide:

> [a] written "notice of repossession" delivered in person, or sent by registered certified mail directed to the last known address of the buyer. Such notice shall set forth the buyer's right as to reinstatement of the contract, if the holder extends the privilege of reinstatement and redemption of the motor vehicle, shall contain an itemized statement of the total amount required to redeem the motor vehicle by reinstatement or payment of the contract in full, shall give notice to the buyer of the holder's intent to re-sell the motor vehicle at the expiration of fifteen (15) days from the date of mailing such notice, shall disclose the place at which the motor vehicle is stored, and shall designate the name and address of the person to whom the buyer shall make payment, or upon whom he may serve notice. The holder's notice shall also state that any personal property left in the repossessed vehicle will be held for thirty (30) days from the date of the notice's mailing. The personal property may be reclaimed within the thirty (30) day time period. Thereafter the property may be disposed of in the same manner as the motor vehicle and other collateral.

As set forth above, the MVSFA requires that a notice of repossession be sent to the consumer advising the consumer of several items, including 15 days notice of intent

to sell the repossessed vehicle.  69 P.S. §623D.  Under 1 Pa. C.S. § 1933, a particular

provision of one statute i.e. the MVSFA, controls a general provision of another statute

addressing the same topic, i.e. the UCC.  Since provisions of the UCC and the MVSFA

are read *in pari materia,* plaintiff and the potential class were entitled, inter alla, to at

least 15 days notice of the intent to sell the repossessed vehicle, which did not occur.

*Industrial Valley Bank & Trust v. Nash,* 502 A.2d 1254, 1263 (Pa. Super. 1985)("On the

question of the kind of notice to be given to a debtor by the secured creditor, the MVSFA

and the U.C.C. are clearly in *pari materia* since they relate to the identical thing – the sale

of a repossessed motor vehicle."); *Coy v. Ford Motor Company,* 618 A.2d 1024,

1026(Pa. Super.1993).

　　　　In addition to the MVSFA's statutory requirement of at least 15 days notice of

sale, the parties agreed in their finance contract that a borrower whose car is repossessed

would have at least 15 days notice to redeem.  The finance contract at issue provides at

¶ 12(b) under "some things you should know if we repossess the vehicle":

> You have the right to buy back (redeem) the vehicle within 15 days of the mailing
> of the Notice and at any later time before we sell the vehicle.  If you do not
> redeem, you give up all claim to the vehicle.

　　　　Driver's notice provided only 10 days, despite the contractual and statutory

obligation to provide a minimum of 15 days.

　　　　Under the MVSFA, Drive was also required to provide plaintiff and the class

information both regarding (1) the location of the repossessed vehicle; and (2) that any

personal property left in the vehicle would be held for 30 days from the date of mailing

the notice so plaintiff and potential members of the class could retrieve the property.

69 P.S. § 623D.  Drive, in its form Notice, also failed to provide that information.

If after the sale of the vehicle there is a deficiency balance, a creditor must send a letter explaining the deficiency (referred to herein as "Deficiency Notice") when it first makes written demand for the deficiency, or within 14 days after receipt of a request for an explanation by the consumer. 13 Pa C.S. § 9616. The Deficiency Notice must provide information about the aggregate amount of the obligation secured by the security interest; the proceeds from the sale; the remaining balance after applying the sale proceeds; a breakdown of the expenses incurred in selling the property; any credit to which the consumer is entitled; and the amount of the deficiency claimed. Defendant did not send out Deficiency Notices to plaintiff and the class.

Plaintiff and the potential class are entitled to uniform statutory damages as a result of defendant's failure to comply with the UCC (and the MVSFA). 13 Pa. C.S.A. § 9625(c) provides consumers with a uniform minimum liquidated damages, "regardless of any injury that may have resulted". *See*, Official Comment 4 to 13 Pa. C.S.A. § 9-625(c):

> Persons entitled to recover damages; statutory damages in consumer goods transaction. If the collateral is consumer goods, a person that was a debtor or secondary obligator at the time a secured party failed to comply with this chapter may recover for that failure in any event an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price.

This statutory damage provision has routinely been applied as written. *See e.g., Kruse v. Voyager Ins. Co.*, 648 N. E.2d 814 (Ohio 1995).

Separately, the failure to send the deficiency notice provides for a uniform, statutory damage of $500.00. 13 Pa C.S.A. § 9625(e)(5).

## I. Factual Background

In or about September 2002, Mr. McCall obtained an automobile loan from Drive for the purchase of a used Ford automobile. After two years of timely payments, in 2004, Mr. McCall fell behind on his car payments to Drive as a result of a serious family situation and Drive repossessed Mr. McCall's vehicle on February 28, 2005.

On or about March 1, 2005, Drive sent Mr. McCall a "Notice of Plan to Sell Property" in connection with the repossession by Drive of his vehicle. The Notice states that the vehicle would be sold after 10 days, i.e. "at a private sale sometime after 03/11/05", and that McCall would have to pay the sum of $ 8,968.24 to redeem the vehicle. This is the only notice sent to McCall advising of the repossession. Drive's Notice failed to comply with the 15 day notice required under their agreement(s) the UCC; and the MVSFA.

Drive acknowledges that it sent this non-compliant notice to approximately 750 Pennsylvania residents. Drive, through its counsel, has also acknowledged that approximately 1,520 cars belonging to Pennsylvania residents were repossessed during the class period.

If a deficiency remains after the sale of the vehicle, a creditor must send a letter explaining the deficiency ("Deficiency Notice") when it first makes written demand for the deficiency or within 14 days after the receipt of the request for same by the consumer. 13 Pa C.S. § 9616. Drive did not provide a notice explaining any deficiencies claimed due as required under 13 Pa.C.S. § 9616. Drive has provided no evidence that a single deficiency notice was issued to any consumer. Pursuant to 13 Pa. C.S. § 9625(e), each

consumer class member may recover a uniform $500.00 damages as a result of a creditor's failure to provide an explanation of the deficiency, where that failure is part of a pattern or practice of noncompliance. Both of Plaintiff's damages claims are uniform and based upon a statutory formula.

Plaintiff has provided an expert report from Larry Goodman, CPA, who opines that the arithmetic calculation of damages (finance charge plus 10%) would be an easy, straightforward calculation for each class member.

## II. Discussion

In determining whether this action is properly certifiable as a class action, the court is confined to a consideration of the class action allegations and is not concerned with the merits of the controversy. The court's purpose in resolving the motion for class certification is to decide solely whether the action shall continue as a class action or as an action with individual parties only. Pa.R.C.P. § 1707 (Explanatory Note 1977). Accordingly, in resolving the pending motion, the Court cannot make any ruling on Plaintiffs' ultimate recovery against any named defendant nor on the merits of any defense raised. The burden of proving that classification is appropriate falls upon the party seeking certification. D'Amelio v. Blue Cross of Lehigh Valley, 347 Pa. Super. 441, 449, 500 A.2d 1137, 1141 (1985); Janicik v. Prudential Insurance Company of America, 305 Pa. Super. 120, 128, 451 A.2d 451, 454 (1982).

In order for the court to grant class certification, the plaintiff must demonstrate that the requirements set forth in Pa.R.C.P. § 1702 have been satisfied. Rule 1702 sets forth those requirements as follows:

Rule 1702: Prerequisites to a class action.

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if:

> (1) the class is so numerous that joinder of all members is impractical;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;
>
> (4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and
>
> (5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

## 1. NUMEROSITY

Drive has acknowledged that approximately 750 Pennsylvania residents received a notice like the one attached to the Complaint. The class size will likely be closer to the number of repossessions, i.e. 1520, during the class period as recently identified by Drive's counsel. Drive's representations in its pleadings establish numerosity for purposes of class certification.

## 2. COMMONALITY

Rule 1702(2) requires that plaintiff's show that "there are questions of law or fact common to the class." Commonality does not require that every question of law or fact be common to every member of the class; rather, the requirement is generally met if the class members' legal grievances arise out of the "same practice or course of conduct" on the part of the class opponent. *Janicik*, 451 A.2d at 457, *accord, Rose v. Shawmut*

*Developnet Corp.*, 460 Pa. 328, 333 A.2d 751, 753 (1974) (claims arising from form mortgages generally give rise to common questions).

The common questions in this case are set forth at ¶31 of plaintiff's Complaint.

    (a) Whether defendant failed to send the Notice of Repossession required under the MVSFA as required after repossessing a vehicle;

    (b) Whether defendant failed to send the Notice in the form and manner required under the UCC and MVSFA after repossessing a vehicke;

    (c) Whether defendant sent a written explanation of the deficiency claimed due as required under the UCC; and

    (d) The statutory or other damages provided for such misconduct.  These issues are common to each of the 750 or more Pennsylvania consumers identified by Drive at this juncture, and therefore plaintiff meets the commonality standard.

## 3. TYPICALITY

Plaintiffs must demonstrate that their claims or defenses are typical of the claims or defenses of a class.  Pa.R.C.P. § 1702(3).  In order to satisfy the typicality requirement, the position of the class representative on the common issues must be sufficiently aligned with that of the absent class members to insure that the pursuit of the named plaintiffs' own interest will advance those of the proposed class members.  D'Amelio, Supra, 347 Pa. Super. At 458, 500 A.2d at 457; Ablin, Supra, 291 Pa.Super. at 47, 435 A.2d at 212.

A named plaintiff's claim is considered to be typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class

members, and if claims of the named plaintiff emanate from the same legal theory or common allegation as the claims of the class members.

Instantly, the complaint delineates Dive's regular use of an improper form letter: a repossession notice contrary to that mandated by the UCC and MVSFA for consumers who have suffered a repossession, and the ensuing (absent) deficiency notice. The illegality of these form documents will not vary in any significant way among class members – either the forms are illegal or not.

Typicality does not require identical claims and a variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class. *See Bucci v. Cunard Line Ltd.*, 35 D & C 3d 228, 237 (1985). In this case, plaintiff McCall is a Pennsylvania resident who financed a vehicle through Drive, who after repossessing the car, failed to provide the notices required under the UCC, the retail installment contract and the MVSFA, and failed to send a proper deficiency notice. Each class member is in the identical situation. The Complaint alleges no claims that are particular to Mr. McCall such that he would be atypical of or antagonistic to any other class member. Even if Drive argues that each class member owed a deficiency and that it is entitled to a set off, that would only impact the amount of damages to be awarded. *See also Walczak*, 850 N.E. 2d at 371-372 (rejecting claim that deficiency set-offs may be a bar to class treatment).

Additionally, the statutory damage formula is the same for all class members. The formula is a question of simple math, assuming the common liability question is resolved in favor of the class. From Drive's records, one would only need to add the finance charge and principal balance outstanding on each of the finance agreements in the

class to calculate aggregate as well as individual statutory damages.  It is well-settled that minor variations in damages do not impair typicality or preclude certification.  *See, In Re Comm. Bank of N. Va.*, 418 F.3d 277 at 305-06(3d Cir. 2006).  Because the damages formula is uniform for all class members and may be calculated with mathematical certainty, there is no impediment to class certification in this case.

4. **ADEQUACY**

Rule 1702(4) requires that "the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709."  This requirement has three elements: (1) whether counsel for the name dplaintiff will adequately represent the interests of the class; and (2) whether the representative parties have a conflict of interest in the maintenance of the class action; and (3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

Generally, competency of class counsel is presumed.  This Court finds that McCall is represented by counsel experienced in consumer class action litigation.  Cary L. Flitter and Lundy, Flitter, Beldecos & Berger, P.C. have been approved as competent counsel by this Court in other consumer class actions.  Flitter has presented at lectures and CLE's regionally and nationally for over 10 years.  Flitter teaches Consumer Credit Litigation at Widener University Law School (adjunct faculty) and is co-author of *Pennsylvania Consumer Law,* Geo. Bisel Publishing Co. Mr. McCall and the class will also be represented by Theodore E. Lorenz of the Lundy, Flitter firm.  Mr. Lorenz has significant trial experience and has been previously named class co-counsel in consumer matters in federal court.

The class is also represented by Michael D. Donovan, a principal in the firm of Donovan Searles, LLC. Mr. Donovan has extensive experience representing investors, consumers, and small businesses in class actions, shareholder rights, consumer and commercial litigation. Donovan has been previously named class counsel by this Court and by other courts in this and other federal districts.

Plaintiff McCall will fairly and adequately represent the class. Plaintiff McCall sits in virtually the same position as the putative class members who, like him, were not provided with the notices required under the UCC and the MVSFA. There is nothing to suggest that McCall may have any interest antagonistic to the vigorous pursuit of the class claims against Drive.

The Court has been made aware that some 15 years ago, that McCall was arrested and convicted of robbing a convenience store in Bucks County. He served 5 years in jail and was released in September 1996. According to counsel, Mr. McCall is not on parole and does not have to see a parole officer or anyone related to the conviction, which is now more than a decade in his past. He has not had any further convictions other than this singular criminal episode dating to 1991. This old offense has no bearing on this prong of class certification. *See Haywood v. Barnes*, 109 F.R.D. 568, 579(E.D.N.C. 1986). Mr. McCall is an adequate class representative, knowledgeable and interested to bring this case on behalf of himself and the other members of the putative class.

Furthermore, Plaintiff also sued Drive under the federal Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. *McCall v. Drive Financial Services*, U.S.D.C. E.D. Pa No. 05-cv-2463(AB). In opposition to the federal action, Drive argued extensively that Mr. McCall's old conviction somehow rendered him inadequate to serve as class

representative.  The federal court rejected Drive's argument, finding the conviction both old and entirely unrelated to any aspect of the case.  *McCall v. Drive Financial Services*, 236 F.R.D. 246 (E.D. Pa. 2006).

Finally, the named plaintiff has adequate financial resources. Pa.R.C.P. 1709(3).  Class counsel are advancing their time and the litigation costs, as they are permitted to do.  Therefore, the adequacy prong is met.

### 5. Fair and Efficient Method for Adjudication of the Controversy

Pa.R.C.P. § 1702(5) requires that the Court find that a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Pa.R.C.P. 1708 as a prerequisite to class certification.  The factors set forth in Pa.R.C.P 1708 to be considered in deciding whether or not a class action is a fair efficient method of adjudication include, in relevant part, "whether common questions of law or fact predominate over any question effecting only individual members" (Pa.R.C.P 1708(a)(1); the size of the class and the difficulties likely to be encountered in the management of the action as a class action (Pa.R.C.P. 1708(a)(2)); and whether the claims of individual class members are insufficient in amount to support separate actions (Pa.R.C.P. 1708(a)(7)).

In determining fairness and efficiency, a court is required to balance the interests of the litigants, including putative class members, and the interests of the court system, with the court being mindful that the class action is inherently a procedural device designed to promote efficiency and fairness in handling large numbers of similar claims.  *Lillian v. Commonwealth*, 467 Pa. 15, 21, 354 A 2d 250, 253 (1976).

Pursuant to Rule 1708 (c), "[w]here both monetary and other relief is sought, the court shall consider the criteria all the criteria in both subdivisions (a) and (b) of the Rule.

Class cases challenging improper repossession and deficiency notices under the UCC's remedy provision have been regularly certified by sister state courts. *Walczak*, 850 N.E.2nd at, 366-372 (affirming certicication of class of motor vehicle buyers in action against finance company with respect to repossession and deficiency misconduct); *Middleton v. Sunstar Acceptance Corp.*, 2000 WL 33385388, *3-*8 (S.C. Com. Pl. Jan. 13, 2000)(certifying class of motor vehicle buyers alleging that financing companies repossession form violated the UCC); *Chisolm v. Transouth Financial Corp.*, 194 F.R.D. 538, 557-569 (E.D. Va. 2000)(certifying class and subclasses against financing company for violation of UCC notice requirements in alleged car churning scheme); *Patrick v. Wix Auto Co.*, 681 N.E.2d 98, 102 (Ill. App. 1st Dist. 1997)(holding that repossession notice utilized by financing company violated state law).

Here, common questions predominate throughout the class as a result of Drive's failure to provide both the repossession and deficiency notices required under the UCC ans the MVSFA. *See* Rule 1708(a)(1). The predominance standard is "closely akin to" the commonality requirement of Rule 1702(2) discussed above, which is clearly satisfied in the matter. *Janicik* at 461.

There is no basis to conclude that any difficulties would be encountered with the management of this matter on a class action basis. Rule 1709(a)(2). The class consists of between 750 and 1520 Pennsylvania consumers and involves Drive's failure to provide the notices required under the UCC and the MVSFA in connection with Drive's repossession of vehicles belonging to plaintiff and the class. Drive's business is highly computerized and as such, Drive should be able to readily access information relating to plaintiff and the class; *compare Janicik* at 462 ("...the names, addresses and insurance

records of all potential class members were centrally stored by [defendant].

Consequently, management problems unique to the class porceedure would not be unduly

burdensome…").

This forum is particularly appropriate in which to address the claims of the

plaintiff and the putative class.  *See* Rule 1708(a)(3),(5),(6), and (7).  The cost of

proceeding on an individual basis would not be practical or economical given the

potential size of individual awards and members of the putative class will benefit by

proceeding on a class basis.

In addition  to monetary relief, Plaintiff also seeks declaratory relief in this action.

Declaratory relief is appropriate in this case since Drive has acted or refused to act, or

failed to perform a legal duty, on grounds generally applicable to all class members.  *See*

Rule 1708 (b)(2).  The defendant's conduct does not, however, have to be directed at or

damaging to each member of the class to justify declaratory relief.  *Willams v. Empire*

*Funding*, 183 FRD at 435-37.

Declaratory relief is also appropriate because Drive's repossession and deficiency

procedures fail to comply with Pennsylvania law.  As Plaintiff asserts in his Motion, "the

public interest in seeing that the rights of consumers are vindicated favors the disposition

of the instant claims in a class action form."  *Lake v. First Nationwide Bank*, 156 F.R.D.

at 626; *accord Baldassari*, 808 A.2d at 195.

## II. CONCLUSION

Plaintiff has shown that each of the requirements for class certification set forth in

Rule 1702 are satisfied: (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) plaintiff's

claims are typical of those of the class members: (4) plantiff is ans adequate representative of the class; and (5) the class action provides a fair and efficient method for adjudication of the controversy.  Plaintiff has shown that the criteria of Rule 1708 are satisfied.

The Court therefore grants Plaintiff class certification.

BY THE COURT:

Gary F. Di Vito,                    J.

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

APR 1 4 2009

FIRST JUDICIAL DISTRICT OF PA
USER I.D.:

cls\mccall-repo\pleadings\motionforclasscertification12/1/2006

| | |
|---|---|
| COLEMAN McCALL, JR., individually and on behalf of all others similarly situated<br><br>Plaintiff<br><br>vs.<br><br>DRIVE FINANCIAL SERVICES, L.P. and DRIVE GP, LLC<br><br>Defendants | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>JANUARY TERM, 2006<br><br>NO. 00005 |

DOCKETED        112359

APR 1 4 2009

K. PERMSAP
CIVIL ADMINISTRATION

## ORDER CERTIFYING CLASS

AND NOW, upon consideration of Plaintiff McCall's Motion for Class Certification (the "Motion"), Memorandum of Law in support thereof, and evidence and certifications in support thereof, and Defendants' response thereto, the Court having convened a hearing thereon;

IT IS, this 10ᵗʰ day of ~~April 2009~~ HEREBY ORDERED that the Motion is GRANTED. This action shall be maintained as a class action in accordance with Pennsylvania Rules of Civil Procedure 1701 *et seq.* pursuant to the following findings of fact and conclusions of law:

1.    The "Class" is defined as:

All persons with addresses in the Commonwealth of Pennsylvania who financed a motor vehicle through Drive primarily for consumer use, from whom Drive, as secured party, repossessed a vehicle and who were not sent a notice which: (1) provided at least 15 days notice of sale date; or (2) specified the physical location of the repossessed vehicle; or (3) fully itemized all charges imposed in connection with the repossession; or (4) advised that personal property left in the vehicle would be held for 30 days; and/or who were not sent a deficiency notice itemizing any amount remaining after the sale of the vehicle during the period commencing January 3, 2002 through the date hereof.

2.    The Class is so numerous that joinder is not practicable. According to

Mccall Jr Vs Drive Financial Services Lp Etc-ORDOP



06010000500096

answers to provided in discovery by Defendants, at least 750 and as many as 1500 persons meet the Class definition set forth above.

3.     There are questions of law and/or fact common to the Class, including but not limited to the following:

(a)     Whether defendants failed to send to Class Members a Notice of Repossession which provided the proper period of notice before the vehicle would be exposed to sale;

(b)     Whether defendants failed to send to Class Members a Notice in the form and manner required under the Uniform Commercial Code ("UCC"), the Pennsylvania Motor Vehicle Sales Financing Act or the finance contract after repossessing a vehicle;

(c)     Whether defendants failed to send to Class Members a written explanation of the deficiency claimed due as required under the UCC; and

(d)     Whether the Class may recover damages as provided by law.

4.     The claims of Plaintiff McCall are typical of the claims of the Class. Defendants sent a substantially similar form Repossession Notice ("Notice") to Plaintiff as they had sent to other members of the Class. Plaintiff claims that the form Notice (and similar forms of the Notice) utilized by Defendants fails to comply with state law in content, timing and manner of notice. These are the same claims that all other members of the Class possess. Defendants claim that the Notice (and similar forms of the Notice) did not violate state law. This is the same defense that Defendants would assert as against all members of the Class. Therefore, Plaintiff's claims and the defenses thereto are typical and are suitable for treatment as a class action.

2

5.     Plaintiff will fairly and adequately protect the interests of the Class and is represented by counsel who are experienced and adequate in consumer class action litigation.  Plaintiff has participated in discovery in this action, and has demonstrated his willingness and ability to advance his claims and the claims or the Class on a representative basis.  Plaintiff and his counsel do not have any interests that are adverse to the interests of the Class.

6.     Defendants have acted or refused to act on grounds generally applicable to the Class.  Defendants allegedly have utilized forms of Notice that do not comply with state law and/or have failed to send any deficiency notice.  Defendants allegedly have followed uniform procedures in connection with the provision of this allegedly deficient Notice or absent deficiency notice to the members of the Class.  Defendants have contended that both the form of the Notice utilized and the manner of that Notice are proper with respect to all Class Members.  Hence, Defendants' conduct has been generally applicable to the Class.

7.     The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.  Whether the form of Notice utilized by Defendants is violative of state law is a predominating common question, because it is the predicate liability issue that would necessarily have to be answered for Plaintiff and any class member whether this case proceeded as a class action or as an individual action.  As this and other related questions are the focal point of this case, these common questions predominate over any questions likely to affect individual class members.

8.     The prosecution of separate actions by individual members of the Class

3

would not be cost-effective for such claimants, as the amounts at stake are not sufficient to justify economically individual litigation.  In addition, individual actions would be inefficient and a waste of litigant and judicial resources, as the same questions would have to be litigated and resolved in duplicative and redundant proceedings.  In this respect, separate individual actions would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that could expose the Defendants to incompatible standards of conduct.

9. This Court is an appropriate forum for the litigation of the claims of the Class because Plaintiff resides in this jurisdiction, and this Court is capable of resolving the state law issues raised by this litigation.

10. In view of the complexities of the issues and the expenses of litigation, the separate claims of individual Class Members are not sufficient in amount to support separate actions.

11. The amount which may be recovered by individual Class Members is modest in relation to the expense and effort of proceeding with individual lawsuits, thus making this class proceeding more economical.

12. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final equitable or declaratory relief appropriate with respect to the Class.

It is, therefore, further ORDERED that Plaintiff Coleman McCall is certified as Class representative; and it is further

ORDERED, that Cary L. Flitter and Theodore E. Lorenz of Lundy, Flitter, Beldecos & Berger, PC, and Michael D. Donovan of Donovan Searles, LLC shall serve

4

as Class Co-Counsel; and it is further

ORDERED, that Plaintiff shall submit to the Court a proposed form of notice to the Class within twenty (20) days of entry of this Order to satisfy Pa.R.C.P. 1712.  The parties shall promptly confer in an effort to agree upon a suitable notice.  Within 20 days, defendants shall provide to Class Counsel a complete class list in computer readable form with the last and best known address(es) of each person meeting the definition of the Class set forth above.

DI VITO, J.

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

APR 1 4 2009

FIRST JUDICIAL DISTRICT OF PA
USER I.D.:

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RANDY LANGER and JAMES LANGER,

     Plaintiffs,

    v.

CAPITAL ONE AUTO FINANCE, a division of
CAPITAL ONE, N.A.,

     Defendant.

Civil Action No. 2:16-cv-06130-HB

### RESPONSES OF DEFENDANT
### TO PLAINTIFFS' FIRST SET OF CLASS DISCOVERY

Defendant, Capital One Auto Finance, a division of Capital One, N.A. ("COAF"), by and through its undersigned counsel, Stradley Ronon Stevens & Young, LLP, hereby responds to Plaintiffs' First Set of Class Discovery ("Discovery Requests") as follows:

### GENERAL OBJECTIONS

1.  The following responses are based upon the facts and information now known to Defendant as well as its present analysis of the case, and may not be deemed to be an admission or representation that further facts, documents, or witnesses having knowledge relevant to the subject matter of a Discovery Request do not exist. Without in any way undertaking an obligation to do so, Defendant reserves the right to alter, supplement, amend, or otherwise modify these responses in any way at any time, in light of facts revealed through discovery and investigation.

2.  Defendant objects to the Discovery Requests to the extent that they seek disclosure of information, communications, and/or documents protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, doctrine, or



EXHIBIT
4

18.     These Objections are incorporated into each response set forth below as though set forth therein in full.   Defendant's objections to each individual Discovery Request are submitted without prejudice to, and without in any respect limiting or waiving, any of these General Objections.

## INTERROGATORIES

1.     IDENTIFY all PERSONS having knowledge of the facts alleged in the pending class complaint, and set forth with particularity each person's knowledge of the facts. Please include the name of the PERSONS who was responsible for accessing YOUR computer system to determine the size of the putative classes.

**RESPONSE: COAF objects to this request on the grounds that it is overly broad, vague and ambiguous, in that it refers to "all persons" known to have knowledge of "the facts" alleged in the complaint.  Subject to and without waiving any objections, COAF responds as follows:  Plaintiff would have personal knowledge of the facts and issues in this lawsuit. Further responding, COAF's corporate designee(s) lacks personal knowledge, but is expected to possess knowledge regarding the issues in this lawsuit, based upon his or her review of COAF's business records.  Further responding, Mr. James (Jim) Burrows, Senior Business Analysis Manager at COAF conducted a review of COAF's business records to determine the size of the putative classes.  COAF's investigation with respect to the size of the putative classes is ongoing, and COAF will supplement this response to the extent necessary.**

2.     IDENTIFY the total number of people who comprise the (putative):

(A) REPOSSESSION NOTICE CLASS, and state how YOU computed it;
(B) POST SALE NOTICE CLASS, and state how YOU computed it;
(C) COBORROWER CLASS, and state how YOU computed it; and,

attach DOCUMENTS which support the BASIS for YOUR CALCULATIONS or figures (including any REPORTS, including spreadsheets).

**RESPONSE: (A) COAF estimates that there may be approximately 1,329 accounts that fall within the "Repossession Notice Class" definition.  COAF calculated this number by reviewing its records of borrowers and coborrowers with a Pennsylvania address who received a letter entitled "Notice of Intent to Dispose of Motor Vehicle" (the "NOI Letter") that allegedly failed to provide a minimum period of 15-days' notice of the disposition of the collateral.  Upon the execution of an agreed-upon confidentiality agreement, COAF will agree to produce a spreadsheet (with redactions for identifying information about absent class members) that provides further information responsive to this request.**

**(B) & (C) Based on the purported class definitions in the Complaint, COAF has not identified any putative class members in the "Post Sale Notice Class" and the "Coborrower**

5

Class." Instead, COAF believes that it sent separate NOI Letters to coborrowers during the relevant period of time and that it properly sent "Post Sale Notices" to borrowers and coborrowers that contained all the required information set forth in the Pennsylvania UCC.

COAF's investigation is ongoing, and COAF will supplement this response to the extent necessary.

3.      IDENTIFY the name(s) of all software system(s) and the name of the developer/manufacturer that YOU use (or used) at any time during the RELEVANT PERIOD to maintain any information CONCERNING any of the putative class members and the use of the NOTICE OF REPOSSESSION and POST-SALE NOTICE, including the beginning and ending date(s) of such use.

**RESPONSE:** COAF objects to this interrogatory, because it seeks information that is neither relevant to any party's claim or defense nor likely to lead to the discovery of admissible evidence in this litigation.

4.      IDENTIFY whether YOU have stopped all collection efforts as to the putative class members with respect to collecting any DEFICIENCIES. If your answer is "no," please:

> (A) State the BASIS of why YOU are continuing YOUR collection efforts against some or all of the putative CLASSES with respect to collecting DEFICIENCIES;
>
> (B) IDENTIFY all PERSONS (i.e., collection agencies) who YOU contracted with to collect (or attempt to collect) DEFICIENCIES; and,
>
> (C) IDENTIFY all PERSONS who YOU sold any of the CLASS MEMBER'(S) accounts to.

**RESPONSE:** Yes. Following the filing of Plaintiff's Complaint, COAF took steps to cease collection efforts with respect to deficiency balances owed by the putative class members who have been identified as part of the "Repossession Notice Class".

5.      IDENTIFY what efforts, if any, YOU have taken (or are taking) which has had (or will have) the affect or consequence of reducing the number of class members in any of the putative CLASSES thereby reducing potential damages, irrespective of whether YOU intend (or intended) for such a consequence(s).

**RESPONSE:** COAF objects to this request on the grounds that it is vague and ambiguous in terms of its reference to "efforts" to "reduc[e] the number of class members" and to "reduc[e] potential damages." COAF further objects to this request on the grounds that it appears to seek information that is neither relevant to any party's claim or defense nor likely to lead to the discovery of admissible evidence in this litigation.

6

## VERIFICATION

I, James (Jim) Burrows, Senior Business Analysis Manager for Capital One Auto Finance ("COAF"), hereby state that I am duly authorized to make this verification on behalf of COAF and verify under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the facts set forth in the foregoing Responses to Plaintiffs' First Set of Class Discovery are true and correct to the best of my knowledge, information and belief. Because the Interrogatories are directed to a corporation, these Responses to Interrogatories do not constitute, nor are they derived from my personal knowledge or the personal knowledge of any other single individual, but include record information and information that cannot be attributed to any single individual, the recollection of employees and general knowledge of the answering employee and/or others. The responses were prepared with counsel's advice and recommendations.

Date: 1/18/2017

James Burrows, Senior Business Analysis Manager
Capital One Auto Finance

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RANDY LANGER and JAMES LANGER,      )
     )
       Plaintiffs,      )    CIVIL CLASS ACTION
     )
       v.      )
     )    No. 2:16-CV-06130-HB
CAPITAL ONE AUTO FINANCE, a division    )
of CAPITAL ONE, N.A.,      )
     )
       Defendants.      )

<u>**DECLARATION OF RICHARD SHENKAN**</u>

I, Richard Shenkan, declare under penalty of perjury as follows:

1.  Affiant is counsel of record this matter through his law firm Shenkan Injury Lawyers, LLC., which he is the sole owner, and concentrate his practice in the areas of consumer law class actions and personal injury.

2.  Affiant received a bachelor of science degree from Cornell University in 1992, graduated from University of Akron School of Law in 1996, and has been practicing in these fields as a licensed attorney since 1997 in Pennsylvania.

3.  Affiant is licensed to practice law in Pennsylvania, Washington, D.C., Michigan, and Florida, and has never been the subject of any disciplinary proceedings.

4.  Some of Affiant's class actions include several certified post-repossession consumer disclosure notice class actions for alleged defects, such as *Masgay, et al., v. First Commonwealth Bank*, 686-2015 (Jefferson County 2015)($16.8M benefit conferred), *Antonik, et al., v. First National Community Bancorp, et al.*, 13-4438 (Lackawanna County 2017)($2.8M benefit conferred), and *Cooley, et al., v. F.N.B. Corporation, et al.*, 10010 (Lawrence County 2003)($14M benefit conferred). Additionally, Mr. Shenkan was also co-counsel in *Vallies v. Sky Bank*, 01-1438 (W.D Pa. 2001), a certified consumer class action involving Truth in Lending Act claims; *Perod v. McKenzie Check Advance of Pennsylvania, LLC.*, 98-CV-6787 (E.D. Pa. 1998), a certified consumer class

1



action that resulted in a \$4.3 settlement); and *Conner v. Carepoint Medical Solutions, LLC.*, 2:16-CV-01436 (2016) and *Mauthe v. Versa Cardio*, LLC., 5:16-cv-00570-JLS, both TCPA certified class actions.

5.   Affiant has sufficient assets to fund this litigation and no conflicts of interest that are antagonistic to the class or would compromise his zealous advocacy for the putative classes to whom he and his firm seek to represent.

I declare the foregoing is true and accurate under the penalty of perjury pursuant to 28 U.S.C. §1746.

SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan

# FILED UNDER SEAL



# FILED UNDER SEAL



# FILED UNDER SEAL



IN THE COURT OF COMMON PLEAS
OF JEFFERSON COUNTY, PENNSYLVANIA

**FILED**

| | | |
|---|---|---|
| ANTHONY MASZGAY, ROBERTA ) | CIVIL ACTION | JUL 2 3 2018 |
| PECK, CHARLES PECK, NICOLE ) | | |
| HOPPER, RAYMOND ALLSHOUSE, ) | No. 686-2015 | **TONYA S. GEIST** |
| CLIFFORD CHESTNUT, and ROXANN ) | | PROTHONOTARY & CLERK OF COURTS |
| CHESTNUT, individually and on behalf of ) | | |
| all others similarly situated, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| FIRST COMMONWEALTH BANK and ) | | |
| FIRST COMMONWEALTH FINANCIAL ) | | |
| CORPORATION, ) | | |
| ) | | |
| Defendants. ) | | |

### ORDER OF FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE

This consumer class action arises from alleged violations of the Uniform Commercial Code ("UCC") 13 Pa. C.S. §9601, *et seq.*, and the Unfair Trade Practices Consumer Protection Law ("UTPCPL") against these Defendants.[1] Over the course of several years, the parties heavily litigated this matter before arriving at a global settlement. No liability has been established. On March 29, 2018, the Court entered an Order Preliminarily Approving the Settlement and Conditionally Certifying the Settlement Class ("Preliminary Approval Order").

On April 27, 2018, the Settlement Administrator sent court-approved class notice to 2,802 class members corresponding to 2,191 loans at issue. Only 139 class notices were returned as undeliverable.

---

[1] The term "Plaintiffs" or "Members" are defined as those individuals named above and all "Class Members" as the term is defined in Par. 1.19 of the Class Action Settlement Agreement and Release ("Agreement"). The term "Defendants" is defined in Par. 1.08 of the Agreement. The term "Parties" used herein refer to the "Plaintiffs" and "Defendants," collectively.

1



EXHIBIT

9

A TRUE COPY
ATTEST:
PROTHONOTARY · CLERK

On May 18, 2018, this Court entered an order declaring that the $1,755 payment ($1 per applicable Class Member) which Representative Plaintiffs Roberta Chestnut and Clifford Chestnut tendered to extinguish the disputed indebtedness of those Class Members who the Bank claimed owed a Deficiency Balance constituted a bonafide accord and satisfaction.

No Class Member objected to the settlement.

On July 23, 2018, beginning at 3:30 o'clock p.m., in Courtroom A310, Jefferson County Courthouse, 200 Main Street, Brookville, PA 15825, this Court held a Final Approval Hearing to consider, among other things: (i) whether the Settlement reflected in the Agreement should be approved as fair, reasonable, adequate, and in the best interests of the Members of the Class and the Settlement Class should be finally certified;[2] (ii) whether final judgment should be entered dismissing the claims of the Members of the Class[3] with prejudice and on the merits, as set forth in the Agreement; (iii) whether to approve Plaintiffs' application for Class Representative awards; and (iv) whether to approve Plaintiffs' request for an award of Class Counsel fees, costs, and expenses from the common fund;

Based on the foregoing, having heard the statements of counsel for the Parties and of such persons who chose to appear at the Final Approval Hearing, having considered all of the files, records, and proceedings in the action, including specifically the Agreement (and the exhibits appended thereto), the memoranda and other papers filed by the Parties in support of Final Approval[4] of the Settlement, and all affidavit testimony, having been informed of the fact

---

[2]     Any use of the terms "Principal Class," "Class," "Class Period," "Class Members," "Members," "Defendants' Insurer," "Agreement," "Deficiency Balance," and "Released Claims" in this Order are understood as those terms are defined in the Agreement.

[3]     As set forth and defined in the Agreement, the Class Members all belong to the "Principal Class," or "Class," which, for purposes of the Settlement, means all relevant persons for the period commencing August 27, 2009 through November 30, 2015 ("Class Period").

[4]     Any use of the term "Final Approval" in this Order is understood as that term is defined in the Agreement.

2

that no objections have been filed, and having taken into account other relevant matters pertaining to the Settlement raised at the Final Approval hearing;

### THE COURT HEREBY GRANTS THE MOTION AND FINDS AND ORDERS:

1.    <u>Notice to the Class</u>:

Notice to the Class has been provided by the Settlement Administrator pursuant to this Court's Order of Preliminary Approval, as attested to by the Affidavit of the Settlement Administrator.[5]  The Notice given to Members of the Class by first class mail constituted due and sufficient notice of the Settlement, and the matters set forth in the Notice to the Class Members fully satisfies the requirements of due process and Pa.R.Civ.P. 1714.

2.    <u>Class Settlement Approved & Principal Class Certified</u>:

The Settlement set forth in the Agreement, a copy of which was filed with the Motion for Preliminary Approval, is fair, reasonable, adequate and in the best interests of the Principal Class.  Any terms in this Order referring or pertaining to the Settlement shall be defined and/or interpreted in accordance with the definitions as set forth in the Agreement.  All aspects of the Agreement are approved.  The Class Representatives' individual service awards are approved. The Principal Class is certified and finally approved by the Court.

The Principal Class (or "Class") means all persons for the period commencing August 27, 2009 through November 30, 2015:

        (a)    who financed the purchase of a motor vehicle primarily for personal, family or household use through First Commonwealth Bank ("FCB") or whose motor vehicle-related consumer loan contract was assigned to FCB; and,

        (b)    from whom FCB, as secured party, repossessed the vehicle or ordered it to be repossessed; and,

---

[5]    Any use of the term "Settlement Administrator" in this Order is understood as that term is defined in the Agreement.

3

    (c)    who had a Pennsylvania address as of the date of repossession; and,

    (d)    who were either:

        (1)    sent a Repossession Notice and/or Deficiency Notice which allegedly did not contain all required information as pled in the Complaint in this Litigation; or

        (2)    sent no such post-repossession disclosure notice(s) at all.

3.    <u>Class Counsel Fees and Expenses</u>:

The Court has reviewed the application for Class Counsel fees and expenses and the documentation submitted in support of that application. Consistent with the criteria set forth in Pa.R.Civ.P. 1717, and the established law providing for payment of reasonable counsel fees and expenses to class counsel from a common fund created for the benefit of the Class, the Court finds that the cash value of the Settlement along with the aggregate forgiveness of the disputed Deficiency Balances after default and repossession is in excess of $16.8 million – which does not include the valuable equitable relief of credit report correction, the return by the Bank of amounts collected from Class Members on Deficiency Balances since June 25, 2016 (the "Post-Stay Collection Payments," as set forth in the Agreement), and the vacating of any deficiency judgments. Additional considerable value is, indeed, provided by the tradeline deletion of Members and these other equitable benefits. While not amenable to measurement, the tradeline deletion is a tangible benefit that will likely, *inter alia,* improve Class Members' credit ratings, potentially resulting in a lower and/or more favorable cost of credit in the future. It removes a significant negative influence on loan, insurance, mortgage or even employment decisions. *See* Lea Shepard, *Seeking Solutions to Financial History Discrimination,* 46 Conn. L. Rev. 993, (2014). In *Ciccarone v. B.J. Marchese, Inc.,* 2004 WL 2966932 (E.D. Pa. Dec. 22, 2004), the court estimated that the value of the credit repair was equal to the cash component of the

4

settlement. *See also Cosgrove v. Citizens Auto Fin., Inc.*, 2011 WL 3740809, at *7 (E.D. Pa. Aug. 25, 2011) ("additional obligation to correct negative entries on class members' credit reports is tangible and adds value to the settlement").

The request for an award of fees to Class Counsel in the sum of $2.92 million, to be paid to Shenkan Injury Lawyers, LLC or to any other entity of counsel's direction, is approved as fair and reasonable in light of all the relevant factors to be considered. The fees represent approximately only 17.4% of the value of the cash and waiver of the disputed Deficiency Balance portion of the Settlement. This figure does not take into account the return of the Post-Stay Collection Payments, the value of the credit report reparation, and the vacating of deficiency judgments – all of which the Court finds of very considerable additional benefit conferred on the Class. Here, the requested fee is amply supported by the lodestar cross-check. Litigation expenses of Class Counsel have been adequately documented and were reasonable and necessary for effective prosecution of the case. Attorney Richard Shenkan and Rudy Fabian's hourly fees are approved at the regular hourly rate of $ 725.00 per hour; Jenna Townsend is approved at her regular hourly rate of $375 per hour. The lodestar for this case is $ 1,270,237.50 corresponding to a conservative multiplier of approximately 2.3.

This multiplier is well within the range of multipliers which have been approved. *See, In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp.2d 706, 736, n. 44 (E.D. Pa. 2001)(approving multiplier "in the range of 4.5 to 8.5"); *Newberg on Class Actions*, 5th Edition. §14.03 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *Muchnick v. First Fed. Sav. & Loan Ass'n*, Civ. A. No. 86-1104, 1986 WL 10791, at *1 (E.D. Pa. Sept. 30, 1986) (approving award of attorneys' fees using multiplier of 8.33 where "[t]he lawsuit raised several significant and novel legal issues, and the

history of related litigation indicated that the contest would likely be lengthy and hard-fought"). This risk of non- recovery should be reflected in the attorney fee awarded by the Court, taking into account an incentive to encourage attorneys to pursue consumer protection claims and, if successful, a recovery commensurate with the risk of a contingent recovery. *See, e.g. O'Rourke v. Healthdyne, Inc.*, Civ. A. Nos, 84-4295, 84-4296, 1986 WL 923, at *2 (E.D. Pa Jan. 16, 1986) ("The petitioners prosecuted this case on a contingent fee basis. This risk is a factor to be considered in determining the fee....These hours were expended without any guarantee of success."); *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010)("[C]ontingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation" and "provide attorneys due consideration for the risk they undertake."); *see, also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 821 (3d Cir. 1995)(*citing* Court Awarded Attorney Fees, the Report of the Third Circuit Task Force, 108 F.R.D. 235, 250 (1985) ("[T]he court apportions the fund between the class and its counsel in a manner that rewards counsel for success and penalizes it for failure.")

Furthermore, the fee agreement between counsel and each of the Representative Plaintiffs provides for a fee equal to forty percent of the total benefit conferred upon the class. Following this calculus to the cash and debt extinguishment portion of the settlement, an attorney fee of one-third of the total recovery would also be a reasonable fee in light of the risk and considerable benefit conferred in this case. *See, Cullen v. Whitman Medical Corporation,* 197 F.R.D. 136 (E.D. Pa. 2000) (a fee for the forgiveness of debt is compensable and can be included in a common fund recovery).

While the Explanatory Note to Pa.R.Civ.P. 1701 states that "[t]he Court is not bound by the amount or percentage of the fee set forth in a contingent fee agreement between the

6

representative party and his attorney," this fact is certainly relevant to the ultimate fee award. *See, e.g. Edwards v. Alaska Pulp Corp.*, 920 P.2d 751, 758 n. 15 (Alaska 1996) (courts may consider, but should not be bound by the percentage in a contingency fee arrangement).

In short, Plaintiffs' counsel, Richard Shenkan, is well-qualified litigator with over 20 years experience and has served as class counsel in other consumer class cases throughout Pennsylvania. The fees represent approximately only 17.4% of the value of the cash and waiver of the disputed Deficiency Balance portion of the Settlement. This figure does not take into account the return of the Post-Stay Collection Payments, the value of the credit report reparation, and the vacating of deficiency judgments – all of which the Court finds of very considerable additional benefit conferred on the Class.

Furthermore, while there is an issue as to whether First Commonwealth Bank will send a 1099-C to certain Members, the parties have petitioned for a Private Letter Ruling, requesting that a 1099-C not need to be issued by the Bank due to the fact that this Court has held that the debt is disputed and that an accord and satisfaction has occurred. While the ruling by the IRS has yet to be received, the considerable efforts taken by Class Counsel to petition for this ruling are also significant. This case presented novel, complex issues and Class Counsel effectuated an excellent recovery for the Class through his perseverance and skill. The attorney fee is fully justified by the work performed, risks taken, and the results obtained.

Attorneys' fees may be paid on a cash or deferred basis to Richard Shenkan, Shenkan Injury Lawyers, LLC or its designee(s). Expenses are approved in the requested sum of $65,320.35. Attorneys' fees and costs shall be paid from the Settlement Fund.[6] All incentive fees are also approved as fair and reasonable. A $5,000 service award is well within the range of

---

[6]     Any use of the term "Settlement Fund" in this Order is understood as that term is defined in the Agreement.

7

service awards that are granted in similar class actions of this magnitude and level of complexity. *See, e.g., Milkman v. American Travelers Life Insurance Company,* 2002 WL 778272 (C.C.P. Phila. Co. April 1, 2002) (Service awards approved for $10,000, $7,500 and $5,000). An award of this magnitude is fully justified by the involvement of these individuals in the litigation and approved as fair and reasonable.

    4.    <u>Dismissal and Related Matters.</u>

    a.    The claims of all Members of the Class, except one Class Member (an estate) which excluded itself from the Class pursuant to Paragraph 4.03 of the Agreement, are hereby dismissed with prejudice, on the merits and without costs to any Party.

    b.    The Class Representatives (on their own behalf and on behalf of each Class Member) and the Class Members, by operation of the Agreement and this Order for Final Judgment and Dismissal with Prejudice, hereby shall be deemed to have fully, finally and forever released, settled, compromised, relinquished, and discharged with prejudice the Defendants, Defendants' Insurer, and Defendants' Counsel of and from any and all Released Claims as set forth in the Agreement, and shall be forever barred and enjoined from instituting or further prosecuting, in any forum, including but not limited to any state or federal court or arbitration, administrative or other proceeding, any Released Claims as defined in the Agreement.

    c.    Each Class Representative (on his/her own behalf and on behalf of each Class Member) and the Class Members acknowledge that he/she is aware that he/she may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Releases and/or the Released Claims as set forth in the Agreement, but that it is his or her intention to, and he or she is hereby deemed, upon the Effective Date of the Agreement to fully, finally and forever settle and release the

8

Defendants, Defendants' Insurer and Defendants' Counsel from any and all Released Claims as set forth in the Agreement.

d.      The Class Representatives (on their own behalf and on behalf of each Class Member) and the Class Members acknowledge and agree that they cannot raise any Released Claims as set forth in the Agreement as a defense to any action brought by Defendants against them in connection with an action seeking repayment of an obligation other than an obligation waived under the Agreement.  Any claim that a Class Member may have to dispute with the IRS regarding a taxability issue for that particular Member is expressly preserved.

e.      On the Effective Date, by operation of law and pursuant to the Agreement, Defendants will be deemed to have released, settled, compromised, relinquished and discharged with prejudice all Class Members, including the Class Representatives, from any and all claims, liens, demands, causes of action, obligations, damages, and liabilities against the Members arising from this Litigation, including any liability to the Defendants for the disputed, outstanding Deficiency Balances.  The release specified in the preceding sentence does not apply to: 1) any loan obligation of any Member other than those which are at issue in this Litigation; or 2) any obligation arising from a reinstated loan account for which the vehicle securing the loan has not been sold or caused to be sold by Defendants or their agents as of the Preliminary Approval date.

f.      If any Class Member has made a payment on the disputed Deficiency Balance on or after June 25, 2016, (a "Post-Stay Collection Payment"), the Bank shall return such payment, as set forth in the Agreement.

g.      In light of the Notice given to the Class Members, the Plaintiffs and all Class Members who did not exclude themselves from the Class shall be bound by the

Agreement, and all Released Claims as set forth in the Agreement shall be dismissed with prejudice.

       h.     The untimely request for exclusion by a single Class Member is given legal effect and such Class Member is hereby excluded from the Class.

     5.    *Cy Pres; Other Distributions; and Escrowed Funds*

     The Court approves the following entities as cy pres beneficiaries: University of Pittsburgh (legal clinic); National Association of Consumer Advocates; National Consumer Law Center; Laurel Legal Services, Inc.; or the United Way. The Settlement Fund remaining after distribution to Class Members, after payment of Class Counsel fees, and after administration expenses, plus any interest accrued, shall be distributed by the Settlement Administrator as set forth in § 3.05 of the Agreement. As set forth in the Agreement, within one hundred eighty (180) days after the Distribution Date, the balance of the principal of any uncashed or returned checks and any accrued interest of the Settlement Fund will be disbursed as follows: (a) one-half (1/2) to the Pennsylvania Interest On Lawyers Trust Account Board (IOLTA) pursuant to Pa.R.Civ.P. 1716, and (b) one-half (1/2) to IRS 501(c)(3) charities and/or public institutions agreed to by Counsel and approved by the Court. The one-half (1/2) portion to be distributed to the *cy pres* beneficiaries as set forth in (b) of this paragraph above shall be distributed at the discretion of Plaintiffs' counsel. Plaintiffs' counsel shall file a certification as to the amounts and beneficiaries of these funds.

     In the event that after the other distributions, reimbursements and payments described herein, there remain sufficient funds in the Settlement Account which Class Counsel reasonably believes should be distributed to Class Members, then Class Counsel may petition the Court to allow one or more supplemental distributions to the entire Class or some portion of it, during this 180 day period.

The expenses incurred incident to the distribution which are petitioned for by Class Counsel are fair and reasonable and shall be paid from the Settlement Fund. The Settlement Administrator shall pay itself the balance of its bill in the sum of $11,545.00; pay all representative Plaintiffs an incentive award of $5,000; and reimburse Roberta and Clifford Chestnut or their designee for their payment for the accord and satisfaction in an amount not to exceed $2,250.00, which may include any interest and fees in connection with their payment on behalf of the class.    In light of the fact that, according to the Settlement Administrator's affidavit, 139 Members have yet to be located, representing a recovery of approximately $275,000, and that there are additional tax-related issues which are pending and may need to be argued at the IRS, the Settlement Administrator shall escrow $40,000.00 which may be used for any additional expenses and locational efforts. A sum, with approval of Class Counsel, may be assessed not to exceed $225.00 to locate any Class Member. Any monies remaining after all distributions shall be set forth in an accounting which shall be filed with the Court by Class Counsel detailing, *inter alia*, the identity of the *cy pres* recipient(s) and confirming that half of the balance was paid to the Pennsylvania IOLTA.

      6.    <u>Continuing Jurisdiction.</u>

Consummation of the Settlement shall proceed as described in the Agreement and the Court hereby specifically retains jurisdiction of this matter in order to resolve any disputes which may arise in the implementation of the Agreement or the implementation of this Order of Final Judgment and Dismissal with Prejudice. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994). The Court retains continuing jurisdiction for purposes of supervising the implementation of the Agreement and supervising the distribution and allocation of the Settlement Fund.

This class action provides a fair and efficient method for adjudicating this controversy under the criteria set forth in Rule 1708, thereby satisfying the requirement of Pa.R.Civ.P.

1702(5).  Final judgment is entered as provided herein. The docket shall remain open solely for administrative matters as set forth herein. The Defendants, as defined in the Settlement Agreement, and Defendants' Insurer are expressly released with prejudice.

IT IS SO ORDERED.

BY THE COURT:

Date: _7/23/18_

Judge John Fokadora, P.J.

12