IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY LANGER and JAMES LANGER, | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | No.  2:16-cv-06130-HB |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAPITAL ONE AUTO FINANCE, a division of | ) | |
| CAPITAL ONE, N.A., | ) | |
| | ) | |
| Defendant | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
UNCONTESTED MOTION FOR PRELIMINARY SETTLEMENT
APPROVAL, CONDITIONAL CERTIFICATION OF SETTLEMENT
<u>CLASSES, AND APPROVAL OF CLASS SETTLEMENT NOTICE</u>**

Richard E. Shenkan, Esq.
Shenkan Injury Lawyers, LLC
P.O. Box 7255
New Castle, PA  16107
P: (800) 601-0808
F: (888) 769-1774
rshenkan@shenkanlaw.com
*Counsel for Plaintiffs*

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL BACKGROUND AND PLAINTIFFS' CLAIMS............................. 3

    A. Post-Repossession Notice Claim (Settlement Class 1) ...................................... 4

    B. Post-Sale Notice Claim (Settlement Class 2)..................................................... 4

III.  PROCEDURAL BACKGROUND....................................................................... 5

IV.  THE SETTLEMENT ........................................................................................... 6

    A. The Settlement Classes...................................................................................... 6

        1.  Class 1 (Post-Repossession Notice Class) ................................................. 6

        2.  Class 2 (Post-Sale Notice Class)................................................................ 7

    B. Monetary Relief................................................................................................. 8

        1.  Settlement Payment ................................................................................... 8

        2.  Return of Post-Stay Payments ................................................................... 9

    C. Non-Monetary Relief ...................................................................................... 10

        1.  Extinguishment of Disputed Deficiency Balances through Accord and
           Satisfaction............................................................................................ 10

        2.  Requests for Deletion of Trade Lines ...................................................... 11

    D. The Releases.................................................................................................... 12

        1.  Release by Class 1 Releasors.................................................................... 12

        2.  Release by Class 2 Releasors.................................................................... 12

        3.  Release by COAF .................................................................................... 13

        4.  Impact of Releases on Reinstatement Sub-Class...................................... 13

    E. Settlement Administration................................................................................ 13

V.    ARGUMENT..................................................................................................... 14

    A. The Settlement Should Be Preliminarily Approved.......................................... 14

        1.  Legal Standard for Preliminary Approval................................................. 14

        2.  Analysis of *Girsh* Factors ....................................................................... 15

    B. The Settlement Class Should Be Certified........................................................ 21

        1.  Legal Standard for Class Certification...................................................... 21

        2.  Analysis of Rule 23(a) Factors ................................................................ 22

        3.  Fair and Efficient Adjudication under Rule 23(b)(3) ............................... 26

    C. The Proposed Class Notice Should Be Approved............................................. 26

VI.  CONCLUSION.................................................................................................. 27

Plaintiffs, Randy Langer and James Langer, by and through their undersigned counsel, submit this memorandum of law in support of their Uncontested Motion for Preliminary Settlement Approval, Conditional Certification of Settlement Classes, and Approval of Class Settlement Notice (the "Motion").

## I.    **INTRODUCTION**

Plaintiffs commenced this putative class action against Defendant, Capital One Auto Finance, a division of Capital One, N.A. ("COAF"), asserting claims on their own behalf and on behalf of similarly-situated Pennsylvania consumer auto loan borrowers, arising from certain of COAF's practices with respect to:  (i) post-repossession notices COAF sent to Pennsylvania consumer auto loan borrowers informing them, *inter alia*, of the repossession of their motor vehicles and COAF's intention to dispose of the repossessed motor vehicles after a minimum redemption period ("Post-Repossession Notices"); and (ii) post-sale notices COAF sent, or allegedly failed to send, to Pennsylvania consumer auto loan borrowers providing, *inter alia*, explanations of the calculations of the deficiency or surplus balances remaining after the sale of the repossessed motor vehicles ("Post-Sale Notices").

Plaintiffs contend, *inter alia*, that COAF's practices with respect to these Post-Repossession Notices and Post-Sale Notices violated Pennsylvania's Uniform Commercial Code, (the "UCC"), in its own right and *in pari materia* with the Pennsylvania Motor Vehicle Sales Finance Act (the "MVSFA"), and common law.  Plaintiffs seek, for themselves and the putative class members, judgment against COAF, *inter alia*:  (i) awarding statutorily prescribed damages for the alleged statutory notice violations, together with costs and pre-judgment interest; (ii) declaring that any deficiency balances COAF claims are owed by Plaintiffs and the putative class members with respect to their consumer auto loans (the "Disputed Deficiency Balances") are

- 1 -

invalid; (iii) enjoining COAF from pursuing collection of the Disputed Deficiency Balances; (iv)

enjoining COAF to vacate any judgments entered against Plaintiffs and the putative class

members with respect to the Disputed Deficiency Balances; and (v) enjoining COAF to request

that the major credit reporting agencies delete the trade lines related to Plaintiffs' and the

putative class members' consumer auto loans with COAF.  COAF, on the other hand, denies that

it violated the UCC or any other law, denies any liability to Plaintiffs or any putative class

members, and contends that it is entitled to pursue collection of the Disputed Deficiency

Balances.

Plaintiffs and COAF (the "Parties") have agreed, subject to approval by the Court, to

resolve this action on a class-wide basis in accordance with the terms of the executed Class

Action Settlement Agreement and Release (the "Settlement Agreement") attached hereto as

Exhibit 1.[1]  Pursuant to the Settlement Agreement, in exchange for the release of certain of

Plaintiffs' and the Class Members' claims, without admitting any liability, COAF agrees to:  (i)

make a gross settlement payment to the Class Members in the aggregate sum of $6,500,000.00;

(ii) extinguish by an accord and satisfaction the Class Members' Disputed Deficiency Balances

of approximately $27 million; (iii) request that the three major credit reporting agencies delete

the trade lines associated with Plaintiffs' and the Class Members' auto loans with COAF; (iv)

vacate any deficiency judgments against the Class Members; and (v) refund to the Class

Members the payments they made toward their Disputed Deficiency Balances on or after April

---

[1] The Settlement Agreement contains all material terms of the Settlement, including, *inter alia*, the manner and form of notice to the Class Members and the contingencies and conditions to the Settlement's final approval.  Any capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Settlement Agreement.

24, 2017, the date of the Parties' first mediation session.  The readily quantifiable value of the settlement consideration to the Class Members is approximately $33.5 million, which represents roughly 74% of the easily determinable relief sought by Plaintiffs on behalf of nearly 10,000 Class Members.  (*See* Section V.A.2.g. *infra*.)

Plaintiffs move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an order in the form attached hereto (the "Preliminary Approval Order"), *inter alia*:  (i) preliminarily approving the Parties' proposed settlement in this action (the "Settlement"), as  memorialized in the Settlement Agreement; (ii) conditionally approving two settlement classes, Class 1 and Class 2; (iii) conditionally appointing Plaintiffs as class representatives of Class 1 and Class 2; (iv) conditionally appointing Plaintiffs' undersigned counsel as class counsel for Class 1 and Class 2; (v) appointing BrownGreer PLC as the third-party administrator of the Settlement; (vi) approving the form and method of the Class Notice informing Class Members of the Settlement and their rights in connection therewith; (vii) setting the date for a hearing as to final approval of the Settlement; and (viii) setting interim deadlines for Class Members to object to or request exclusion from the classes.  COAF does not oppose the Motion and does not oppose entry of the proposed Preliminary Approval Order.

## II.   FACTUAL BACKGROUND AND PLAINTIFFS' CLAIMS

Plaintiffs contend that common factual patterns underlie Plaintiffs' claims and the claims of the members of the proposed settlement classes, Class 1 and Class 2 (collectively, the "Class Members").  Plaintiffs and the Class Members all entered into auto loans for personal, family, or household purposes, secured by motor vehicles that either were issued by COAF or assigned to COAF by the issuing automobile dealerships (each an "Auto Loan").  COAF, as secured party under the Auto Loans, repossessed Plaintiffs' and the Class Members' motor vehicles following

alleged payment defaults on the subject Auto Loans.  After repossessing the motor vehicles,

COAF mailed the same or substantially similar Post-Repossession Notices to Plaintiffs and the

Class 1 Members.  After selling the repossessed motor vehicles, COAF allegedly failed to mail

separately addressed Post-Sale Notices to Plaintiffs and the Class 2 Members.

### A.     Post-Repossession Notice Claim (Settlement Class 1)

The Post-Repossession Notices that COAF sent to Plaintiffs and the Class 1 Members

stated that COAF would sell Plaintiffs' and the Class 1 Members' repossessed motor vehicles

after ten (10) days following the date of the Post-Repossession Notice.  Plaintiffs contend that

under the MVSFA, a Post-Repossession Notice must provide a minimum redemption period of at

least fifteen (15) days. *See* 12 Pa. C.S. §6254(c)(3).  Plaintiffs further contend that the MVSFA

and the UCC must be read *in pari materia*.  Accordingly, Plaintiffs contend that by sending Post-

Repossession Notices to Plaintiffs that provided minimum redemption periods of fewer than

fifteen (15) days, COAF violated the UCC, the UCC in *pari materia* with the MVSFA, and

common law giving rise to Plaintiffs' claim for statutory damages.  COAF denies that its

practices with respect to Post-Repossession Notices violated the UCC or any other law and

denies any liability to Plaintiffs or the Class 1 Members.

### B.     Post-Sale Notice Claim (Settlement Class 2)

After selling Plaintiffs' repossessed motor vehicle, COAF mailed to Plaintiff Randy

Langer a Post-Sale Notice explaining the calculation of the claimed post-sale deficiency balance

for Plaintiffs' Auto Loan, but COAF did not mail a separately addressed notice to Plaintiff James

Langer.  Plaintiffs contend that under the UCC, every individual whose vehicle is repossessed

and sold is entitled to receive from the secured party a separate Post-Sale Notice informing the

individual of results of the sale and the status of the subject auto loan account. *See* 13 Pa. C.S. §

9616.  Plaintiffs further contend that, in cases where there are co-borrowers on an auto loan, each

of the co-borrowers is statutorily entitled to receive a separately addressed Post-Sale Notice.

Plaintiffs contend that by failing to mail a separately addressed Post-Sale Notice to each co-

borrower, COAF violated the UCC, giving rise to Plaintiffs' claim for statutory damages for each

co-borrower.  COAF denies that its practices with respect to Post-Sale Notices violated the UCC

and denies any liability to Plaintiffs or the Class 2 Members.

### III.   PROCEDURAL BACKGROUND

On October 5, 2016, Plaintiffs filed a Class Action Complaint (the "Complaint") with the

Court of Common Pleas for the First Judicial District of Pennsylvania, in an action captioned

*Randy Langer and James Langer v. Capital One Auto Finance, a division of Capital One, N.A.*,

October Term, 2016, No. 00560.  On November 21, 2016, COAF removed the matter to this

Court.  Thereafter, on November 28, 2016, COAF timely filed an answer to the Complaint.

Discovery commenced, during which COAF provided a considerable amount of documents and

data (many thousands of pages) regarding Plaintiffs' and the Class Members' Auto Loans and

COAF's policies and procedures.  On April 24, 2017, the Parties participated in an all-day

private mediation session with mediator Arthur Stroyd, Esquire.  Thereafter, the Parties

negotiated in good faith in an effort to settle Plaintiffs' claims, including approximately eight

settlement conferences with United States Magistrate Judge Elizabeth T. Hey, ultimately

resulting in the Settlement.

## IV.   THE SETTLEMENT

The Parties have negotiated an arm's length settlement that provides substantial benefits to the Class Members, the details of which are set forth in the Settlement Agreement.  The following summarizes the salient terms of the Settlement.[2]

### A.   The Settlement Classes

#### 1.   Class 1 (Post-Repossession Notice Class)

Under the Settlement Agreement, Class 1 is defined as all Borrowers:  (i) who entered into an Auto Loan for personal, family, or household purposes; (ii) whose motor vehicle was repossessed by COAF; (iii) whose mailing address at the time of the repossession, according to COAF's business records, was in Pennsylvania; and (iv) to whom, during the Class 1 Period,[3] COAF sent a Post-Repossession Notice, in the same or a substantially similar form to the April 17, 2015 notice COAF mailed to Plaintiffs, that stated a minimum redemption period of fewer than fifteen (15) days from the date of the Post-Repossession Notice. [4]  (Settlement Agreement, § 2.08.)  According to COAF's records, Class 1 consists of 1,808 members, associated with 1,329

---

[2]   The Settlement Agreement contains the terms and conditions of the Settlement, and the omission of any Settlement Agreement term or provision from this summary is not intended to, and shall not be construed to, negate or diminish the materiality of such term or provision to the Settlement.

[3]   The Class 1 Period is the time period between February 1, 2015 and July 29, 2015, inclusive. (*See* Settlement Agreement, § 2.10.)

[4]   Class 1 includes class members who reinstated their loans, took back possession of their motor vehicles, and have not paid off their auto loans as of the Effective Date of the Settlement (the "Reinstatement Sub-class").  (*See id*. at § 2.57.)

unique Auto Loans. (*Id.*) The Class 1 Members' aggregate statutory damages under the UCC total approximately $16.1 million.[5]

### 2.    Class 2 (Post-Sale Notice Class)

Under the Settlement Agreement, Class 2 is defined as all Borrowers:   (i) who entered into an Auto Loan for personal, family, or household purposes; (ii) whose motor vehicle was repossessed by COAF; (iii) whose motor vehicle was sold by COAF during the Class 2 Period;[6] (iv) whose mailing address and/or whose co-obligor's mailing address at the time of the sale of the vehicle, according to COAF's business records, was/were in Pennsylvania; and (v) to whom COAF did not mail a separately addressed Post-Sale Notice after the sale of the motor vehicle or to whose co-obligor on the Auto Loan COAF did not mail a separately addressed Post-Sale Notice after the sale of the motor vehicle. (Settlement Agreement, § 2.12.) According to COAF's business records, Class 2 consists of 8,766 members, associated with 4,383 unique Auto Loan Accounts. (*Id.*) The Class 2 Members' aggregate statutory damages under the UCC total approximately $2.2 million.[7]

---

[5]    According to 13 Pa. C.S. § 9625(c)(2), the measure of statutory damages for violating Section 9611 of the UCC (relating to Post-Repossession Notices) is 10% of the amount financed plus the total finance charge on the loan.

[6]    The Class 2 Period is the time period between October 5, 2010 and June 9, 2017, inclusive. (Settlement Agreement, § 2.14.)

[7]    The measure of statutory damages for violating Section 9616 of the UCC (relating to Post-Sale Notices) is $500. *See* 13 Pa. C.S. § 9625(e)(5). The $2.2 million damages figure assumes that co-borrowers on a given loan can recover only one $500 award pursuant to 13 Pa. C.S. § 9625(e)(5), which is an issue yet to be addressed by Pennsylvania courts. Plaintiffs contend that each co-borrower is entitled to separately recover $500, which COAF disputes.

B.    **Monetary Relief**

1.    **Settlement Payment**

Under the Settlement Agreement, COAF will make a settlement payment to the Class

Members in the aggregate sum of $6,500,000.00.  (Settlement Agreement, §§ 2.64 and 7.02.)

After the deduction of class counsel's fees and costs, the costs of settlement administration, and

incentive awards for Plaintiffs, 66.7% of the net settlement amount will be allocated to Class 1,

and 33.3% of the net settlement amount will be allocated to Class 2.  (*Id.* at § 7.08(b).)  By way

of illustration, if the Court approves class counsel fees of $2,600,000,[8] class counsel costs of

$50,000, settlement administration costs of $100,000, and aggregate incentive awards to

Plaintiffs of $30,000, then $2,480,000 of the net settlement amount is allocated to Class 1, and

$1,240,000 of the net settlement amount is allocated to Class 2.  (*Id.* at § 7.08(c).)  Additional

cash distributions will be comprised of the Post-Stay Payment refunds.  (*See* Section IV.B.2

*infra.*)

The net settlement payments to Class 1 Members will be made in equal payments for

each Auto Loan associated with one or more Class 1 Member(s), with the settlement payments to

co-borrowers on a given Auto Loan split evenly between the co-borrowers.[9]  (*Id.* at § 7.09(a).)

---

[8]    This figure represents 7.76% of  the approximately $33.5 million benefit conferred.

[9]    The co-borrowers can object to the equal distribution of their settlement payments and elect a
different allocation as between the co-borrowers on a given loan.  (Settlement Agreement, §
7.09(a).)

The estimated net settlement payment for each Class 1 Auto Loan is approximately $1,870;[10] for Auto Loans with co-borrowers, the estimated net settlement payment to each co-borrower is approximately $935. The net settlement payments to Class 2 Members will be made in equal payments to each Class 2 Member unless they object to this equal distribution. (*Id.* at § 7.10(a).) The estimated net settlement payment for each Class 2 Member is approximately $140. Any undistributed settlement funds will be paid to *cy pres* recipients, with no reverter. (*Id.* at § 7.15.)

### 2. Return of Post-Stay Payments

Under the Settlement Agreement, COAF has agreed to return to the Class Members any payments the Class Members made toward their Disputed Deficiency Balances between April 24, 2017, the date of the Parties' initial mediation session, and the date the Settlement is fully and finally approved ("Post-Stay Payments").[11]   (Settlement Agreement, §§ 2.47- 2.50, 7.11.) The amount of such Post-Stay Payment refunds will be determined as of the Effective Date of the Settlement.

---

[10]   For Class 1 Members who reinstated their Auto Loans following the repossession of their motor vehicles, whose motor vehicles were not subsequently repossessed and sold, and who did not pay off their Auto Loans before the Effective Date of the Settlement; and whose Auto Loans have a remaining outstanding balance (the "Reinstatement Sub-Class"), the net settlement payments will be credited to their Auto Loan balances, with any excess being paid to the Class Member. (*Id.* at §§ 2.57 and 7.09(f).) The Effective Date is the date of Final Approval, which means the entry of the Final Approval Order, the expiration of the applicable period for filing a notice of appeal from the Final Approval Order, and, if any appeal is taken from the Final Approval Order, the final affirmance of the Final Approval Order without any right of further appeal. (*Id.* at §§ 2.35 and 2.36.)

[11]   Co-borrower Class Members can object to the equal distribution of their Post-Stay Payments refunds and elect a different allocation as between the co-borrowers on a given loan. (*Id.* at § 7.11(e).)

C.     **Non-Monetary Relief**

    1.     **Extinguishment of Disputed Deficiency Balances through Accord and Satisfaction**

COAF claims that Plaintiffs and certain of the Class Members have outstanding deficiency balances owed on their Auto Loans following the sale of the Class Members' repossessed motor vehicles, and Plaintiffs dispute that COAF has the right to collect any of these Disputed Deficiency Balances.  The Parties acknowledge and agree that the Disputed Deficiency Balances are disputed liabilities.  (Settlement Agreement, § 8.02(b).)  Under the Settlement Agreement, the Disputed Deficiency Balances are extinguished by way of an accord and satisfaction.  (*Id.* at § 8.01.)  COAF estimates that the total amount of Disputed Deficiency Balances is $27,416,749.37.  (*Id.* at § 2.32.)

The Parties acknowledge that COAF may have certain obligations under the Internal Revenue Code and related regulations to file and furnish Internal Revenue Service (the "IRS") Form 1099-C informational returns.  (*Id.* at § 8.02(a).)  Plaintiffs take the position that under *Zarin v. Commissioner of Internal Revenue*, 916 F.2d 110 (3d Cir. 1990), the Parties' agreement to compromise and extinguish the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction, as set forth in § 8.01(a) of the Settlement Agreement, constitute the resolution of contested liabilities, not a cancellation or discharge of indebtedness, and that the compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction, therefore, do not result in taxable income to the Class Members.  (*Id.* at § 8.02(c).)  Accordingly, Plaintiffs contend that COAF is not required to file IRS Form 1099-C informational returns with the IRS or furnish copies of the IRS Forms 1099-C to the Class Members with respect to the compromise and extinguishment of the Class Members' Disputed

- 10 -

Deficiency Balances by way of an accord and satisfaction.  Plaintiffs contend that doing so would improperly and unnecessarily place a burden on the Class Members to dispute the tax consequences of a bona fide accord and satisfaction.

In the proposed Preliminary Approval Order attached to the Motion, Plaintiffs respectfully request that the Court:  (i) rule that under the *Zarin* decision, the compromise and extinguishment of the Class Members' Disputed Deficiency Balances under § 8.01(a) of the Settlement Agreement do not result in taxable income to the Class Members; and (ii) order that COAF shall not file IRS Form 1099-C informational returns with the IRS or furnish copies of the IRS Forms 1099-C to the Class Members with respect to the compromise and extinguishment of the Class Members' Disputed Deficiency Balances.

COAF takes no position as to whether the compromise and extinguishment of the Disputed Deficiency Balances under § 8.01(a) of the Settlement Agreement represent taxable income to the Class Members.  (*Id.* at § 8.02(d).)  COAF does not oppose Plaintiffs' request for a ruling as set forth above, provided that the ruling applies only to this action and has no collateral estoppel effect as against COAF in any other action (as set forth in Plaintiffs' proposed Preliminary Approval Order).

## 2.   Requests for Deletion of Trade Lines

Under the Settlement Agreement, COAF agrees to submit requests to Experian, Equifax, and TransUnion (the "Credit Reporting Agencies") to delete the trade lines associated with all Class Members' Auto Loans with COAF, including the Auto Loans of Reinstatement Sub-class Members.  (Settlement Agreement, §§ 2.28 and 8.03.)

### D.      The Releases

#### 1.      Release by Class 1 Releasors

In exchange for the settlement consideration set forth in the Settlement Agreement, the Class 1 Members shall release all claims against COAF arising from or relating to this action, their Auto Loans and Auto Loan Accounts with COAF that are the subject of this settlement, the Post-Repossession Notices and Post-Sale Notices issued by COAF, the Disputed Deficiency Balances, and COAF's policies, practices, and procedures, subject to certain specified exceptions. (Settlement Agreement, § 9.01.) Specifically, the Class 1 Members are not releasing, *inter alia*, any claim for statutory damages under 13 Pa. C.S. § 9625(e)(5) arising from or relating to any Post-Sale Notice allegedly sent by or allegedly required to be sent by COAF, including without limitation any claim as a member of the putative "UCC Post-Sale Notice Class" and/or "MVSFA Post-Sale Notice Class" in the putative class action captioned *Dudo, et al, v. Capital One Auto Finance, a division of Capital One, N.A.*, No. 2:19-cv-00098-MRH, pending in the United States District Court for the Western District of Pennsylvania (the "Dudo Action"). (*Id.* at § 9.01(c).)

#### 2.      Release by Class 2 Releasors

In exchange for the settlement consideration set forth in the Settlement Agreement, the Class 2 Members shall release all claims against COAF arising from or relating to this action, their Auto Loans and Auto Loan Accounts with COAF that are the subject of this settlement, the Post-Repossession Notices and Post-Sale Notices issued by COAF, the Disputed Deficiency Balances, and COAF's policies, practices, and procedures, subject to certain specified exceptions. (Settlement Agreement, § 9.02.) Specifically, the Class 2 Members are not releasing, *inter alia*, any claim for statutory damages under 13 Pa. C.S. § 9625(c)(2) arising from

- 12 -

or relating to any Post-Repossession Notice allegedly sent by or allegedly required to be sent by COAF, including without limitation any claim as a member of the putative "Public Auction Class" and/or "Hidden Fees Class" in the Dudo Action. (*Id.* at § 9.02(b).)

### 3.   Release by COAF

Likewise, COAF agrees to release any claims against Plaintiffs and the Class Members arising from or relating to this action, Plaintiffs' and the Class Members' Auto Loans and Auto Loan Accounts that are the subject of this Settlement, or the Disputed Deficiency Balances, subject to certain specified exceptions. (Settlement Agreement, § 9.03.)

### 4.   Impact of Releases on Reinstatement Sub-Class

With respect to the Reinstatement Sub-Class, the Parties have agreed that their mutual releases do not release claims or defenses related to the Reinstatement Sub-Class members' Auto Loans that arise after the effective date of the Settlement Agreement. (Settlement Agreement, §§ 9.01(b) and 9.03(b).)

### E.   Settlement Administration

The Settlement Agreement sets forth in detail the agreed class settlement procedures, including, *inter alia*:  (i) the submission of the Motion; (ii) the manner of notifying the Class Members of the Settlement and their rights in respect thereof, including the contents and form of the proposed class notice (the "Class Notice"), a copy of which is attached as Exhibit 2 hereto; (iii) the manner, form, and timing for Class Members to object to the Settlement or request exclusion from the classes; and (iv) the appointment of a settlement administrator to administer the settlement. (*See* Settlement Agreement, §§ 5.01-6.02.)  Plaintiffs seek the entry of a Preliminary Approval Order, in the form attached hereto, addressing these matters, which COAF does not oppose.

- 13 -

## V.    ARGUMENT

### A.    The Settlement Should Be Preliminarily Approved

#### 1.    Legal Standard for Preliminary Approval

A class action may not be settled without notice of the proposed settlement to all affected

class members and approval of the court. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620-

621 (1997) (*citing* Fed. R. Civ. P. 23(e)).  The court must find that the settlement is fair,

reasonable, adequate and in the best interests of the class. *In re Ins. Brokerage Antitrust Litig.*,

579 F.3d 241, 258 (3d Cir. 2009); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods.*

*Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).  The court "plays the important role of protector of

the [absent class members'] interests, in a sort of fiduciary capacity." *In re General Motors,* 55

F.3d at 784.  "[W]here district courts are certifying a class and approving a settlement in tandem,

they should be even 'more scrupulous than usual' when examining the fairness of the proposed

settlement." *In re National Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436

(3d Cir. 2016) (*quoting In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir.

2004)).

There is a "presumption of fairness" where (1) the settlement negotiations occurred at

arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are

experienced in similar litigation; and (4) only a small fraction of the class objected. *In re*

*Warfarin*, 391 F.3d at 535 (*quoting In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir.

2001)).  Courts have recognized that "[i]n some cases, informal discovery will be enough for

class counsel to assess the value of the class' claims and negotiate a settlement that provides fair

compensation." *In re NFL Players*, 821 F.3d 410, 436-37 (3d Cir. 2016) (*citing In re Processed*

*Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (presumption of fairness would

apply "although no formal discovery was conducted" because "[class counsel] conducted informal discovery, including, *inter alia,* independently investigating the merits")).

In *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit set forth the following specific factors that a court should consider in determining whether a settlement is fair, reasonable, and adequate:

(1)   the complexity, expense and likely duration of the litigation;

(2)   the reaction of the class to the settlement;

(3)   the stage of the proceedings and the amount of discovery completed;

(4)   the risks of establishing liability;

(5)   the risks of establishing damages;

(6)   the risk of maintaining the class action through the trial;

(7)   the ability of the defendants to withstand a greater judgment;

(8)   the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)   the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Here, the *Girsh* factors strongly favor preliminary approval of the Settlement.

## 2.   Analysis of *Girsh* Factors

### a.   The Complexity, Expense and Likely Duration of the Litigation

"The first factor captures the probable costs, in both time and money, of continued litigation." *In re NFL Players*, 821 F.3d at 437.  Should this case continue, Plaintiffs would undergo the significant expense of continued discovery, dispositive motions, trial, and, potentially, an appeal.  The Settlement avoids all of this.  Early settlement of this action provides Class Members with an immediate cash benefit and the extinguishment of the Class Members'

Disputed Deficiency Balances, as well as substantial non-monetary benefits, including requests
to the Credit Reporting Agencies to delete the credit trade lines associated with the Class
Members' Auto Loans.  Significantly, the UCC makes no specific express provision for credit
repair, and the legal basis for the extinguishment of the Disputed Deficiency Balances is not
beyond challenge.  The proposed Settlement avoids potential risk with respect to these legal
determinations.

### b.    The Reaction of the Class

Plaintiffs, with the advice of counsel, have approved the Settlement.  The proposed Class
Notice will advise Class Members of the terms of the Settlement and their right to object to the
Settlement or to exclude themselves from the classes.  Plaintiffs will address the response of the
Class Members in moving for final approval, which will allow the Court to evaluate the reaction
of the Class Members in determining whether the settlement is fair, reasonable, and adequate.

### c.    The Stage of the Proceedings and the Amount of Discovery Completed

The third factor requires the court to "determine whether counsel had an adequate
appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537
(*quoting In re Cendant*, 264 F.3d at 235)).  The Parties were well into formal discovery and
obtained sufficient information as to COAF's practices, as well as statutory damages
information, to enable them to evaluate their respective positions and negotiate a settlement that
takes into consideration the costs and risks of continuing with the litigation. *See In re NFL
Players,* 821 F.3d at 439 ("What matters is not the amount or type of discovery class counsel
pursued, but whether they had developed enough information about the case to appreciate
sufficiently the value of the claims.").

- 16 -

### d.     The Risks of Establishing Liability and Damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential Insurance Co.*, 148 F.3d 283, 319 (3d Cir. 1998).  While Plaintiffs submit that they have a strong case, a liability determination is not a foregone conclusion for some or all of the claims, and COAF vigorously disputes Plaintiffs' claims.

Additionally, while the statutory damages sought under 13 Pa. C.S. §§ 9625(c)(2) and 9625(e)(5) would be straightforward and easy to calculate, the additional remedies requested by Plaintiffs – including the requests for deletion of the credit trade lines, the vacating of deficiency judgments, and the return of Post-Stay Payments – while well-founded in Plaintiffs' view, have yet to be the subject of any controlling UCC precedent in Pennsylvania.  This factor, therefore, strongly counsels in favor of preliminarily approving the Settlement.

### e.     The Risk of Maintaining the Class Action through the Trial

Because the Settlement avoids the risk of obtaining and keeping class certification through trial, this factor weighs in favor of settlement, although as the Third Circuit has noted, it bears little consideration in this context.  *See In re NFL Players,* 821 F.3d at 440 ("In a settlement class, this factor becomes essentially 'toothless'. . .") (*quoting In re Prudential*, 148 F.3d at 321).

### f.     The Ability of the Defendant to Withstand a Greater Judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Warfarin,* 391 F.3d at 537-38. Plaintiffs have no reason to believe that COAF could not withstand a judgment greater than the

proposed Settlement, but in light of the other factors, this does not counsel against an early,

favorable settlement. *See Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 323 (3d Cir. 2011) ("in

any class action against a large corporation, the defendant entity is likely to be able to withstand

a more substantial judgment").

> **g.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

As the Third Circuit has explained:

> In evaluating the eighth and ninth *Girsh* factors, we ask whether the settlement represents a good value for a weak case or a poor value for a strong case.   The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial.

*In re NFL Players,* 821 F.3d at 440 (internal citations and quotations omitted).

The court, however, must "guard against demanding too large a settlement based on its

view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest

hopes in exchange for certainty and resolution." *Sullivan,* 667 F.3d at 324 (*quoting In re*

*General Motors,* 55 F.3d at 806).

The Settlement provides substantial monetary relief to the Class Members.  The gross

settlement amount allocated to Class 1, which yields a gross settlement amount of $3,262 for

each Auto Loan in that class, represents approximately 27% of the Class 1 Members' aggregate

statutory damages under 13 Pa. C.S. § 9625(c)(2).  The gross settlement amount allocated to

Class 2, which yields a gross settlement amount of approximately $494 for each Auto Loan in

- 18 -

that class, represents approximately 99% of the Class 2 Members' claimed statutory damages.[12]
In addition, COAF has agreed to return the Class Members' Post-Stay Payments.

The proposed monetary relief in the Settlement is well within the range (as a proportion
of minimum statutory damages) of settlements in other UCC repossession-related class actions.
Yet, this case is not a class action involving clear-cut, expressly-cognizable UCC violations.
Rather, this case posits, *inter alia*, a question of whether a violation of the MVSFA renders a
Post-Repossession Notice *per se* commercially unreasonable under the UCC for direct and
indirect consumer auto loans and whether the UCC requires both co-borrowers to each be sent a
separate, separately addressed Post-Sale Notice.  While Plaintiffs believe that they have strong
arguments, these legal theories are, to a large extent, untested.

Moreover, regarding Class 2, there is a question whether, if there is a defect relating to
the mode of sending of a statutory notice, whether both co-borrowers or only the person who was
not sent a separate, separately addressed Post-Sale Notice are entitled to statutory damages.  This
settlement provides the same relief to *all* co-borrowers in each respective class, unless one co-
borrower objects to the equal division.  In light of these factors, the monetary component of the
Settlement represents an excellent recovery for the Class Members.

The Settlement also provides additional valuable relief to the Class Members, including
the waiver of more than $27 million in Disputed Deficiency Balances and requests to the Credit
Reporting Agencies to delete the credit trade lines associated with the Class Members' Auto
Loans.  As noted above, while Plaintiffs believe they have a legitimate basis to seek such

---

[12]   This assumes that co-borrowers on a given loan can recover only one $500 award pursuant to
13 Pa. C.S. § 9625(e)(5), which is disputed by the parties.

equitable relief based on the alleged statutory and common law violations at issue, it is uncertain whether Plaintiffs could obtain such relief if they litigated their claims to decision. Indeed, COAF not only disputes Plaintiffs' demand to extinguish the Disputed Deficiency Balances, COAF contends that even if Plaintiffs establish COAF's liability under the UCC, COAF nonetheless has the right to set off the Class Members' Disputed Deficiency Balances against any monetary recovery awarded to the Class Members.

The "credit repair" provided to all of the Class Members (including the Reinstatement Sub-class Members) through this Settlement will likely improve the credit ratings of most Class Members, potentially resulting in a lower or more favorable cost of credit in the future. As one court recently explained:

> While not amenable to measurement, the tradeline deletion is a tangible benefit that will likely, *inter alia*, improve Class Members' credit ratings, potentially resulting in a lower and/or more favorable cost of credit in the future. It removes a significant negative influence on loan, insurance, mortgage or even employment decisions. *See* Lea Shepard, *Seeking Solutions to Financial History Discrimination*, 46 Conn. L. Rev. 993, (2014). In *Ciccarone v. B.J. Marchese, Inc.*, 2004 WL 2966932 at *10 (E.D. Pa. Dec. 22, 2004), the court estimated that the value of the credit repair was equal to the cash component of the settlement. *See also Cosgrove v. Citizens Auto Fin., Inc.*, 2011 WL 3740809, at *7 (E.D. Pa. Aug. 25, 2011) ("additional obligation to correct negative entries on class members' credit reports is tangible and adds value to the settlement").

*Maszgay v. First Commonwealth Bank*, No. 686-2015, slip op. at 4-5 (Pa. Ct. Com. Pl. of Jefferson County July 23, 2018).[13]

The value of the quantifiable portions of the settlement consideration – i.e., the $6.5

---

[13]   A copy of the *Maszgay* Order is attached hereto as <u>Exhibit 3</u>.

million cash settlement and the extinguishment of approximately $27 million in Dispute

Deficiency Balances – total approximately $33.5 million.[14]  This represents approximately 74%

of the total quantifiable relief sought by Plaintiffs on behalf of the Class Members ($18.3 million

in statutory damages and the extinguishment of  $27 million in Disputed Deficiency Balances).[15]

The substantial monetary and non-monetary relief offered in the Settlement, when contrasted to

the risks of litigation – both with respect to the merits of Plaintiffs' claims and COAF's defenses

and with respect to class certification – weigh heavily in favor of preliminary approval of the

Settlement.  Plaintiffs respectfully submit that the Court should preliminarily approve the

Settlement.

**B.**      **The Settlement Class Should Be Certified.**

**1.**      **Legal Standard for Class Certification**

A class must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): (1)

numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *See* Fed. R.

Civ. P. 23(a); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 302 (3d Cir. 2005).  If

it does, the court must then find that the class fits within one of the three categories set forth in

subsection 23(b).  Fed. R. Civ. P. 23(b).  As relevant to this matter, Rule 23(b)(3) permits class

certification where: "the court finds that the questions of law or fact common to class members

---

[14]  This does not include the additional financial benefit of the Post-Stay Payment refunds,
which certain Class Members will receive.

[15]  The statutory damages for Class 1 under 13 Pa. C.S. § 9625(c)(2) and for Class 2 under 13
Pa. C.S. § 9625(e)(5) total approximately $18.3 million.  This assumes that co-borrowers on
a given loan can recover only one $500 award pursuant to 13 Pa. C.S. § 9625(e)(5), which is
disputed by the parties.

.

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Rule 23(b)(3) states:

> The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

The court must conduct a "rigorous analysis" to confirm that Rule 23 is satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011). Here, Class 1 and Class 2 meet the requirements for conditional class certification.[16]

### 2.   Analysis of Rule 23(a) Factors

#### a.   Numerosity

"[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Here, Class 1 consists of 1,808 members, and Class 2 consists of 8,766 members; together, the classes are comprised of nearly 10,000 unique individuals. Numerosity is, therefore, satisfied.

---

[16]   In the Settlement Agreement, the Parties agreed that, solely for the purposes of the Settlement, Class 1 and Class 2 shall be certified. (Settlement Agreement, § 4.01.)

### b.   Commonality

"A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (internal quotation marks and citation omitted). This inquiry focuses "not on the strength of each class member's claims but instead 'on whether the defendant's conduct was common as to all of the class members.'" *In re Community Bank*, 795 F.3d at 397 (*quoting Sullivan*, 667 F.3d at 298).

In the present case, there are numerous questions of law or fact common to members of the classes that can be efficiently resolved in a single proceeding, including:

(1)    Whether Plaintiffs and the Class Members obtained vehicle financing through COAF and pledged the vehicle as collateral;

(2)    Whether COAF repossessed the Plaintiffs' and Class Members' financed vehicles or ordered them repossessed;

(3)    Whether COAF's Post-Repossession Notices to Class 1 Members complied with the requirements of the UCC; and

(4)    Whether, after selling the Class 2 Members' repossessed vehicles, COAF complied with the UCC's requirements with respect to sending Post-Sale Notices to the Class 2 Members.

The commonality requirement is clearly satisfied.

### c.   Typicality

Typicality is satisfied as long as the claims of the class representatives and the claims of the class members arise from the same event or practice or course of conduct and are based on the same legal theory. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992). There are three components to typicality that a court should consider:

(1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory;

> (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 599 (3d Cir. 2009).

Here, Plaintiffs' claims arise from the same conduct that gives rise to the claims of the rest of the Class Members, namely, COAF's conduct with respect to Post-Repossession Notices during the Class 1 Period and Post-Sale Notices during the Class 2 Period.  Plaintiffs are not subject to defenses that are unique from those applicable to other Class Members, and Plaintiffs have the same interest in the relief being sought as does the rest of the Class Members.

### d.    Adequacy of Representation

Adequacy requires two steps of inquiry.  *In re Schering Plough*, 589 F.3d at 602.  "First, the adequacy inquiry 'tests the qualifications of the counsel to represent the class.'"  *Id.* (*quoting In re Warfarin*, 391 F.3d at 532).  "The second component of the adequacy inquiry seeks 'to uncover conflicts of interest between named parties and the class they seek to represent.'"  *Id.* (*quoting In re Warfarin*, 391 F.3d at 532).

As to the first component, the qualifications of counsel to represent the class, Rule 23(g) requires that in appointing class counsel, the court must consider:

> (1)    the work counsel has done in identifying or investigating potential claims in the action;
>
> (2)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (3)    counsel's knowledge of the applicable law; and
>
> (4)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(A).

Plaintiffs' undersigned counsel, Richard Shenkan, is well-qualified to represent the Class Members. Mr. Shenkan is an experienced litigator, having practiced for more than 20 years and having served as class counsel in a variety of consumer class actions throughout Pennsylvania, including the first UCC statutory post-repossession notice class action, which settled for approximately $14 million in benefit conferred.  In a similar UCC statutory notice class action, the court in *Maszgay* recently described Mr. Shenkan's qualifications as follows:  "Plaintiffs' counsel, Richard Shenkan, is a well-qualified litigator with over 20 years experience and has served as class counsel in other consumer class cases throughout Pennsylvania." *Maszgay*, slip op. at 7.  The court went on to state: "This case presented novel, complex issues and Class Counsel effectuated an excellent recovery for the Class through his perseverance and skill."[17] *Id.*

As to second component, Plaintiffs have demonstrated an interest in the litigation and a willingness to participate as required by counsel in order to advance the litigation.  These representative Plaintiffs have spent dozens of hours assisting counsel with this litigation.  In fact, James Langer attended both the all-day mediation in Pittsburgh and a settlement conference with Magistrate Judge Hey.  Plaintiffs participated by telephone in at least two additional settlement conferences with Magistrate Judge Hey.  Plaintiffs have (and continue to be) available and have done all that was asked of them by counsel.

For these reasons, Plaintiffs are adequate class representatives and Plaintiffs' counsel is adequate class counsel.

---

[17]  The *Maszgay* settlement resulted in a benefit conferred of nearly $17 million to approximately 2,800 class members.

### 3.    Fair and Efficient Adjudication under Rule 23(b)(3)

Here, class certification is warranted under Rule 23(b)(3) because common questions of law and fact predominate over individualized questions and a class-wide settlement is the superior means of fairly and efficiently adjudicating the dispute.  As set forth above, there are virtually no questions affecting only individual Class Members in this action.  As a practical matter, a class action is the most efficient and practicable way to obtain a fair and efficient adjudication of this controversy.  Aside from the Dudo Action, no other Class Members are currently prosecuting, or have expressed any interest in prosecuting, individual cases against COAF.[18]  Given the relatively small size of the individual Class Members' claims, individual actions by Class Members are unlikely.  Accordingly, the concentration of the Class Members' claims in this forum and the resolution of the claims in a class-wide settlement are desirable.  The parties do not foresee any difficulties in managing this action on a class basis.  Regardless, because this action is being settled rather than litigated, the issue of manageability of the action becomes virtually moot.

### C.    The Proposed Class Notice Should Be Approved

After approving a proposed class settlement, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  To satisfy due process, "notice to class members must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Lachance v. Harrington*, 965 F.Supp. 630, 636 (E.D.

---

[18]    Of course, to the extent that any Class Member wishes to pursue an individual action, he or she will have the opportunity to opt out of the Settlement.

Pa. 1997) (*quoting Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

The "notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard." *In re Cendant Corp. Securities Litigation*, 109 F.Supp.2d 235, 254 (D.N.J. 2000) (*citing In re Prudential Insurance Co. of America Sales Practices Litig.*, 962 F.Supp. 450, 527 (D.N.J. 1997), *aff'd,* 148 F.3d 283, 311 (3d Cir. 1998)).

The proposed Class Notice is in accord with Rule 23(e)(1) and the requirements of due process. The Class Notice plainly describes the nature of the case; the Settlement's general terms; where complete information can be obtained; (upon approval by the Court) the time and place of the fairness hearing; and that objectors may be heard. The Notice further explains the definition of Class 1 and Class 2; the incentive awards, attorneys' fees, costs and expenses to be requested; the deadline for submitting objections or seeking exclusion from the classes; and the binding effect of the Settlement. (*See* Class Notice, attached hereto as <u>Exhibit 2.</u>) Plaintiffs respectfully request that the Court approve the Class Notice, to which COAF has no objection.

## VI.   <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the attached Order, granting preliminary approval of the Settlement, conditional certification of Class 1 and Class 2, and approval of the Class Notice. Plaintiffs' counsel requests the opportunity to meet in person with Your Honor and COAF's counsel to discuss the scheduling of the final approval hearing. In order to accommodate the interim settlement administration deadlines set forth in the Settlement Agreement, the parties request that the final approval hearing be scheduled at least 140 days after the entry of the Preliminary Approval Order. A

- 27 -

proposed Preliminary Approval Order, to which COAF consents, is attached to the Motion.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.

Richard E. Shenkan, Esq.
SHENKAN INJURY LAWYERS, LLC
P.O. Box 7255
New Castle, PA  16107
P: (800) 601-0808
F: (888) 769-1774
rshenkan@shenkanlaw.com
*Counsel for Plaintiffs*

Dated:  May 14, 2019