**EXECUTION COPY**

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY LANGER and JAMES LANGER, | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | No.  2:16-cv-06130-HB |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAPITAL ONE AUTO FINANCE, a division of | ) | |
| CAPITAL ONE, N.A., | ) | |
| | ) | |
| Defendant | ) | |

### CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE



## <u>TABLE OF CONTENTS</u>

1. RECITALS.................................................................................................. 1
2. DEFINITIONS ........................................................................................... 3
3. CONDITIONAL NATURE OF THIS AGREEMENT ............................. 14
4. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES.............. 15
5. CLASS SETTLEMENT PROCEDURES ................................................ 15
6. SETTLEMENT ADMINISTRATION ...................................................... 24
7. THE SETTLEMENT FUND .................................................................... 25
8. ADDITIONAL CLASS RELIEF ............................................................. 37
9. RELEASES ................................................................................................ 42
10. DENIAL OF LIABILITY – NO ADMISSIONS ...................................... 47
11. TERMINATION OF THIS AGREEMENT .............................................. 48
12. MISCELLANEOUS PROVISIONS ........................................................ 49

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Subject to approval by the Court and in exchange for the good and valuable consideration set forth herein, this Class Action Settlement Agreement and Release (this "Agreement") is entered into by and between Plaintiffs, Randy Langer and James Langer ("Plaintiffs"), on their own behalf and on behalf of the Class Members, and Capital One Auto Finance, a division of Capital One, N.A. ("COAF"), each a "Party" and, collectively, the "Parties."[1]

## 1.    RECITALS

WHEREAS, on or about August 29, 2012, Plaintiffs entered into a retail installment sales contract loan with an automobile dealership in connection with the purchase of a motor vehicle (an "Auto Loan"), and the automobile dealership thereafter assigned Plaintiffs' Auto Loan to COAF;

WHEREAS, on April 16, 2015, COAF repossessed Plaintiffs' motor vehicle because Plaintiffs allegedly defaulted on their payment obligations under the Auto Loan;

WHEREAS, on April 17, 2015, COAF mailed to each of Plaintiffs a notice of the repossession and COAF's intention to dispose of the repossessed motor vehicle at a private sale;

WHEREAS, on June 29, 2015, COAF sold Plaintiffs' repossessed motor vehicle;

WHEREAS, on July 3, 2015, COAF mailed to Plaintiff Randy Langer, but not separately to Plaintiff James Langer, a notice explaining the calculation of the claimed post-sale deficiency balance for the Auto Loan;

WHEREAS, on October 5, 2016, Plaintiffs filed a Class Action Complaint with the Court of Common Pleas for the First Judicial District of Pennsylvania, in an action captioned *Randy*

---

[1]    All capitalized terms herein shall have the meanings ascribed to them in § 2 hereof.

**EXECUTION COPY**

*Langer and James Langer v. Capital One Auto Finance, a division of Capital One, N.A.*, October

Term, 2016, No. 00560 (the "Action");

      WHEREAS, on November 21, 2016, COAF removed the Action to the United States

District Court for the Eastern District of Pennsylvania (the "Court"), under the caption *Randy*

*Langer and James Langer v. Capital One Auto Finance, a division of Capital One, N.A.*, No.

2:16-cv-06130-HB;

      WHEREAS, Plaintiffs assert certain claims, on their own behalf and on behalf of putative

classes of similarly-situated individuals, against COAF for, *inter alia*, allegedly violating

Pennsylvania's Uniform Commercial Code (the "UCC"), on its own and in *pari materia* with the

Pennsylvania Motor Vehicle Sales Finance Act;

      WHEREAS, Plaintiffs, on their own behalf and on behalf of the putative class members,

seek the greater of minimum statutory or actual damages from COAF in connection with their

claims, together with declaratory relief and injunctive relief, *inter alia*, precluding COAF from

pursuing the collection of any Deficiency Balances on Plaintiffs' and the putative class

members' Auto Loans and requiring COAF to return any amounts paid by the putative class

members toward the Deficiency Balances, such Deficiency Balances being disputed by the

Parties in good faith;

      WHEREAS, COAF denies that it violated the UCC, denies any liability to Plaintiffs or

any putative class members, and asserts that it is entitled to pursue collection of the disputed

Deficiency Balances on Plaintiffs' and the putative class members' Auto Loans and retain any

amounts paid by the putative class members toward the Deficiency Balances;

      WHEREAS, Plaintiffs, through Class Counsel, have vigorously pursued their claims

against COAF;

WHEREAS, COAF, through Defense Counsel, has vigorously defended against Plaintiffs' claims;

WHEREAS, during the pendency of this Action, Class Counsel commenced another putative class action on behalf of several putative class representative plaintiffs, other than Plaintiffs, against COAF, captioned *Dudo, et al, v. Capital One Auto Finance, a division of Capital One, N.A.*, No. 2:19-cv-00098-MRH (the "Dudo Action"), asserting, *inter alia*, claims not part of this Action and seeking only minimum statutory damages for alleged violations of the UCC; Plaintiffs and certain Class Members may be putative class members in the Dudo Action;

WHEREAS, COAF is unaware of any lawsuits, other than this Action and the Dudo Action, by putative class members in this Action against COAF;

WHEREAS, the Parties have negotiated in good faith in an effort to settle Plaintiffs' claims, including through mediation with private mediator Arthur Stroyd, Esquire, and several settlement conferences with United States Magistrate Judge Elizabeth T. Hey; and

WHEREAS, the Parties desire to fully settle and resolve the Action on a class basis in accordance with the Classes defined herein and the terms hereof, without admitting any liability, and thereby release all Claims arising out of or relating to Plaintiffs' and the Class Members' Auto Loans, except as set forth herein;

NOW, THEREFORE, in consideration of the respective covenants, undertakings, mutual promises, representations, and conditions contained herein, and intending to be legally bound hereby, the Parties agree as follows, subject to approval by the Court:

2.  **DEFINITIONS**

2.01.   The definitions contained herein shall apply only to this Agreement and, as explicitly incorporated, to other documents necessary to effectuate this Settlement, and shall not apply to any other agreement, including without limitation any retail installment sales contract.

Nor shall the definitions contained herein be used as evidence of the meaning of any term, except as set forth herein with respect to this Agreement and related settlement documents. Each defined term stated in a singular form shall include the plural form, and each defined term stated in a plural form shall include the singular form.

2.02. The **"Action"** means the putative class action captioned *Randy Langer and James Langer v. Capital One Auto Finance, a division of Capital One, N.A.*, filed by Plaintiffs in the Court of Common Pleas for the First Judicial District of Pennsylvania, indexed as October Term, 2016, No. 00560, and later removed to the Court and docketed as case number 2:16-cv-06130-HB.

2.03. This **"Agreement"** means this Class Action Settlement Agreement and Release, as fully-executed by the Parties.

2.04. **"Auto Loan"** means (i) a loan issued by COAF to one or more Borrowers where the loan is secured by the Borrower's or Borrowers' motor vehicle; or (ii) a loan issued by an automobile dealership to one or more Borrowers, where the loan is secured by the Borrower's or Borrowers' motor vehicle, which thereafter was assigned by the automobile dealership to COAF.

2.05. **"Auto Loan Account"** means a separate account, identified by a COAF account number, associated with an Auto Loan.

2.06. **"Borrower"** means an individual who entered into an Auto Loan, including a co-borrower or co-obligor.

2.07. **"Claims"** means any and all rights, remedies, actions, claims, counterclaims, cross-claims, demands, liabilities, obligations, promises, agreements, controversies, actions, causes of action, suits, verdicts, judgments, liens, damages, costs, losses, debts, charges, and expenses (including attorneys' fees and disbursements of counsel and other professionals), of

any and every nature whatsoever, whether currently known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or un-matured, accrued or not accrued, whether in law or in equity, whether now recognized by law or whether later created or recognized by statute, regulation, judicial decision, or in any other manner, whether based upon contract, breach of contract, intentional acts, warranty or covenant, breach of warranty or covenant, tort, negligence, gross negligence, recklessness, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, fault, strict liability, bad faith, misrepresentation, common law fraud, quantum meruit, breach of fiduciary duty, violation of statute, administrative regulation, or common law, and any other legal, equitable, or other theory or right of action whatsoever.

2.08.   **"Class 1"** means all Borrowers:  (i) who entered into an Auto Loan for personal, family, or household purposes; (ii) whose motor vehicle was repossessed by COAF; (iii) whose mailing address at the time of the repossession, according to COAF's business records, was in Pennsylvania; and (iv) to whom, during the Class 1 Period, COAF sent a Post-Repossession Notice, in the same or a substantially similar form to the April 17, 2015 notice COAF mailed to Plaintiffs, that stated a minimum redemption period of fewer than fifteen (15) days from the date of the Post-Repossession Notice.  Notwithstanding the foregoing, Class 1 excludes Nesmith. COAF's business records, as of June 5, 2017, reflect that Class 1 consists of 1,808 members, associated with 1,329 Auto Loan Accounts.

2.09.   **"Class 1 Member"** means a member of Class 1.

2.10.   The **"Class 1 Period"** means the time period between February 1, 2015 and July 29, 2015, inclusive.

2.11.   **"Class 1 Unreleased Claims"** means any unreleased Claims, as set forth in §

9.01(c), by a Borrower who is a Class 1 Member but not a Class 2 Member against COAF for

statutory damages under 13 Pa. C.S. 9625(e)(5) arising from or relating to any Post-Sale Notice

allegedly sent by or allegedly required to be sent by COAF to the Class 1 Member, including

without limitation any Claims as a member of the putative "UCC Post-Sale Notice Class" and/or

the "MVSFA Post-Sale Notice Class" in the Dudo Action.

2.12.   **"Class 2"** means all Borrowers:  (i) who entered into an Auto Loan for personal,

family, or household purposes; (ii) whose motor vehicle was repossessed by COAF; (iii) whose

motor vehicle was sold by COAF during the Class 2 Period; (iv) whose mailing address and/or

whose co-obligor's mailing address at the time of the sale of the vehicle, according to COAF's

business records, was/were in Pennsylvania; and (v) to whom COAF did not mail a separately

addressed Post-Sale Notice after the sale of the motor vehicle or to whose co-obligor on the Auto

Loan COAF did not mail a separately addressed Post-Sale Notice after the sale of the motor

vehicle.  Notwithstanding the foregoing, Class 2 excludes Nesmith.  COAF's business records,

as of June 8, 2017,  reflect that Class 2 consists of 8,766 members, associated with 4,383 Auto

Loan Accounts.

2.13.   **"Class 2 Member"** means a member of Class 2.

2.14.   The **"Class 2 Period"** means the time period between October 5, 2010 and June

9, 2017, inclusive.

2.15.   **"Class 2 Unreleased Claims"** means any unreleased Claims, as set forth in §

9.02(b), by a Borrower who is a Class 2 Member but not a Class 1 Member against COAF for

statutory damages under 13 Pa. C.S. 9625(c)(2) arising from or relating to any Post-Repossession

Notice allegedly sent by or allegedly required to be sent by COAF to the Class 2 Member,

including without limitation any Claims as a member of the putative "Public Auction Class"
and/or the "Hidden Fees Class" in the Dudo Action.

2.16.   **"Class Counsel"** means Richard Shenkan and Shenkan Injury Lawyers, LLC,
counsel of record for Plaintiffs in the Action.

2.17.   **"Class Counsel Costs"** means the reasonable costs and expenses incurred by
Class Counsel in connection with the investigation, prosecution, and settlement of the Action, as
approved by the Court, which shall be reimbursed to Class Counsel from the Settlement Fund.

2.18.   **"Class Counsel Fees"** means the reasonable attorneys' fees payable to Class
Counsel, as approved by the Court, which shall be paid from the Settlement Fund.

2.19.   The **"Class Members"** means collectively the Class 1 Members and the Class 2
Members.

2.20.   The **"Class Notice"** means the Notice to Class Members, described in § 5.04
hereof, as approved by the Court.

2.21.   The **"Class 1 Releasors"** means (i) Plaintiffs; (ii) the Class 1 Members, excluding
only those Class 1 Members whose requests for exclusion were approved by the Court in the
Final Approval Order; and (iii) as to each of the foregoing, his or her heirs, executors,
administrators, trustees, personal representatives, beneficiaries, and assigns.

2.22.   The **"Class 2 Releasors"** means (i) Plaintiffs; (ii) the Class 2 Members, excluding
only those Class 2 Members whose requests for exclusion were approved by the Court in the
Final Approval Order; and (iii) as to each of the foregoing, his or her heirs, executors,
administrators, trustees, personal representatives, beneficiaries, and assigns.

2.23.   The **"Classes"** means collectively Class 1 and Class 2.

2.24.    The **"Class Releasees"** means collectively the Class 1 Releasors and the Class 2 Releasors.

2.25.    **"COAF"** means Capital One Auto Finance, a division of Capital One, N.A.

2.26.    The **"COAF Releasees"** and the **"COAF Releasors"** means (i) COAF; (ii) COAF's respective past, present, and future, direct and indirect, parents, subsidiaries, partners, joint ventures, and affiliates; (iii) as to each of the foregoing, the past, present, and future officers, directors, employees, principals, representatives, agents, attorneys, shareholders, and insurers, each in their capacity as such; and (iv) the predecessors, successors, heirs, executors, administrators, trustees, personal representatives, beneficiaries, and assigns of any of the foregoing.

2.27.    The **"Court"** means the United States District Court for the Eastern District of Pennsylvania.

2.28.    The **"Credit Reporting Agencies"** means Experian, Equifax, and TransUnion.

2.29.    The **"*Cy Pres* Recipients"** means one or more IRS 501(c)(3) non-profit organization(s) whose charitable or public service purposes are related to the objectives of this Action and/or the interests of the Class Members, to be agreed upon by Class Counsel and Defense Counsel and approved by the Court in the Final Approval Order to receive *cy pres* payments of any residual amount in the Settlement Account after distribution of the Net Settlement Fund to the Class Members, as identified in § 7.15 hereof.  COAF has no objection to designating the following organizations as *cy pres* recipients:  National Association of Consumer Advocates, National Consumer Law Center, and/or the University of Pittsburgh (for its Law School Taxpayer Clinic).  Class Counsel and Defense Counsel shall reasonably cooperate to

designate one or more of the foregoing organizations and/or additional appropriate organizations in connection with moving for the entry of the Final Approval Order.

2.30.   **"Defense Counsel"** means Stradley Ronon Stevens & Young, LLP, counsel of record for COAF in the Action.

2.31.   **"Deficiency Balance"** means the total outstanding balance on an Auto Loan Account, inclusive of principal, accrued interest, fees, costs, and other charges permitted under the terms of the Auto Loan, that COAF claims remains after COAF repossesses and disposes of the motor vehicle securing the Auto Loan.

2.32.   The **"Disputed Deficiency Balances"** means the Deficiency Balances that COAF claims with respect to the Class Members' subject Auto Loans.  The Parties acknowledge and agree that the Disputed Deficiency Balances are disputed liabilities that are being compromised and extinguished by way of an accord and satisfaction through this Settlement.  COAF's business records, as of on or about June 8, 2017, reflect that the total amount of the Disputed Deficiency Balances is $27,416,749.37.

2.33.   The **"Distribution Date"** means the date upon which the Settlement Administrator shall distribute the Net Settlement Fund and the Post-Stay Return Payments to the Class Members, not later than sixty (60) days after the Effective Date.

2.34.   The **"Dudo Action"** means the putative class action, captioned *Dudo, et al, v. Capital One Auto Finance, a division of Capital One, N.A.*, filed by Class Counsel on behalf of several putative class representative plaintiffs, other than Plaintiffs, against COAF, in the Court of Common Pleas of Jefferson County Pennsylvania, indexed as Civil Action No. 1236-2018, and later removed to the United States District Court for the Western District of Pennsylvania and docketed as case number 2:19-cv-00098-MRH.

2.35.    The **"Effective Date"** means the date upon which Final Approval occurs.

2.36.    **"Final Approval"** means the entry of the Final Approval Order, the expiration of the applicable period for filing a notice of appeal from the Final Approval Order, and, if any appeal is taken from the Final Approval Order, the final affirmance of the Final Approval Order without any right of further appeal.

2.37.    The **"Final Approval Hearing"** means the hearing to be held by the Court to determine whether the Settlement shall receive final approval pursuant to Federal Rule of Civil Procedure 23(e).

2.38.    The **"Final Approval Order"** means an Order of this Court finally approving the Settlement pursuant to Federal Rule of Civil Procedure 23(e).

2.39.    The **"Incentive Award"** means the sum, not to exceed $15,000.00 each, to be awarded to each Plaintiff, as approved by the Court, as an award for the Plaintiff's time and effort in bringing, prosecuting, and settling the Action on behalf of the Class Members, which shall be paid from the Settlement Fund.

2.40.    **"IRS"** means the Internal Revenue Service.

2.41.    **"Nesmith"** means Timothy Nesmith, the plaintiff in the civil action captioned *Timothy Nesmith v. Capital One Auto Finance*, No. 2:15-cv-03793-AB (E.D. Pa.).

2.42.    The **"Net Settlement Fund"** means the Settlement Fund less the Post-Stay Payment Total, Class Counsel Fees, Class Counsel Costs, Settlement Administration Costs, and the Incentive Awards.

2.43.    The **"Parties"** refers collectively to Plaintiffs and COAF, and **"Party"** refers individually to any of the Parties.

2.44.   **"Plaintiffs"** means collectively Plaintiffs, Randy Langer and James Langer, individually and as representatives of the Class Members.

2.45.   **"Post-Repossession Notice"** means a notice COAF sends to a Borrower notifying the Borrower, *inter alia*, of the repossession of the Borrower's motor vehicle and COAF's intention to dispose of the Borrower's repossessed motor vehicle.

2.46.   **"Post-Sale Notice"** means a notice COAF sends to a Borrower explaining, *inter alia*, the calculation of the surplus or deficiency balance remaining after the repossession and sale of the Borrower's motor vehicle.

2.47.   The **"Post-Stay Period"** means the period between April 24, 2017, the date of the Parties' initial mediation session with mediator Arthur Stroyd, Esquire, and the Effective Date.

2.48.   **"Post-Stay Payment"** means any payment made by a Class Member toward any portion of the Class Member's Disputed Deficiency Balance during the Post-Stay Period.

2.49.   The **"Post-Stay Payment Total"** means the sum of all the Post-Stay Payments made by Class Members as of the Effective Date, excluding Post-Stay Payments made by any Class Members whose requests for exclusion were approved by the Court in the Final Approval Order.

2.50.   **"Post-Stay Return Payment"** means the payment to be made by the Settlement Administrator, in accordance with § 7.11 hereof, to each eligible Class Member equal to the total amount of Post-Stay Payments made by the Class Member.

2.51.   The **"Preliminary Approval Date"** means the date upon which the Court issues the Preliminary Approval Order.

2.52.   The **"Preliminary Approval Order"** means an Order of this Court preliminarily approving the Settlement pursuant to Federal Rule of Civil Procedure 23(e).

2.53.    The **"Preliminary Settlement Administration Payment"** means an initial payment of $50,000 to the Settlement Administrator for Settlement Administration Costs.

2.54.    **"Proper Notification and Documentation"** means, with respect to a deceased Class Member and in the discretion of the Settlement Administrator and Class Counsel, a release and discharge, a death certificate and/or a copy of the official filings appointing an executor, administrator or other personal representative of the estate or fiduciary of an incompetent, and sufficient information as to the identity and address of the executor, administrator, personal representative or fiduciary to enable mailing of a check/wire instructions, or other similar documentation.

2.55.    The **"Protective Order"** means the Confidentiality Agreement and Stipulated Protective Order entered by the Court in the Action at ECF No. 10.

2.56.    **"Qualified Settlement Fund"** has the meaning ascribed to it in Treasury Regulation § 1.468B-1, promulgated under Internal Revenue Code § 468B, as amended.

2.57.    The **"Reinstatement Sub-Class"** means all Class 1 Members: (i) who reinstated their Auto Loans following the repossession of their motor vehicles by COAF; (ii) whose motor vehicles were not subsequently repossessed and disposed of by COAF prior to the Effective Date; (iii) who did not pay off their Auto Loans prior to the Effective Date; and (iv) whose Auto Loans have remaining outstanding balances as of the Effective Date.

2.58.    **"Reinstatement Sub-Class Member"** means a member of the Reinstatement Sub-Class.

2.59.    The **"Released Claims"** means the Claims released by the Class 1 Releasors in § 9.01 hereof, the Claims released by the Class 2 Releasors in § 9.02 hereof, and the Claims released by the COAF Releasors in § 9.03 hereof.

**EXECUTION COPY**

2.60.    The **"Settlement"** means the settlement between Plaintiffs and COAF as set forth in this Agreement.

2.61.    The **"Settlement Account"** means collectively one or more Qualified Settlement Fund bank account(s) at PNC Bank (or another federally-insured financial institution) where the Settlement Fund will be held on deposit pending distribution as set forth in § 7 hereof.

2.62.    The **"Settlement Administrator"** means BrownGreer PLC or another settlement administrator agreed to by the Parties and approved by the Court to administer the Settlement Fund.

2.63.    The **"Settlement Administration Costs"** means the reasonable fees, costs, and expenses of the Settlement Administrator in connection with administering the Settlement in accordance with this Agreement.

2.64.    The **"Settlement Amount"** means the sum of $6,500,000.00.

2.65.    The **"Settlement Fund"** means the aggregate of the Settlement Amount and the Post-Stay Payment Total held on deposit in the Settlement Account, together with any interest that accrues thereon.

2.66.    **"Settlement Fund Purposes"** means (i) the payment to Class Counsel of Class Counsel Fees, as approved by the Court; (ii) the reimbursement to Class Counsel of Class Counsel Costs, as approved by the Court; (iii) the reimbursement to the Settlement Administrator of Settlement Administration Costs, as approved by the Court; (iv) the payment to Plaintiffs of the Incentive Awards, as approved by the Court; (v) the distribution to the Class Members of the Net Settlement Fund; (vi) the distribution of the Post-Stay Payment Total to the eligible Class Members; and (vii) the payment of any residual portions of the Settlement Fund to the *Cy Pres* Recipients, as approved by the Court.

2.67.    The **"UCC"** refers to Pennsylvania's Uniform Commercial Code, 13 Pa. C.S. §

9601, *et seq.*

**3.**    **CONDITIONAL NATURE OF THIS AGREEMENT**

3.01.    This Agreement is made in compromise of disputed claims on a class-wide basis.

This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge and

settle the Released Claims upon and subject to the terms and conditions set forth in this

Agreement, without any admission of liability.  The Parties hereby acknowledge and agree that

the Settlement is subject to preliminary and final approval by the Court in accordance with

Federal Rule of Civil Procedure 23(e).  Accordingly, the Parties enter into this Agreement on a

conditional basis that is subject to Final Approval and COAF's right to terminate the Agreement

as set forth in § 11.01 hereof.

3.02.    The Parties hereby acknowledge and agree that in the event that the Court does

not enter the Preliminary Approval Order or the Final Approval Order, the Final Approval Order

is vacated as the result of any appeal, preventing the Agreement from becoming final and

effective, or this Agreement is terminated in accordance with § 11.01, then: (i) this Agreement

will be deemed terminated, null and void *ab initio*, and of no force or effect whatsoever, except

with regard to the return of the unused portion of the Settlement Fund to COAF as applicable;

(ii) the Parties shall not reference or utilize this Agreement, any other documents prepared by the

Parties to effectuate this Settlement, or any other evidence of this Agreement's terms or the

Parties' settlement discussions to establish liability, damages, or class certification; and (iii) the

Parties' settlement discussions shall remain subject to the protections of Federal Rule of

Evidence 408.

## 4.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

4.01.    Solely for the purposes of this Agreement and the Settlement, the Parties agree that Class 1 and Class 2 shall be certified under Federal Rule of Civil Procedure 23(e).

4.02.    Solely for the purposes of this Agreement and the Settlement, the Parties agree that Plaintiffs are members of and shall be appointed as the class representatives for Class 1 and Class 2.

4.03.    Solely for the purposes of this Agreement and the Settlement, the Parties agree that Class Counsel shall be appointed as counsel for Class 1 and Class 2.

4.04.    In the event that the Court does not enter the Preliminary Approval Order or the Final Approval Order, the Final Approval Order is vacated as the result of any appeal, preventing the Agreement from becoming final and effective, or this Agreement is terminated in accordance with § 11.01, then the provisions of this § 4 shall be void and of no force and effect.

## 5.    CLASS SETTLEMENT PROCEDURES

5.01.    <u>Motion for Preliminary Approval</u>.  Within fourteen (14) days after the Parties' full execution of this Agreement, Plaintiffs, through Class Counsel, shall file a Motion for Preliminary Approval, together with a proposed Preliminary Approval Order in the form attached hereto as Exhibit A.   The proposed Preliminary Approval Order shall provide, among other things:

(a)    That this Agreement and the Settlement set forth herein are deemed by the Court to be within the range of reasonableness such that preliminary approval of the Settlement is warranted and the Class Notice should be disseminated to the Class Members;

(b)    That, solely for the purposes of this Agreement and the Settlement set forth herein, the requirements for preliminary certification of Class 1 and Class 2 pursuant to Federal Rule of Civil Procedure 23 have been satisfied;

15

(c)      That, solely for the purposes of this Agreement and the Settlement set forth herein, Class 1 and Class 2 are preliminarily certified;

(d)      That, solely for the purposes of this Agreement and the Settlement set forth herein, Plaintiffs are preliminarily appointed as the class representatives for Class 1 and Class 2;

(e)      That, solely for the purposes of this Agreement and the Settlement set forth herein, Class Counsel is preliminarily appointed as counsel for Class 1 and Class 2;

(f)      That the Class Notice, in the form attached hereto as Exhibit B, meets all applicable legal requirements and is approved by the Court;

(g)      That the mailing of the Class Notice to the Class Members in the manner set forth in the Preliminary Approval Order meets all applicable legal requirements and is approved by the Court;

(h)      That the Settlement Administrator is appointed to administer the mailing of the Class Notice, is bound by the terms of the Protective Order, and is subject to the jurisdiction of the Court for the purposes of this Action and the Settlement;

(i)      Deadlines consistent with this Agreement and the Class Notice for (i) the mailing of the Class Notice to the Class Members, (ii) the filing of objections to the Settlement, (iii) the filing of requests by Class 1 Members for exclusion from Class 1, and (iv) the filing of requests by Class 2 Members for exclusion from Class 2;

(j)      That a written request for exclusion from the Classes, as set forth in the Class Notice, must:  (i) set forth the Class Member's full name, current address, telephone number and email address, if available, (ii) contain the signatures of any Class Member (or his or

16

her guardian, administrator, or executor) obligated on the Class Member's Auto Loan, and (iii) state the intent of all signatory(ies) not to participate in the Settlement;

(k)     That the Class Members who do not timely exclude themselves from the Classes in accordance with the Class Notice shall be bound by the Final Approval Order;

(l)     The date for the Final Approval Hearing and deadlines for the filing of motion papers in connection with seeking a Final Approval Order; and

(m)     That at the Final Approval Hearing the Court will consider, *inter alia*: (i) whether the Settlement is fair and reasonable; (ii) whether the Class Counsel Fees are fair and reasonable; (iii) whether the Class Counsel Costs are fair and reasonable; (iv) whether the Settlement Administration Costs are fair and reasonable; (v) whether the Incentive Awards are fair and reasonable; and (vi) whether the Final Approval Order, dismissing the Action on the merits and with prejudice as to the Class Members who did not timely exclude themselves from the Classes, should be entered.

5.02.   COAF'S Non-Opposition to Motion for Preliminary Approval.  Provided that Plaintiffs' Motion for Preliminary Approval and proposed Preliminary Approval Order comply with the terms of this Agreement, COAF shall timely file with the Court a response stating that COAF does not oppose the Motion for Preliminary Approval.

5.03.   Identification of Class Members.

(a)     Within thirty (30) days after the Court enters the Preliminary Approval Order, COAF shall provide to Class Counsel and the Settlement Administrator a separate spreadsheet in Excel format for Class 1 and Class 2 containing the following information: (i) the name of each Class Member; (ii) the name of any co-obligor on each Class Member's Auto Loan; (iii) the last known mailing address for each Class Member; (iv) the last known telephone

number(s) for each Class Member; (v) the last known email address for each Class Member; (vi) the Social Security Number for each Class Member; (vii) the Disputed Deficiency Balance for each Class Member (as of the Preliminary Approval Date); (viii) the total amount of Post-Stay Payments made by each Class Member (as of the Preliminary Approval Date); (ix) whether the Class Member had filed for bankruptcy as of the Preliminary Approval Date (to the extent known); and (x) whether the Class Member is within the Reinstatement Sub-Class (as of the Preliminary Approval Date), together with a Declaration under penalty of perjury as to the manner in which the information was collected and its accuracy. COAF agrees to make a reasonable and good faith effort to provide the foregoing information to Class Counsel and the Settlement Administrator.

(b)     COAF is providing the information set forth in this § 5.03, including the Class Members' Social Security Numbers, to Class Counsel and the Settlement Administrator for legitimate business purposes, namely to: (i) assist the Settlement Administrator in locating and/or verifying mailing addresses for the Class Members; and (ii) to assist Class Counsel in verifying that the Class Members receive the settlement consideration set forth in this Agreement.

(c)     The Parties acknowledge and agree that the information provided by COAF in accordance with this § 5.03 is "Confidential Information" as defined in the Protective Order and subject to the protections of the Protective Order.

(d)     COAF agrees to promptly respond to reasonable inquiries from the Settlement Administrator and Class Counsel regarding the Class Member information set forth in this § 5.03.

(e)     The Settlement Administrator shall review, verify, and, if applicable, update the Class Member mailing addresses in the spreadsheets provided by COAF pursuant to

**EXECUTION COPY**

this § 5.03 through the United States Postal Service National Change of Address database and through the Accurint or Westlaw database or another equivalent database and provide updated spreadsheets to Class Counsel and Defense Counsel prior to the sending of the Class Notice.

     5.04.   <u>The Class Notice</u>.  Subject to the Court's approval, the Parties agree that notice of the Settlement shall be given to the Class Members through a class notice in the form attached as Exhibit B.

     (a)     Within the timeframe set forth in the Preliminary Approval Order, the Settlement Administrator shall mail the Class Notice, in the form approved by the Court, by First Class United States Mail to the Class Members at their last known mailing addresses as updated and verified in accordance with § 5.03(e) hereof.

     (b)     If a mailed Class Notice is returned with a forwarding address provided by the United States Postal Service or if Class Counsel or the Settlement Administrator becomes aware of another more suitable address, the Settlement Administrator will re-mail the Class Notice to such address or addresses.

     (c)     If a mailed Class Notice is returned without a forwarding address provided by the United States Postal Service or is otherwise designated by the United States Postal Service as bearing an invalid address, the Settlement Administrator will use the Accurint or Westlaw database or another equivalent database and use skip-tracing, as applicable, to attempt to locate an updated address for the particular Class Member, and will re-mail the Class Notice to the Class Member at the most recent, updated address located if different from an address that was previously returned by the United States Postal Service.

5.05.   <u>Objections to the Settlement</u>.

(a)   The Class Notice, as approved by the Court, shall permit any Class Member to object to the Settlement, provided that the Class Member submits a written objection to the Settlement Administrator in the manner set forth in the Class Notice on or before the deadline for objections set forth in the Class Notice.

(b)   Any Class Member can withdraw his or her objection to the Settlement, provided that the Class Member submits a written withdrawal of the objection to the Settlement Administrator at or before the Final Approval Hearing.

(c)   Within three (3) business days of receipt of any objection, the Settlement Administrator shall provide to Class Counsel and Defense Counsel:  (i) the name, address, telephone number, and email address of the objecting Class Member; (ii) if applicable, the name, address, telephone number, and email address of the objecting Class Member's counsel; and (iii) a copy of the objecting Class Member's written objection.

(d)   Within fourteen (14) days after the deadline for objections set forth in the Class Notice, the Settlement Administrator shall provide to Class Counsel and Defense Counsel a list of the Class Members (by name and Auto Loan Account number) who submitted objections.

(e)   At least twenty-one (21) days before the Final Approval Hearing, the Settlement Administrator shall prepare a list of the Class Members (by last four digits of Auto Loan Account number and city only, for confidentiality purposes) who submitted objections to the Settlement, in a form suitable for submission to the Court with Plaintiffs' Motion for Final Approval.

5.06.   Requests for Exclusion from the Classes.

(a)     The Class Notice, as approved by the Court, shall permit any Class 1 Member to request exclusion from Class 1 and any Class 2 Member to request exclusion from Class 2, provided that the Class Member submits a written request for exclusion in the manner set forth in the Class Notice on or before the deadline for requests for exclusion set forth in the Class Notice.

(b)     Any Class Member can withdraw his or her request for exclusion from Class 1 or Class 2, provided that the Class Member submits a written withdrawal of the request for exclusion to the Settlement Administrator on or before the deadline for requests for exclusion set forth in the Class Notice.

(c)     Within three (3) business days of receipt of any request for exclusion, the Settlement Administrator shall provide to Class Counsel and Defense Counsel:  (i) the name, address, telephone number, and email address of the Class Member requesting exclusion; (ii)  if applicable, the name, address, telephone number, and email address of counsel for the Class Member requesting exclusion; and (iii) a copy of the Class Member's written request for exclusion.

(d)     Within fourteen (14) days after the deadline for requests for exclusion set forth in the Class Notice, the Settlement Administrator shall provide to Class Counsel and Defense Counsel a list of the Class 1 Members (by name and Auto Loan Account number) who submitted requests for exclusion from Class 1, together with copies of the Class 1 Members' written requests for exclusion.

(e)     Within fourteen (14) days after the deadline for requests for exclusion set forth in the Class Notice, the Settlement Administrator shall provide to Class Counsel and

Defense Counsel a list of the Class 2 Members (by name and Auto Loan Account number) who submitted requests for exclusion from Class 2, together with copies of the Class 2 Members' written requests for exclusion.

(f)    At least twenty-one (21) days before the Final Approval Hearing, the Settlement Administrator shall prepare a list of the Class 1 Members (by last four digits of Auto Loan Account number and city only, for confidentiality purposes) who submitted requests for exclusion from Class 1, in a form suitable for submission to the Court with Plaintiffs' Motion for Final Approval.

(g)    At least twenty-one (21) days before the Final Approval Hearing, the Settlement Administrator shall prepare a list of the Class 2 Members (by last four digits of Auto Loan Account number and city only, for confidentiality purposes) who submitted requests for exclusion from Class 2, in a form suitable for submission to the Court with Plaintiffs' Motion for Final Approval.

5.07.    <u>Motion for Final Approval</u>.  In accordance with the Preliminary Approval Order, after the Class Notice has been mailed to the Class Members and before the Final Approval Hearing, Plaintiffs shall file a Motion for Final Approval seeking a Final Approval Order in accordance with this Agreement, and including any modifications made by the Court, approving this Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not excluded themselves from the Classes and ordering that the Settlement Fund be distributed in accordance with § 7 hereof and that the additional class relief be conferred to the eligible Class Members in accordance with § 8 hereof.

5.08.   <u>Class Counsel Fees and Class Counsel Costs</u>.

(a)     The Parties understand that in connection with seeking Final Approval, Class Counsel intends to apply for an award of Class Counsel Fees and an allowance for the reimbursement of Class Counsel Costs, both of which shall be paid from the Settlement Fund on a common basis without affecting COAF's payment obligations hereunder.

(b)     COAF takes no position with respect to the Class Counsel Fees sought by Class Counsel and shall not object to Class Counsel's request for Class Counsel Fees, provided that the Class Counsel Fees sought by Class Counsel do not exceed $2,600,000.00, taking into consideration the settlement consideration to the Class Members in addition to the $6,500,000.00 Settlement Amount, including COAF's agreement to:  (i) compromise and extinguish the Disputed Deficiency Balances by way of an accord and satisfaction; (ii) vacate or mark satisfied any unsatisfied deficiency judgments against the Class Members; (iii) request that the Credit Reporting Agencies delete the trade lines relating to the Class Members' subject Auto Loan Accounts; and (iv) return the Post-Stay Payments.  COAF does not object to the payment of the Class Counsel Fees, in whole or in part, into an annuity or deferred compensation vehicle for the benefit of Class Counsel, subject to approval by the Court.

(c)     COAF takes no position with respect to the Class Counsel Costs sought by Class Counsel and shall not object to Class Counsel's request for Class Counsel Costs provided that the Class Counsel Costs sought by Class Counsel do not exceed $50,000.

(d)     The Class Counsel Fees awarded by the Court shall include compensation to Class Counsel for addressing, *in futuro*, ongoing Class Member inquiries concerning the Settlement and the relief provided thereunder, including the compromise and extinguishment of the Disputed Deficiency Balances by way of an accord and satisfaction, requests for deletion of

trade lines, and return of Post-Stay Payments.  Class Counsel represents that it will also provide

or otherwise make available to Class Members resources and tax-related information Class

Members may use or find helpful relating to this Settlement.

## 6.    SETTLEMENT ADMINISTRATION

6.01.   The Settlement Administrator.

(a)    COAF recommends BrownGreer PLC of Richmond, Virginia to be

appointed by the Court to serve as the Settlement Administrator, and Plaintiffs do not object to

that recommendation.

(b)    If the Court does not appoint BrownGreer PLC as the Settlement

Administrator or if BrownGreer PLC is unable or unwilling to serve as the Settlement

Administrator, then the Parties agree to cooperate in good faith to select a mutually-agreeable

firm to serve as the Settlement Administrator and to seek the Court's approval of the

appointment of such firm as the Settlement Administrator.

(c)    The Parties shall use their best efforts to require the Settlement

Administrator to acknowledge and agree that the Settlement Administrator shall be subject to the

jurisdiction of the Court for the purposes of this Action and the Settlement and shall be bound by

the Protective Order.

(d)    The Parties shall use their best efforts to require the Settlement

Administrator to acknowledge and agree that the Settlement Administrator shall promptly

respond to inquiries from COAF, Defense Counsel, and/or Class Counsel regarding the

administration of the Settlement Fund, the status of payments and distributions therefrom,

communications with Class Members, and any other matter falling within the scope of the

Settlement Administrator's services.

6.02.   <u>Settlement Administration Costs</u>.  The Settlement Administration Costs shall be paid from the Settlement Fund, provided that the Settlement Administration Costs do not exceed $100,000.

(a)      Upon or after COAF's payment of the Settlement Amount to the Settlement Account, and with Class Counsel's approval, the Settlement Administrator may withdraw the Preliminary Settlement Administration Payment from the Settlement Account.

(b)      Upon or after Final Approval, and with Class Counsel's approval, the Settlement Administrator may withdraw up to $50,000 for the remainder of the Settlement Administration Costs.

(c)      In the event that due to unforeseen circumstances, the Settlement Administration Costs reasonably necessary to administer the Settlement exceed $100,000, the Settlement Administrator shall bill COAF directly for, and COAF shall pay, such reasonable and necessary excess Settlement Administration Costs.

## 7.   **THE SETTLEMENT FUND**

7.01.   <u>Qualified Settlement Fund</u>.  The Settlement Fund shall constitute a Qualified Settlement Fund, with the Settlement Administrator serving as the "Administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3).

(a)      Upon or before the establishment of the Settlement Fund, the Settlement Administrator shall apply for an employer identification number for the Settlement Fund in accordance with Treasury Regulation §1.468B-2(k)(4).

(b)      If requested by COAF, as transferor of the Settlement Fund, or by the Settlement Administrator, as Administrator of the Settlement Fund, COAF and the Settlement Administrator shall fully cooperate in jointly filing a relation-back election under Treasury

Regulation §1.468B-1(j)(2) to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund as of the earliest possible date.

        (c)    The Settlement Administrator shall file or cause to be filed, on behalf of the Settlement Fund, all required federal, state, and local tax returns, information returns (including any IRS Form 1099-MISC returns), and tax withholdings statements, in accordance with the provisions of Treasury Regulation §1.468B-2(k)(1) and Treasury Regulation §1.468B-2(l)(2)(ii).  Any contract, agreement or understanding entered into with the Settlement Administrator relating to the Settlement Fund must require the Settlement Administrator or its agent to file or cause to be filed, on behalf of the Settlement Fund, all such required returns and statements.  Nothing in this § 7.01(c) is intended to, or shall be construed to, require the Settlement Administrator to file IRS Form 1099-C informational returns with respect to the compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction through this Settlement.

        7.02.    <u>Payment of the Settlement Amount by COAF</u>.  Within fourteen (14) days after the later of (i) the Court's issuance of the Preliminary Approval Order; (ii) COAF's receipt of a completed and signed IRS Form W-9 with the taxpayer identification number associated with the Settlement Account; and (iii) COAF's receipt of wire transfer instructions for payment to the Settlement Account, COAF shall cause the Settlement Amount to be paid by wire transfer of immediately available funds to the Settlement Account.

        7.03.    <u>Management of the Settlement Fund</u>.

        (a)    The Settlement Fund shall be used solely for Settlement Fund Purposes.

        (b)    The Settlement Fund shall not be commingled with any other funds and shall be held in cash, cash equivalents, certificates of deposit or instruments insured by the

United States Government, or corporate bonds that are rated AAA by Standard and Poor's or Moody's Investors Service.

(c)     The Settlement Fund may but need not bear interest, at the sole discretion of Class Counsel. In the event that the Court does not issue the Final Approval Order, the Final Approval Order is vacated as the result of any appeal, preventing the Agreement from becoming final and effective, or this Agreement is otherwise terminated in accordance with § 11.01, the Settlement Fund, including any accrued interest, shall be returned to COAF in accordance with § 11.02.

(d)     The Settlement Administrator shall be authorized to immediately withdraw the Preliminary Settlement Administration Payment as set forth in § 6.02(a) hereof. Other than the Preliminary Settlement Administration Payment, no portion of the Settlement Fund shall be released from or paid out of the Settlement Account prior to the Effective Date.

(e)     After the Effective Date, no portion of the Settlement Fund shall revert to or otherwise be returned to COAF, except in connection with credits to the Auto Loan Accounts of Reinstatement Sub-Class Members in accordance with § 7.09(f) hereof.

7.04.   <u>Payments to Class Counsel</u>. Subject to Final Approval, no later than fourteen (14) days after the Effective Date unless otherwise instructed by Class Counsel, the Settlement Administrator shall pay to Class Counsel and/or Class Counsel's designee(s):

(a)     Class Counsel Fees in the amount approved by the Court in the Final Approval Order; and

(b)     The amount approved by the Court in the Final Approval Order for reimbursement of Class Counsel Costs.

7.05.   <u>Payment of the Incentive Awards</u>.  Subject to Final Approval, no later than fourteen (14) days after the Effective Date, the Settlement Administrator shall issue and mail checks payable to each Plaintiff, at addresses to be provided by Class Counsel, in the amounts approved by the Court for the Incentive Awards.  Plaintiffs and Class Counsel represent and warrant that Plaintiffs shall receive no benefit from this Settlement except: (i) the settlement consideration afforded to them under this Settlement as Class Members; and (ii) the Incentive Awards.

7.06.   <u>Payment of Settlement Administration Costs</u>.  Subject to Final Approval and Class Counsel's approval, on or after the Effective Date, the Settlement Administrator may withdraw up to $50,000 from the Settlement Fund (in addition to the Preliminary Settlement Administration Payment) for Settlement Administration Costs.

7.07.   <u>Updating Class Member Data</u>.

(a)   Within fourteen (14) days after the Effective Date, COAF shall provide to Class Counsel and the Settlement Administrator a separate updated spreadsheet in Excel format for Class 1 and Class 2 containing following information: (i) the name of each Class Member, excluding any Class Members whose requests for exclusion were approved by the Court in the Final Approval Order; (ii) the name of any co-obligor on each Class Member's Auto Loan; (iii) the last known mailing address for each Class Member; (iv) the last known telephone number(s) for each Class Member; (v) the last known email address for each Class Member; (vi) the Social Security Number for each Class Member; (vii) the Disputed Deficiency Balance for each Class Member (as of the Effective Date); (viii) the total amount of Post-Stay Payments made by each Class Member (as of the Effective Date); (ix) whether the Class Member had filed for bankruptcy as of the Effective Date (to the extent known); and (x) whether the Class Member is

within the Reinstatement Sub-Class (as of the Effective Date).  COAF agrees to make a

reasonable and good faith effort to provide the foregoing information to Class Counsel and the

Settlement Administrator.

      (b)    COAF is providing the information set forth in this § 7.07, including the

Class Members' Social Security Numbers, to Class Counsel and the Settlement Administrator for

legitimate business purposes, namely to: (i) assist the Settlement Administrator in locating and/or

verifying mailing addresses for the Class Members; and (ii) to assist Class Counsel in verifying

that the Class Members receive the settlement consideration set forth in this Agreement.

      (c)    The Parties acknowledge and agree that the information provided by

COAF in accordance with this § 7.07 is "Confidential Information" as defined in the Protective

Order and subject to the protections of the Protective Order.

      (d)    COAF agrees to promptly respond to reasonable inquiries from the

Settlement Administrator and/or Class Counsel regarding the Class Member information set

forth in this § 7.07.

      (e)    The Settlement Administrator shall review, verify, and, if applicable,

update the Class Member mailing addresses in the spreadsheets provided by COAF pursuant to

this § 7.07 through the United States Postal Service National Change of Address database and

through the Accurint or Westlaw database or another equivalent database and provide updated

spreadsheets to Class Counsel and Defense Counsel prior to commencing distributions of the Net

Settlement Fund.

    7.08.   <u>Allocation of the Net Settlement Fund</u>.

      (a)    Subject to Final Approval, no later than sixty (60) days after the Effective

Date, the Settlement Administrator shall commence distributions of the Net Settlement Fund to

the Class Members, excluding only those Class Members whose requests for exclusion were approved by the Court in the Final Approval Order.

      (b)    66.7% of the Net Settlement Fund shall be allocated to Class 1, and 33.3% of the Net Settlement Fund shall be allocated to Class 2.

      (c)    By way of illustration, if the Court approves Class Counsel Fees of $2,600,000.00, Class Counsel Costs of $50,000.00, Settlement Administration Costs of $100,000.00, and aggregate Incentive Awards of $30,000.00, then (excluding any portion of the Settlement Fund that is comprised of accrued interest) $2,480,000.00 of the Net Settlement Fund is allocated to Class 1, and $1,240,000.00 of the Net Settlement Fund is allocated to Class 2.

    7.09.   Distributions to Class 1 Members.

      (a)    The portion of the Net Settlement Fund allocated to Class 1 shall be distributed in equal settlement payments for each Auto Loan Account associated with one or more Class 1 Member(s), excluding any Class 1 Members whose requests for exclusion were approved by the Court in the Final Approval Order.  The settlement payment for an Auto Loan Account with more than one Borrower shall be split evenly among the Co-Borrowers for that Auto Loan Account, with separate checks made payable to each Co-Borrower.  However, the Co-Borrowers on a given Auto Loan Account may request that their settlement payments be divided in some other fashion among the Co-Borrowers.  In the event of a dispute between the Co-Borrowers regarding the allocation of their settlement payments, the Settlement Administrator shall hold the payments for both Co-Borrowers in escrow pending resolution of the dispute, and Class Counsel will use reasonable efforts to resolve the dispute.  In the event that the dispute cannot be resolved, then Class Counsel will petition the Court to adjudicate the dispute.

(b)     To the extent that a Class 1 Member is a Borrower with respect to more than one Auto Loan Account that would qualify the Borrower for inclusion in Class 1, the Class 1 member shall be entitled to a separate settlement payment for each such Auto Loan Account.

(c)     To the extent that the vehicle associated with a Class 1 Member's Auto Loan Account was repossessed more than once, only one payment shall be made for such Auto Loan Account, regardless of the number of repossessions.

(d)     The settlement payments to Class 1 Members are non-assignable except with approval of the Court or in connection with a Class 1 Member's death or incapacity, as set forth in § 7.12(b) hereof.

(e)     Excluding the Reinstatement Sub-Class Members, the settlement payments to Class 1 Members in accordance with § 7.08(a) hereof shall be made by way of checks mailed to the Class 1 Members at their last known mailing addresses as updated and verified in accordance with § 7.07(e) hereof, together with an explanatory letter in the form attached hereto as Exhibit C, unless Class Counsel directs otherwise.

(f)     The Class 1 settlement payments to Reinstatement Sub-Class Members shall be made from the Settlement Administrator directly to COAF.  Upon making such payment to COAF, the Settlement Administrator shall mail an explanatory letter in the form attached hereto as Exhibit D to each Reinstatement Sub-Class Member, with a copy to Class Counsel and Defense Counsel.  COAF shall apply the amount of the payment otherwise due and owing to each Reinstatement Sub-Class Member as a credit to each Reinstatement Sub-Class Member's respective Auto Loan Account.  If the settlement payment to a Reinstatement Sub-Class Member exceeds the total outstanding balance of the Reinstatement Sub-Class Member's Auto Loan Account, then the excess amount shall be returned to the Settlement Administrator to be paid to

the Reinstatement Sub-Class Member by way of a check mailed to the Reinstatement Sub-Class Member's last known mailing address as updated and verified in accordance with § 7.07(e) hereof, with separate checks issued to Co-Borrowers on a given Auto Loan Account, as set forth in § 7.09(a) hereof.  COAF agrees to reasonably cooperate with the Settlement Administrator with respect to effectuating the settlement payments to the Reinstatement Sub-Class Members.

      7.10.   Distributions to Class 2 Members.

      (a)    The portion of the Net Settlement Fund allocated to Class 2 shall be distributed in equal payments to each Class 2 Member, excluding any Class 2 Members whose requests for exclusion were approved by the Court in the Final Approval Order.

      (b)    To the extent that a Class 2 Member is a Borrower with respect to more than one Auto Loan Account that would qualify the Borrower for inclusion in Class 2, the Class 2 member shall be entitled to a separate settlement payment for each such Auto Loan Account.

      (c)    To the extent that the vehicle associated with a Class 2 Member's Auto Loan Account was repossessed more than once, only one payment shall be made for such Auto Loan Account, regardless of the number of repossessions.

      (d)    The settlement payments to Class 2 Members are non-assignable except with approval of the Court or in connection with a Class 2 Member's death or incapacity, as set forth in § 7.12(b) hereof.

      (e)    The settlement payments to Class 2 Members shall be made by way of checks mailed to the Class 2 Members at their last known mailing addresses as updated and verified in accordance with § 7.07(e) hereof, together with an explanatory letter in the form attached hereto as Exhibit C, unless Class Counsel directs otherwise.

7.11.   <u>Post-Stay Return Payments</u>.

(a)      COAF represents that it has not actively pursued collection of the Disputed Deficiency Balances during the Post-Stay Period and covenants that it will not actively pursue collection of the Disputed Deficiency Balances during the remaining Post-Stay Period. Certain Class Members, nonetheless, have made Post-Stay Payments, and Class Members may make additional Post-Stay Payments during the remaining Post-Stay Period.

(b)      Subject to Final Approval, within thirty (30) days after the Effective Date, COAF shall cause the Post-Stay Payment Total to be paid by wire transfer of immediately available funds to the Settlement Account.

(c)      In the event that a Class Member makes a payment toward any portion of the Class Member's Disputed Deficiency Balance after the Effective Date, COAF shall return such payment directly to the Class Member within sixty (60) days of receipt of such payment.

(d)      No later than thirty (30) days after the Post-Stay Payment Total is deposited into the Settlement Account, the Settlement Administrator shall make Post-Stay Return Payments to each Class Member who made Post-Stay Payments, excluding any Class Members whose requests for exclusion were approved by the Court in the Final Approval Order, in the amounts provided by COAF in accordance with § 7.07(a)(viii).  The Post-Stay Return Payments shall be made by way checks mailed to the eligible Class Members at their last known mailing addresses as updated and verified in accordance with § 7.07(e) hereof, unless Class Counsel directs otherwise.  The Post-Stay Return Payments shall be mailed with an explanatory letter in the form attached hereto as Exhibit E, with a copy to Class Counsel and Defense Counsel.

(e)      The Post-Stay Return Payment for an Auto Loan Account with more than one Borrower shall be split evenly among the Co-Borrowers for that Auto Loan Account, with

separate checks made payable to each Co-Borrower. However, the Co-Borrowers on a given

Auto Loan Account may request that their Post-Stay Return Payments be divided in some other

fashion among the Co-Borrowers. In the event of a dispute between the Co-Borrowers regarding

the allocation of their Post-Stay Return Payments, the Settlement Administrator shall hold the

payments for both Co-Borrowers in escrow pending resolution of the dispute, and Class Counsel

will use reasonable efforts to resolve the dispute. In the event that the dispute cannot be

resolved, then Class Counsel will petition the Court to adjudicate the dispute.

(f)     Post-Stay Return Payments to Class Members are non-assignable except

with approval of the Court or in connection with a Class Member's death or incapacity, as set

forth in § 7.12(b) hereof.

7.12.   <u>Treatment of Class Members Who Have Moved or Died</u>.

(a)     For each Class Member whose mailed check(s) (for settlement payments

and/or Post-Stay Return Payments) is/are returned without a forwarding address provided by the

United States Postal Service or is otherwise designated by the United States Postal Service as

bearing an invalid address, the Settlement Administrator will use the Accurint or Westlaw

database or another equivalent database and use skip-tracing, as applicable, to attempt to locate

an updated address for the particular Class Member, and will re-mail the check(s) to the Class

Member at the most recent, updated address located if different from an address that was

previously returned by the United States Postal Service unless otherwise instructed by Class

Counsel or the Class Member.

(b)     If the Settlement Administrator receives notice that a Class Member is

deceased or incompetent, the Settlement Administrator will, upon receipt of Proper Notification

and Documentation, make the Class Member's settlement payment and/or Post-Stay Return

Payment to the Class Member's estate or next of kin if deceased, or trust or guardian if incompetent. Any payments to or on behalf of an estate, next of kin, or guardian of an incompetent must be made within one hundred fifty (150) days after the Distribution Date.

      7.13.   <u>Treatment of Uncashed or Unclaimed Settlement Checks</u>. Except as otherwise ordered by the Court, those Class Members who are not located within one hundred eighty (180) days after the Distribution Date will be ineligible to share in the Settlement Fund, but will otherwise receive the non-cash benefits of this Settlement, as applicable. For those Class Members whose checks are not cashed or claimed within seventy-five (75) days after the Distribution Date, the Settlement Administrator will issue and mail replacement checks for the settlement payments to those Class Members, together with an explanatory letter in the form attached hereto as Exhibit F. The Settlement Administrator, in its discretion or the discretion of Class Counsel, shall replace any lost or non-cashed check upon proper request from a Class Member within one hundred twenty (120) days of the Distribution Date so long as the Settlement Fund has not been fully distributed. COAF does not object to further reasonable efforts by Class Counsel to ensure distribution to Class Members of settlement payments in accordance with this Agreement, including without limitation mailing one or more follow-up letter(s), which may include replacements check(s), to those Class Members who have been sent – but have not negotiated – their checks for distribution to remind the Class Member that a check was previously mailed, has not been negotiated, and will expire if not deposited or cashed in a timely manner. Except as otherwise ordered by the Court, those Class Members whose checks are not cashed or claimed within one hundred eighty (180) days after the Distribution Date will be ineligible to share in the Settlement Fund, but will otherwise receive the non-cash benefits of this Settlement, as applicable.

7.14.   <u>Settlement Administrator's Notification to Class Counsel and Defense Counsel</u>. Within one hundred fifty (150) days after the Distribution Date, the Settlement Administrator must notify Class Counsel and Defense Counsel in writing of:  (i) the number of Class Members to whom settlement checks were mailed; (ii) the number of Class Members who cashed their settlement checks; (iii) the number of Class Members who did not cash their settlement checks; (iv) the number of Class Members to whom Post-Stay Return Payment checks were mailed; (v) the number of Class Members who cashed their Post-Stay Return Payment checks; (vi) the number of Class Members who did not cash their Post-Stay Return Payment checks; (vii) the number of Reinstatement Sub-Class Members to whose Auto Loan Accounts settlement payments were credited and the total amount of such credits, listing the total amount of the checks issued and/or wire transfers made to COAF for the settlement payments to the Reinstatement Sub-Class Members; (viii) the total dollar amount of the Settlement Fund distributed; and (ix) and the remaining balance of the Settlement Fund, accounting for interest (if any), bank fees and similar direct expenses of the administration.

7.15.   *Cy Pres*.  This Settlement does not entail a reverter.  Except as otherwise ordered by the Court, within one hundred eighty (180) days after the Distribution Date, the remaining balance of the Settlement Fund, comprised of the principal of any uncashed or returned checks together with accrued interest, if any, shall be distributed by the Settlement Administrator to the *Cy Pres* Recipients approved by the Court in the Final Approval Order, made by way of checks mailed to the *Cy Pres* Recipients at addresses to be provided to the Settlement Administrator by Class Counsel.  Upon distribution of the balance of the Settlement Fund to the *Cy Pres* Recipients, the Settlement Administrator shall close the Settlement Account.

7.16.   <u>Certification of Distribution</u>.  Within fourteen (14) days after the final distribution of all portions of the Settlement Fund, the Settlement Administrator will provide to Class Counsel an affidavit attesting to the Court that the distributions provided for by this Agreement have all been timely made and will serve a copy thereof on Defense Counsel.

7.17.   <u>No Liability to COAF or Defense Counsel</u>.  The Parties acknowledge and agree that following COAF's payment of the Settlement Amount in accordance with § 7.02 hereof and COAF's payment of the Post-Stay Payment Total in accordance with § 7.11 hereof, COAF and Defense Counsel have no responsibility for, interest in, control over, or liability whatsoever with respect to:  (i) the management, investment, allocation, or distribution of the Settlement Fund; (ii) the administration of the Settlement, the calculation or payment of Counsel Costs, Counsel Fees, Settlement Administration Costs, Incentive Awards, settlement payments to Class Members, or payments to the *Cy Pres* Recipients; (iii) the calculation, withholding, or payment of any taxes, penalties, interest, charges, or fees related to the Settlement Fund; or (iv) any Claims by Plaintiffs, the Class Members, Class Counsel, the Settlement Administrator, or anyone else with respect to the foregoing.

## 8.   **ADDITIONAL CLASS RELIEF**

8.01.   <u>Accord and Satisfaction of Disputed Deficiency Balances</u>.

(a)   Subject to and upon Final Approval, as of the Effective Date, COAF shall permanently extinguish all of the Disputed Deficiency Balances of the Class Members, excluding those Class Members whose requests for exclusion were approved by the Court in the Final Approval Order, with such Disputed Deficiency Balances being compromised through an accord and satisfaction by virtue of the mutual consideration set forth herein.  Nothing herein is intended to, or shall be construed to, prevent COAF from taking steps to effectuate the

extinguishment of the Class Members' Disputed Deficiency Balances between the date of the Court's entry of the Final Approval Order and the Effective Date.

(b)     COAF agrees to take reasonable steps to vacate or mark satisfied any unsatisfied deficiency judgments against any Class Members, excluding any Class Members whose requests for exclusion were approved by the Court in the Final Approval Order, within thirty (30) days after the Effective Date and to provide a copy of any such Court filings to Class Counsel.

(c)     COAF does not waive the outstanding balances on the Reinstatement Sub-Class Members' Auto Loan Accounts; nor does COAF waive any Deficiency Balances that may result from the repossession and disposition of any Reinstatement Sub-Class Member's motor vehicle after the Effective Date.

8.02.   <u>IRS Form 1099-C Reporting</u>.

(a)     The Parties acknowledge that COAF may have certain obligations under the Internal Revenue Code and related regulations to file IRS Form 1099-C informational returns with the IRS and to furnish copies of the IRS Forms 1099-C to the relevant Borrowers.

(b)     The Parties acknowledge and agree that the Class Members' Disputed Deficiency Balances are disputed liabilities that are being compromised and extinguished by way of an accord and satisfaction through this Settlement.

(c)     Plaintiffs take the position that under *Zarin v. Commissioner of Internal Revenue*, 916 F.2d 110 (3d Cir. 1990), the Parties' agreement to compromise and extinguish the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction, as set forth in § 8.01(a) hereof, constitute the resolution of contested liabilities, not a cancellation or discharge of indebtedness, and that the compromise and extinguishment of the Class Members'

Disputed Deficiency Balances by way of an accord and satisfaction therefore do not result in taxable income to the Class Members. Accordingly, Plaintiffs contend that COAF is not required to file IRS Form 1099-C informational returns with the IRS or furnish copies of the IRS Forms 1099-C to the Class Members with respect to the compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction.

(d)      COAF takes no position as to whether the compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction under § 8.01(a) hereof result in taxable income to the Class Members.

(e)      In connection with their Motion for Preliminary Approval, Plaintiffs intend to seek a ruling from the Court, as set forth in the form of proposed Preliminary Approval Order attached hereto as Exhibit A, that: (i) under *Zarin v. Commissioner of Internal Revenue*, 916 F.2d 110 (3d Cir. 1990), the compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction under § 8.01(a) hereof do not result in taxable income to the Class Members; and (ii) COAF shall not file IRS Form 1099-C informational returns with the IRS or furnish copies of the IRS Forms 1099-C to the Class Members with respect to the compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction.

(f)      COAF agrees that it will not object to or oppose Plaintiffs' request for a ruling as set forth in § 8.02(e) hereof, provided that the proposed ruling states that the ruling applies only to the Action and shall have no collateral estoppel effect as against COAF in any other action, suit, proceeding, or other matter.

(g)      In the event that the Court enters a Preliminary Approval Order directing COAF to refrain from filing IRS Form 1099-C informational returns with the IRS and furnishing

copies of the IRS Forms 1099-C to the Class Members with respect to the compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction, COAF agrees that it will not file IRS Form 1099-C informational returns with the IRS or furnish copies of the IRS Forms 1099-C to the applicable Class Members with respect to the compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction unless the IRS independently determines that IRS Form 1099-C reporting is required and directs COAF to so report, in which case COAF shall comply with the IRS's directive and, within seven (7) days of receipt of such directive, shall send a copy of such communication to Class Counsel.

(h)     In the event that the Court enters a Preliminary Approval Order but declines to issue the ruling requested by Plaintiffs as set forth in § 8.02(e), then COAF shall handle the IRS Form 1099-C reporting with respect to the Class Members' Disputed Deficiency Balances as it would in the ordinary course of business.  In the event that COAF files with the IRS Forms 1099-C with respect to compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction under § 8.01(a) hereof, within thirty (30) days after filing the Forms 1099-C, COAF shall provide to Class Counsel a list of the Class Members with respect to whom COAF issued the Forms 1099-C and the respective amount of discharged debt reported for each such Class Member.  In lieu of providing this list, COAF may furnish to Class Counsel copies of the Forms 1099-C.

(i)     The Parties acknowledge that even if COAF refrains from IRS Form 1099-C reporting with respect to the compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction under § 8.01(a) hereof, the

Class Members may nonetheless be subject to tax liability with respect to the compromised and deemed satisfied Disputed Deficiency Balances under applicable federal, state, and/or local law.

(j)     Nothing in this Agreement shall impair any Class Member's right to challenge the income tax treatment of the relief he or she receives under this Settlement.

(k)     The Parties acknowledge and agree that neither COAF, Defense Counsel, nor Class Counsel has provided tax advice to Plaintiffs, the Class Members, or anyone else with respect to the Settlement.

8.03.    <u>Requests for Deletion of Trade Lines</u>.

(a)     Subject to Final Approval, within thirty (30) days after the Effective Date, as to each Class Member, excluding any Class Members whose requests for exclusion were approved by the Court in the Final Approval Order, COAF shall make a written or electronic request to the Credit Reporting Agencies to delete entirely the trade line relating to the Class Member's subject Auto Loan Account from the Class Member's credit file.  Nothing herein is intended to, or shall be construed to, prevent COAF from taking steps to effectuate the requests for deletion of the trade lines relating to the Class Members' Auto Loan Accounts between the date of the Court's entry of the Final Approval Order and the Effective Date

(b)     COAF agrees that, subject to Final Approval, after the Effective Date it shall not submit any new credit reports to the Credit Reporting Agencies regarding any Class Members' subject Auto Loan Accounts.

(c)     The Parties acknowledge and agree that:  (i) the Credit Reporting Agencies are independent entities that are not affiliated with COAF; (ii) COAF cannot and does not control whether, when, or how the Credit Reporting Agencies will act upon the requests for deletion of the Class Members' trade lines; (iii) COAF is not responsible for ensuring or

41

compelling the Credit Reporting Agencies' action in response to the requests for deletion of the Class Members' trade lines; and (iv) COAF shall not be liable to any Class Member for the failure of a Credit Reporting Agency to delete the Class Member's trade line.

        (d)     If after a reasonable period of time, one or more of the Credit Reporting Agencies fail(s) to delete the trade line relating to a Class Member's subject Auto Loan, as requested by COAF, Class Counsel may request that COAF resubmit the request to the Credit Reporting Agencies to delete the trade line, and COAF shall resubmit the request for deletion of the trade line within thirty (30) days of such request from Class Counsel.  COAF shall not be required to make more than three (3) affirmative requests to the Credit Reporting Agencies to delete the trade line.  If, after three (3) affirmative requests by COAF to the Credit Reporting Agencies to delete the trade line, the trade line is still not removed and the Class Member disputes the trade line with one or more of the Credit Reporting Agencies, then COAF agrees to respond to such dispute by requesting that the trade line be deleted.

        (e)     The Parties acknowledge and agree that COAF shall not be liable to any Class Member under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, the Fair Credit Extension Uniformity Act, 73 Pa. C.S. § 2270.1 *et seq.*, or any similar law for complying with provisions of this § 8.03.

**9.**      **<u>RELEASES</u>**

      9.01.   <u>Release by Class 1 Releasors</u>.

        (a)     Subject to Final Approval, on the Effective Date, the Class 1 Releasors, by operation of this Agreement, do and shall forever release, remise, waive, acquit, and discharge the COAF Releasees from, and covenant not to sue the COAF Releasees in connection with, any and all Claims the Class 1 Releasors ever had, now have, or in the future may have against the COAF Releasees arising out of or in any way relating to the Action, the Auto Loans and Auto

42

Loan Accounts that are the subject of this Settlement, the Post-Repossession Notices issued by COAF on or before the Effective Date, the Post-Sale Notices issued by COAF on or before the Effective Date, the Disputed Deficiency Balances, and COAF's policies, procedures, and practices on or before the Effective Date related to the repossession of motor vehicles, the issuance of Post-Repossession Notices, the issuance of Post-Sale Notices, or the Disputed Deficiency Balances, subject to the exceptions set forth in this § 9.01.

(b)     Notwithstanding the foregoing, the release set forth in this § 9.01 does not and shall not be deemed to release, remise, waive, acquit, affect, or discharge any Claims or defenses of any Reinstatement Sub-Class Members relating to their reinstated Auto Loan Accounts that arise after the Effective Date.

(c)     Notwithstanding, the foregoing, the release set forth in this § 9.01 does not and shall not be deemed to release, remise, waive, acquit, affect, or discharge any Claim by any Class 1 Releasors for statutory damages under 13 Pa. C.S. § 9625(e)(5) arising from or relating to any Post-Sale Notice allegedly sent by or allegedly required to be sent by COAF.  Pursuant to this § 9.01, any Borrower who is a Class 1 Member but not a Class 2 Member, and who does not seek exclusion from Class 1, will release and waive *inter alia* any Claim against COAF arising from or relating to the Post-Repossession Notice COAF sent to the Class Member, including without limitation any Claim as a member of the putative "Public Auction Class" and/or "Hidden Fees Class" in the Dudo Action, but will not release and waive any Claim against COAF for statutory damages under 13 Pa. C.S. § 9625(e)(5) arising from or relating to any Post-Sale Notice allegedly sent by or allegedly required to be sent by COAF to the Class 1 Member, including without limitation any Claims as a member of the putative "UCC Post-Sale Notice Class" and/or "MVSFA Post-Sale Notice Class" in the Dudo Action, which latter Class 1 Unreleased Claims

43

are unaffected by the Action and this Settlement.  Pursuant to §§ 9.01 and 9.02 hereof, any

Borrower who is both a Class 1 Member and a Class 2 Member, such as Plaintiffs, and who does

not seek exclusion from either class, will release and waive *inter alia* any Claim against COAF

arising from or relating to the Post-Repossession Notice COAF sent to the Class Member and

any Claim against COAF arising from or relating to the Post-Sale Notice COAF sent to or

allegedly failed to send to the Class Member, including without limitation all Claims in the Dudo

Action.

           (d)      Notwithstanding the foregoing, the release set forth in this § 9.01 does not

and shall not be deemed to release, remise, waive, acquit, affect, or discharge any Claims or

defenses of the Class 1 Releasors arising from or relating to the enforcement of this Agreement.

           9.02.    <u>Release by Class 2 Releasors</u>.

           (a)      Subject to Final Approval, on the Effective Date, the Class 2 Releasors, by

operation of this Agreement, do and shall forever release, remise, waive, acquit, and discharge

the COAF Releasees from, and covenant not to sue the COAF Releasees in connection with, any

and all Claims the Class 2 Releasors ever had, now have, or in the future may have against the

COAF Releasees arising out of or in any way relating to the Action, the Auto Loans and Auto

Loan Accounts that are the subject of this Settlement, the Post-Repossession Notices issued by

COAF on or before the Effective Date, the Post-Sale Notices issued by COAF on or before the

Effective Date, the Disputed Deficiency Balances, and COAF's policies, procedures, and

practices on or before the Effective Date related to the repossession of motor vehicles, the

issuance of Post-Repossession Notices, the issuance of Post-Sale Notices, or the Disputed

Deficiency Balances, subject to the exceptions set forth in this § 9.02.

        (b)      Notwithstanding, the foregoing, the release set forth in this § 9.02 does not and shall not be deemed to release, remise, waive, acquit, affect, or discharge any Claim by any Class 2 Releasors for statutory damages under 13 Pa. C.S. § 9625(c)(2) arising from or relating to any Post-Repossession Notice allegedly sent by or allegedly required to be sent by COAF. Pursuant to this § 9.02, any Borrower who is a Class 2 Member but not a Class 1 Member, and who does not seek exclusion from Class 2, will release and waive *inter alia* any Claim against COAF arising from or relating to the Post-Sale Notice COAF sent to or allegedly failed to send to the Class Member, including without limitation any Claim as a member of the putative "UCC Post-Sale Notice Class" and/or "MVSFA Post-Sale Notice Class" in the Dudo Action, but will not release and waive any Claim against COAF for statutory damages under 13 Pa. C.S. § 9625(c)(2) arising from or relating to any Post-Repossession Notice allegedly sent by or allegedly required to be sent by COAF to the Class 2 Member, including without limitation any Claims as a member of the putative "Public Auction Class" and/or "Hidden Fees Class" in the Dudo Action, which latter Class 2 Unreleased Claims are unaffected by the Action and this Settlement.  Pursuant to §§ 9.01 and 9.02 hereof, any Borrower who is both a Class 1 Member and a Class 2 Member, such as Plaintiffs, and who does not seek exclusion from either class, will release and waive *inter alia* any Claim against COAF arising from or relating to the Post-Repossession Notice COAF sent to the Class Member and any Claim against COAF arising from or relating to the Post-Sale Notice COAF sent to or allegedly failed to send to the Class Member, including without limitation all Claims in the Dudo Action.

        (c)      Notwithstanding the foregoing, the release set forth in this § 9.02 does not and shall not be deemed to release, remise, waive, acquit, affect, or discharge any Claims or defenses of the Class 2 Releasors arising from or relating to the enforcement of this Agreement.

**EXECUTION COPY**

9.03.   <u>Release by COAF Releasors</u>.

(a)      Subject to Final Approval, on the Effective Date, the COAF Releasors, by operation of this Agreement, do and shall forever release, remise, waive, acquit, and discharge the Class Releasees from, and covenant not to sue the Class Releasees in connection with, any and all Claims the COAF Releasors ever had, now have, or in the future may have against the COAF Releasees arising out of or in any way relating to the Action or the Auto Loans and Auto Loan Accounts that are the subject of this Settlement or the Disputed Deficiency Balances existing on or before the Effective Date.

(b)      Notwithstanding the foregoing, the release set forth in this § 9.03 does not and shall not be deemed to release, remise, waive, acquit, affect, or discharge any Claims or defenses of COAF relating to the Reinstatement Sub-Class Members' reinstated Auto Loan Accounts that arise after the Effective Date.

(c)      Notwithstanding the foregoing, while the Parties agree that this Action and this Settlement do not and shall not affect the Class 1 Unreleased Claims and the Class 2 Unreleased Claims described in §§ 9.01(c) and 9.02(b), including any unreleased claims asserted in the Dudo Action, the release set forth in this § 9.03 does not and shall not be deemed to waive or affect any of COAF's defenses to any Claim by any Class Member that is not a Released Claim, including but not limited to COAF's defenses to the Class 1 Unreleased Claims and the Class 2 Unreleased Claims.

9.04.   Notwithstanding the foregoing, the release set forth in this § 9.03 does not and shall not be deemed to release, remise, waive, acquit, affect, or discharge any Claims or defenses of the COAF Releasors arising from or relating to the enforcement of this Agreement.

## 10.    DENIAL OF LIABILITY – NO ADMISSIONS

10.01.  Plaintiffs, on their own behalf and on behalf of the Class Members, dispute the commercial reasonableness of COAF's practices regarding the issuance of Post-Repossession Notices and Post-Sale Notices to the Class Members and dispute the existence, amount, and validity of any Disputed Deficiency Balances.

10.02.  COAF, on the other hand, denies that its practices regarding the issuance of Post-Repossession Notices and Post-Sale Notices to the Class Members violated the UCC, denies any liability to Plaintiffs or the Class Members, and asserts that it is entitled to pursue collection of the Disputed Deficiency Balances.

10.03.  Neither the Settlement, nor this Agreement, nor any of the Parties' settlement discussions, shall be construed as an admission or concession: (i) by COAF as to any liability to Plaintiffs or the Class Members; or (ii) by Plaintiffs or any Class Member as to the existence, amount, or validity of any Disputed Deficiency Balance or as to any liability to COAF.

10.04.  Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and any evidence of the Settlement or the Parties' settlement discussions, shall not be offered or received as evidence in any action, proceeding, or suit to establish any liability or admission by any Party.

10.05.  The Parties expressly agree and represent that, in the event that the Court does not enter the Preliminary Approval Order or the Final Approval Order, the Final Approval Order is vacated as the result of any appeal, preventing the Agreement from becoming final and effective, or this Agreement is terminated in accordance with § 11.01, no Party will use or attempt to use any conduct or statement of any other Party in connection with this Agreement or any effort to seek approval of the Agreement to affect or prejudice any other Party's rights in any ensuing suit.

10.06.  COAF has agreed resolve the Action through this Agreement, but in the event that the Court does not enter the Preliminary Approval Order or the Final Approval Order, the Final Approval Order is vacated as the result of any appeal, preventing the Agreement from becoming final and effective, or this Agreement is terminated in accordance with § 11.01, COAF does not waive, but rather expressly reserves, all rights, claims, and defenses, including the Released Claims.  To the extent this Agreement is deemed void or Final Approval does not occur, COAF reserves the right to defend against Plaintiffs' claims in the Action on any available legal, factual, or procedural grounds, including without limitation on the grounds that Plaintiffs do not satisfy the requirements for class certification.

10.07.  Plaintiffs have agreed to resolve the Action on their own behalf and on behalf of the Class Members through this Agreement, but in the event that the Court does not enter the Preliminary Approval Order or the Final Approval Order, the Final Approval Order is vacated as the result of any appeal, preventing the Agreement from becoming final and effective, or this Agreement is terminated in accordance with § 11.01,  the Plaintiffs, on their own behalf and on behalf of the putative class members, do not waive, but rather expressly reserve, all rights, claims, and defenses including the Released Claims.  To the extent this Agreement is deemed void or Final Approval does not occur, Plaintiffs reserve the right to pursue their claims in the Action on any available legal, factual, or procedural grounds.

11.    **TERMINATION OF THIS AGREEMENT**

11.01. Excessive Requests for Exclusion.

(a)    In the event that either:  (i) 5% or more of the Class 1 Members to whom Class Notice is mailed request exclusion from Class 1 in accordance with the Class Notice; or (ii) 5% or more of the Class 2 Members to whom Class Notice is mailed request exclusion from Class 2 in accordance with the Class Notice, COAF, in its sole discretion, may elect to terminate

48

this Agreement by providing written notice to Class Counsel within fourteen (14) days after the Settlement Administrator provides to Defense Counsel lists of the Class Members who requested exclusion from the Classes as set forth in §§ 5.06(d) and (e).

(b)      Neither COAF, Defense Counsel, Plaintiffs, nor Class Counsel shall directly or indirectly solicit or encourage any Class Member to request exclusion from either of the Classes.

11.02.  Effect of Termination.  In the event that this Agreement terminates without Final Approval, the Action will revert to its status as it existed immediately prior to the filing of this Agreement, and the Settlement Fund, including any interest which has accrued thereon, will be returned to COAF within fourteen (14) days, except for any monies paid or due the Settlement Administrator for actual costs incurred for Settlement Administration Costs, not to exceed $100,000.

**12.      MISCELLANEOUS PROVISIONS**

12.01.  Dismissal of Action.  Subject to Final Approval, within fourteen (14) days after the Effective Date, Plaintiffs shall file with the Court a stipulation dismissing the Action with prejudice.

12.02.  Pending Dudo Action.  Upon the Preliminary Approval Date, Plaintiffs shall exclude themselves from the putative classes alleged in the Dudo Action.  Class Counsel and Defense Counsel agree, upon the Effective Date, to reasonably cooperate to conform the pleadings in the Dudo Action in a manner consistent with §§ 9.01 and 9.02 of this Agreement.

12.03.  Confidentiality and Non-Disparagement.

(a)      The Parties agree that their settlement discussions and the documents exchanged between the Parties in connection with such discussions shall remain strictly

confidential and shall not be disclosed to anyone other than the Parties, Class Counsel, and Defense Counsel.

(b)     The Parties agree that the Class Members' personally-identifiable information and personal financial information, including the details relating to their Auto Loan Accounts, shall remain confidential and shall not be disclosed to anyone other than the Parties, Class Counsel, Defense Counsel, and the Settlement Administrator, as necessary to administer the Settlement.

(c)     Plaintiffs and Class Counsel shall not publicly disparage or encourage any Class Member to publicly disparage:  (i) COAF; (ii) any of COAF's representatives; (iii) COAF's conduct relating to this Agreement, the Settlement, the Action, the Auto Loans and Auto Loan Accounts that are the subject of this Settlement, the Post-Repossession Notices issued by COAF, the Post-Sale Notices issued by COAF, or the Class Members' Deficiency Balances; or (iv) COAF's policies, procedures, and practices related to the repossession of motor vehicles, the issuance of Post-Repossession Notices, the issuance of Post-Sale Notices, or Deficiency Balances.

12.04.  <u>No Restraint on Legal Advice</u>.  Nothing in this Agreement is intended to, or shall be construed to, prevent or inhibit Class Counsel from providing legal advice to Class Counsel's clients including Plaintiffs and, after the Preliminary Approval Date, any other Class Members.

12.05.  <u>Right to Cure</u>.  The Parties, Class Counsel, and Defense Counsel agree to reasonably cooperate to comply with the terms of this Agreement.  If any Party fails to comply with a term or condition of this Agreement, the Party shall have the right to cure such non-compliance within fourteen (14) days after receiving written notice by the other Party.  No Party shall commence legal action or seek intervention by the Court with respect to another Party's

EXECUTION COPY

failure to comply with the terms or conditions of this Agreement without first providing written notice and an opportunity for the other Party to cure the non-compliance(s).

12.06. <u>Notices</u>.  Any notices or requests required to be sent under this Agreement shall be sent via hand delivery, overnight delivery (by Federal Express of United Parcel Service), or email as follows:

(a)  <u>If to Plaintiffs or Class Counsel</u>:

Richard E. Shenkan, Esquire
Shenkan Injury Lawyers, LLC
6550 Lakeshore Street
West Bloomfield, MI  48323
rshenkan@shenkanlaw.com

(b)  <u>If to COAF or Defense Counsel</u>:

Joseph T. Kelleher, Esquire
Stradley Ronon Stevens & Young, LLP
2005 Market Street, Suite 2600
Philadelphia, PA  19103
jkelleher@stradley.com

12.07. <u>Governing Law and Enforcement</u>.  This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania without regard to conflict of laws rules.  This Agreement shall be enforced in the Court, and the Parties waive any objection to the venue of any lawsuit, action, or proceeding to enforce this Agreement in the Court.

12.08. <u>Entire Agreement</u>.  The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement.  The Parties further intend that this Agreement, including the exhibits attached hereto, constitutes the complete and exclusive statement of these terms as between them.

12.09.  Cooperation.  The Parties, Class Counsel, and Defense Counsel shall cooperate with each other and the Settlement Administrator as reasonably necessary to effectuate the Settlement.

12.10.  Headings.  The headings and sub-headings in this Agreement are for the purpose of convenience only and are not to have legal effect.

12.11.  Modification in Writing Only.  This Agreement may be altered, amended, modified or waived, in whole or in part, only in a writing signed by the Parties or counsel for the Parties.  This Agreement may not be orally amended, altered, modified or waived, in whole or in part.

12.12.  No *Contra Proferentem*.  The determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto.  Accordingly, this Agreement will be considered neutral and no ambiguity will be construed in favor or against any of the Parties.

12.13.  Successors.  This Agreement shall be binding upon, and inure to the benefit of, the respective heirs, successors and assigns of the Parties hereto.

12.14.  Execution.  The Parties may execute this Agreement in counterparts, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.  This Agreement may be executed by facsimile signature, and a facsimile signature will have the same legal effect as an original signature

12.15.  Waiver.  The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

12.16.  Retention of Jurisdiction.  The Court shall retain jurisdiction over the interpretation, effectuation, and implementation of this Agreement and the approval and

**EXECUTION COPY**

enforcement of the Settlement.  The Parties and the Settlement Administrator submit to the

jurisdiction of the Court in connection with this Agreement and the Settlement.

IN WITNESS WHEREOF, the Parties and their Counsel, being duly authorized,

have caused this Agreement to be executed on the dates shown below.

RANDY LANGER

Date: _____

JAMES LANGER

Date: _____

CAPITAL ONE AUTO FINANCE,
a division of CAPITAL ONE, N.A.

By: _____

Its: _____

Date: _____

SHENKAN INJURY LAWYERS, LLC
(Class Counsel)
By: Richard E. Shenkan, Esquire

Date: _____

**EXECUTION COPY**

enforcement of the Settlement.  The Parties and the Settlement Administrator submit to the

jurisdiction of the Court in connection with this Agreement and the Settlement.

IN WITNESS WHEREOF, the Parties and their Counsel, being duly authorized,

have caused this Agreement to be executed on the dates shown below.


_____

RANDY LANGER

Date: _____


_____

JAMES LANGER

Date: 4/28/19 _____


_____

CAPITAL ONE AUTO FINANCE,
a division of CAPITAL ONE, N.A.

By: _____

Its: _____

Date: _____


_____

SHENKAN INJURY LAWYERS, LLC
(Class Counsel)
By:  Richard E. Shenkan, Esquire

Date: _____

**EXECUTION COPY**

enforcement of the Settlement. The Parties and the Settlement Administrator submit to the

jurisdiction of the Court in connection with this Agreement and the Settlement.

        IN WITNESS WHEREOF, the Parties and their Counsel, being duly authorized,

have caused this Agreement to be executed on the dates shown below.

_____

RANDY LANGER

Date: _____

_____

JAMES LANGER

Date: _____

CAPITAL ONE AUTO FINANCE,
a division of CAPITAL ONE, N.A.

By: _____Steven W. Broskaup_____

Its: _____SUP, FS Loan Servicing_____

Date: _____4/29/2019_____

_____

SHENKAN INJURY LAWYERS, LLC
(Class Counsel)
By: Richard E. Shenkan, Esquire

Date: _____

53

enforcement of the Settlement.  The Parties and the Settlement Administrator submit to the

jurisdiction of the Court in connection with this Agreement and the Settlement.

IN WITNESS WHEREOF, the Parties and their Counsel, being duly authorized,

have caused this Agreement to be executed on the dates shown below.

RANDY LANGER

Date: _____

JAMES LANGER

Date: _____

CAPITAL ONE AUTO FINANCE,
a division of CAPITAL ONE, N.A.

By: _____

Its: _____

Date: _____

SHENKAN INJURY LAWYERS, LLC
(Class Counsel)
By:  Richard E. Shenkan, Esquire
Date: _____4/29/19_____

**EXECUTION COPY**

STRADLEY RONON STEVENS & YOUNG, LLP
(Defense Counsel)
By:  Joseph T. Kelleher, Esquire

Date:   April 29, 2019

# EXHIBIT A

**[Proposed Preliminary Approval Order]**

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY LANGER and JAMES LANGER, | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | No. 2:16-cv-06130-HB |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAPITAL ONE AUTO FINANCE, a division of | ) | |
| CAPITAL ONE, N.A., | ) | |
| | ) | |
| Defendant | ) | |

**ORDER**

AND NOW, this _____ day of _____, 2019, upon consideration of

Plaintiffs' Uncontested Motion for Preliminary Settlement Approval, Conditional Certification of

Settlement Classes, and Approval of Class Settlement Notice (the "Motion"), it is hereby

ORDERED that the Motion is GRANTED.  It is further ORDERED as follows:

1.    **Summary of Claims.**  Plaintiffs, Randy Langer and James Langer, commenced

this putative class action against Defendant, Capital One Auto Finance, a division of Capital

One, N.A. ("COAF"), asserting claims on their own behalf and on behalf of similarly-situated

Pennsylvania consumer auto loan borrowers, arising from COAF's practices with respect to

sending:  (i) post-repossession notices informing Pennsylvania consumer borrowers of the

repossession of their motor vehicles and COAF's intention to dispose of the repossessed motor

vehicles ("Post-Repossession Notices"); and (ii) post-sale notices to Pennsylvania consumer

borrowers explaining the calculation of the claimed post-sale deficiency balances on the

borrowers' loans ("Post-Sale Notices").  Plaintiffs allege, *inter alia*, that COAF's practices with

respect to sending Post-Repossession Notices and Post-Sale Notices violated the Pennsylvania

EXHIBIT A

Uniform Commercial Code, 13 Pa. C.S. § 9601, *et seq.* (the "UCC"), which Plaintiffs contend

must be read *in pari materia* with the Pennsylvania Motor Vehicle Sales Finance Act.  In

addition to seeking statutory damages, Plaintiffs seek the extinguishment of any deficiency

balances that COAF claims are owed following the sales of Plaintiffs' and the putative class

members' repossessed motor vehicles, the reimbursement of certain amounts paid by the putative

class members in respect of those claimed deficiency balances, and the removal of the credit

trade lines for Plaintiffs and each putative class member relating to their Auto Loans.  COAF, on

the other hand, denies that it violated the UCC, denies any liability to Plaintiffs or any putative

class members, and asserts that it is entitled to pursue collection of the disputed deficiency

balances on Plaintiffs' and the putative class members' auto loans.

     2.   **Proposed Settlement.**  Plaintiffs and COAF (the "Parties") have agreed, subject

to approval by the Court, to resolve this action on a class-wide basis in accordance with the terms

of an executed Class Action Settlement Agreement and Release (the "Settlement Agreement"), a

copy of which was attached as Exhibit 1 to the Motion.[1]  Pursuant to the Settlement Agreement,

in exchange for a release of the claims of Plaintiffs and the Class Members, except those claims

and defenses expressly preserved by the Settlement Agreement, COAF, without admitting any

liability, agrees to:  (i) make a gross settlement payment to the Class Members in the aggregate

sum of $6,500,000.00; (ii) compromise and extinguishment of the Disputed Deficiency Balances

on Plaintiffs' and the Class Members' Auto Loans by way of an accord and satisfaction; (iii)

vacate or mark satisfied any unsatisfied deficiency judgments against the Class Members; (iv)

request that the Credit Reporting Agencies delete the trade lines associated with Plaintiffs' and

---

[1]   Unless defined herein, all capitalized terms in this Order shall have the meanings ascribed to them in the Settlement Agreement.  The Settlement Agreement, including its exhibits, is incorporated by reference in this Order.

EXHIBIT A

the Class Members' Auto Loans; and (v) return to the Class Members the Post-Stay Payments

they made toward their Disputed Deficiency Balances on or after April 24, 2017, the date of the

Parties' first mediation session.

      3.    **Preliminary Settlement Approval.**  The Court preliminarily finds that the

Settlement between the Parties, as memorialized in the Settlement Agreement, is fair, adequate,

in the best interests of the Class Members, and within the range of reasonableness for

preliminary settlement approval.  The Court finds that:  (a) the Settlement resulted from arm's

length negotiations; and (b) the Settlement is sufficiently reasonable to warrant notice of the

Settlement to the Class Members and a full hearing on the approval of the Settlement.

      4.    **Conditional Class Certification.**  Pursuant to Federal Rule of Civil Procedure

23(b)(3), the Court conditionally certifies, for settlement purposes only, the following Classes:

      (a)    **Class 1 (Post-Repossession Notice Class).**  All Borrowers:  (i) who entered into an Auto Loan for personal, family, or household purposes; (ii) whose motor vehicle was repossessed by COAF; (iii) whose mailing address at the time of the repossession, according to COAF's business records, was in Pennsylvania; and (iv) to whom COAF sent a Post-Repossession Notice during the Class 1 Period[2] that stated a minimum redemption period of fewer than fifteen (15) days from the date of the Post-Repossession Notice.

      (b)    **Class 2 (Post-Sale Notice Class).**  All Borrowers:  (i) who entered into an Auto Loan for personal, family, or household purposes; (ii) whose motor vehicle was repossessed by COAF; (iii) whose motor vehicle was sold by COAF during the Class 2 Period;[3] (iv) whose mailing address and/or whose co-obligor's mailing address at the time of the sale of the vehicle, according to COAF's business records, was/were in Pennsylvania; and (v) to whom COAF did not mail a separately addressed Post-Sale Notice after the sale of the motor vehicle or to whose co-obligor on the Auto Loan COAF did not mail a separately addressed Post-Sale Notice after the sale of the motor vehicle.

---

[2]    The Class 1 Period is February 1, 2015 to July 29, 2015, inclusive.

[3]    The Class 2 Period is October 5, 2010 to June 9, 2017, inclusive.

5.   **Findings as to Class 1**.  Pursuant to Federal Rule of Civil Procedure 23, the

Court preliminarily finds, for settlement purposes only, that:

(a)   Class 1 appears to be so numerous that joinder of all members is impracticable;

(b)   There appear to be questions of law or fact common to Class 1 for the purposes of determining whether the Settlement should be approved;

(c)   Plaintiffs' claims appear to be typical of the Class 1 claims being resolved through the Settlement;

(d)   Plaintiffs appear to be capable of fairly and adequately protecting the interests of Class 1 in connection with the proposed Settlement;

(e)   Common questions of law and fact appear to predominate over questions affecting only individual Class 1 members, and Class 1 appears to be sufficiently cohesive for settlement of the Class 1 claims on a class-wide basis; and

(f)   Certification of Class 1 appears to be superior to other available methods for the fair and efficient resolution of the Class 1 claims.

6.   **Findings as to Class 2**.  Pursuant to Federal Rule of Civil Procedure 23, the

Court preliminarily finds, for settlement purposes only, that:

(a)   Class 2 appears to be so numerous that joinder of all members is impracticable;

(b)   There appear to be questions of law or fact common to Class 2 for the purposes of determining whether the Settlement should be approved;

(c)   Plaintiffs' claims appear to be typical of the Class 2 claims being resolved through the Settlement;

(d)   Plaintiffs appear to be capable of fairly and adequately protecting the interests of Class 2 in connection with the proposed Settlement;

(e)   Common questions of law and fact appear to predominate over questions affecting only individual Class 2 members, and Class 2 appears to be sufficiently cohesive for settlement of the Class 2 claims on a class-wide basis; and

(f)   Certification of Class 2 appears to be superior to other available methods for the fair and efficient resolution of the Class 2 claims.

7.      **Findings as to the Compromise and Extinguishment of the Disputed Deficiency Balances in an Accord and Satisfaction.**  Pursuant to the Settlement, COAF shall permanently extinguish the Disputed Deficiency Balances of the Class Members (excluding those Class Members whose requests for exclusion are approved by the Court), with such Disputed Deficiency Balances being compromised in an accord and satisfaction.  The Parties acknowledge and agree, and the Court finds, that the Disputed Deficiency Balances are disputed liabilities.  Plaintiffs contend, and the Court finds, that under *Zarin v. Commissioner of Internal Revenue*, 916 F.2d 110 (3d Cir. 1990), the Parties' agreement to compromise and extinguish the Disputed Deficiency Balances by way of an accord and satisfaction, as set forth in the Settlement Agreement, constitutes the resolution of contested liabilities, not a cancellation or discharge of indebtedness, and the compromise and extinguishment of the Disputed Deficiency Balances by way of an accord and satisfaction therefore do not result in taxable income to the Class Members.  Accordingly, the Court rules that COAF shall not file IRS Form 1099-C informational returns with the Internal Revenue Service (the "IRS") or furnish copies of the IRS Forms 1099-C to the Class Members with respect to the compromise and extinguishment of the Class Members' Disputed Deficiency Balances by way of an accord and satisfaction as set forth in the Settlement Agreement.  This finding is subject to modification if the IRS independently determines that IRS Form 1099-C reporting is required with respect to the compromise and extinguishment of the Class Members' Disputed Deficiency Balances and directs COAF to so report, in which case COAF shall promptly notify this Court and Class Counsel and shall comply with the IRS's directive unless further directed by this Court.  The Court's findings and ruling with regard to IRS Form 1099-C reporting are limited to the facts and circumstances of this

unique Settlement and shall have no collateral estoppel effect as against COAF in any other action, suit, proceeding, or other matter.

       8.     **Preliminary Appointment of Class Representatives and Class Counsel.**  For settlement purposes only, the Court preliminarily appoints Plaintiffs as the class representatives for Class 1 and Class 2 and preliminarily appoints Richard Shenkan and Shenkan Injury Lawyers, LLC, as class counsel for Class 1 and Class 2.  The Court preliminarily finds that Plaintiffs and Class Counsel have and will fairly and adequately represent the interests of the Class Members with respect to the Settlement.  Plaintiffs and Class Counsel, on behalf of Class 1 and Class 2, are authorized to take all appropriate actions required and permitted to be taken by the Settlement Agreement to effectuate its terms.

       9.     **Appointment of Settlement Administrator.**  BrownGreer PLC is appointed as the third-party administrator (the "Settlement Administrator") to assist in the administration of the Settlement and the notification to the Class Members, as set forth in the Settlement Agreement.  The Court finds that it is necessary for COAF to disclose to the Settlement Administrator confidential class data, including the names, addresses, telephone numbers, email addresses, and Social Security Numbers of the Class Members, with such information being deemed "Confidential Information" for the purposes of the Confidentiality Agreement and Stipulated Protective Order entered by the Court in this action [ECF No. 10] (the "Protective Order").  The Settlement Administrator shall be bound by the terms of the Protective Order and subject to the jurisdiction of the Court for the purposes of this action and the Settlement.

      10.     **Approval of Manner and Form of Proposed Class Notice.**  The Court approves the proposed Class Notice attached as Exhibit B to the Settlement Agreement and the proposed manner of mailing the Class Notice, as set forth in the Settlement Agreement, finding that the

Class Notice fully satisfies the requirements of Due Process, the applicable requirements of the Federal Rules of Civil Procedure, and Class Counsel's obligations to Class Members, and constitutes reasonable and sufficient notice to all Class Members, as practicable under the circumstances. The Class Notice shall be sent by the Settlement Administrator to the Class Members by first-class U.S. mail, postage prepaid, not later than sixty (60) days following the entry of this Order.

11. **Qualified Settlement Fund.** Class Counsel and/or the Settlement Administrator is/are authorized to establish the Settlement Account at PNC Bank (or another federally-insured financial institution to be selected by Class Counsel) which satisfies the requirements to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation Section 1.468B-1, promulgated under Section 468B of the Internal Revenue Code of 1986, as amended. As set forth in the Settlement Agreement, the Settlement Administrator will administer the Settlement Fund and will be the "Administrator" of this Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3). Class Counsel and/or the Settlement Administrator shall establish the Qualified Settlement Fund in accordance with the terms of the Settlement Agreement.

12. **Class Members' Right to Object to the Settlement.** As set forth in the Settlement Agreement and the proposed Class Notice, all Class Members have the right to object to the Settlement, by sending a written objection to the Settlement Administrator in accordance with the Class Notice. As set forth in the Class Notice, written objections to the Settlement must be post-marked no later than forty-five (45) days after the date of the Class Notice. Class Counsel shall file copies of all written objections to the Settlement with Plaintiffs' motion for final approval of the Settlement in advance of the final approval hearing.

13.     **Class Members' Right to Request Exclusion from the Classes.**  As set forth in the Settlement Agreement and the proposed Class Notice, all Class Members have the right to request exclusion from Class 1 and/or Class 2 by sending a written request for exclusion to the Settlement Administrator in accordance with the Class Notice.  Any written request for exclusion must:  (i) set forth the Class Member's full name, current address, telephone number and email address, if available, (ii) contain the signatures of any Class Member (or his or her guardian, administrator, or executor) obligated on the Class Member's Auto Loan, and (iii) state the intent of all signatory(ies) not to participate in the Settlement.  As set forth in the Class Notice, written requests for exclusion from Class 1 and/or Class 2 must be post-marked no later than forty-five (45) days after the date of the Class Notice.  Class Members who do not timely exclude themselves from the Classes in accordance with the Class Notice shall be bound by the Court's Order finally approving the Settlement, if final approval is granted.  Class Counsel shall file copies of all written requests for exclusion from the Classes with Plaintiffs' motion for final approval of the Settlement in advance of the final approval hearing.

14.     **Final Approval Hearing.**  A final approval hearing with respect to the Settlement (the "Final Approval Hearing") shall take place before the Honorable Harvey Bartle III in Courtroom 16-A, at the United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, PA  19106, on _____, 2019, at _____.  At the Final Approval Hearing the Court will consider, *inter alia*: (i) whether the Settlement is fair and reasonable; (ii) whether the Class Counsel Fees are fair and reasonable; (iii) whether the Class Counsel Costs are fair and reasonable; (iv) whether the Settlement Administration Costs are fair and reasonable; (v) whether the Incentive Awards are fair and reasonable; and (vi) whether the Final Approval Order, dismissing the Action on the merits and with prejudice as to the Class

Members who did not timely excluded themselves from the Classes, should be entered.  The Court will also hear and consider any properly lodged objections to the Settlement.  Any Class Member may appear and be heard at the Final Approval Hearing, either in person or through counsel retained at the Class Member's expense.  The Final Approval Hearing may be postponed, adjourned, or rescheduled by Order of the Court without further notice to the Class Members.

15.  **Motion for Final Approval.**  After the Class Notice has been mailed to the Class Members, and no later than fourteen (14) days before the Final Approval Hearing, Plaintiffs shall file a Motion for Final Approval seeking a Final Approval Order in accordance with the Settlement Agreement, approving the Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not excluded themselves from the Classes and ordering that the Settlement Fund be distributed in accordance with the Settlement Agreement and that the additional class relief be conferred to the eligible Class Members in accordance with the Settlement Agreement.  The Motion for Final Approval shall include Class Counsel's application for awards of Class Counsel Fees, Class Counsel Costs, Settlement Administration Costs, and Plaintiffs' Incentive Awards.

16.  **Stay of Proceedings.**  All proceedings in this action are stayed pending final approval of the Settlement, except as may be necessary to implement the Settlement or to comply with the terms of the Settlement Agreement.

17.  **Effect of Termination.**  If the Settlement Agreement is terminated or is not consummated for any reason, or if Final Approval is not obtained, this Order, including the preliminary approval of the Settlement, the conditional certification of Class 1 and Class 2, the preliminary appointment of Plaintiffs as class representatives, and the preliminary appointment

of Class Counsel, shall be vacated and deemed void and of no effect, and this action shall proceed as though such approval, certification, and appointments never occurred, with the Parties reserving all rights, including with respect to class certification.  Further, in such event, neither the Settlement Agreement, the Motion, this Order, nor any documents related thereto shall be referred to or used by any Party to establish liability, damages, or class certification or for any other purpose.

       18.   **Retention of Jurisdiction.**  The Court retains jurisdiction to consider all further applications arising out of or related to the Settlement Agreement.  The Court may approve or modify the Settlement without further notice to the Class Members.

BY THE COURT:

_____
HARVEY BARTLE III, J.

# EXHIBIT B

**[Proposed Class Notice]**

**YOU MAY BE A MEMBER OF CLASS [ ]**                                                    **EXHIBIT B**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

*Langer, et al. v. Capital One Auto Finance, a division of Capital One, N.A.*
No. 2:16-cv-06130-HB

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**You may be entitled to receive a settlement payment,
the extinguishment of disputed debt, and credit reporting relief
in connection with a class action against Capital One Auto Finance**

*A Federal Court has authorized this Notice.
This is not a solicitation from a lawyer.*

This proposed settlement (the **"Settlement"**), if approved by the Court, will resolve a class action lawsuit against Capital One Auto Finance, a division of Capital One, N.A. (the **"Bank"**), over whether the Bank sent proper notices to borrowers of their rights after the Bank repossessed their motor vehicles (**"Post-Repossession Notices"**) and whether the Bank sent proper notices to borrowers of their rights after the Bank sold the repossessed vehicles (**"Post-Sale Notices"**).

The class action lawsuit, *Langer, et al. v. Capital One Auto Finance, a division of Capital One, N.A.*, No. 2:16-cv-06130-HB (the **"Lawsuit"**), is pending before the United States District Court for the Eastern District of Pennsylvania. The Bank denies and disputes the claims asserted in the Lawsuit. The Settlement avoids the costs and risks to the parties associated with proceeding with the Lawsuit.

Under the Settlement the Bank will: (a) provide a gross settlement payment of **$6,500,000.00** to be distributed to class members after the payment of administrative costs, Class Counsel's legal fees and costs, and incentive payments to the representative plaintiffs; (b) permanently extinguish the disputed deficiency balances that the Bank claims are owed on the class members' auto loans with the Bank; (c) refund payments that the class members made toward the claimed deficiency balances during the time period after the Bank and the representative plaintiffs started negotiating this settlement; (d) request that the credit reporting agencies delete the credit reporting trade lines associated with the class members' auto loans with the Bank; and (e) vacating of any deficiency judgments. In exchange, the Bank will be released from liability, except for except for narrowly-defined exceptions described in the Settlement Agreement. The Settlement Agreement can be reviewed at [website address], by reviewing the pleadings at the federal courthouse in Philadelphia, or by requesting a copy from the Settlement Administrator or Class Counsel.

You are receiving this Notice because you may be a class member for purposes of the Settlement.

*Your rights may be affected whether or not you act in response to this Notice. Please read this Notice carefully.*

#### Why you have been sent this Notice

The Settlement is for two classes. According to the Bank's records, you are a member of one or both of these classes, as indicated at the top of this page.

The relevant time period for the Settlement (the **"Class Period"**) is from October 5, 2010 through the date the Court finally approves the settlement.

**Class 1 – the Post-Repossession Notice Class** is defined as: All borrowers (i) who entered into an auto loan for personal, family, or household purposes; (ii) whose motor vehicle was repossessed by the Bank; (iii) whose mailing address at the time of the repossession, according to the Bank's business records, was in Pennsylvania; and (iv) to whom the Bank sent a Post-Repossession Notice during the

Class Period that stated a minimum redemption period of fewer than fifteen (15) days from the date of the Post-Repossession Notice.

**Class 2 – the Post-Sale Notice Class** is defined as:  All borrowers (i) who entered into an auto loan for personal, family, or household purposes; (ii) whose motor vehicle was repossessed by the Bank; (iii) whose motor vehicle was sold by the Bank during the Class Period; (iv) whose mailing address and/or whose co-obligor's mailing address at the time of the sale of the vehicle, according to the Bank's business records, was/were in Pennsylvania; and (v) to whom the Bank did not mail a separately addressed Post-Sale Notice after the sale of the motor vehicle or to whose co-borrower on the auto loan the Bank did not mail a separately addressed Post-Sale Notice after the sale of the motor vehicle.

<u>**Brief Summary of Settlement Benefits**</u>

The Settlement will provide several benefits to the class members.

*Settlement Payments*

**Class 1:**  Members of Class 1 will receive an estimated net settlement payment of approximately $1,870 for auto loans with only one borrower, or $935 per co-borrower for auto loans with two co-borrowers. These amounts are estimates, and the actual cash payments could be smaller or larger than the estimates.  If after your vehicle was repossessed you reinstated your loan, got your vehicle back, and have an outstanding loan balance with the Bank, the Bank first will apply your settlement payment to the balance of your auto loan and then pay the excess amount, if any, to you.

**Class 2:**  Each member of Class 2 will receive an estimated net settlement payment of approximately $140.  This amount is an estimate, and the actual cash payments could be smaller or larger than the estimates.

*Refund of Certain Deficiency Balance Payments*

**Both Classes:**  The Bank has agreed to refund to the class members any payments the class members made toward their deficiency balances between April 24, 2017 and the date when the Court finally approves the settlement.  If after your vehicle was repossessed you reinstated your loan, got your vehicle back, and have an outstanding loan balance with the Bank, the Bank will <u>not</u> refund the payments you made toward the outstanding balance.

*Compromised and Extinguished Deficiency Balances*

**Both Classes:**  The balance remaining on an auto loan after the financed vehicle is repossessed and sold by a bank or financing company is called a "deficiency balance."  In connection with the Settlement Agreement, the Bank has agreed to compromise and permanently extinguish the disputed deficiency balances the Bank claims are remaining on the auto loans of the members of Class 1 and Class 2, excluding those class members whose vehicle was repossessed, reinstated their loan, and got their repossessed vehicle back, and have an outstanding loan balance with the Bank. For those persons, the Bank is <u>not</u> waiving the balance on their auto loan. If you are one of those class members, you are part of the Reinstatement Sub-class. Please check above to determine which class you are in.

*Request to Delete Credit Reporting*

**All Classes:**  The Bank has agreed to submit requests to the three major credit reporting agencies – Experian, Equifax, and TransUnion – to delete the credit reporting related to the class members' auto loans.

*Claims Preserved*

**Both Classes**:  You may have narrowly defined additional claims, as described in the Settlement Agreement, which you may pursue against Capital One. There is no guarantee that you are eligible for these narrowly defined additional claims or that the law will afford you any relief.

EXHIBIT B

## Your Options

At this time, you are assumed to be a class member who is participating in the Settlement. Therefore, your rights will be affected even if you do nothing. Please read this Notice carefully.

The following is a general summary of the actions you can take and the results of those actions. If you want to have a detailed discussion regarding your specific situation or have other questions or concerns, you may contact Class Counsel at [toll-free number].

| YOUR ACTION | RESULT OF THAT ACTION |
| --- | --- |
| **DO NOTHING** | You remain in the Settlement. If the Settlement is approved, you will receive a settlement payment and the other benefits summarized above, and, in exchange, you give up the right to sue the Bank for matters concerning your auto loan and the repossession of your vehicle as set forth in the Settlement Agreement, except for narrowly-defined exceptions described in the Settlement Agreement. See, Section 14 below. |
| **ASK TO BE EXCLUDED** | You are removed from the Settlement. You will not receive a settlement payment or the other benefits summarized above. However, this is the only option that allows you to pursue your own lawsuit or to participate in any other lawsuit against the Bank concerning your auto loan or the repossession of your vehicle. <br> The deadline for you to submit your request to be excluded is **[DATE]**, forty-five (45) days after the date of this Notice, so you must act promptly. |
| **OBJECT TO SETTLEMENT** | If you object to the Settlement, you are still in the Settlement, but you have notified the Court in writing that you don't like the Settlement and why. <br> The deadline for you to submit an objection is **[DATE]**, forty-five (45) days after the date of this Notice, so you must act promptly. |
| **OBJECT TO ALLOCATION OF SETTLEMENT AND REFUND PAYMENTS (CO-BORROWERS ONLY)** | If you are a co-borrower, you may also object to the equal allocation between co-borrowers of the settlement payments and/or the refund of deficiency payments. This is not the same as objecting to the Settlement. The deadline for you to submit an objection to the payment allocation is **[DATE]**, forty-five (45) days after the date of this Notice, so you must act promptly. |
| **GO TO THE HEARING WHERE THE COURT CONSIDERS WHETHER TO APPROVE THE SETTLEMENT** | You are still in the Settlement and get the benefits of the Settlement, if approved by the Court. You do not need to attend the hearing to get the benefits of the Settlement, but you are invited to attend and will be afforded an opportunity to speak in Court about the fairness of the Settlement (should you choose to do so) or, if applicable, why any belatedly submitted objection or request for exclusion should be considered. |

3

**EXHIBIT B**

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ......................................................................................................................... 5

   1.    Why is there a Notice? ......................................................................................................... 5

   2.    What is this Lawsuit About? ................................................................................................. 5

   3.    Why is this a Class Action? ................................................................................................. 5

   4.    Why is there a Settlement? ................................................................................................. 5

WHO IS IN THE SETTLEMENT? ....................................................................................................... 5

   5.    How do I know if I am part of the Settlement? ..................................................................... 6

   6.    What if I am not sure whether I am included in the Settlement? ......................................... 6

THE SETTLEMENT BENEFITS .......................................................................................................... 6

   7.    What does the Settlement provide? ..................................................................................... 6

   8.    How much will I receive? ..................................................................................................... 7

   9.    What is the payment refund benefit? ................................................................................... 7

   10.   What is the deficiency balance elimination benefit? ............................................................ 7

   11.   What is the credit reporting benefit? .................................................................................... 8

   12.   What if I reinstated my loan? .............................................................................................. 8

   13.   When will I receive my benefits? ......................................................................................... 8

   14.   What am I giving up and what claims might I still have to pursue if I remain in the Settlement? ....................... 9

   15.   Will this affect my taxes? .................................................................................................... 9

   16.   What happens if this notice is addressed to a class member that has passed away? ........ 9

   17.   What happens if this debt was discharged in or is presently included in a bankruptcy? ..... 9

   18.   What happens if I voluntarily surrendered my vehicle, redeemed my vehicle, or reinstated my account? ........ 9

HOW TO GET BENEFITS .................................................................................................................. 10

   19.   Do I need to do anything to get a cash payment, to get the credit reporting benefit, or to have my alleged but disputed deficiency balance eliminated? ................................................................. 10

EXCLUDING YOURSELF FROM THE SETTLEMENT ..................................................................... 10

   20.   How do I exclude myself from the Settlement? ................................................................. 10

   21.   If I do not exclude myself, can I sue the Bank for the same thing later? ........................... 10

   22.   If I exclude myself, can I still benefit from this Settlement? .............................................. 10

THE LAWYERS REPRESENTING YOU ........................................................................................... 10

   23.   Do I have a lawyer in the case? ........................................................................................ 10

   24.   How will the lawyers be paid? ........................................................................................... 10

OBJECTING TO THE SETTLEMENT OR OBJECTING TO THE DISTRIBUTION/REFUND .......... 11

   25.   How do I tell the Court if I do not like the Settlement? ...................................................... 11

   26.   If I am a co-borrower, can I object to the equal division of the cash payments and/or deficiency payment refunds as between both co-borrowers? ....................................................... 11

   27.   What is the difference between objecting and asking to be excluded? .............................. 11

THE COURT'S FAIRNESS HEARING .............................................................................................. 12

   28.   When and where will the Court decide whether to approve the Settlement? ..................... 12

   29.   Do I have to attend the fairness hearing? ......................................................................... 12

   30.   May I speak at the hearing? .............................................................................................. 12

GETTING MORE INFORMATION ..................................................................................................... 12

   31.   How do I get more information? ......................................................................................... 12

**EXHIBIT B**

## BASIC INFORMATION

**1.   Why is there a Notice?**

A Court has authorized this Notice because you have a right to know about the proposed Settlement of the Lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.  This Notice explains the Lawsuit, the proposed Settlement, and your legal rights.  If the Court approves the Settlement, and after any appeals are resolved, the Settlement Administrator will make the payments that the Settlement allows. United States District Judge Harvey Bartle III of the United States District Court for the Eastern District of Pennsylvania is overseeing the Lawsuit.  The name of the Lawsuit is *Langer, et al. v. Capital One Auto Finance, a division of Capital One, N.A.*, No. 2:16-cv-06130-HB. In this Notice, Defendant Capital One Auto Finance, a division of Capital One, N.A., is called the "**Bank**," and the people who sued the Bank are called the "**Plaintiffs**."

**2.   What is this Lawsuit About?**

The Plaintiffs have claimed, among other things, that the Bank violated Pennsylvania law in two ways: (1) by failing to send its borrowers proper post-repossession consumer disclosure notices describing their rights after it repossessed a financed vehicle ("**Post-Repossession Notices**"); and (2) by failing to send a separate disclosure notice to each co-borrower after the Bank sold the repossessed vehicle ("**Post-Sale Notices**"). The Bank denies that it did anything wrong and has asserted a variety of defenses.  The Bank further asserts that it has the right to pursue the collection of the outstanding balances of the borrowers' loans following the sales of the repossessed vehicles, which are referred to as "deficiency balances." Plaintiffs dispute that the Bank can pursue collection of the borrowers' deficiency balances.  These issues have not yet been decided by the Court, and, if this Settlement is approved, these issues will not be resolved on the merits.

**3.   Why is this a Class Action?**

In a class action, one or more people called "representative plaintiffs" sue on behalf of themselves and other people with similar claims.  All of these people together are the "class" or "class members."  In this Lawsuit, the Plaintiffs, Randy Langer and James Langer, are the representative plaintiffs.   If this Settlement is approved, the Settlement will resolve the claims of all of the class members except for those individuals who exclude themselves from the class or pursue a claim that is expressly preserved by the Settlement Agreement.  For purposes of this Settlement, you are a class member.

**4.   Why is there a Settlement?**

The Court has not decided in favor of the Plaintiffs or the Bank.  Instead, both sides have agreed to a Settlement.  By agreeing to this Settlement, both sides avoid the cost and risk of a trial, and the individuals affected may decide whether to participate in the Settlement.  The Plaintiffs and their attorneys think the Settlement is best for all class members.  Without the Settlement, there would be a trial, which could result in a greater payment to class members, a smaller payment to class members, or no payment at all to class members, and could result in class members being held liable for the deficiency balances which, though disputed, the Bank claims against them.   Additionally, the settlement provides very substantial benefits, including cash settlement payments, the compromise and extinguishment of disputed deficiency balances, the refund of payments made toward the deficiency balances on or after April 24, 2017, and requests to the credit reporting agencies to delete the class members' trade lines related to their auto loans with the Bank. The Settlement does not mean that the Bank did anything wrong.

## WHO IS IN THE SETTLEMENT?

If you received this Notice in the mail, the Bank's records indicate you are part of one or both of the classes and are included in this Settlement. But even if you did not receive a mailed notice, you may still be a class member and included in this Settlement, as described below.

**5.   How do I know if I am part of the Settlement?**

You are included in Class 1 if:

- You financed a motor vehicle primarily for personal, family, or household use, pledging the vehicle as collateral;

- The Bank issued your auto loan or your auto loan was assigned to the Bank;

- Your vehicle that was pledged as collateral was repossessed by or at the direction of the Bank;

- You had a Pennsylvania mailing address, according to the Bank's records, as of the date of the repossession; and,

- Sometime between February 1, 2015 and July 29, 2015, inclusive, the Bank sent you a Post-Repossession Notice that stated a minimum redemption period of fewer than fifteen (15) days from the date of the Post-Repossession Notice.

You are included in Class 2 if:

- You financed a motor vehicle primarily for personal, family, or household use, pledging the vehicle as collateral;

- The Bank issued your auto loan or your auto loan was assigned to the Bank;

- Your vehicle that was pledged as collateral was repossessed by or at the direction of the Bank;

- The Bank sold your repossessed vehicle;

- Either you or the co-borrower on your loan had a Pennsylvania mailing address, according to the Bank's records, as of the date of the sale of the vehicle; and

- At any time on or after October 5, 2010 through June 9, 2017, the Bank failed to mail you or the co-borrower on your loan a separately addressed Post-Sale Notice explaining the post-sale deficiency balance on the loan.

**6.   What if I am not sure whether I am included in the Settlement?**

If you are not sure whether you are included in the Settlement, you may call Class Counsel at [toll free number] with questions.  You may also contact the Settlement Administrator below:

CAPITAL ONE CLASS SETTLEMENT
[Settlement Administrator's name]
[mailing address]
[email]
[toll free number]

## THE SETTLEMENT BENEFITS

**7.   What does the Settlement provide?**

If the Settlement is approved and becomes final, it will provide, among other things, the following benefits:

- A total cash settlement payment of $6.5 million (see Question 8), to be paid to the class members after the deduction of Class Counsel's attorneys' fees and costs, incentive awards to the Plaintiffs, and settlement administration costs (see Question 24);

- Refunds of the payments class members made toward their deficiency balances on or after April 24, 2017 (see Question 9);

- The compromise and extinguishment of the class members' disputed deficiency balances, totaling approximately $27.4 million (see Question 10); and

- Requests to the credit reporting agencies to delete the credit trade lines associated with the class members' auto loans with the Bank (see Question 11).

More details are in the Settlement Agreement, which is available to be reviewed at [website address] or by accessing the record for this lawsuit at the Clerk's office at the Federal Court located at 601 Market Street, Philadelphia, PA 19106.

**8.   How much will I receive?**

The Bank has agreed to pay a settlement amount of $6,500,000.00.  After deducting Class Counsel's attorneys' fees and costs, the settlement administration costs, and incentive awards to the Plaintiffs, 66.7% of the net settlement will be paid to Class 1 members, and 33.3% of the net settlement will be paid to Class 2 members.

**(a) Class 1 Payments**

The Class 1 settlement payments will be made in equal payments for each auto loan at issue, with estimated net settlement payments of approximately $1,870 each for auto loans with only one borrower, and estimated net settlement payments of $935 per co-borrower for auto loans with two co-borrowers. These amounts are estimates, and the actual cash payments could be smaller or larger than these estimates.  If after your vehicle was repossessed you reinstated your loan, got your vehicle back, and have an outstanding loan balance with the Bank, the Bank first will apply your settlement payment to the balance of your auto loan and then pay the excess amount, if any, to you. If you had more than one vehicle repossessed by the Bank, you will be entitled to such a payment for each repossessed vehicle.  If the same vehicle was repossessed more than once, you will receive one payment.

**(b) Class 2 Payments**

The Class 2 settlement payments will be made in equal payments to each Class 2 member, with an estimated net settlement payment of approximately $140 for each Class 2 member.  This amount is an estimate, and the actual cash payments could be smaller or larger than these estimates.  If you had more than one vehicle repossessed by the Bank, you will be entitled to such a payment for each repossessed vehicle.  If the same vehicle was repossessed more than once, you will receive one payment.

**9.   What is the payment refund benefit?**

If the Bank received any payments made on or after April 24, 2017 to a deficiency balance on your auto loan, the Bank has agreed to refund you 100% of your such payments.  If after your vehicle was repossessed you reinstated your loan, got your vehicle back, and have an outstanding loan balance with the Bank, the Bank will not refund the payments you made toward the outstanding balance. If that is the case you are a member of the Reinstatement Sub-class, in which case the cash payment you otherwise would receive will be paid towards your outstanding auto loan.  If, with this payment, your auto loan will be satisfied, you will receive the balance of any remaining portion of your cash benefit.

**10.   What is the deficiency balance elimination benefit?**

A deficiency balance is the amount that the Bank claims you still owe on your loan after the sale of your repossessed vehicle.  Plaintiffs dispute that any deficiency balance is owed by any class member.  As part of the Settlement, the Bank agrees to compromise and extinguish all of the class members' disputed deficiency balances excluding those class members who fall within the Reinstatement Sub-class (see Question 12).

Example:  At the time the Bank sold Amanda's repossessed vehicle, she owed $10,000 on her loan. The Bank incurred $250 to repossess her vehicle and $250 to sell the vehicle.  Amanda's vehicle sold for $6,000 at auction.  Amanda's deficiency balance would be $4,500.

*Calculation*

| [($10,000 + $250 + $250) | - | ($6,000)] | = | $4,500 |
|---|---|---|---|---|
| Total amount owed by Amanda | | Amount from vehicle sale | | Deficiency Balance |

**11. What is the credit reporting benefit?**

As part of the Settlement, the Bank will ask Experian, Equifax, and TransUnion to delete the credit trade line associated with your auto loan with the Bank.  It is likely that your credit score will increase as a result of this benefit unless you filed for bankruptcy; however, there is no guarantee as to this positive effect.

**12. What if I reinstated my loan?**

If after the Bank repossessed your vehicle you reinstated your loan by paying the past due amounts, and the Bank has not subsequently repossessed and sold your vehicle, you are a member of the Reinstatement Sub-class.

**(a) Will I receive the settlement payment?**

Yes.  You will receive the settlement payment described in Question 8, but the settlement payment will be first credited to your outstanding loan balance, with any excess then being paid to you.

**(b) Will I receive the payment refund benefit?**

No.  You will not receive a deficiency balance payment refund, as described in Question 9 because your loan does not have a deficiency balance.

**(c) Will I receive the deficiency balance extinguishment benefit?**

No. You will not receive the deficiency balance extinguishment benefit described in Question 10 above because your loan does not have a deficiency balance.

**(d) Will I receive the credit reporting benefit?**

Yes.  You will receive the credit reporting benefit described in Question 11.

**(e) If I stop making payments or default on my auto loan in the future, can the Bank attempt to collect money from me?**

Yes.  If you default on your reinstated loan after the date when this Settlement is finally approved by the Court, the Bank will be permitted to repossess your vehicle again and attempt to collect on the debt which may be owed by you.  Your and the Bank's legal rights are not affected in this regard as a result of this Settlement, and, if you default on your loan, the Bank retains its rights to file a lawsuit against you, repossess the vehicle, and/or pursue a claim against you for any remaining balance of the loan. Your rights are preserved to defend any such claim, except for the alleged statutorily deficient post-repossession consumer disclosure notices which are the subject of this litigation.

**13. When will I receive my benefits?**

Class members will receive their payments and other benefits after the Court grants final approval of the Settlement (see Question 28) and after any appeals are resolved.  If there are appeals, resolving them can take time.  Please be patient.

**14.  What am I giving up and what claims might I still have to pursue if I remain in the Settlement?**

Unless you exclude yourself from the Settlement, you will remain in the Settlement and you will give up your right to sue (or continue a lawsuit against) the Bank for the same type of claims as are being resolved by this Settlement, except for narrowly-defined exceptions described in the Settlement Agreement. The claims which are released and preserved are set forth in the Settlement Agreement. Please pay particular attention to Section 9. The full Settlement Agreement is available at [website address].  The Settlement Agreement specifically describes the released and preserved claims, so read it carefully. There is no guarantee that you are eligible or will be permitted to pursue these preserved claims. Class Counsel has commenced a different class action lawsuit (*Dudo v. Capital One*, 2:19-cv-00098MHR (W.D. PA) (the "Dudo Action") in which you may be a putative class member regarding your potentially preserved claims. Unless you are a putative class member in the Dudo Action, Class Counsel has not taken any steps to pursue these potentially preserved claims. If you have any questions, you can discuss this matter with Class Counsel at no charge. Class Counsel's phone number is [toll-free number].

**15.  Will this affect my taxes?**

**We cannot give you a definitive answer in this Notice**.  You should consult a tax professional to provide you with this answer because all situations are unique.  Because there is a cash benefit, you may need to pay taxes on this part of the settlement.  Judge Bartle has ordered the Bank not to send any IRS Forms 1099-C as a result of the compromise and extinguishment of the class members' disputed deficiency balances as part of this Settlement (for those class members who are not members of the Reinstatement Sub-class).  Notwithstanding the fact that an IRS Form 1099-C will not be issued to you as a result of the extinguishment of your compromised deficiency balance as part of this Settlement, you still may be required to pay tax on the amount of the purported deficiency balance and, therefore, should consult a tax professional right away.

***You are urged to contact a tax professional regarding the benefits of this Settlement for your particular circumstances***.

**16.  What happens if this notice is addressed to a class member that has passed away?**

If proper documentation of the death of the class member is promptly sent to the Settlement Administrator, a check will be issued (or re-issued) to the class member's estate or next of kin, as may be applicable.  If the class member is deceased, please send a copy of the death certificate to the Settlement Administrator at the address listed in Question 6 and contact the Settlement Administrator at [toll-free number] or Class Counsel at [toll-free number] for more information.

**17.  What happens if this debt was discharged in or is presently included in a bankruptcy?**

If the loan obligation was discharged in bankruptcy (yours and/or your co-borrower's bankruptcy) or is presently part of a bankruptcy proceeding, then you should consult a bankruptcy attorney regarding this matter.  You may have an obligation to notify the bankruptcy trustee regarding the cash you are expected to receive.

**18.  What happens if I voluntarily surrendered my vehicle, redeemed my vehicle, or reinstated my account?**

Because the lawsuit principally challenges the content of the post-repossession consumer disclosure notices and is not based on actual harm you may have suffered, you will still have the right to share in all of the monetary and equitable relief, including the request for deletion of your credit trade line. If you reinstated your account and you default on your reinstated loan after the Settlement is approved, you will be a member of the Reinstatement Sub-class, and the Bank will be permitted to repossess your vehicle again and attempt to collect on the debt which may be owed by you (see Question 12).

EXHIBIT B

## HOW TO GET BENEFITS

**19. Do I need to do anything to get a cash payment, to get the credit reporting benefit, or to have my alleged but disputed deficiency balance eliminated?**

No.  Assuming that the Court approves the Settlement, you do not need to do anything further in order to remain a part of the Settlement and to receive a settlement payment, the credit reporting benefit, and the extinguishment of your compromised deficiency balance (if you are not a member of the Reinstatement Sub-class).  If you reinstated your account, got your vehicle back, and have yet to fully satisfy the loan obligations, then you will receive the credit repair benefit and your settlement payment will be credited to the outstanding balance of your loan with the Bank, and if any money is left over, the balance will be sent to you.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a settlement payment or the other benefits from this Settlement, and you instead want to keep the right to sue or continue to sue the Bank on your own about the issues in this case, then you must take steps to exclude yourself from (or "opt out" of) the Settlement.

**20. How do I exclude myself from the Settlement?**

In order to exclude yourself, send a letter that clearly states that you want to be excluded from the Settlement.  Be sure to include your name, address, email (if available), telephone number, and signature.  You must send a written exclusion request by e-mail to [email address] or by mail to [mailing address].  The exclusion request must be postmarked or sent with a transmittal date no later than [DATE], forty-five (45) days after the date of this Notice. The phone number for the Settlement Administrator is [toll-free number].

**21. If I do not exclude myself, can I sue the Bank for the same thing later?**

No.  Unless you exclude yourself, you give up any right to sue the Bank for the claims that this Settlement resolves on your behalf, except under very limited exceptions which are detailed in the Settlement Agreement.  If you have a pending lawsuit, speak to your lawyer in that case immediately because your legal rights may be adversely affected by this Settlement.  You must exclude yourself from this Settlement in order to start or to continue your own lawsuit for the same or similar claims, absent limited exceptions described in the Settlement Agreement.  Your rights may be affected by this Settlement.

**22. If I exclude myself, can I still benefit from this Settlement?**

No.  If you exclude yourself, you will not receive any money from this lawsuit or Settlement, the compromise and extinguishment of your deficiency balance, or any other benefit in connection with the Settlement.

## THE LAWYERS REPRESENTING YOU

**23. Do I have a lawyer in the case?**

Yes.  The Court has approved Richard Shenkan and the law firm of Shenkan Injury Lawyers, LLC. to represent you and other class members.  This lawyer and law firm are called "Class Counsel."  You will not be charged individually for this legal service; rather, Class Counsel's fees will be paid from the Settlement Fund with the approval of the Court.  If you want to be represented by your own lawyer, you may hire one at your own expense. Class Counsel's phone number is [toll-free number]. You can speak with Class Counsel at no charge about this case.

**24. How will the lawyers be paid?**

Class Counsel will ask the Court for attorneys' fees of up to $2.6 million and expenses of up to $150,000.00, including settlement administration costs.  An attorneys' fee in this amount represents

approximately 7.8% of the value of the aggregate benefit including the cash payment and the compromise and extinguishment of the disputed deficiency balances.  The value of the credit repair will vary based upon each class member; however, these are significant additional benefits.  The fees and expenses awarded by the Court will be paid out of the $6.5 million settlement fund.  Class Counsel will also request special service payments of no more than $15,000 each for Plaintiffs for their services as class representatives for the Class.  These service payments also will be paid from the settlement fund.  The Court could decide to award less than the amounts requested for fees and service payments.

## OBJECTING TO THE SETTLEMENT OR OBJECTING TO THE DISTRIBUTION/REFUND

**25.  How do I tell the Court if I do not like the Settlement?**

If you are a class member, you can object to the Settlement if you don't like any part of it.  You should state why you object and why you think the Court should not approve the Settlement.  The Court will consider your views.  To do so, you must timely send a written communication by e-mail to **[email address]** or by mail to **[mailing address]**.  The objection must be postmarked or sent with a transmittal date no later than **[DATE]**, forty-five (45) days after the date of this Notice.  The letter must include the following:

- A statement that you object to the Settlement;

- Your full name, address, email address (if available), and telephone number;

- The specific reasons why you object to the Settlement; and

- Your signature.

The phone number for the Settlement Administrator is **[toll-free number]**.

**26.  If I am a co-borrower, can I object to the equal division of the cash payments and/or deficiency payment refunds as between both co-borrowers?**

Yes.  To do so, you must timely send a written communication by e-mail to **[email address]** or by mail to **[mailing address]**.  The objection must be postmarked or sent with a transmittal date no later than **[DATE]**, forty-five (45) days after the date of this Notice.  The letter must include the following:

- A statement that you are a co-borrower and object to an even split of the cash payment and/or deficiency payment refund;

- Your full name, address, email address (if available), and telephone number;

- The specific reasons why you object to an even split of the refund monies (e.g., "I paid all of the loan payments myself."); and

- Your signature and the signature of your co-borrower.

The phone number for the Settlement Administrator is **[toll-free number]**.

**27.  What is the difference between objecting and asking to be excluded?**

Objecting to the Settlement is informing the Court that you don't like something about the Settlement, and that you, for a clearly stated reason, do not want the Settlement to be approved or that you object to a particular part of the Settlement.  You can object only if you don't exclude yourself from the Settlement.  Excluding yourself is informing the Court that you don't want to be part of the Settlement.  If you exclude yourself, you have no basis to object, because the Settlement no longer affects you.

**EXHIBIT B**

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you do not have to do so.

**28.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a fairness hearing before United States District Judge Harvey Bartle III on **[DATE]** at **[TIME]** in Courtroom 16-A, United States Courthouse, 601 Market Street, Philadelphia, PA  19106.  The hearing may be moved to a different date or time without additional notice, so if you intend to attend the hearing, it is a good idea to confirm in advance that the date and time of the hearing has not changed. You may confirm this information by checking **[website address]** or calling **[toll-free number]**.  At this fairness hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them and will listen to class members who ask to speak at the hearing.  Similarly, if you are a co-borrower and object to the even split of the cash payment and/or the deficiency payment refund as between both co-borrowers, the Court will decide these matters as well at the hearing, absent extenuating circumstances, unless you are able to resolve your differences amongst you and your co-borrower with the aid of Class Counsel.  The Court may also decide several other aspects of the Settlement including how much to pay Plaintiffs for their service awards and Class Counsel for their services and expenses.  Following the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

**29. Do I have to attend the fairness hearing?**

No.  Class Counsel will answer questions the Court may have.  But, you are welcome to come at your expense.  If you file an objection, you do not have to come to Court to talk about it, but you may.  As long as you timely filed your written objection the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.

**30. May I speak at the hearing?**

Yes, any class member that has not excluded himself/herself from the Settlement may speak at the fairness hearing.

## GETTING MORE INFORMATION

**31. How do I get more information?**

This notice briefly summarizes the key aspects of the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement and other important case documents at **[website address]**.  You may also examine these documents in person during regular office hours at the Clerk's Office of the Federal Court located at 601 Market Street, Philadelphia, PA 19106. You may contact Class Counsel with questions at **[toll-free number]** or rshenkan@shenkanlaw.com.  You may also contact the Settlement Administrator with any questions at **[toll-free number]**.  You should not call the Bank or the Court.

# EXHIBIT C

[Form Explanatory Letter for Settlement Payments]

EXHIBIT C

[PRINTED ON CLASS COUNSEL'S LETTERHEAD]

[Date]

RE:   **Your Class Action Settlement**
      ***Langer v. Capital One Auto Finance*, No. 2:16-cv-06130-HB**
      **United States District Court for the Eastern District of Pennsylvania**

Dear Class Member:

The Court has appointed my law firm to represent you, as a class member, with respect to the class action settlement with Capital One Auto Finance, a division of Capital One, N.A. (the **"Bank"**) in the above-referenced consumer class action.

**Settlement Payment:**  Please be advised that as part of this settlement, you are entitled to receive a cash payment.  Accordingly, enclosed with this letter is a settlement check payable to you.  Please promptly cash or deposit the check.

**Credit Reporting Benefit:**  As part of the settlement, the Bank also has agreed to submit requests to the major credit reporting agencies, Experian, Equifax, and TransUnion, to delete the trade line associated with your auto loan with the Bank.  If you need assistance accessing your credit report, you can contact me at [toll-free number].

**Other Important Information:**  To learn more about the benefits of this settlement that may apply to you, please visit [website address], which contains important information regarding this matter.

If you have any questions or concerns of any kind regarding this class action settlement, please feel free to contact me at [toll-free number] or the Settlement Administrator at [toll-free number].  Thank you very much for your attention to this matter.

Sincerely,
SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan

Enclosure

# EXHIBIT D

[Form Explanatory Letter for Credits to Loan Accounts of Reinstatement Sub-Class Members]

**EXHIBIT D**

[PRINTED ON CLASS COUNSEL'S LETTERHEAD]

[Date]

RE:    **Your Class Action Settlement**
        *Langer v. Capital One Auto Finance*, **No. 2:16-cv-06130-HB**
        **United States District Court for the Eastern District of Pennsylvania**

Dear Class Member:

The Court has appointed my law firm to represent you, as a class member, with respect to the class action settlement with Capital One Auto Finance, a division of Capital One, N.A. (the **"Bank"**) in the above-referenced consumer class action.

**A Credit to Your Auto Loan Account with the Bank:** The settlement payment to you as a class member in the above-referenced consumer class action settlement is $[amount]. Please be advised that the Bank is crediting this amount to the balance of your auto loan account with the Bank. If this settlement payment credit pays off the balance of your auto loan account with the Bank in its entirety, any remaining amount of your settlement payment will be sent to you by check.

**Credit Reporting Benefit:** As part of the settlement, the Bank also has agreed to submit requests to the major credit reporting agencies, Experian, Equifax, and TransUnion, to delete the trade line associated with your auto loan with the Bank. If you need assistance accessing your credit report, you can contact me at [toll-free number].

**Other Important Information:** To learn more about the benefits of this settlement that may apply to you, please visit [website address], which contains important information regarding this matter.

If you have any questions or concerns of any kind regarding this class action settlement, please feel free to contact me at [toll-free number] or the Settlement Administrator at [toll-free number]. Thank you very much for your attention to this matter.

Sincerely,
SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan

# EXHIBIT E

[Form Explanatory Letter for Post-Stay Return Payments]

EXHIBIT E

[PRINTED ON CLASS COUNSEL'S LETTERHEAD]

[Date]

RE:   **Your Class Action Settlement**
      *Langer v. Capital One Auto Finance*, **No. 2:16-cv-06130-HB**
      **United States District Court for the Eastern District of Pennsylvania**

Dear Class Member:

The Court has appointed my law firm to represent you, as a class member, with respect to the class action settlement with Capital One Auto Finance, a division of Capital One, N.A. (the **"Bank"**) in the above-referenced consumer class action.

**Your Refund:**  The Bank has agreed to refund to the class members any payments they made toward the deficiency balances for their auto loan accounts with the Bank on or after April 24, 2017, the date when Plaintiffs and the Bank commenced settlement discussions in the above-referenced consumer class action.  The Bank's records reflect that you made payments toward the deficiency balance for your auto loan account with the Bank on or after April 24, 2017.  Accordingly, enclosed with this letter is a refund check for the total amount of such payments.  If you had a co-borrower on the account, then the total amount of the refund is evenly split between each co-borrower.  Please promptly cash or deposit the check.

**Credit Reporting Benefit:**  As part of the settlement, the Bank also has agreed to submit requests to the major credit reporting agencies, Experian, Equifax, and TransUnion, to delete the trade line associated with your auto loan with the Bank.  If you need assistance accessing your credit report, you can contact me at [toll-free number].

**Other Important Information:**  To learn more about the benefits of this settlement that may apply to you, please visit [website address], which contains important information regarding this matter.

If you have any questions or concerns of any kind regarding this class action settlement, please feel free to contact me at [toll-free number] or the Settlement Administrator at [toll-free number].  Thank you very much for your attention to this matter.

Sincerely,
SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan

Enclosure

# EXHIBIT F

[Form Explanatory Letter for Re-Issued Settlement Payments]

EXHIBIT F

[PRINTED ON CLASS COUNSEL'S LETTERHEAD]

[Date]

RE:   **Your Class Action Settlement**
      *Langer v. Capital One Auto Finance*, **No. 2:16-cv-06130-HB**
      **United States District Court for the Eastern District of Pennsylvania**

Dear Class Member:

The Court has appointed my law firm to represent you, as a class member, with respect to the class action settlement with Capital One Auto Finance, a division of Capital One, N.A. (the **"Bank"**) in the above-referenced consumer class action.

**Settlement Payment:**  Please be advised that as part of this settlement, you are entitled to receive a cash payment.  A settlement check was previously mailed to you, but you did not cash or deposit the settlement check.  Accordingly, enclosed with this letter is a re-issued settlement check payable to you.  Please promptly cash or deposit the check.

**Credit Reporting Benefit:**  As part of the settlement, the Bank also has agreed to submit requests to the major credit reporting agencies, Experian, Equifax, and TransUnion, to delete the trade line associated with your auto loan with the Bank.  If you need assistance accessing your credit report, you can contact me at [toll-free number].

**Other Important Information:**  To learn more about the benefits of this settlement that may apply to you, please visit [website address], which contains important information regarding this matter.

If you have any questions or concerns of any kind regarding this class action settlement, please feel free to contact me at [toll-free number] or the Settlement Administrator at [toll-free number]. Thank you very much for your attention to this matter.

Sincerely,
SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan

Enclosure