IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDY LANGER and JAMES LANGER, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 2:16-cv-06130-HB |
| ) | |
| CAPITAL ONE AUTO FINANCE, a division of ) | |
| CAPITAL ONE, N.A., ) | |
| ) | |
| Defendant ) | |

### AFFIDAVIT OF JUDGE LOUIS C. BECHTLE (ret.)

I, Judge Louis C. Bechtle (ret.), declare and attest to the following:

1. I have been requested to give my professional opinion as to whether the terms of the proposed settlement of the class action lawsuit captioned above are fair and reasonable. In short, in my professional opinion, the proposed settlement is just, fair, and reasonable, and particularly favorable to the class.

2. I state all my opinions to reasonable degree of professional certainty. This is based on my experience as a member of the bar since 1955. I served 19 years as a Judge on the U.S. District Court for the Eastern District of Pennsylvania, including three years as Chief Judge, having presided over literally thousands of civil cases. Since 2001, I have been a partner at the law firm of Conrad O'Brien, P.C. focusing my practice on arbitration, mediation, and alternate dispute resolution. My areas of deep expertise include multidistrict litigation, mass tort actions, complex commercial litigation, and class actions. Prior to serving as a Judge, I served as a U.S. Attorney and Assistant U.S. Attorney, and was in private practice.



EXHIBIT 2

3. This case involves two classes of Pennsylvania consumers who had auto loans, secured by motor vehicles, with the Defendant (hereinafter "Capital One") and whose motor vehicles were repossessed by Capital One. Plaintiffs contend, with respect to Class 1, that Capital One failed to send statutorily compliant post-repossession notices of Capital One's intent to dispose of the class members' repossessed motor vehicles. With respect to Class 2, Plaintiffs contend that Capital One failed to send statutorily compliant post-sale notices describing the deficiency balances or surpluses remaining on the class members' auto loan accounts. Plaintiffs contend that Capital One's post-repossession notices and post-sale notices did not comply with the Pennsylvania Uniform Commercial Code (the "UCC"), on its own and *in pari materia* with the Pennsylvania Motor Vehicle Sales Finance Act (the "MVSFA"), and that the class members are entitled to statutory damages under the UCC, together with the extinguishment of the deficiency balances that Capital One claims remain owing on the class members' auto loan accounts (the "Disputed Deficiency Balances"). Capital One disputes these allegations, denies any liability to Plaintiffs or the putative class members, and contends that the Disputed Deficiency Balances are enforceable. After lengthy negotiations, Plaintiffs and Capital One reached a class settlement (the "Settlement"), set forth in an executed Class Action Settlement Agreement and Release (the "Agreement").

4. The proposed Settlement contains the following salient points:

   a. Payment of $6.5 Million, allocated 66.7% to the Post-Repossession Notice Class, and 33.3% to the Post-Sale Notice Class;

   b. The counsel fees, attorney costs, cost of administration and incentive fees for the Plaintiffs are to be paid out of that $6.5 million, leaving approximately $2,480,000 to be distributed to the Post-Repossession Notice

Class ($1,867 per loan), and approximately $1,240,000 to be distributed to the Post-Sale Notice Class ($154 per class member);[1]

c. The return by Capital One of all payments towards disputed deficiency balances made by class members since April 24, 2017, the date of the first of many mediations, totaling approximately $180,000;

d. The release by Capital One, via an accord and satisfaction, of the disputed deficiency balances of all class members, estimated by Capital One's records to total approximately $25.4 million;

e. The discontinuation of any collection suits for deficiencies and the striking of any deficiency judgements against any class members; and,

f. A request by Capital One to the three major credit reporting agencies for removal of the entire credit tradeline for the subject loans from each class member's credit report.

5. There are a number of factors that I believe make the settlement particularly attractive to class members. A summary of those factors follows.

6. Absent the alleged missteps of Capital One in complying with the notice requirements of the UCC and MVSFA, Capital One is generally entitled to repossess the vehicle, to sell the vehicle at auction (if no arrangements are made to have the borrower reinstate the loan or to redeem the collateral) and to collect any deficiency. Absent this litigation, most Class Members would likely face a deficiency claim of several thousand dollars, which may be reduced to judgment and causes harm to their credit rating. While perhaps less likely to have success, the Defendants have asserted their intention to claim a class-wide set-off for these disputed deficiencies if the Class were to be certified on contest as well as other substantive defenses to these claims.

---

[1] These numbers are based on the illustration in the Settlement Agreement and Release, para. 7.08(c), which sets out an allocation of the fund based on estimates of class counsel costs and settlement administration costs.

3

7. In my opinion, the results achieved by way of settlement of this claim were exceptional. The cash payment and extinguishment of disputed deficiency balances alone result in thousands of dollars of benefit conferred to each class member that they would not have otherwise been realized unless there was a successful outcome of the litigation. While several thousand dollars is not an insignificant amount to the class members, it is highly unlikely that an experienced attorney would take an individual case when the best result is in that range and includes relief from a potential deficiency obligation rather than cash from which an attorney fee can be paid.

8. The deletion of the entire credit tradeline may, however, be amongst the most significant benefit to the class members. This feature will result in the elimination of all reference to the problemed account, including the alleged default and repossession. This unliquidated benefit may be worth multiples of the cash component. While not readily amenable to measurement, the tradeline deletion is an immensely valuable benefit. The removal of the tradeline will likely improve class members' credit ratings. In turn, class members should have more opportunities to obtain credit and at a lower rates and better chances with respect to housing, insurance, and employment. Cases have held that the value of restoring credit may be equal to the monetary benefit received, which in this case, would be an *additional* $6.5 million. *Ciccarone v. B.J. Marchese, Inc.*, 2004 WL 2966932 (E.D. Pa. Dec. 22, 2004; *Cosgrove v. Citizens Auto Fin., Inc.*, 2011WL 374089, at *7 (E.D. Pa. Aug 25, 2011); *Maszgay v. First Commonwealth Bank*, 686-2015 (Jefferson County 2015).

9. In this case, liability is far from uncontested. Capital One has not conceded that its post-repossession consumer disclosure notices were in any way deficient, that it has any liability for damages or that its deficiency claims against class members are invalid. While it is difficult to assess the risks to the Plaintiffs of proceeding, this is a case seeking a multi-million-dollar verdict

4

against a major bank. If the matter advanced in litigation, Capital One would certainly not go quietly. Looking at its answer, there are a number of defenses which represent risk to the Plaintiffs. These include but are not limited to:

    a. A denial that the UCC and MVSFA should be read in *pari materia*.

    b. A denial that Post-Sale Notices must be mailed separately to co-borrowers on a loan; and,

    c. An assertion that the disputed deficiency balances were valid.

10. Even if the Plaintiffs succeed at trial, a long, protracted appellate process is likely. Not only would this result in significant costs, but long delays, particularly difficult for class members who would likely have a blot on their credit rating in the interim.

11. One of the key components of the settlement is the elimination of the Members' disputed deficiency balances which are estimated to total $25.4 million. It appears to me that absent the challenge by the Plaintiffs in this action, a great deal of the deficiency claims, on an individual basis, would likely have merit. As a result of this settlement, the Class members are relieved of this obligation and, in addition, those who have paid on the deficiency after April 24, 2017 will have those amounts refunded in full. This is a major benefit to the class.

12. While there is a question as to the viability of Capital One raising set-off counterclaims on a class-wide basis, continued litigation results in *some* risk to the class members. Even if the risk is small, it could complicate the proceedings and cause further delays.

13. In addition to relieving the class members of the deficiency balances, as stated above, after Class Counsel's fee and costs and the settlement administration costs are deducted, the remainder will be distributed as follows: approximately $2,480,000 will be distributed to the Post-Repossession Notice Class (approximately $1,866 per each loan) and approximately $1,240,000 to the Post-Sale Notice Class (approximately $154 to each class member). This

certainly is an enormous benefit considering that many class members were likely in arrears on their payments and, absent success in the litigation, would likely be liable for a deficiency balance.

14. The maximum possible minimum statutory compensatory damages in this matter is $20.1 million ($16.1 million for the Post-Repossession Notice Class and $4.0 million for the Post-Sale Notice Class). Minimum statutory damages, plus the $25.4 million in extinguishment of deficiency balances, equals a maximum possible recovery of $45.5 million. The cash and disputed debt extinguishment portion of the settlement amount equals $31.9 million ($6.5 million + $25.4 million). The result is no less than a tremendous recovery to the class of approximately a 70.5% of the best possible judgment ($31.9 million/$45.5 million). Additionally, other more intangible benefits include the credit reporting expungement which, as stated in Par. 8 above, may equal an additional $6.5M in benefit which, when factored, equates to a recovery of approximately 84% of the maximum total recoverable benefits. The benefits of the Post-Stay Payment refunds and the vacating of any deficiency judgments augment this figure.

15. I have reviewed the Settlement Administrator's affidavit. It provides further support for the approval of this Settlement. Out of the 9,820 Class Notices initially mailed, 9,206 class members were reached, resulting in a 93.75% success rate. <u>There was not a single objection nor opt-out to the Settlement</u>. Such overwhelming support for this settlement from the individuals for whose benefit it was designed provides compelling support for its approval.

16. It is worth noting that Class Counsel made an additional effort to enable co-borrowers to object to the presumed equal distribution of any deficiency payments after April 24, 2017 and to the cash distribution. This added tailoring to the class members' needs provides the flexibility and additional attention which I believe should be recognized as an extra effort by counsel. Notably, however, no class member objected to the equal allocation of these monies.

6

17. Considering the elimination of the deficiencies, the cash payments, the vacating of any deficiency judgments, and the credit repair benefit, the counsel fees sought in connection with this settlement are extremely reasonable and, in my opinion, satisfy the requisites set forth in Fed. R. Civ. P. 23, which governs that award of counsel fees in class actions.

18. Counsel fees are requested in the amount of $2.6 million, which is approximately 8% of the total readily quantifiable value of $32.1. *See, Cullen v. Whitman Medical Corporation*, 197 F.R.D. 136 (E.D. Pa. 2000) (a fee for the forgiveness of debt is compensable and can be included in a common fund recovery). If the credit repair is valued at an additional $6.5 million, based on the authority set forth above, the total value of the settlement is $38.6 million, making the $2.6 million counsel fees only 6.7% of the total value of the settlement, per *Cullen, supra.*

19. It cannot be under-estimated that, in order to administer this settlement, Class Counsel will have to spend potentially hundreds of additional hours working with class members relating to Capital One's issuance of 1099-Cs in this matter, despite the accord and satisfaction. Counsel intends to educate the class members regarding the accord and satisfaction feature of this settlement and their potential tax obligations, referring them to tax resources as necessary.

20. Class Counsel, a twenty-two year experienced litigator who is experienced in class actions, accepted this case on a contingency basis, funded the litigation, and spent more than a 1,000 hours of time with the prospect of receiving no recovery. His efforts to effectuate this handsome recovery on behalf of these classes is truly exceptional.

21. In my experience, this is an extraordinary result for the class and the fee sought is far less than many counsel fees that have been approved by the courts in similar class actions. It is my professional opinion that the counsel fees are "reasonable", as required by Fed.R.Civ.P. 23(h) and pursuant to the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

Significantly, no class member objected to this proposed fee amount. *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008)("A lack of objections demonstrate that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

22. In summary, considering the documents I have reviewed and the circumstances of this complicated class action litigation and complex settlement, it is my opinion that the proposed settlement, including the counsel fees, is fair and reasonable and represents an exceptional result for the class members. I state these opinions within a reasonable degree of professional certainty. I am available to address the Honorable Court if necessary.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 10/31/19

Judge Louis C. Bechtle (ret.)