IN THE COURT OF COMMON PLEAS
OF JEFFERSON COUNTY, PENNSYLVANIA

**FILED**

| | | |
|---|---|---|
| ANTHONY MASZGAY, ROBERTA PECK, CHARLES PECK, NICOLE HOPPER, RAYMOND ALLSHOUSE, CLIFFORD CHESTNUT, and ROXANN CHESTNUT, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | CIVIL ACTION<br><br>No. 686-2015 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| FIRST COMMONWEALTH BANK and FIRST COMMONWEALTH FINANCIAL CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |

JUL 2 3 2018

**TONYA S. GEIST**
PROTHONOTARY & CLERK OF COURTS

**ORDER OF FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE**

This consumer class action arises from alleged violations of the Uniform Commercial Code ("UCC") 13 Pa. C.S. §9601, *et seq.*, and the Unfair Trade Practices Consumer Protection Law ("UTPCPL") against these Defendants.[1] Over the course of several years, the parties heavily litigated this matter before arriving at a global settlement. No liability has been established. On March 29, 2018, the Court entered an Order Preliminarily Approving the Settlement and Conditionally Certifying the Settlement Class ("Preliminary Approval Order").

On April 27, 2018, the Settlement Administrator sent court-approved class notice to 2,802 class members corresponding to 2,191 loans at issue. Only 139 class notices were returned as undeliverable.

---

[1] The term "Plaintiffs" or "Members" are defined as those individuals named above and all "Class Members" as the term is defined in Par. 1.19 of the Class Action Settlement Agreement and Release ("Agreement"). The term "Defendants" is defined in Par. 1.08 of the Agreement. The term "Parties" used herein refer to the "Plaintiffs" and "Defendants," collectively.

1



On May 18, 2018, this Court entered an order declaring that the $1,755 payment ($1 per applicable Class Member) which Representative Plaintiffs Roberta Chestnut and Clifford Chestnut tendered to extinguish the disputed indebtedness of those Class Members who the Bank claimed owed a Deficiency Balance constituted a bonafide accord and satisfaction.

No Class Member objected to the settlement.

On July 23, 2018, beginning at 3:30 o'clock p.m., in Courtroom A310, Jefferson County Courthouse, 200 Main Street, Brookville, PA 15825, this Court held a Final Approval Hearing to consider, among other things: (i) whether the Settlement reflected in the Agreement should be approved as fair, reasonable, adequate, and in the best interests of the Members of the Class and the Settlement Class should be finally certified;[2] (ii) whether final judgment should be entered dismissing the claims of the Members of the Class[3] with prejudice and on the merits, as set forth in the Agreement; (iii) whether to approve Plaintiffs' application for Class Representative awards; and (iv) whether to approve Plaintiffs' request for an award of Class Counsel fees, costs, and expenses from the common fund;

Based on the foregoing, having heard the statements of counsel for the Parties and of such persons who chose to appear at the Final Approval Hearing, having considered all of the files, records, and proceedings in the action, including specifically the Agreement (and the exhibits appended thereto), the memoranda and other papers filed by the Parties in support of Final Approval[4] of the Settlement, and all affidavit testimony, having been informed of the fact

---

[2]      Any use of the terms "Principal Class," "Class," "Class Period," "Class Members," "Members," "Defendants' Insurer," "Agreement," "Deficiency Balance," and "Released Claims" in this Order are understood as those terms are defined in the Agreement.

[3]      As set forth and defined in the Agreement, the Class Members all belong to the "Principal Class," or "Class," which, for purposes of the Settlement, means all relevant persons for the period commencing August 27, 2009 through November 30, 2015 ("Class Period").

[4]      Any use of the term "Final Approval" in this Order is understood as that term is defined in the Agreement.

2

that no objections have been filed, and having taken into account other relevant matters pertaining to the Settlement raised at the Final Approval hearing;

**THE COURT HEREBY GRANTS THE MOTION AND FINDS AND ORDERS:**

1. <u>Notice to the Class</u>:

Notice to the Class has been provided by the Settlement Administrator pursuant to this Court's Order of Preliminary Approval, as attested to by the Affidavit of the Settlement Administrator.[5] The Notice given to Members of the Class by first class mail constituted due and sufficient notice of the Settlement, and the matters set forth in the Notice to the Class Members fully satisfies the requirements of due process and Pa.R.Civ.P. 1714.

2. <u>Class Settlement Approved & Principal Class Certified</u>:

The Settlement set forth in the Agreement, a copy of which was filed with the Motion for Preliminary Approval, is fair, reasonable, adequate and in the best interests of the Principal Class. Any terms in this Order referring or pertaining to the Settlement shall be defined and/or interpreted in accordance with the definitions as set forth in the Agreement. All aspects of the Agreement are approved. The Class Representatives' individual service awards are approved. The Principal Class is certified and finally approved by the Court.

The Principal Class (or "Class") means all persons for the period commencing August 27, 2009 through November 30, 2015:

    (a)    who financed the purchase of a motor vehicle primarily for personal, family or household use through First Commonwealth Bank ("FCB") or whose motor vehicle-related consumer loan contract was assigned to FCB; and,

    (b)    from whom FCB, as secured party, repossessed the vehicle or ordered it to be repossessed; and,

---

[5]    Any use of the term "Settlement Administrator" in this Order is understood as that term is defined in the Agreement.

(c)     who had a Pennsylvania address as of the date of repossession; and,

(d)     who were either:

    (1)     sent a Repossession Notice and/or Deficiency Notice which allegedly did not contain all required information as pled in the Complaint in this Litigation; or

    (2)     sent no such post-repossession disclosure notice(s) at all.

3.     <u>Class Counsel Fees and Expenses</u>:

The Court has reviewed the application for Class Counsel fees and expenses and the documentation submitted in support of that application. Consistent with the criteria set forth in Pa.R.Civ.P. 1717, and the established law providing for payment of reasonable counsel fees and expenses to class counsel from a common fund created for the benefit of the Class, the Court finds that the cash value of the Settlement along with the aggregate forgiveness of the disputed Deficiency Balances after default and repossession is in excess of $16.8 million – which does not include the valuable equitable relief of credit report correction, the return by the Bank of amounts collected from Class Members on Deficiency Balances since June 25, 2016 (the "Post-Stay Collection Payments," as set forth in the Agreement), and the vacating of any deficiency judgments. Additional considerable value is, indeed, provided by the tradeline deletion of Members and these other equitable benefits. While not amenable to measurement, the tradeline deletion is a tangible benefit that will likely, *inter alia,* improve Class Members' credit ratings, potentially resulting in a lower and/or more favorable cost of credit in the future. It removes a significant negative influence on loan, insurance, mortgage or even employment decisions. *See* Lea Shepard, *Seeking Solutions to Financial History Discrimination,* 46 Conn. L. Rev. 993, (2014). In *Ciccarone v. B.J. Marchese, Inc.,* 2004 WL 2966932 (E.D. Pa. Dec. 22, 2004), the court estimated that the value of the credit repair was equal to the cash component of the

4

settlement. *See also Cosgrove v. Citizens Auto Fin., Inc.,* 2011 WL 3740809, at *7 (E.D. Pa. Aug. 25, 2011) ("additional obligation to correct negative entries on class members' credit reports is tangible and adds value to the settlement").

     The request for an award of fees to Class Counsel in the sum of $2.92 million, to be paid to Shenkan Injury Lawyers, LLC or to any other entity of counsel's direction, is approved as fair and reasonable in light of all the relevant factors to be considered. The fees represent approximately only 17.4% of the value of the cash and waiver of the disputed Deficiency Balance portion of the Settlement. This figure does not take into account the return of the Post-Stay Collection Payments, the value of the credit report reparation, and the vacating of deficiency judgments – all of which the Court finds of very considerable additional benefit conferred on the Class. Here, the requested fee is amply supported by the lodestar cross-check. Litigation expenses of Class Counsel have been adequately documented and were reasonable and necessary for effective prosecution of the case. Attorney Richard Shenkan and Rudy Fabian's hourly fees are approved at the regular hourly rate of $ 725.00 per hour; Jenna Townsend is approved at her regular hourly rate of $375 per hour. The lodestar for this case is $ 1,270,237.50 corresponding to a conservative multiplier of approximately 2.3.

     This multiplier is well within the range of multipliers which have been approved. *See, In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp.2d 706, 736, n. 44 (E.D. Pa. 2001)(approving multiplier "in the range of 4.5 to 8.5"); *Newberg on Class Actions,* 5th Edition. §14.03 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *Muchnick v. First Fed. Sav. & Loan Ass'n,* Civ. A. No. 86-1104, 1986 WL 10791, at *1 (E.D. Pa. Sept. 30, 1986) (approving award of attorneys' fees using multiplier of 8.33 where "[t]he lawsuit raised several significant and novel legal issues, and the

history of related litigation indicated that the contest would likely be lengthy and hard-fought"). This risk of non- recovery should be reflected in the attorney fee awarded by the Court, taking into account an incentive to encourage attorneys to pursue consumer protection claims and, if successful, a recovery commensurate with the risk of a contingent recovery. *See, e.g. O'Rourke v. Healthdyne, Inc.*, Civ. A. Nos, 84-4295, 84-4296, 1986 WL 923, at *2 (E.D. Pa Jan. 16, 1986) ("The petitioners prosecuted this case on a contingent fee basis. This risk is a factor to be considered in determining the fee....These hours were expended without any guarantee of success."); *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010)("[C]ontingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation" and "provide attorneys due consideration for the risk they undertake."); *see, also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 821 (3d Cir. 1995)(*citing* Court Awarded Attorney Fees, the Report of the Third Circuit Task Force, 108 F.R.D. 235, 250 (1985) ("[T]he court apportions the fund between the class and its counsel in a manner that rewards counsel for success and penalizes it for failure.")

Furthermore, the fee agreement between counsel and each of the Representative Plaintiffs provides for a fee equal to forty percent of the total benefit conferred upon the class. Following this calculus to the cash and debt extinguishment portion of the settlement, an attorney fee of one-third of the total recovery would also be a reasonable fee in light of the risk and considerable benefit conferred in this case. *See, Cullen v. Whitman Medical Corporation*, 197 F.R.D. 136 (E.D. Pa. 2000) (a fee for the forgiveness of debt is compensable and can be included in a common fund recovery).

While the Explanatory Note to Pa.R.Civ.P. 1701 states that "[t]he Court is not bound by the amount or percentage of the fee set forth in a contingent fee agreement between the

6

representative party and his attorney," this fact is certainly relevant to the ultimate fee award. *See, e.g. Edwards v. Alaska Pulp Corp.*, 920 P.2d 751, 758 n. 15 (Alaska 1996) (courts may consider, but should not be bound by the percentage in a contingency fee arrangement).

In short, Plaintiffs' counsel, Richard Shenkan, is well-qualified litigator with over 20 years experience and has served as class counsel in other consumer class cases throughout Pennsylvania. The fees represent approximately only 17.4% of the value of the cash and waiver of the disputed Deficiency Balance portion of the Settlement. This figure does not take into account the return of the Post-Stay Collection Payments, the value of the credit report reparation, and the vacating of deficiency judgments – all of which the Court finds of very considerable additional benefit conferred on the Class.

Furthermore, while there is an issue as to whether First Commonwealth Bank will send a 1099-C to certain Members, the parties have petitioned for a Private Letter Ruling, requesting that a 1099-C not need to be issued by the Bank due to the fact that this Court has held that the debt is disputed and that an accord and satisfaction has occurred. While the ruling by the IRS has yet to be received, the considerable efforts taken by Class Counsel to petition for this ruling are also significant. This case presented novel, complex issues and Class Counsel effectuated an excellent recovery for the Class through his perseverance and skill. The attorney fee is fully justified by the work performed, risks taken, and the results obtained.

Attorneys' fees may be paid on a cash or deferred basis to Richard Shenkan, Shenkan Injury Lawyers, LLC or its designee(s). Expenses are approved in the requested sum of $65,320.35. Attorneys' fees and costs shall be paid from the Settlement Fund.[6] All incentive fees are also approved as fair and reasonable. A $5,000 service award is well within the range of

---

[6]      Any use of the term "Settlement Fund" in this Order is understood as that term is defined in the Agreement.

service awards that are granted in similar class actions of this magnitude and level of complexity. *See, e.g., Milkman v. American Travelers Life Insurance Company*, 2002 WL 778272 (C.C.P. Phila. Co. April 1, 2002) (Service awards approved for $10,000, $7,500 and $5,000). An award of this magnitude is fully justified by the involvement of these individuals in the litigation and approved as fair and reasonable.

       4.     <u>Dismissal and Related Matters</u>.

           a.     The claims of all Members of the Class, except one Class Member (an estate) which excluded itself from the Class pursuant to Paragraph 4.03 of the Agreement, are hereby dismissed with prejudice, on the merits and without costs to any Party.

           b.     The Class Representatives (on their own behalf and on behalf of each Class Member) and the Class Members, by operation of the Agreement and this Order for Final Judgment and Dismissal with Prejudice, hereby shall be deemed to have fully, finally and forever released, settled, compromised, relinquished, and discharged with prejudice the Defendants, Defendants' Insurer, and Defendants' Counsel of and from any and all Released Claims as set forth in the Agreement, and shall be forever barred and enjoined from instituting or further prosecuting, in any forum, including but not limited to any state or federal court or arbitration, administrative or other proceeding, any Released Claims as defined in the Agreement.

           c.     Each Class Representative (on his/her own behalf and on behalf of each Class Member) and the Class Members acknowledge that he/she is aware that he/she may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Releases and/or the Released Claims as set forth in the Agreement, but that it is his or her intention to, and he or she is hereby deemed, upon the Effective Date of the Agreement to fully, finally and forever settle and release the

Defendants, Defendants' Insurer and Defendants' Counsel from any and all Released Claims as set forth in the Agreement.

        d.       The Class Representatives (on their own behalf and on behalf of each Class Member) and the Class Members acknowledge and agree that they cannot raise any Released Claims as set forth in the Agreement as a defense to any action brought by Defendants against them in connection with an action seeking repayment of an obligation other than an obligation waived under the Agreement. Any claim that a Class Member may have to dispute with the IRS regarding a taxability issue for that particular Member is expressly preserved.

        e.       On the Effective Date, by operation of law and pursuant to the Agreement, Defendants will be deemed to have released, settled, compromised, relinquished and discharged with prejudice all Class Members, including the Class Representatives, from any and all claims, liens, demands, causes of action, obligations, damages, and liabilities against the Members arising from this Litigation, including any liability to the Defendants for the disputed, outstanding Deficiency Balances. The release specified in the preceding sentence does not apply to: 1) any loan obligation of any Member other than those which are at issue in this Litigation; or 2) any obligation arising from a reinstated loan account for which the vehicle securing the loan has not been sold or caused to be sold by Defendants or their agents as of the Preliminary Approval date.

        f.       If any Class Member has made a payment on the disputed Deficiency Balance on or after June 25, 2016, (a "Post-Stay Collection Payment"), the Bank shall return such payment, as set forth in the Agreement.

        g.       In light of the Notice given to the Class Members, the Plaintiffs and all Class Members who did not exclude themselves from the Class shall be bound by the

Agreement, and all Released Claims as set forth in the Agreement shall be dismissed with prejudice.

        h.        The untimely request for exclusion by a single Class Member is given legal effect and such Class Member is hereby excluded from the Class.

      5.      _Cy Pres; Other Distributions; and Escrowed Funds_

The Court approves the following entities as cy pres beneficiaries: University of Pittsburgh (legal clinic); National Association of Consumer Advocates; National Consumer Law Center; Laurel Legal Services, Inc.; or the United Way. The Settlement Fund remaining after distribution to Class Members, after payment of Class Counsel fees, and after administration expenses, plus any interest accrued, shall be distributed by the Settlement Administrator as set forth in § 3.05 of the Agreement. As set forth in the Agreement, within one hundred eighty (180) days after the Distribution Date, the balance of the principal of any uncashed or returned checks and any accrued interest of the Settlement Fund will be disbursed as follows: (a) one-half (1/2) to the Pennsylvania Interest On Lawyers Trust Account Board (IOLTA) pursuant to Pa.R.Civ.P. 1716, and (b) one-half (1/2) to IRS 501(c)(3) charities and/or public institutions agreed to by Counsel and approved by the Court. The one-half (1/2) portion to be distributed to the _cy pres_ beneficiaries as set forth in (b) of this paragraph above shall be distributed at the discretion of Plaintiffs' counsel. Plaintiffs' counsel shall file a certification as to the amounts and beneficiaries of these funds.

In the event that after the other distributions, reimbursements and payments described herein, there remain sufficient funds in the Settlement Account which Class Counsel reasonably believes should be distributed to Class Members, then Class Counsel may petition the Court to allow one or more supplemental distributions to the entire Class or some portion of it, during this 180 day period.

The expenses incurred incident to the distribution which are petitioned for by Class Counsel are fair and reasonable and shall be paid from the Settlement Fund. The Settlement Administrator shall pay itself the balance of its bill in the sum of $11,545.00; pay all representative Plaintiffs an incentive award of $5,000; and reimburse Roberta and Clifford Chestnut or their designee for their payment for the accord and satisfaction in an amount not to exceed $2,250.00, which may include any interest and fees in connection with their payment on behalf of the class.    In light of the fact that, according to the Settlement Administrator's affidavit, 139 Members have yet to be located, representing a recovery of approximately $275,000, and that there are additional tax-related issues which are pending and may need to be argued at the IRS, the Settlement Administrator shall escrow $40,000.00 which may be used for any additional expenses and locational efforts. A sum, with approval of Class Counsel, may be assessed not to exceed $225.00 to locate any Class Member. Any monies remaining after all distributions shall be set forth in an accounting which shall be filed with the Court by Class Counsel detailing, *inter alia*, the identity of the *cy pres* recipient(s) and confirming that half of the balance was paid to the Pennsylvania IOLTA.

6.    <u>Continuing Jurisdiction.</u>

Consummation of the Settlement shall proceed as described in the Agreement and the Court hereby specifically retains jurisdiction of this matter in order to resolve any disputes which may arise in the implementation of the Agreement or the implementation of this Order of Final Judgment and Dismissal with Prejudice. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994). The Court retains continuing jurisdiction for purposes of supervising the implementation of the Agreement and supervising the distribution and allocation of the Settlement Fund.

This class action provides a fair and efficient method for adjudicating this controversy under the criteria set forth in Rule 1708, thereby satisfying the requirement of Pa.R.Civ.P.

1702(5). Final judgment is entered as provided herein. The docket shall remain open solely for administrative matters as set forth herein. The Defendants, as defined in the Settlement Agreement, and Defendants' Insurer are expressly released with prejudice.

IT IS SO ORDERED.

BY THE COURT:

Date: 7/23/18

Judge John Foradora, P.J.

12