IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY LANGER and JAMES LANGER, | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | No. 2:16-cv-06130-HB |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL ONE AUTO FINANCE, a division of CAPITAL ONE, N.A., | ) ) | |
| | ) | |
| Defendant | ) | |

**MOTION OF ATTORNEY RUDY A. FABIAN FOR AN AWARD OF ATTORNEY FEES AND IN OPPOSITION TO PLAINTIFFS' PREVIOUSLY UNCONTESTED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF ATTORNEY FEES AND COSTS, ENTRY OF FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE**

Attorney Rudy A. Fabian, by and through his undersigned counsel files this Motion for an Award of Attorney Fees (the "Fee Motion") and in Opposition to Plaintiffs' Previously Uncontested Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney Fees and Costs, Entry of Final Judgment, and Dismissal With Prejudice (the "Final Approval Motion"), stating as follows.[1]

### I.     INTRODUCTION

Pursuant to Fed.R.Civ.P. 54(d)(2) as incorporated by Rule 23(h)(1), Rudy A. Fabian ("Movant") hereby Moves this Court for an Order awarding him attorney fees for the significant work that he has performed on behalf of the Class in the above-captioned matter which has

---

[1] Fabian was unable to file the present Fee Motion and Opposition to the Final Approval Motion until he had seen what the Final Approval Motion consisted of. The Final Approval Motion was not filed until after the close of business on Friday, November 1, 2019. making it impossible for Fabian to draft and file the present Motion and Opposition any earlier than this. If the Court desires that he do so, Fabian will file a Brief in support of this Motion and Opposition.

substantially contributed to the favorable settlement whose final approval is presently before the Court pursuant to the Final Approval Motion.  The Final Approval Motion seeks the following relief: i) final approval of the Settlement Agreement executed by the parties; 2) certification of a Settlement Class; 3) approval of Attorney Fees and Costs to class counsel; 4) entry of Final Judgment; and 5) dismissal of this action with prejudice.  While Movant opposes the Final Approval Motion, ***his opposition is limited to the third element, approval of the attorney fee award to class counsel that is sought therein***.  Movant does not oppose the total amount of attorney fees contemplated by the Settlement Agreement.  He believes however, that he is entitled to be paid an appropriate portion of those fees.  With the total fees so capped, the award of attorney fees becomes a "zero sum game" inasmuch as a dollar of fees approved as payable to Movant is a dollar less available to be paid to class counsel Richard E. Shenkan ("Shenkan"), and visa-versa.  Accordingly, concomitantly with moving for an award of attorney fees, Movant opposes the fees sought by Shenkan.[2]

## II.     WORKING RELATIONSHIP BETWEEN SHENKAN AND MOVANT

In early spring, 2015, Shenkan and Movant began to discuss working together.  At that time, Shenkan had begun a transition of his solo practice to one centered on consumer class action litigation.  At that time, Movant had been a practicing attorney in Pennsylvania for approximately 26 years and had considerable experience in consumer protection litigation.  In particular, he had been employed

---

[2] To the extent that the Court believes that Movant's present Motion for an Award of Attorney Fees should have been preceded by a Motion to Intervene.  Movant respectfully requests that the Court deem such prefatory motion to be implicit in the present Fee Motion. Under Fed.R.Civ.P. 24(2), the court must permit anyone to intervene who: "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Movant's claim to a share of the attorney fees to be awarded in this matter is certainly "an interest relating to the property or transaction that is the subject of the action."  It is equally clear that addressing the Motion for Final Approval without Movant's intervention will drastically impair and impede Movant's ability to protect his interest in those fees. Far from there being an existing party to adequately represent Movant's interest in those fees, Shenkan is attempting to collect such fees for himself.

for about 4 years by a small firm that exclusively handled class litigation.  During his tenure there, Movant had worked on no less than half a dozen class actions against automobile lenders arising from force-placed insurance on financed vehicles.  Movant also worked on class actions against life insurance companies based on "vanishing premium" scams, as well as handling class litigation against private entities that engaged in abusive debt-collection practices after purchasing portfolios of local government property tax liens.  Movant was also deeply involved in an unusual class action in which a class of school districts sued an investment banker that had defrauded all of them.

Thus, when he and Shenkan decided to work together, Movant had more overall legal experience than did Shenkan and more consumer class action experience, in particular.  Thus, Shenkan commented to Movant that his overall experience and his familiarity with class action work in particular, would be of great benefit to Shenkan with the work in his new practice area.

Although Movant and Shenkan exchanged various drafts of a proposed agreement to govern their working relationship, no such agreement was ever finalized, and to date no agreement has been executed.  Moreover, there was no meeting of the minds as to many salient terms of any agreement between them sufficient to constitute an oral contract.  The extent of their understanding was that in addition to making modest periodic payments to Movant, Shenkan would pay to Movant a portion of any contingent fees that were received by settlement or verdict.  There was, however, no agreement, oral or written, as to how or by whom such portion would be determined.

Among the many other aspects of their working relationship that were not the subject of agreement, were how many hours Movant was to work each year, the frequency or duration of Movant's working trips to Michigan where Shenkan lived and practiced, whether Movant could do work for other lawyers, along with his work for Shenkan.  In fact, in addition to their understanding that they would work out the allocation of each contingent fee when such fee was received, their only

specific point of concurrence was that Movant would be an independent contractor vis-à-vis Shenkan.[3]

### III.   THE *MASZGAY* DEBACLE

One of Movant's first tasks when he started working with Shenkan on or about June 1, 2015 was drafting a complaint for a consumer class action to be filed in the Court of Common Pleas of Jefferson County, Pennsylvania, in the matter of *Maszgay v. First Commonwealth Bank*, No. 686-2015 ("*Maszgay*").  This complaint was filed in August 2015 and during the balance of 2015 and continuing through 2016, 2017 and into 2018, Movant devoted substantial time working on the *Maszgay* matter.

On March 6, 2018, Shenkan signed a settlement agreement in the *Maszgay* case.  Movant had devoted 827 hours, representing almost half of the total attorney hours in the *Maszgay* case.  The settlement agreement provided that the defendants would not object to an application for attorney fees from the common fund not to exceed $2.96 million, representing 40% of the total monetary benefit to the class, in addition to reimbursement of litigation expenses.

On March 24, 2018, the Jefferson County, Pennsylvania Court of Common Pleas entered an order granting conditional certification of a settlement class and preliminary approval of the Settlement Agreement. On or about July 23, 2018, Shenkan filed an Uncontested Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney Fee Award, Entry of Final Judgment and Dismissal with Prejudice, along with a supporting Brief seeking, *inter alia*, approval of an attorney fee award in the amount of $2.92 million.  This amount was obtained by applying a multiplier of 2.3 to the aggregate lodestar of $1,270,237.5 for the three attorneys, including Shenkan and Movant, that had worked on the case.

---

[3] *Fabian, et al v. Shenkan, et al*, Case No. 2:19-CV-00582-AJS, Defendant's Amended Answer, at Para. 16.B.1.

Movant allowed Shenkan to include the 827 hours that Movant had worked on the case in Shenkan's fee petition, based on Movant's expectation that Shenkan and Movant would then negotiate the allocation of the *Maszgay* fee as between them. In his fee petition, Shenkan represented to the Court that the 827 hours devoted by Movant, were "fair and reasonable" at a rate of $725 per hour, leading to a lodestar for Movant's time alone of $599,575. In fact, when the 2.3 multiplier was applied to Movant's lodestar, it resulted in an "enhanced lodestar" of $1,379,000, which represented 47.2% of the total requested fee of $2,920,000.

By Order of Final Judgment and Dismissal with Prejudice dated July 23, 2018, the Jefferson County, Pennsylvania Court of Common Pleas granted final approval to the settlement agreement, including aggregate legal fees of $2.92 million. Shenkan provided no information to the Court concerning the allocation of that fee among the three attorneys that worked on the case, nor did the Court's Order of Final Approval purport to make any such allocation.

In mid-September 2018, Shenkan received the $2.92 million in attorney fees from the *Maszgay* case. Shenkan did not inform Movant that he had received these funds.[4] In mid-November 2018, Movant asked Shenkan if he had been paid the attorney fees in the *Maszgay* case and when he would sit down with Movant to negotiate and pay Movant's share of those fees. Shenkan admitted that he had received the $2.92 million two months earlier but said he would not pay Movant his share of the fee award until the end of 2018, because he paid his "bonuses" at the end of the year. Movant protested and Shenkan paid Movant $15,000 on account out of the funds he had received as an attorney fee award in *Maszgay*. Shenkan did not pay Movant the balance of fees owed Movant in the

---

[4] It should come as no surprise to the Court that Shenkan similarly did not notify Movant that he had executed a settlement agreement on behalf of the class in the present case, that the Court had entered an Order preliminarily approving that settlement, that the Court had set a date for a fairness hearing and that the Court had set a deadline for the filing of the Motion for Final Approval.

*Maszgay* case by the end of the year, and despite multiple demands by Movant, refused to make any further payment to Movant of any share of the *Maszgay* attorney fees.

Based on the hours worked by Movant on all cases during the three and one-half year period during which he worked with Shenkan, and the total of the periodic payments paid by Shenkan during that period, the average hourly rate for the periodic payments made by Shenkan to Movant was approximately $36 per hour. At Movant's average hourly rate of about $36, Shenkan paid Movant a total of about $30,000 for the 827 hours that Movant worked on *Maszgay*. At the same time, Shenkan received a total of $1.379 million on behalf of Movant for Movant's work on *Maszgay*, representing a 46-fold markup. Stated differently, while Shenkan was paying Movant $36 per hour for his 827 hours on *Maszgay*, Shenkan pocketed $1,667 for every hour that Movant worked.

As a result of Shenkan's refusal to pay to Movant an equitable portion of the fees awarded in *Maszgay*; on February 14, 2019, Movant filed an action in quantum meruit against Shenkan in the Court of Common Pleas of Allegheny County. On May 16, 2019, Shenkan removed that action to the United States District Court for the Western District of Pennsylvania. *Fabian, et al v. Shenkan, et al*, Case No. 2:19-CV-00582-AJS.

### IV. MOVANT IS ENTITLED TO AN AWARD OF ATTORNEY FEES FOR HIS WORK ON BEHALF OF THE CLASS IN THIS MATTER AND SUCH AWARD MUST COME OUT OF THE FEES SOUGHT BY SHENKAN

#### A. It is Necessary for Movant to File this Motion for an Award of Attorney Fees in Order to Prevent Shenkan from Absconding with Movant's Equitable Portion of the <u>Fees as he did in *Maszgay*</u>

Among the many specious positions that Shenkan has taken in Movant's quantum meruit action against him, Shenkan has argued that Movant's quantum meruit recovery ***from him*** is barred because Movant never requested that the *Maszgay* Court award him attorney fees. While such an argument makes absolutely no sense, one of Movant's motivations in filing the present Motion for

an Award of Attorney Fees is to foreclose Shenkan from even making this spurious argument again.

### B. Movant has Devoted Hundreds of Hours of Quality Legal Work to Advancing the Interests of the Class in this Litigation

As can be seen from the Spreadsheet attached hereto as Exhibit A, based on contemporaneously maintained time records, Movant has committed 652.8 hours of time to this matter. This time involved, *inter alia*, legal research on a variety of substantive and procedural issues, as well as the drafting of pleadings, briefs, memoranda, correspondence and settlement documents. Movant's efforts on behalf of the Class also included dozens of hours consulting with Shenkan on matters of legal theory and procedure. The excellent result represented by the proposed settlement that Shenkan touts throughout the Final Approval Motion would not have been accomplished without the considerable efforts of Movant.

In *Maszgay,* the Court approved Movant's time at a rate of $725 per hour. Thus, without the application of any multiplier, the lodestar for the 652.8 hours devoted by Movant in the present case is $473,280.00. If a multiplier of 2.3 is applied, as it was in *Maszgay*, the enhanced lodestar for Movant's time in the present case is $1,088,544.00   In order to determine the amount of fees to which Movant is entitled in the present case, any lodestar or enhanced lodestar that would form the basis for such an award must be reduced by the amount of the periodic payments already made by Shenkan to Movant for those 652.8 hours of work. At $36 per hour, this amounts to $23,500.80. Other than this de-minimis amount, Movant faced the same risk of non-payment as did Shenkan, and therefore, should be entitled to a similar multiplier.

### C. Shenkan's Attempt to Be Paid Without Providing the Court with Complete Time Records Must be Rejected Out of Hand

The gravity of the deficiency in Shenkan's request for attorney fees is revealed in a two-paragraph footnote on the last page of his Brief in Support of the Final Approval Motion. There, in footnote 13, Shenkan asserts that "Class Counsel has devoted more than 1,000 hours relating to this litigation." Notably, Shenkan has attached no contemporaneous time records to support this assertion. In fact, he has not even attached an affidavit to this effect. Thus, Shenkan has asked this Court to award him $2.6 million in attorney fees based on an unverified, imprecise guess as to how many hours of attorney work were devoted. He has deliberately left it unclear whether the "more than 1000 hours" to which he refers includes Movant's 652.8 hours or not. If the Court determines that it will make any sort of allocation of the fees as between Shenkan and Movant, it will certainly be necessary for Shenkan to provide such contemporaneous time records for the Court's review.

Also, Shenkan's recitation in the same footnote that his time has recently been approved at a rate of $725 per hour is likely misleading, because some of the attorney work that was devoted to the present case was performed by significantly more junior attorneys with much lower hourly rates. In fact, one of these attorneys was approved at a rate of $375 per hour by the Court in *Maszgay*. This set of facts can only be evaluated by the Court's review of the complete time records of all attorneys that worked on this matter.

Shenkan's additional statement in footnote 13 that he will provide detailed time records but only for in camera inspection is particularly odd. The explanation for this limitation, that such a procedure will preserve the work product privilege, is at best unconvincing. Movant respectfully submits that in order to properly evaluate Shenkan's claim to attorney fees and Movant's

competing claim to a portion of those fees, it will necessary for the Court to review all the time records of all the attorneys, whose time is to be compensated.

## V. CONCLUSION

For the reasons set forth above, Movant respectfully requests that he be awarded an appropriate portion of the attorney fees that the Court approves in this case.

Respectfully submitted,

*s/Bernard S. Rubb*_____
Bernard S. Rubb, Esquire
PA. I.D. #22109

BERNARD S. RUBB & ASSOCIATES
434 Oliver Road
Sewickley, PA 15143

Phone: (412) 741-3021

bernierubb@aol.com
bernierubb@gmail.com

November 6, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing "Motion for an Award of Attorney Fees and in Opposition to Plaintiffs' Previously Uncontested Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney Fees and Costs, Entry of Final Judgment, and Dismissal With Prejudice" has been served upon counsel of record for all parties as a result of the EM/ECF system.


Date:  November 6, 2019               *s/Bernard S. Rubb*_____
                                      Bernard S. Rubb, Esquire